1  BURKE, WILLIAMS & SORENSEN, LLP
   DANIEL W. MAGUIRE (SBN 120002)
2  E-mail: dmaguire@bwslaw.com
   KEIKO J. KOJIMA (SBN 206595)
3  E-Mail: kkojima@bwslaw.com
   444 South Flower Street, Suite 2400
4  Los Angeles, CA 90071-2953
   Telephone: 213.236.0600
5  Facsimile: 213.236.2700

6  Attorneys for Plaintiff
   Hartford Life Insurance Company

7

**FILED**

JUL 16 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11  HARTFORD LIFE INSURANCE          CASE NO. 08 CV 1279 WQH LSP
    COMPANY,
12                                    **COMPLAINT IN INTERPLEADER**
                 Plaintiff,
13                                    **[28 U.S.C. § 1335]**
    v.
14
    MARY BANKS, an individual and
15  Trustee of the Cleona Shortridge
    Revocable Trust; BERYL
16  RAYFORD, an individual; UMAR
    ALMAJID, an individual; NORTH
17  AMERICAN MERCANTILE, INC.,
    a corporation; SANDBERG,
18  PHOENIX AND VON GONTARD,
    P.C., a business organization;
19  MONNYE GROSS, an individual;
    and RICHARD WYER, an
20  individual,

21              Defendants.

22

23

24      Plaintiff Hartford Life Insurance Company ("Hartford") hereby alleges as

25  follows:

26  ///

27  ///

28  ///

LA #4849-7179-6738 v1

ORIGINAL

COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]

## JURISDICTION AND VENUE

1.    Subject matter jurisdiction is conferred upon this Court by the Federal Interpleader Act, 28 U.S.C. § 1335.

2.    Plaintiff Hartford is a corporation organized under the laws of the State of Connecticut, and maintains its principal place of business in the State of Connecticut.  Hartford is authorized to do business and is lawfully doing business as an insurer within the State of California, and within this district.

3.    Defendant Mary Banks ("Banks") is an individual, and Trustee of the Cleona Shortridge Revocable Trust ("Trust").  Plaintiff is informed and believes that Banks is a citizen and resident of the State of Missouri.

4.    Defendant Beryl Rayford ("Rayford") is an individual.  Plaintiff is informed and believes that Rayford is a citizen and resident of the State of Missouri.

5.    Defendant Umar Almajid ("Almajid") is an individual.  Plaintiff is informed and believes that Almajid is a citizen and resident of the County of San Diego, State of California.

6.    Defendant North American Mercantile, Inc. ("NAM") is a corporation organized and existing under the laws of the State of Nevada.

7.    Defendant Sandberg, Phoenix and Von Gontard, P.C. ("Sandberg") is a business organization, form unknown.  Plaintiff is informed and believes that Sandberg is organized and existing under the laws of the State of Missouri, with its

1    principal place of business within the State of Missouri, and that Sandberg acts

2    and/or acted in the capacity of attorney for Defendants Almajid and NAM.

3

4        8.    Defendant Monnye Gross ("Gross") is an individual. Plaintiff is

5    informed and believes that Gross is a citizen and resident of the State of Missouri,

6    and acts or acted in the capacity of attorney for Defendants Banks and Rayford.

7

8        9.    Defendant Richard Wyer ("Wyer") is an individual. Plaintiff is

9    informed and believes that Wyer is a citizen and resident of the State of Missouri,

10    and acts or acted in the capacity of attorney for Defendants Banks and Rayford.

11

12        10.    Minimal diversity exists for purposes of the Federal Interpleader Act,

13    28 U.S.C. § 1335, as Defendant Almajid is a citizen of California, NAM is a citizen

14    of Nevada, and the remaining Defendants are citizens of Missouri.

15

16        11.    Venue is proper in this District as Defendant Almajid resides in the

17    Southern District of California. 28 U.S.C. § 1397.

18

19        12.    More than $500.00 is in controversy in this case, exclusive of interest

20    and costs. As explained below, the stake of this interpleader is approximately

21    $70,000.00 in annuity contract value.

22

23        **FACTS RELEVANT TO THE STAKE INTERPLEAD**

24

25        13.    On May 5, 1994, Union Security Insurance Company ("Union") issued

26    its Masters Variable Annuity Contract No. 360548733 to Cleona Bailey Shortridge

27    as owner and annuitant (hereinafter "Annuity No. 1"). Annuity No. 1 is a Variable

28    Contract, invested in accounts designated by the owner. All rights and obligations

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4849-7179-6738 v1    - 3 -    COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]

1   under Annuity No. 1 were later assumed by Fortis Benefits Insurance Company

2   ("Fortis"), and thereafter by Hartford.  All rights and obligations under Annuity No.

3   1 are now held by Hartford.  A true and correct copy of Annuity No. 1 is attached

4   hereto as Exhibit "1."

5

6           14.    On July 13, 1999, Union Security Insurance Company issued its

7   Masters + Variable Annuity Contract No. 366004419 to Cleona Bailey Shortridge

8   as owner and annuitant (hereinafter "Annuity No. 2").  Annuity No. 2 is also a

9   variable contract, invested in accounts designated by the owner. All rights and

10  obligations under Annuity No. 2 were later assumed by Fortis Benefits Insurance

11  Company, and thereafter by Hartford.  All rights and obligations under Annuity No.

12  2 are now held by Hartford.  A true and correct copy of Annuity No. 2 is attached

13  hereto as Exhibit "2."

14

15          15.    On August 10, 2000, Hartford received a change in beneficiary

16  designation on both Annuity Nos. 1 and 2, which designated Defendant Almajid

17  (50 percent) and Defendant Rayford (50 percent) as beneficiaries.

18

19          16.    On June 11, 2002, Cleona Bailey Shortridge changed the beneficiaries

20  on Annuity Nos. 1 and 2 to NAM.

21

22          17.    On July 9, 2004, Cleona Bailey Shortridge died.

23

24          18.    On or about July 26, 2004, a Petition was filed in the Circuit Court of

25  the City of St. Louis, State of Missouri, captioned *Mary Banks, Trustee, and Beryl*

26  *Rayford, Plaintiffs vs. Umar Abdul Almajid, and North American Mercantile, Inc.,*

27  *a Nevada corporation, Defendants,* under Cause No. 044-01747 (hereinafter the

28  / / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                              - 4 -                COMPLAINT IN INTERPLEADER
                                                                       [28 U.S.C. SECTION 1335]

1  "Petition"). A true and correct copy of the Petition is attached hereto as

2  Exhibit "3."

3

4      19.    The Petition alleged, *inter alia*, that Cleona Bailey Shortridge executed

5  a Revocable Trust on August 4, 1997, naming herself as Grantor and Trustee, and

6  Mary Banks as Successor Trustee. The Trust allegedly named Cleona Bailey

7  Shortridge's nephew, Umar Almajid, and her niece, Beryl Rayford, each as 50

8  percent beneficiaries of the Trust.

9

10      20.    The Petition alleges that a dispute arose among Mary Banks, Beryl

11  Rayford, Umar Almajid, and North American Mercantile, Inc. regarding the

12  ownership of and/or entitlement to various Trust assets, including Annuity No. 1

13  and Annuity No. 2.

14

15      21.    Hartford became aware of this dispute and was served by mail with a

16  document production request by Almajid. On December 9, 2005, Hartford, through

17  its retained counsel, notified Almajid that his document production request was

18  procedurally defective.

19

20      22.    On December 28, 2005, Banks' and Rayford's attorney, Monnye R.

21  Gross, forwarded Hartford's counsel the Petition, and stated that the parties were

22  working toward a settlement.

23

24      23.    Defendants Almajid and NAM were represented in connection with

25  the issues raised by the Petition, by attorney Marty Daesch of the Sandberg law

26  firm.

27  ///

28  ///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4849-7179-6738 v1    - 5 -    COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]

24.     In response to a request from Attorney Gross, Hartford agreed to freeze the accounts of both Annuity No. 1 and Annuity No. 2 until the dispute raised by the Petition was resolved.

25.     Settlement was not reached and the Petition was called for trial in St. Louis, Missouri, on June 25, 2007. Further settlement discussions apparently took place and a tentative settlement was reached on the Petition on June 26, 2007.

26.     The settlement was memorialized in a writing dated July 10, 2007. A true and correct copy of what Plaintiff understands to be the memorialization of that settlement is attached hereto as Exhibit "4."

27.     The terms of the settlement of the Petition were proposed to be amended as memorialized in the "First Amendment to Settlement and Mutual Release Agreement," a true and correct copy of which is attached hereto as Exhibit "5."

28.     The settlement contemplated liquidation of Annuity No. 2 according to the terms of the settlement. Hartford liquidated Annuity No. 2 pursuant to the terms of that settlement, but was unable to distribute the proceeds without proper authorization and completion of a form designed for that purpose, known as a "Benefit Option Election Request Form." To accomplish distribution, Hartford, through its counsel, forwarded to Attorney Daesch the required forms.

29.     Neither Attorney Daesch nor anyone else returned these signed forms to Hartford.

/ / /

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                                     - 6 -                          COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]

30.     On February 10, 2008, the attorney for Plaintiff received an unsolicited communication from Defendant Almajid.  A true and correct copy of this communication is attached as Exhibit "6."  Based on this communication, Hartford had good cause to believe that a dispute had arisen between NAM, Almajid and their counsel, and Hartford requested written confirmation from Almajid and NAM that Defendant Sandberg firm still represented them, as a condition precedent to release of any proceeds of the annuity contracts.

31.     Hartford advised Attorneys Daesch and Gross that if the signed Benefit Option Election Request Form and First Amendment to Settlement and Mutual Release Agreement were not returned to Hartford's counsel by June 9, 2008, this Complaint in Interpleader would be filed.

32.     Neither the signed Benefit Option Election Request Form, nor the First Amendment to Settlement and Mutual Release Agreement were received by Hartford's counsel by June 9, 2008.

33.     Hartford never received written confirmation from NAM or Almajid that they were still represented by Defendant Sandberg firm.

34.     Hartford's counsel was then advised that defendants NAM, Almajid, Banks and Rayford were willing to release Hartford, Fortis and Union from further liability, but were unwilling to sign the First Amendment to Settlement Agreement.

35.     In a final attempt to avoid this interpleader, a stand alone release was executed which operated to release Hartford, Fortis and Union from all claims upon change of ownership of Annuity 1 to NAM, and distribution of the proceeds of

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                    - 7 -                    COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]

1  Annuity 2 to the Trustee.  A true and correct coy of this release is attached hereto as
2  Exhibit "7."

3

4        36.    A dispute then arose as to whether Hartford should disburse the
5  proceeds of Annuity 2 to the Trustee, or to the multiple payees identified in the
6  original settlement agreement (Exhibit 4).  That dispute was never resolved,
7  necessitating the filing of this Complaint in Interpleader.

8

9        37.    Based on the above, Plaintiff is informed and believes that the above-
10  referenced settlement relating to the Petition has or may have dissolved in whole or
11  in part, and that a dispute has arisen or may have arisen between Defendants NAM
12  and Almajid on the one hand, and their attorneys, Defendant Sandberg, on the
13  other.

14

15        38.    By reason of the above, the named Defendants have either asserted
16  claims to Annuity No. 1 and/or the proceeds of Annuity No. 2, or may assert claims
17  thereto, either directly, based on an alleged beneficiary and/or ownership interest,
18  or by reason of claims for attorney's fees relating to work performed by Defendants
19  Gross, Sandberg, and/or Wyer, in connection with the above-referenced
20  transactions.

21

22        39.    The proceeds of Annuity No. 2, in the amount of $36,329.06 are being
23  deposited with the Court concurrently with the filing of this Complaint.  Hartford
24  requests this sum be deposited in an interest-bearing account by the Court pending
25  further orders of distribution.
26  / / /
27  / / /
28  / / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                  - 8 -                  COMPLAINT IN INTERPLEADER
                                                            [28 U.S.C. SECTION 1335]

## **FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**

40.    Plaintiff incorporates by this reference all allegations set forth in paragraph Nos. 1 through 36 above, as though fully set forth herein.

41.    Under the terms of Annuity No. 1, the investments are allocated to investment choices which are selected by the contract owner.

42.    Here, there is a dispute among the Defendants as to the ownership of Annuity 1, and who has the right to direct its investment.

43.    Plaintiff is a disinterested stakeholder.  Plaintiff should not be required to remain in this litigation pending resolution of the conflicting claims.  However, because the value of Annuity 1 fluctuates with the value of the investments it holds, Plaintiff cannot liquidate Annuity 1 and deposit its proceeds on its own initiative while competing claims exist.

44.    Plaintiff therefore requests a declaration by the Court establishing ownership of Annuity No. 1.

## **SECOND CAUSE OF ACTION FOR INTERPLEADER**

45.    Plaintiff incorporates by this reference all allegations set forth in paragraph Nos. 1 through 45 above, as though fully set forth herein.

46.    Adverse and conflicting claims exist to Annuity No. 1 and Annuity No. 2, as more fully described above.

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                                    - 9 -                          COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]



47.    The claims of Defendants herein are adverse and conflicting.  Plaintiff is unable to decide the validity of any of said claims, and is unable to decide whom it should pay.

48.    Plaintiff claims no beneficial interest in the proceeds of the annuity contracts, except as a mere stakeholder.  By reason of the conflicting claims by the Defendants, Plaintiff cannot determine which of the Defendants are entitled to payment of the amounts due under Annuity No. 2, and cannot determine the ownership of Annuity No. 1.  Plaintiff cannot pay any part of the proceeds of Annuity No. 2 or accept investment direction on Annuity No. 1 without the danger of incurring multiple liability.

WHEREFORE, Plaintiff, Hartford Life Insurance Company prays as follows:

1.    That the Defendants and each of them be restrained from instituting any action against Plaintiff for the recovery of the proceeds of Annuity No. 2 and/or any part(s) thereof;

2.    That the Defendants be required to interplead and settle amongst themselves their respective rights with regard to Annuity No. 1 and Annuity No. 2, and that Plaintiff and its predecessors in interest, Union Security Insurance Company and Fortis Benefits Insurance Company, be discharged from any and all liability to Defendants under said contracts or otherwise;

3.    That Plaintiff be reimbursed for its necessary costs and attorneys' fees in prosecuting this interpleader action under 28 U.S.C. § 1335; and

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                    - 10 -                    COMPLAINT IN INTERPLEADER
[28 U.S.C. SECTION 1335]

4.    For such other and further relief as the Court deems proper.

DATED:  July 14, 2008                    BURKE, WILLIAMS & SORENSEN, LLP
                                          DANIEL W. MAGUIRE


                                          By: _____
                                              DANIEL W. MAGUIRE
                                              dmaguire@bwslaw.com
                                              Attorneys for Plaintiff
                                              Hartford Life Insurance Company

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-7179-6738 v1                      - 11 -                    COMPLAINT IN INTERPLEADER
                                                                  [28 U.S.C. SECTION 1335]

**EXHIBIT 1**

# CONTRACT NO. 360548733

EXHIBIT 1
12

F001

06/30/2002

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2002 - June 30, 2002
Page 1

Looking for specific information on your new statement? Refer to the enclosed "How to Read Guide" to
locate the items that are important to you and to discover a whole new world of helpful information at your
fingertips.

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  360548733
Purchase Date  May 5, 1994
Contract Type  IRA

Owner Name  Cleona Bailey Shortridge
Annuitant  Cleona Bailey Shortridge

Summary

| | Quarter<br>4/1/02 - 6/30/02 | Year-To-Date<br>1/1/02 - 6/30/02 | Since Purchase<br>5/5/94 - 6/30/02 |
|---|---|---|---|
| Beginning Value | 27,831.75 | 27,695.34 | |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10- |
| Annuity Performance | 476.01- | 339.60- | 11,433.55 |
| Ending Value | $27,355.74 | $27,355.74 | $27,355.74 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
7128 Miramar Rd 14b
San Diego CA 92121 0000

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
(Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if
applicable.
All information about your variable annuity, including charges and expenses, is described in your
prospectus. Please read it carefully and keep it for your records. For information on fixed interest
rates, please call 1-888-488-2228, option #2. If you have additional questions, or for information
please call 1-800-862-6668 Monday through Thursday 8am to 7pm, Friday 8am to 6pm, or Saturday 9am to
2pm (Eastern time).

**EXHIBIT 1**
**13**

F002

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2002 - June 30, 2002
Page 2

Purchase Date   May 5, 1994                    Owner Name   Cleona Bailey Shortridge
Contract Type   IRA                            Contract Number   360548733
Product Version   Masters 1
Issuing Company   Fortis Benefits Ins Co - FBIC

Value By Sub-Account

| | Future Contribution Allocation | Quarterly Sub-Account Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | $176.72- | 75.338 | | 14.747902 | | 1,111.08 |
| Growth & Income | 30% | $291.13- | 85.643 | | 18.188162 | | 1,557.69 |
| Advisers | 30% | $233.75- | 650.473 | | 3.145125 | | 2,045.82 |
| US Govt Securities | 10% | $14.21 | 19.962 | | 21.581965. | | 430.82 |
| MVA 1 Year 4% Min | | $211.38 | | | | | 22,210.33 |
| Total | 100% | $476.01- | | | | | $27,355.74 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 6/30/02                                   Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Growth | | | | |
| Index (5/1/87)* | -19.47% | 1.81% | 9.32% | 8.98% |
| Growth & Income | | | | |
| Growth & Income (5/29/98) | -22.56% | ------ | ------ | -0.20% |
| Advisers (3/31/83)* | -12.04% | 3.35% | 8.47% | 9.42% |

**EXHIBIT 1**
14

F003



Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2002 - June 30, 2002
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

**Non-Standardized Returns**

Period Ending 6/30/02                                    Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (10/31/86)* | 7.66% | 5.79% | 5.11% | 5.67% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 6/30/02                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -25.11% | 0.86% | 9.32% | 8.47% |
| Growth & Income | -27.98% | ------ | ------ | -1.44% |
| Advisers | -18.19% | 2.46% | 8.47% | 8.44% |
| US Govt Securities | 0.66% | 4.98% | 5.11% | 6.37% |

**EXHIBIT 1**

15

F004

09/30/2002

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2002 - September 30, 2002
Page 1

In the past year we have enhanced the Annuity Contract Access site by providing details such as Total Premium Payments, Maximum Anniversary Value, Available Free Withdrawal Value, Total Surrenders, and more. Most recently we have added Future Contribution Allocation functionality. Just log-on to www.hartfordinvestor.com and check out all the new features. Come back often as we frequently add new enhancements to the site.

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number .360548733
Purchase Date  May 5, 1994
Contract Type  IRA

Owner Name  Cleona Bailey Shortridge
Annuitant  Cleona Bailey Shortridge

Summary

| | Quarter 7/1/02 - 9/30/02 | Year-To-Date 1/1/02 - 9/30/02 | Since Purchase 5/5/94 - 9/30/02 |
|---|---|---|---|
| Beginning Value | 27,355.74 | 27,695.34 | 53,063.29 |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,341.10- |
| Annuity Performance | 414.92- | 754.52- | 11,018.63 |
| Ending Value | $26,940.82 | $26,940.82 | $26,940.82 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubois
WOODBURY FNCL SVCS INC
7128 Miramar Rd 14b
San Diego CA 92121.0000

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
                (Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for information please call 1-800-862-6668 Monday through Thursday 8am to 7pm, Friday 8am to 6pm, or Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
**16**

F005

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2002 - September 30, 2002
Page 2

| | |
|---|---|
| Purchase Date  May 5, 1994 | Owner Name  Cleona Bailey Shortridge |
| Contract Type  IRA | Contract Number  360548733 |
| Product Version  Masters 1 | |
| Issuing Company  Fortis Benefits Ins Co - FBIC | |

Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | $196.17- | 75.338 | | 12.144078 | | 914.91 |
| Growth & Income | 30% | $261.19- | 85.643 | | 15.138389 | | 1,296.50 |
| Advisers | 30% | $204.14- | 650.473 | | 2.831297 | | 1,841.68 |
| US Govt Securities | 10% | $21.01 | 19.962 | | 22.634454 | | 451.83 |
| NVA 1 Year 4% Min | | $225.57 | | | | | 22,435.90 |
| Total | 100% | $414.92- | | | | | $26,940.82 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

| Period Ending 9/30/02 | | Average Annual Total Return | | |
|---|---|---|---|---|
| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
| **Growth** | | | | |
| Index (5/1/87)* | -21.89% | -3.39% | 6.94% | 7.46% |
| **Growth & Income** | | | | |
| Growth & Income (5/29/98) | -23.45% | ------ | ------ | -4.32% |
| Advisers (3/31/83)* | -14.14% | 0.24% | 7.07% | 8.71% |

EXHIBIT 1

17

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2002 - September 30, 2002
Page 3

Owner Name   Cleona Bailey Shortridge
Contract Number   360548733

Non-Standardized Returns

Period Ending 9/30/02

Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (10/31/85)* | 7.86% | 6.20% | 5.21% | 5.90% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

Standardized Returns

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 9/30/02

Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -27.36% | -3.97% | 6.94% | 6.92% |
| Growth & Income | -28.81% | ------ | ------ | -4.99% |
| Advisers | -20.15% | -0.37% | 7.07% | 7.53% |
| US Govt Securities | 0.86% | 5.73% | 5.21% | 6.60% |

**EXHIBIT 1**
18

12/31/2002

**Fortis Masters**
**Variable Annuity**

Variable Annuity Quarterly Statement
October 1, 2002 - December 31, 2002
Page 1

In these uncertain times, it's comforting to know that your beneficiaries are protected even if the value of your annuity declines due to market volatility. That's our promise to you with your Guaranteed Death Benefit. Based on the claims paying ability of the issuing company, we guarantee your beneficiaries will receive the greater of your Contract Value; 100% of premiums minus surrenders, or your Maximum Anniversary Value (MAV), even if death occurs when your contract value has declined due to market conditions. Because Guaranteed Death Benefits can vary and MAV is not available on all contracts, please contact your investment professional about this valuable standard benefit.

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  360548733
Purchase Date  May 5, 1994
Contract Type  IRA

Owner Name  Cleona Bailey Shortridge
Annuitant  Cleona Bailey Shortridge

Summary

| | Quarter 10/1/02 - 12/31/02 | Year-To-Date 1/1/02 - 12/31/02 | Since Purchase 5/5/94 - 12/31/02 |
|---|---|---|---|
| Beginning Value | 26,940.82 | 27,695.34 | |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10- |
| Annuity Performance | 505.22 | 249.30- | 11,523.85 |
| Ending Value | $27,446.04*** | $27,446.04 | $27,446.04 |

*** Per IRS reporting guidelines, this amount is the December 31st Fair Market Value for this IRA contract and it will be reported to the IRS accordingly.

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
(Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
19

F008

**Fortis Masters**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**October 1, 2002 - December 31, 2002**
**Page 2**

| | | |
|---|---|---|
| Purchase Date | May 5, 1994 | Owner Name  Cleona Bailey Shortridge |
| Contract Type | IRA | Contract Number  360548733 |
| Product Version | Masters 1 | |
| Issuing Company | Fortis Benefits Ins Co - FBIC | |

## Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | $72.82 | 75.338 | | 13.110654 | | 987.73 |
| Growth & Income | 30% | $103.38 | 85.643 | | 16.345476 | | 1,399.88 |
| Advisers | 30% | $103.25 | 650.473 | | 2.990093 | | 1,944.93 |
| US Govt Securities | 10% | $2.90 | 19.962 | | 22.779788 | | 454.73 |
| NVA 1 Year 4% Min | | $222.87 | | | | | 22,658.77 |
| Total | 100% | $505.22 | | | | | $27,446.04 |

## Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

## Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 12/31/02                                    Average Annual Total Return

| Sub-Account  (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | -23.49% | -2.36% | 7.29% | 7.86% |
| **Growth & Income** | | | | |
| Growth & Income (5/29/98) | -25.67% | ------- | ------- | -2.47% |
| Advisers (3/31/83)* | -14.95% | 1.01% | 7.17% | 8.89% |

EXHIBIT 1

20

F009

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2002 - December 31, 2002
Page 3

Owner Name   Cleona Bailey Shortridge
Contract Number  360548733

## Non-Standardized Returns

Period Ending 12/31/02                                    Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (10/31/86)* | 9.25% | 5.84% | 5.35% | 5.84% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

## Standardized Returns

These returns include deductions for separate account charges of 1.35%, total fund operating expenses, Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 12/31/02                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -28.84% | -2.95% | 7.29% | 7.34% |
| Growth & Income | -30.87% | ------ | ------ | -3.12% |
| Advisers | -20.90% | 0.42% | 7.17% | 7.79% |
| US Govt Securities | 2.25% | 5.36% | 5.35% | 6.53% |

**EXHIBIT 1**
21

F010

03/31/2003

**Fortis Masters**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**January 1, 2003 - March 31, 2003**
**Page 1**

Is your portfolio's allocation still tailored to your goals? Given last year's economic environment, an 80% stock/20% bond mix would have finished 2002 with 73% in stocks and 27% in bonds. Left unattended, an 80/20 ratio in 2000 would have changed to 64% stocks/36% bonds by the end of 2002, much different from the mix that you and your investment representative customized to your specific goals. With the start of a new year, this is a good time to meet with your investment representative to review your financial situation. (Stocks represented by the S&P 500 Index. Bonds represented by the Lehman Bros. Aggregate Bond Index. Indexes are not available for direct investment.)

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number 360548733
Purchase Date  May 5, 1994
Contract Type  IRA

Owner Name  Cleona Bailey Shortridge
Annuitant   Cleona Bailey Shortridge

Summary

|  | Quarter 1/1/03 - 3/31/03 | Year-To-Date 1/1/03 - 3/31/03 | Since Purchase 5/5/94 - 3/31/03 |
|---|---|---|---|
| Beginning Value | 27,446.04 | 27,446.04 | 53,063.29 |
| Premium Payment | 0.00 | 0.00 | 37,141.10- |
| Total Surrenders* | 0.00 | 0.00 | 11,600.45 |
| Annuity Performance | 76.60 | 76.60 | |
| Ending Value | $27,522.64 | $27,522.64 | $27,522.64 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
                (Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for further information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
**22**

F011

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2003 - March 31, 2003
Page 2

Purchase Date   May 5, 1994                    Owner Name   Cleona Bailey Shortridge
Contract Type   IRA                            Contract Number   360548733
Product Version Masters 1
Issuing Company Fortis Benefits Ins Co - FBIC

### Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | $35.29- | 75.338 | | 12.642252 | | 952.44 |
| Advisers | 30% | $49.95- | 650.473- | | 2.913232 | | 1,894.98 |
| Growth & Income | 30% | $62.43- | 85.643 | | 15.616525 | | 1,337.45 |
| US Govt Securities | 10% | $4.14 | 19.962 | | 22.987344 | | 458.87 |
| MVA 1 Year 4% Min | | $220.13 | | | | | 22,878.90 |
| Total | 100% | $76.60 | | | | | $27,522.64 |

### Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

### Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 3/31/03                                          Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | -26.09% | -5.48% | 6.51% | 7.49% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | -16.77% | -1.43% | 6.56% | 8.64% |
| Growth & Income (5/29/98) | -27.62% | ------ | ------ | -3.25% |

EXHIBIT 1
23

F012

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2003 - March 31, 2003
Page 3

Owner Name   Cleona Bailey Shortridge
Contract Number   360548733

**Non-Standardized Returns**

Period Ending 3/31/03                                    Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (10/31/86)* | 10.04% | 5.77% | 5.03% | 5.82% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 3/31/03                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -31.26% | -6.05% | 6.51% | 6.97% |
| Advisers | -22.60% | -2.03% | 6.56% | 7.48% |
| Growth & Income | -32.69% | ------ | ------ | -3.87% |
| US Govt Securities | 3.04% | 5.29% | 5.03% | 6.48% |

**EXHIBIT 1**
**24**

F013

06/30/2003

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2003 - June 30, 2003
Page 1

Is your portfolio's allocation still tailored to your goals? With the current economic downturn, a
portfolio that was 80% in stocks and 20% in bonds in 2000 would be 64% stocks and 36% bonds by the end of
2002, much different from the mix that was customized to your specific goals. Meet with your Investment
Professional now to review your financial situation. (*Stocks* are represented by the S&P 500 Index.
*Bonds* are represented by the Lehman Bros. Aggregate Bond Index. Indexes are unavailable for direct
investment.)

360548733

Cleona Bailey Shortridge                    Contract Number 360548733
Po Box 83414                                Purchase Date  May 5, 1994
San Diego CA 92138 3414                     Contract Type  IRA

                                            Owner Name   Cleona Bailey Shortridge
                                            Annuitant    Cleona Bailey Shortridge

Summary

|  | Quarter<br>4/1/03 - 6/30/03 | Year-To-Date<br>1/1/03 - 6/30/03 | Since Purchase<br>5/5/94 - 6/30/03 |
|---|---|---|---|
| Beginning Value | 27,522.64 | 27,446.04 | |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10- |
| Annuity Performance | 753.66 | 830.26 | 12,354.11 |
| Ending Value | $28,276.30 | $28,276.30 | $28,276.30 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if
applicable.
All information about your variable annuity, including charges and expenses, is described in your
prospectus. Please read it carefully and keep it for your records. For information on fixed interest
rates, please call 1-888-488-2228, option #2. If you have additional questions, or for further
information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm
Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
25

F014

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2003 - June 30, 2003
Page 2

Purchase Date   May 5, 1994                    Owner Name   Cleona Bailey Shortridge
Contract Type   IRA                            Contract Number   360548733
Product Version   Masters 1
Issuing Company   Fortis Benefits Ins Co - FBIC

Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | $141.89 | 75.338 | | 14.525561 | | 1,094.33 |
| Advisers | 30% | $188.28 | 650.473 | | 3.202686 | | 2,083.26 |
| Growth & Income | 30% | $191.99 | 85.642 | | 17.858355 | | 1,529.44 |
| US Govt Securities | 10% | $6.61 | 19.962 | | 23.318069 | | 465.48 |
| MVA 1 Year 4% Min | | $224.89 | | | | | 23,103.79 |
| | | | | | | | |
| Total | 100% | $753.66 | | | | | $28,276.30 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 6/30/03                                   Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Growth | | | | |
| Index (5/1/87)* | -1.51% | -3.36% | 8.01% | 8.30% |
| Growth & Income | | | | |
| Advisers (3/31/83)* | 1.83% | -0.36% | 7.46% | 9.03% |
| Growth & Income (5/29/98) | -1.81% | -1.29% | ------ | -0.52% |

**EXHIBIT 1**
26

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2003 - June 30, 2003
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

Non-Standardized Returns

Period Ending 6/30/03                                                        Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Income | | | | |
| US Govt Securities (3/24/87)* | 8.04% | 5.64% | 4.93% | 5.81% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

Standardized Returns

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 6/30/03                                                        Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -8.40% | -3.95% | 8.01% | 7.80% |
| Advisers | -5.17% | -0.97% | 7.46% | 8.00% |
| Growth & Income | -8.69% | -1.89% | ------ | -0.91% |
| US Govt Securities | 1.04% | 5.16% | 4.93% | 6.47% |

**EXHIBIT 1**
**27**

09/30/2003

**Fortis Masters**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**July 1, 2003 - September 30, 2003**
**Page 1**

In each of the 15 bear markets since 1952, the S&P 500 Index rose a minimum of 13% in the first year of recovery. Those short-term returns immediately after a bear market have become a significant part of the longer-term positive returns of bull markets that have followed. Ask your investment representative if your variable annuity portfolio is ready for the future. (Wiesenberger 1/02. S&P 500 Index is unavailable for direct investment. Past performance is not indicative of future results.)

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number   360548733
Purchase Date   May 5, 1994
Contract Type   IRA

Owner Name   Cleona Bailey Shortridge
Annuitant   Cleona Bailey Shortridge

Summary

| | Quarter<br>7/1/03 - 9/30/03 | Year-To-Date<br>1/1/03 - 9/30/03 | Since Purchase<br>5/5/94 - 9/30/03 |
|---|---|---|---|
| Beginning Value | 28,276.30 | 27,446.04 | |
| Premium Payment | 0.00 | 0.00 | 53,063.89 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10 |
| Annuity Performance | 317.16 | 1,147.42 | 12,671.27 |
| Ending Value | $28,593.46 | $28,593.46 | $28,593.46 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228   Automated Annuity Information
1-800-862-6668   Client Services
1-800-777-7938   Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for further information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
**28**

F017



**Fortis Masters**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**July 1, 2003 - September 30, 2003**
**Page 2**

| | |
|---|---|
| Purchase Date    May 5, 1994 | Owner Name  Cleona Bailey Shortridge |
| Contract Type    IRA | Contract Number  360548733 |
| Product Version  Masters 1 | |
| Issuing Company  Fortis Benefits Ins Co - FBIC | |

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | $23.81 | 75.338 | | 14.841623 | | 1,118.14 |
| Advisers | 30% | $19.71 | 650.473 | | 3.232982 | | 2,102.97 |
| Growth & Income | 30% | $50.86 | 85.643 | | 18.452153 | | 1,580.30 |
| US Govt Securities | 10% | $6.75- | 19.962 | | 22.980290. | | 458.73 |
| MVA 1 Year 4% Min | | $239.53 | | | | | 23,333.32 |
| Total | 100% | $317.16 | | | | | $28,593.46 |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

**Non-Standardized Returns**

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 9/30/03                                        Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 22.21% | -0.80% | 8.03% | 8.31% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 14.19% | -0.78% | 7.13% | 8.97% |
| Growth & Income (5/29/98) | 21.89% | 1.00% | ------ | 0.12% |

**EXHIBIT 1**
29

F018

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2003 - September 30, 2003
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

Non-Standardized Returns

Period Ending 9/30/03                                      Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 1.53% | 4.46% | 4.61% | 5.63% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

Standardized Returns

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 9/30/03                                      Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 15.21% | -1.41% | 8.03% | 7.82% |
| Advisers | 7.19% | 0.19% | 7.13% | -7.94% |
| Growth & Income | 14.89% | 0.42% | ------ | -0.26% |
| US Govt Securities | -5.47% | 3.95% | 4.61% | 6.27% |

EXHIBIT 1
30

F019

12/31/2003

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2003 - December 31, 2003
Page 1

Please note that the Hartford Growth and Income HLS Fund has been renamed the Hartford Disciplined Equity HLS Fund, and that it will invest at least 80% of its assets in equity securities. Ask your investment representative whether the Hartford Disciplined Equity HLS Fund fits into your overall diversified portfolio.

360548733

Cleona Bailey Shortridge          Contract Number  360548733
Po Box 83414                      Purchase Date    May 5, 1994
San Diego CA 92138 3414           Contract Type    IRA

                                  Owner Name       Cleona Bailey Shortridge
                                  Annuitant        Cleona Bailey Shortridge

Summary

|                      | Quarter<br>10/1/03 - 12/31/03 | Year-To-Date<br>1/1/03 - 12/31/03 | Since Purchase<br>5/5/94 - 12/31/03 |
|----------------------|------------------|------------------|------------------|
| Beginning Value      | 28,593.46        | 27,446.04        |                  |
| Premium Payment      | 0.00             | 0.00             | 53,063.29        |
| Total Surrenders*    | 0.00             | 0.00             | 37,141.10-       |
| Annuity Performance  | 731.37           | 1,878.79         | 13,402.64        |
| Ending Value         | $29,324.83***    | $29,324.83       | $29,324.83       |

*** Per IRS reporting guidelines, this amount is the December 31st Fair Market Value for this IRA contract and it will be reported to the IRS accordingly.

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are %%PHONE1

**EXHIBIT 1**

**31**

F020



Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2003 - December 31, 2003
Page 2

| | |
|---|---|
| Purchase Date May 5, 1994 | Owner Name Cleona Bailey Shortridge |
| Contract Type IRA | Contract Number 360548733 |
| Product Version Masters 1 | |
| Issuing Company Fortis Benefits Ins Co - FBIC | |

## Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | 130.50 | 75.338 | | 16.573850 | | 1,248.64 |
| Advisers | 30% | 170.73 | 650.473 | | 3.495449 | | 2,273.70 |
| Htfd DisplndEquity | 30% | 198.86 | 85.643 | | 20.773885 | | 1,779.14 |
| US Govt Securities | 10% | 0.47- | 19.962 | | 22.956680 | | 458.26 |
| MVA 1 Year 4% Min | | 231.77 | | | | | 23,565.09 |
| Total | 100% | $731.37 | | | | | $29,324.83 |

## Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

## Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 12/31/03

Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 26.42% | -2.35% | 9.02% | 8.89% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 16.90% | -0.01% | 7.75% | 9.26% |
| Htfd DisplndEquity (5/29/98) | 27.09% | -0.83% | ------- | 2.26% |

**EXHIBIT 1**
**32**

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2003 - December 31, 2003
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

Non-Standardized Returns

Period Ending 12/31/03                                    Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Income | | | | |
| US Govt Securities (3/24/87)* | 0.78% | 4.50% | 4.62% | 5.53% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

Standardized Returns

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,
Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 12/31/03                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 19.42% | -2.94% | 9.02% | 8.43% |
| Advisers | 9.90% | -0.62% | 7.75% | 8.33% |
| Htfd DispIndEquity | 20.09% | -1.63% | ------ | 1.93% |
| US Govt Securities | -6.22% | 3.99% | 4.62% | 6.16% |

EXHIBIT 1
33

F022

03/31/2004

**Fortis Masters
Variable Annuity**

Variable Annuity Quarterly Statement
January 1, 2004 - March 31, 2004
Page 1

Has it been awhile since you reviewed your long-term financial plan with your investment representative?
If so, this may be a good time to renew that relationship. Investment representatives can help determine
whether you are saving too little, or too conservatively. They can suggest how to help other family
members, such as contributing to a child's or grandchild's college fund. And a general financial checkup
can provide you with peace of mind that your long-term goals are still on track.

360548733

Cleona Bailey Shortridge           Contract Number  360548733
Po Box 83414                       Purchase Date    May 5, 1994
San Diego CA 92138 3414            Contract Type    IRA

                                   Owner Name   Cleona Bailey Shortridge
                                   Annuitant    Cleona Bailey Shortridge

Summary

|  | Quarter 1/1/04 - 3/31/04 | Year-To-Date 1/1/04 - 3/31/04 | Since Purchase 5/5/94 - 3/31/04 |
|---|---|---|---|
| Beginning Value | 29,324.83 | 29,324.83 | |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10 |
| Annuity Performance | 270.52 | 270.52 | 13,673.16 |
| Ending Value | $29,595.35 | $29,595.35 | $29,595.35 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if
applicable.
All information about your variable annuity, including charges and expenses, is described in your
prospectus. Please read it carefully and keep it for your records. Our hours of operation are
*4PHONE1

**EXHIBIT 1**
**34**

F023

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2004 - March 31, 2004
Page 2

| | |
|---|---|
| Purchase Date    May 5, 1994 | Owner Name  Cleona Bailey Shortridge |
| Contract Type    IRA | Contract Number  360548733 |
| Product Version   Masters 1 | |
| Issuing Company   Fortis Benefits Ins Co - FBIC | |

Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | 15.51 | 75.338 | | 16.779730 | | 1,264.15 |
| Advisers | 30% | 2.62 | 650.473 | | 3.499482 | | 2,276.32 |
| Htfd DisplndEquity | 30% | 15.86 | 85.643 | | 20.959040 | | 1,795.00 |
| US Govt Securities | 10% | 7.51 | 19.962 | | 23.332784 | | 465.77 |
| MVA 1 Year 4% Min | | 229.02 | | | | | 23,794.11 |
| Total | 100% | $270.52 | | | | | $29,595.35 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

Non-Standardized Returns

Performance returns for Fortis Masters Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 3/31/04                                    Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Growth | | | | |
| Index (5/1/87)* | 32.73% | -2.96% | 9.63% | 8.84% |
| Growth & Income | | | | |
| Advisers (3/31/83)* | 20.12% | -0.49% | 8.17% | 9.16% |
| Htfd DisplndEquity (5/29/98) | 34.21% | -1.42% | ------ | 2.32% |

**EXHIBIT 1**
**35**

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2004 - March 31, 2004
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

**Non-Standardized Returns**

Period Ending 3/31/04                                    Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 1.50% | 5.13% | 5.32% | 5.55% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 3/31/04                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 25.73% | -3.55% | 9.63% | 8.38% |
| Advisers | 13.12% | -1.09% | 8.17% | 8.21% |
| Htfd DispIndEquity | 27.21% | -2.02% | ------ | 2.01% |
| US Govt Securities | -5.50% | 4.64% | 5.32% | 6.17% |

**EXHIBIT 1**

36

F025

06/30/2004

**Fortis Masters**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**April 1, 2004 - June 30, 2004**
**Page 1**

Adding to your variable annuity can be an effective way to help you reach your goals. And while there are no guarantees to investing, even small additions can potentially have a significant effect over time. Ask your investment representative about programs available in your contract that can make adding to your annuity easy and convenient.

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  360548733
Purchase Date    May 5, 1994
Contract Type    IRA

Owner Name   Cleona Bailey Shortridge
Annuitant    Cleona Bailey Shortridge

**Summary**

|  | Quarter 4/1/04 - 6/30/04 | Year-To-Date 1/1/04 - 6/30/04 | Since Purchase 5/5/94 - 6/30/04 |
|---|---|---|---|
| Beginning Value | 29,595.35 | 29,324.83 |  |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10- |
| Annuity Performance | 256.70 | 527.22 | 13,929.86 |
| Ending Value | $29,852.05 | $29,852.05 | $29,852.05 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday - Thursday 8am to 7pm, Friday 8am to 6pm and Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
37

F026



Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2004 - June 30, 2004
Page 2

| Purchase Date | May 5, 1994 | Owner Name | Cleona Bailey Shortridge |
|---|---|---|---|
| Contract Type | IRA | Contract Number | 360548733 |
| Product Version | Masters 1 | | |
| Issuing Company | Fortis Benefits Ins Co - FBIC | | |

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | 15.65 | 75.338 | | 16.987438 | | 1,279.80 |
| Advisers | 30% | 8.22 | 650.473 | | 3.512125 | | 2,284.54 |
| Htfd DisplndEquity | 30% | 10.72 | 85.643 | | 21.084313 | | 1,805.72 |
| US Govt Securities | 10% | 11.74- | 19.962 | | 22.744546 | | 454.03 |
| MVA 1 Year 4% Min | | 233.85 | | | | | 24,027.96 |
| Total | 100% | $256.70 | | | | | $29,852.05 |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

For fund performance for the quarter ending June 30, 2004, please visit our website at www.hartfordinvestor.com. Simply click on "Annuity Contract Access", found under the "Account Access" heading on the left-hand navigation, and login. Or you can call our Automated Voice Services toll-free number at 1-888-488-2228 and follow the voice prompts for fund performance.

**EXHIBIT 1**
**38**

F027

09/30/2004

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2004 - September 30, 2004
Page 1

A key benefit of your variable annuity is the many investment options it offers. Reviewing your particular progress is important. But it's also valuable to see how other investment choices are doing, and to be able to take advantage of those choices. Talk to your investment representative about the mix that's right for you. And to review the performance of all your options, log onto our website (www.hartfordinvestor.com) or call our Automated Voice Services toll-free number at 1-888-488-2228.

360548733

Cleona Bailey Shortridge
PO Box 83416
San Diego CA 92138 3416

Contract Number  360548733
Purchase Date    May 5, 1994
Contract Type    IRA

Owner Name   Cleona Bailey Shortridge
Annuitant    Cleona Bailey Shortridge

Summary

| | Quarter 7/1/04 - 9/30/04 | Year-To-Date 1/1/04 - 9/30/04 | Since Purchase 5/5/94 - 9/30/04 |
|---|---|---|---|
| Beginning Value | 29,852.05 | 29,324.83 | |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10 |
| Annuity Performance | 107.78 | 635.00 | 14,037.64 |
| Ending Value | $29,959.83 | $29,959.83 | $29,959.83 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday - Thursday 8am to 7pm, Friday 8am to 6pm and Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
**39**

F028

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2004 - September 30, 2004
Page 2

| | |
|---|---|
| Purchase Date  May 5, 1994 | Owner Name  Cleona Bailey Shortridge |
| Contract Type  IRA | Contract Number  360548733 |
| Product Version  Masters 1 | |
| Issuing Company  Fortis Benefits Ins Co - FBIC | |

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | 29.09- | 75.338 | | 16.601338 | | 1,250.71 |
| Advisers | 30% | 50.85- | 650.473 | | 3.433943 | | 2,233.69 |
| Htfd DispIndEquity | 30% | 58.65- | 85.643 | | 20.399492 | | 1,747.07 |
| US Govt Securities | 10% | 7.67 | 19.962 | | 23.129085 | | 461.70 |
| MVA 1 Year 4% Min | | 238.70 | | | | | 24,266.66 |
| | | | | | | | |
| Total | 100% | $107.78 | | | | | $29,959.83 |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS. The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

**EXHIBIT 1**
**40**

F029

**Fortis Masters**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**July 1, 2004 - September 30, 2004**
**Page 3**

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

**Non-Standardized Returns**

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account sales charges or charges for any optional benefits. If the sales charge and charges for optional benefits were reflected, performance results would be lower.
Period Ending 9/30/04

Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 11.86% | -3.07% | 9.03% | 8.51% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 6.22% | -0.68% | 7.89% | 8.84% |
| Htfd DisplndEquity (5/29/98) | 10.55% | -2.01% | ------ | 1.70% |
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 0.65% | 5.17% | 5.55% | 5.34% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

**Standardized Returns**

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.
Period Ending 9/30/04

Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 4.86% | -3.66% | 9.03% | 8.06% |
| Advisers | -0.78% | -1.29% | 7.89% | 7.84% |
| Htfd DisplndEquity | 3.55% | -2.61% | ------ | 1.55% |
| US Govt Securities | -6.35% | 4.67% | 5.55% | 5.93% |

**EXHIBIT 1**
**41**

12/31/2004

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2004 - December 31, 2004
Page 1

Did you know there's still time to contribute to an Individual Retirement Annuity (IRA) for 2004? The deadline for contributing to last year's IRA is April 15, 2005. You may contribute up to $3,000 (maximum for all IRAs combined) or $3,500 for those 50 and older. Experts agree that regular contributions can be an effective investment strategy for long-term goals. So if you haven't made a full IRA contribution for 2004 yet, why wait any longer?

360548733

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  360548733
Purchase Date    May 5, 1994
Contract Type    IRA

Owner Name    Cleona Bailey Shortridge
Annuitant     Cleona Bailey Shortridge

Summary

|  | Quarter 10/1/04 - 12/31/04 | Year-To-Date 1/1/04 - 12/31/04 | Since Purchase 5/5/94 - 12/31/04 |
|---|---|---|---|
| Beginning Value | 29,959.83 | 29,324.83 | |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders* | 0.00 | 0.00 | 37,141.10 |
| Annuity Performance | 599.39 | 1,234.39 | 14,637.03 |
| Ending Value | $30,559.22*** | $30,559.22 | $30,559.22 |

*** Per IRS reporting guidelines, this amount is the December 31st Fair Market Value for this IRA contract and it will be reported to the IRS accordingly.

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday - Thursday 8am to 7pm, Friday 8am to 6pm and Saturday 9am to 2pm (Eastern time).

**EXHIBIT 1**
42

F031

Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2004 - December 31, 2004
Page 2

Purchase Date   May 5, 1994                    Owner Name   Cleona Bailey Shortridge
Contract Type   IRA                            Contract Number   360548733
Product Version   Masters 1
Issuing Company   Fortis Benefits Ins Co - FBIC

Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 30% | 209.23 | 75.338 | | 18.051207 | | 1,359.94 |
| Advisers | 30% | 93.49 | 650.473 | | 3.577676 | | 2,327.18 |
| Btfd DisplndEquity | 10% | 155.83 | 85.643 | | 22.218925 | | 1,902.90 |
| US Govt Securities | 10% | 0.22- | 19.962 | | 23.117766 | | 461.48 |
| MVA 1 Year 4% Min | | 241.06 | | | | | 24,507.72 |
| Total | 100% | $599.39 | | | | | $30,559.22 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE
RESULTS. The investment return and principal value of a Sub-Account will fluctuate so that units,
when redeemed, may be worth more or less than their original cost. Current performance may be lower
or higher than the performance data quoted. For performance current to the most recent month ended,
please see www.hartfordinvestor.com

EXHIBIT 1
43



Fortis Masters
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2004 - December 31, 2004
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  360548733

### Non-Standardized Returns

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.
Period Ending 12/31/04                                          Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 8.91% | -4.04% | 10.00% | 8.90% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 2.35% | -1.28% | 8.45% | 8.94% |
| Btfd DsplndEquity (5/29/98) | 6.96% | -3.12% | ------ | 2.96% |
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 0.70% | 5.34% | 5.54% | 5.76% |

*The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

### Standardized Returns

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.
Period Ending 12/31/04                                          Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 1.91% | -4.62% | 10.00% | 8.45% |
| Advisers | -4.65% | -1.88% | 8.45% | 7.97% |
| Btfd DsplndEquity | -0.04% | -3.70% | ------ | 2.83% |
| US Govt Securities | -6.30% | 4.85% | 5.54% | 5.84% |

**EXHIBIT 1**
**44**

F033



# FORTIS MASTERS
## VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### JANUARY 1, 2005 - MARCH 31, 2005
#### PAGE 1 OF 3

**FORTIS**

Annual IRA contribution limits have increased this year to $4,000 and $4,500 for those aged 50 and above. Are you taking full advantage? Talk to your investment professional about increasing your contributions to take full advantage of the tax benefits that variable annuities provide.

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

CONTRACT NUMBER 360548733
PURCHASE DATE May 5, 1994
CONTRACT TYPE IRA

OWNER Cleona Bailey Shortridge
ANNUITANT Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 1/1/05 - 3/31/05 | YEAR-TO-DATE 1/1/05 - 3/31/05 | SINCE PURCHASE 5/5/94 - 3/31/05 |
|---|---|---|---|
| Beginning Value | 30,559.22 | 30,559.22 |  |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders * | 0.00 | 0.00 | -37,141.10 |
| Annuity Performance | 110.86 | 110.86 | 14,747.89 |
| Ending Value | $30,670.08 | $30,670.08 | $30,670.08 |

## YOUR ANNUITY AT A GLANCE



- 80.7% MVA 1 Year 4% Min
- 7.4% Advisers
- 6.1% Htfd DispIndEquity
- 4.3% Index
- 1.5% US Govt Securities

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
1-888-488-2228   Automated Voice Services
1-800-862-6668   Client Services
1-800-777-7938   Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 1**
**45**

PAGE 2 OF 3

| | | | | |
|---|---|---|---|---|
| **PURCHASE DATE** May 5, 1994 | | | **OWNER** Cleona Bailey Shortridge | |
| **CONTRACT TYPE** IRA | | | **CONTRACT NUMBER** 360548733 | |
| **PRODUCT VERSION** Masters 1 | | | | |
| **ISSUING COMPANY** Fortis Benefits Ins Co - FBIC | | | | |

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| Index | 30% | -34.89 | 75.338 | | 17.588120 | | 1,325.05 |
| Advisers | 30% | -49.04 | 650.473 | | 3.502286 | | 2,278.14 |
| Htfd DispIndEquity | 30% | -39.67 | 85.643 | | 21.755737 | | 1,863.23 |
| US Govt Securities | 10% | -3.67 | 19.962 | | 22.933953 | | 457.81 |
| MVA 1 Year 4% Min | | 238.13 | | | | | 24,745.85 |
| **Total** | **100%** | **$110.86** | | | | | **$30,670.08** |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 3/31/05

| | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Growth Asset Class* | | | | |
| Index (5/1/87)* | 4.82% | -4.88% | 8.75% | 8.61% |
| *Growth & Income Asset Class* | | | | |
| Advisers (3/31/83)* | 0.08% | -2.10% | 7.45% | 8.73% |
| Htfd DispIndEquity (5/29/98) | 3.80% | -4.32% | —— | 2.53% |
| *Income Asset Class* | | | | |
| US Govt Securities (3/24/87)* | -1.71% | 4.86% | 4.96% | 5.14% |

* The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

**EXHIBIT 1**
46

F035

## FORTIS MASTERS
## VARIABLE ANNUITY
**VARIABLE ANNUITY QUARTERLY STATEMENT**
**JANUARY 1, 2005 - MARCH 31, 2005**
**PAGE 3 OF 3**



OWNER Cleona Bailey Shortridge
CONTRACT NUMBER 360548733

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 3/31/05

|  | | AVERAGE ANNUAL TOTAL RETURN | | |
| SUB-ACCOUNT | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| --- | --- | --- | --- | --- |
| Index | -2.18% | -5.46% | 8.75% | 8.17% |
| Advisers | -6.92% | -2.70% | 7.45% | 7.72% |
| Htf'd DispIndEquity | -3.20% | -4.91% | — | 2.40% |
| US Govt Securities | -8.59% | 4.36% | 4.96% | 5.71% |

Neither the Hartford nor its agents or employees provide financial, tax, legal or accounting advice. You should consult a qualified advisor for guidance in these matters.

**EXHIBIT 1**
**47**

F036



### FORTIS MASTERS
### VARIABLE ANNUITY
**VARIABLE ANNUITY QUARTERLY STATEMENT**
**APRIL 1, 2005 - JUNE 30, 2005**
PAGE 1 OF 3



Are you saving enough for a comfortable retirement? Studies show that nearly one in every three workers worries that they won't have enough to retire on when they want. Healthier lifestyles mean retirements can be long...and expensive. Better to be safe than sorry. Talk to your investment representative about whether you're on track to meet your goals. And if not, create a financial plan together to keep you on track.

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

CONTRACT NUMBER 360548733
PURCHASE DATE May 5, 1994
CONTRACT TYPE IRA

OWNER Cleona Bailey Shortridge
ANNUITANT Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 4/1/05 - 6/30/05 | YEAR-TO-DATE 1/1/05 - 6/30/05 | SINCE PURCHASE 5/5/94 - 6/30/05 |
|---|---|---|---|
| Beginning Value | 30,670.08 | 30,559.22 |  |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders * | 0.00 | 0.00 | -37,141.10 |
| Annuity Performance | 360.85 | 471.71 | 15,108.74 |
| **Ending Value** | **$31,030.93** | **$31,030.93** | **$31,030.93** |

## YOUR ANNUITY AT A GLANCE



- 80.5% MVA 1 Year 4% Min
- 7.5% Advisers
- 6.2% Htfd DispIndEquity
- 4.3% Index
- 1.5% US Govt Securities

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
1-888-488-2228   Automated Voice Services
1-800-862-6668   Client Services
1-800-777-7938   Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 1**
48

F037

PAGE 2 OF 3

**PURCHASE DATE** May 5, 1994
**CONTRACT TYPE** IRA
**PRODUCT VERSION** Masters 1
**ISSUING COMPANY** Fortis Benefits Ins Co - FBIC

**OWNER** Cleona Bailey Shortridge
**CONTRACT NUMBER** 360548733

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| Index | 30% | 12.21 | 75.338 | | 17.750130 | | 1,337.26 |
| Advisers | 30% | 49.02 | 650.473 | | 3.577641 | | 2,327.16 |
| Htfd DsplndEquity | 30% | 49.13 | 85.643 | | 22.329405 | | 1,912.36 |
| US Govt Securities | 10% | 7.29 | 19.962 | | 23.299092 | | 465.10 |
| MVA 1 Year 4% Min | | 243.20 | | | | | 24,989.05 |
| **Total** | **100%** | **$360.85** | | | | | **$31,030.93** |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

**PERIOD ENDING 6/30/08**

| | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Growth Asset Class* | | | | |
| Index (5/1/87)* | 4.49% | -4.11% | 7.92% | 8.54% |
| *Growth & Income Asset Class* | | | | |
| Advisers (3/31/83)* | 1.87% | -1.25% | 6.96% | 8.75% |
| Htfd DsplndEquity (5/29/98) | 5.91% | -3.21% | —— | 2.82% |
| *Income Asset Class* | | | | |
| US Govt Securities (3/24/87)* | 2.44% | 4.90% | 4.57% | 5.15% |

* The underlying fund was active before the 05/01/91 inception date of Fortis Masters Variable Annuity.

**EXHIBIT 1**
49

F038

# FORTIS MASTERS
## VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
APRIL 1, 2005 - JUNE 30, 2005
PAGE 3 OF 3



**FORTIS**
Solid partners, flexible solutions®

OWNER  Cleona Bailey Shortridge
CONTRACT NUMBER  360548733

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 6/30/05

| SUB-ACCOUNT | 1 YEAR | AVERAGE ANNUAL TOTAL RETURN 5 YEARS | 10 YEARS | SINCE INCEPTION |
|---|---|---|---|---|
| Index | -2.51% | -4.69% | 7.92% | 8.11% |
| Advisers | -5.13% | -1.85% | 6.96% | 7.74% |
| Htfd DispIndEquity | -1.09% | -3.80% | ------ | 2.82% |
| US Govt Securities | -4.56% | 4.40% | 4.57% | 5.72% |

## PLEASE NOTE

Checks submitted to The Hartford may be converted to electronic debit entries. If this method of collecting your funds is used, the electronic debit for the original check amount may be posted to your bank account as early as the day after the check has been received by The Hartford.

If you choose to opt out of the process described above please send a written request to Hartford Life, PO BOX 5085, Hartford CT 06102-5085, requesting that your check not be converted to an electronic debit. The written request should also include your contract number and your current contact information.

Neither the Hartford nor its agents or employees provide financial, tax, legal or accounting advice. You should consult a qualified advisor for guidance in these matters.

EXHIBIT 1
50

F039

# MASTERS
# VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### JULY 1, 2005 - SEPTEMBER 30, 2005
PAGE 1 OF 3

Are you saving enough for a comfortable retirement? Studies show that nearly one in three workers worries that they won't have enough. Better to be safe than sorry. Talk to your investment representative about whether you're on track.

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

CONTRACT NUMBER 360548733
PURCHASE DATE May 5, 1994
CONTRACT TYPE IRA

OWNER Cleona Bailey Shortridge
ANNUITANT Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 7/1/05 - 9/30/05 | YEAR-TO-DATE 1/1/05 - 9/30/05 | SINCE PURCHASE 5/5/94 - 9/30/05 |
|---|---|---|---|
| Beginning Value | 31,030.93 | 30,559.22 |  |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders * | 0.00 | 0.00 | -37,141.10 |
| Annuity Performance | 444.07 | 915.78 | 15,552.81 |
| Ending Value | $31,475.00 | $31,475.00 | $31,475.00 |

## YOUR ANNUITY AT A GLANCE



- 80.2% MVA 1 Year 4% Min
- 7.6% Advisers
- 6.3% Htfd DispIndEquity
- 4.4% Index
- 1.5% US Govt Securities

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr ste 227
Temecula CA 92590

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
1-888-488-2228    Automated Voice Services
1-800-862-6668    Client Services
1-800-777-7938    Producer Services

\* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

EXHIBIT 1
51

F040

**PAGE 2 OF 3**

| | |
|---|---|
| PURCHASE DATE May 5, 1994 | OWNER Cleona Bailey Shortridge |
| CONTRACT TYPE IRA | CONTRACT NUMBER 360548733 |
| PRODUCT VERSION Masters 1 | |
| ISSUING COMPANY Union Security Ins Co - USIC | |

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| US Govt Securities | 10% | -3.21 | 19.962 | | 23.138598 | | 461.89 |
| MVA 1 Year 4% Min | | 248.29 | | | | | 25,237.34 |
| Advisers | 30% | 77.84 | 650.473 | | 3.697316 | | 2,405.00 |
| Htfd DispIndEquity | 30% | 78.95 | 85.643 | | 23.251262 | | 1,991.31 |
| Index | 30% | 42.20 | 75.338 | | 18.310219 | | 1,379.46 |
| **Total** | **100%** | **$444.07** | | | | | **$31,475.00** |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 9/30/05

| | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Fixed Asset Class* | | | | |
| US Govt Securities (3/24/87)* | 0.04% | 4.18% | 4.34% | 5.04% |
| *U.S. Equity Asset Class* | | | | |
| Advisers (3/31/83)* | 7.67% | -0.52% | 6.72% | 8.79% |
| Htfd DispIndEquity (5/29/98) | 13.98% | -2.32% | —— | 3.29% |
| Index (5/1/87)* | 10.29% | -3.23% | 7.49% | 8.60% |

* The underlying fund was active before the 05/01/91 inception date of Masters Variable Annuity.

EXHIBIT 1
52

F041

# MASTERS
# VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### JULY 1, 2005 - SEPTEMBER 30, 2005
#### PAGE 3 OF 3

**OWNER** Cleona Bailey Shortridge
**CONTRACT NUMBER** 360548733

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

**PERIOD ENDING 9/30/05**   **AVERAGE ANNUAL TOTAL RETURN**

| SUB-ACCOUNT | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
|---|---|---|---|---|
| US Govt Securities | -6.96% | 3.67% | 4.34% | 5.59% |
| Advisers | 0.67% | -1.12% | 6.72% | 7.83% |
| Htfd DispIndEquity | 6.98% | -2.91% | —— | 3.29% |
| Index | 3.29% | -3.82% | 7.49% | 8.18% |

## PLEASE NOTE

This information is written in connection with the promotion or marketing of the matter(s) addressed in this material. The information cannot be used or relied upon for the purpose of avoiding IRS penalties. Neither The Hartford, nor its agents or employees, provide tax or legal advice. As with all matters of a tax or legal nature, you should consult your own tax or legal counsel for advice.

"The Hartford" is The Hartford Financial Services Group, Inc., and its subsidiaries, including the issuing companies of Hartford Life Insurance Company and Hartford Life and Annuity Insurance Company.

Continuous or periodic investment plans neither ensure a profit nor protect against a loss in declining markets. Because these programs involve continuous investing regardless of fluctuating price levels, you should carefully consider your financial ability to continue investing through periods of fluctuating market prices.

Investing in a variable annuity through a tax-advantaged retirement plan such as an IRA provides no additional tax advantage from the variable annuity and should only be considered if it makes sense because of the annuity's other features, such as lifetime income payments or death benefit protection.

Checks submitted to The Hartford may be converted to electronic debit entries. If this method of collecting your funds is used, the electronic debit for the original check amount may be posted to your bank account as early as the day after the check has been received by The Hartford.

If you choose to opt out of the process described above please send a written request to Hartford Life, PO BOX 5085, Hartford CT 06102-5085, requesting that your check not be converted to an electronic debit. The written request should also include your contract number and your current contact information.

Neither The Hartford nor its agents or employees provide financial, tax, legal or accounting advice. You should consult a qualified advisor for guidance in these matters.

This product issued by Union Security Insurance Company, Administered by Hartford Life Insurance Company.

**EXHIBIT 1**
**53**

F042



## MASTERS
## VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### OCTOBER 1, 2005 - DECEMBER 31, 2005
PAGE 1 OF 3

Are you saving enough for a comfortable retirement? Studies show that nearly one in three workers worries that they won't have enough. As the New Year begins, isn't this a good time to review whether you're on track to reach your financial goals?

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

CONTRACT NUMBER 360548733
PURCHASE DATE May 5, 1994
CONTRACT TYPE IRA

OWNER Cleona Bailey Shortridge
ANNUITANT Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 10/1/05 - 12/31/05 | YEAR-TO-DATE 1/1/05 - 12/31/05 | SINCE PURCHASE 5/5/94 - 12/31/05 |
|---|---|---|---|
| Beginning Value | 31,475.00 | 30,559.22 |  |
| Premium Payment | 0.00 | 0.00 | 53,063.29 |
| Total Surrenders * | 0.00 | 0.00 | -37,141.10 |
| Annuity Performance | 337.83 | 1,253.61 | 15,890.64 |
| Ending Value | $31,812.83 | $31,812.83 | $31,812.83 |

## YOUR ANNUITY AT A GLANCE



- 80.1% MVA 1 Year 4% Min
- 7.7% Advisers
- 6.3% Htfd DispIndEquity
- 4.4% Index
- 1.5% US Govt Securities

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
Woodbury Financial Svcs Inc
500 BIELENBERG DR
Woodbury MN 55125

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
1-888-488-2228    Automated Voice Services
1-800-862-6668    Client Services
1-800-777-7938    Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 1**
**54**

F043

PAGE 2 OF 3

PURCHASE DATE  May 5, 1994
CONTRACT TYPE  IRA
PRODUCT VERSION  Masters 1
ISSUING COMPANY  Union Security Ins Co - USIC

OWNER  Cleona Bailey Shortridge
CONTRACT NUMBER  360548733

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| US Govt Securities | 10% | 0.47 | 19.962 | | 23.162151 | | 462.36 |
| MVA 1 Year 4% Min | | 247.99 | | | | | 25,485.33 |
| Advisers | 30% | 57.11 | 650.473 | | 3.785112 | | 2,462.11 |
| Htfd DispIndEquity | 30% | 9.60 | 85.643 | | 23.363372 | | 2,000.91 |
| Index | 30% | 22.66 | 75.338 | | 18.611062 | | 1,402.12 |
| **Total** | **100%** | **$337.83** | | | | | **$31,812.83** |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

| PERIOD ENDING 12/31/05 | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Fixed Asset Class* | | | | |
| US Govt Securities (3/24/87)* | 0.19% | 3.34% | 3.90% | 4.98% |
| *U.S. Equity Asset Class* | | | | |
| Advisers (3/31/83)* | 5.80% | 0.26% | 6.52% | 8.80% |
| Htfd DispIndEquity (5/29/98) | 5.15% | -0.73% | —— | 3.24% |
| Index (5/1/87)* | 3.10% | -1.24% | 7.10% | 8.58% |

* The underlying fund was active before the 05/01/91 inception date of Masters Variable Annuity.

**EXHIBIT 1**
**55**

F044

# MASTERS
## VARIABLE ANNUITY
VARIABLE ANNUITY QUARTERLY STATEMENT
OCTOBER 1, 2005 - DECEMBER 31, 2005
PAGE 3 OF 3

OWNER Cleona Bailey Shortridge
CONTRACT NUMBER 360548733

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 12/31/05

| SUB-ACCOUNT | 1 YEAR | AVERAGE ANNUAL TOTAL RETURN 5 YEARS | 10 YEARS | SINCE INCEPTION |
|---|---|---|---|---|
| US Govt Securities | -6.81% | 2.81% | 3.90% | 5.52% |
| Advisers | -1.20% | -0.34% | 6.52% | 7.85% |
| Htfd DispIndEquity | -1.85% | -1.33% | —— | 3.24% |
| Index | -3.90% | -1.84% | 7.10% | 8.16% |

## PLEASE NOTE

This information is written in connection with the promotion or marketing of the matter(s) addressed in this material. The information cannot be used or relied upon for the purpose of avoiding IRS penalties. Neither The Hartford, nor its agents or employees, provide tax or legal advice. As with all matters of a tax or legal nature, you should consult your own tax or legal counsel for advice.

"The Hartford" is The Hartford Financial Services Group, Inc., and its subsidiaries, including the issuing companies of Hartford Life Insurance Company and Hartford Life and Annuity Insurance Company.

Continuous or periodic investment plans neither ensure a profit nor protect against a loss in declining markets. Because these programs involve continuous investing regardless of fluctuating price levels, you should carefully consider your financial ability to continue investing through periods of fluctuating market prices.

Investing in a variable annuity through a tax-advantaged retirement plan such as an IRA provides no additional tax advantage from the variable annuity and should only be considered if it makes sense because of the annuity's other features, such as lifetime income payments or death benefit protection.

Checks submitted to The Hartford may be converted to electronic debit entries. If this method of collecting your funds is used, the electronic debit for the original check amount may be posted to your bank account as early as the day after the check has been received by The Hartford.

If you choose to opt out of the process described above please send a written request to Hartford Life, PO BOX 5085, Hartford CT 06102-5085, requesting that your check not be converted to an electronic debit. The written request should also include your contract number and your current contact information.

This product issued by Union Security Insurance Company, Administered by Hartford Life Insurance Company.

EXHIBIT 1
56

# Fortis Benefits
# Insurance Company

### St. Paul, Minnesota
### A Stock Company

The Contract is the legal contract and is separate from this Certificate. This Certificate is merely a summary of the rights, duties, and benefits of that Contract. We will pay the Annuitant the first of a series of annuity payments on the Annuity Commencement Date. Subsequent payments will be paid on the same day of each month according to the provisions of the Contract. A copy of the Contract may be obtained by requesting it in writing from us at our Home Office. If there is any conflict, the Contract is the controlling document.

This Certificate is issued in consideration of the attached application and the payment of the Purchase Payment shown on the Certificate Data Page.

Signed for Fortis Benefits on the Certificate Issue Date.

### RIGHT TO RETURN CERTIFICATE

Please read this Certificate carefully. If you do not want it, you may return it to us at our Home Office or your agent within 10 days after you receive it and ask us to cancel it. As soon as you return it, we will consider it void from the start and refund any Purchase Payment.

President & CEO                          Secretary

### Certificate For
### Flexible Premium Deferred Combination Variable and Fixed Annuity
### Non-participating. No Dividends.

ALL PAYMENTS AND VALUES PROVIDED BY THE CONTRACT, WHEN BASED ON THE INVESTMENT EXPERIENCE OF THE VARIABLE ACCOUNT ARE VARIABLE, MAY INCREASE OR DECREASE AND ARE NOT GUARANTEED AS TO AMOUNT. THE VARIABLE PROVISIONS OF THIS CERTIFICATE ARE FOUND ON PAGES 9 AND 10.

PAYMENTS AND VALUES BASED ON THE FIXED ACCOUNT ARE SUBJECT TO A MARKET VALUE ADJUSTMENT FORMULA, WHICH MAY RESULT IN UPWARD AND DOWNWARD ADJUSTMENTS IN AMOUNTS PAYABLE, INCLUDING SURRENDERS, TRANSFERS, AMOUNTS APPLIED TO PURCHASE AN ANNUITY, AND DISTRIBUTIONS RESULTING FROM THE DEATH OF THE PARTICIPANT OR ANNUITANT. PAYMENTS MADE FROM FIXED ACCOUNT VALUES WHICH ARE WITHIN 15 DAYS BEFORE OR AFTER THE END OF A GUARANTEED PERIOD ARE NOT SUBJECT TO THE MARKET VALUE ADJUSTMENT.

56008 (Rev. 1-92)                                                        MVA-91

EXHIBIT 1
57

F046

## READ YOUR CERTIFICATE CAREFULLY

## TABLE OF CONTENTS

| | Page # | | Page # |
|---|---|---|---|
| Annuitant | 2 | Market Value Adjustment | 8, 9 |
| Beneficiary | 5 | Ownership | 6, 7 |
| Death Benefit | 12 | Purchase Payments | 6 |
| Definitions | 2, 3, 4 | Surrenders | 10, 11 |
| Fixed Account | 7, 8, 9 | Termination | 6 |
| Fixed Annuity Payments | 13 | Transfers | 10 |
| General Provisions | 5, 6 | Variable Account | 9, 10 |
| Guarantees | 8 | Variable Annuity Payments | 13, 14 |

Any Certificate amendments or endorsements follow the Certificate Data Page. Additional benefits added by rider follow the Optional Annuity Forms Tables. The application is the last page of the Certificate.

EXHIBIT 1
58

F047



## NOTICE CONCERNING COVERAGE
## LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND
## HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESS SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

The Missouri Life and Health Insurance Guaranty Association
520 Dix Road, Suite D
Jefferson City, MO  65109

Missouri Department of Insurance
P.O. Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

Generally, persons will be covered if they live in this state, and hold a life or health insurance contract or annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when –

(1)   The person is eligible for protection under the laws of another state.

(2)   The person purchased the insurance from a company that was not authorized to do business in this state.

(3)   The policy issued by an organization which is not a member insurer of the association; or

(4)   The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustee).

58117(7/96)                                                                                                 MO

**EXHIBIT 1**
59

F048

The Act also limits the amoun... .a Association is obligated to pay persons ... various policies. The Association does not pay more than the amount of the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

EXHIBIT 1

60

F049

Within 20 days from the date this Contract is received by the Owner it may be surrendered by delivery or mailing to the Company's Home Office or to the agent through whom it was purchased. Upon such surrender, this Contract shall be deemed void from the Date of Issue, and the Company will refund any purchase payment made.

54092 (6/92)

**EXHIBIT 1**
**61**

F050

**Fortis Benefits Insurance Company**
P.O. Box 64272
St. Paul, MN 55164

**ENDORSEMENT**

The Certificate to which this Endorsement is attached is changed as follows:

(1)  The DEFINITIONS section is amended to add the following:

Annuitant – If more than one person is so named, all provisions of the Certificate which are based on the death of the "Annuitant" will be based on the date of death of the last survivor of the persons so named. By example, the death benefit will become due only upon the death, prior to the annuity commencement date, of the last survivor of the persons so named. Collectively, these persons are referred to in the Certificate as "Annuitant" or "Annuitants". The Participant is not permitted to name more than one Annuitant under a Qualified Certificate.

Beneficiary – The person entitled to receive benefits as per the terms of the Certificate in case of the death of the Annuitant or the Participant or the Joint Participant, as applicable.

Designated Beneficiary – The person designated as the beneficiary by the Participant.

(2)  The provision entitled Designation and Change of Beneficiary under the GENERAL PROVISIONS section is deleted and the following is substituted in its place:

**Beneficiary**

Subject to the rights of an irrevocably designated beneficiary, you may change or revoke the designation of a beneficiary at any time while a Participant and the Annuitant are living. You must send Us a Written beneficiary designation or revocation. The change or revocation will not be binding upon Us until it is received by Us at Our Home Office. When it is so received, the change or revocation will be effective as of the date on which the beneficiary designation or revocation was signed; but the change or revocation will be without prejudice to The Company on account of any payment made or any action taken by The Company prior to receiving the change or revocation.

In the event of the death of a Participant or the Annuitant prior to the Annuity Commencement Date, the Beneficiary will be as follows: The Beneficiary shall be the surviving Participant, if any, notwithstanding that the Designated Beneficiary may be different.  Otherwise, the Beneficiary will be the Designated Beneficiary.  If there is no such Designated Beneficiary in effect or if such Designated Beneficiary is no longer living, the estate of the last surviving Participant will be the Beneficiary.

(3)  The provision entitled Death Benefit Before the Annuity Commencement Date under the DEATH BENEFIT section is deleted in its entirety and the following is substituted in its place:

**Death Benefit Before the Annuity Commencement Date**

If You or the Annuitant die prior to the annuity commencement date, We will pay the death benefit to the Beneficiary. The amount of the death benefit is the greatest of:

(a)  The sum of Net Purchase Payments made less any prior surrenders and previously imposed surrender charges and prior negative Market Value Adjustments;

(b)  Contract Value as of the date We receive proof of the Annuitant's or Your death and a Written Request from the Beneficiary for either a single sum payment or payment under an annuity form; or

(c)   Contract Value as of the most recent Seven Year Anniversary prior to the earlier of (a) the date of death of You or the Annuitant, or (b) the date either first reaches his or her 75th birthday. This amount is reduced by any subsequent surrenders and surrender charges and any negative Market Value Adjustments in connection therewith.

The Death benefit will not be less than the amount payable on a full surrender at the date used to value the death benefit. The death benefit will be paid when we receive:

(a)   Proof of the Annuitant's or Your death; and

(b)   A Written Request from the Beneficiary for either a single sum or payment under an annuity form. We will pay a single sum to the Beneficiary unless an annuity option is chosen.

(4)   The PAYMENT OF BENEFITS section is amended by adding the following provision at the beginning:

**General**

On the annuity commencement date, the Contract Value, adjusted by the Market Value Adjustment, will be applied, as specified by the Participant, to provide payments to the other settlement options as may be agreed to by the Company. If more than one person is named as Annuitant due to the designation of multiple Annuitants, the Participant may elect to name one of such persons to be the sole Annuitant as of the annuity commencement date.

Signed for the Company at St. Paul, Minnesota, to take effect on the contract date.

President & CEO                    Secretary

**EXHIBIT 1**

**63**

F052

**FORTIS BENEFITS INSURANCE COMPANY**
P.O. Box 64272
St. Paul, MN 55164

### ENDORSEMENT

The attached Certificate or Contract is changed as follows:

The first paragraph under the provision entitled Market Value Adjustment under the FIXED ACCOUNT section of the Certificate or Contract is amended to read as follows:

Any withdrawal from the Fixed Account, other than the following, will be subject to a Market Value Adjustment ("MVA"):  (1) a withdrawal effective within 15 days of the expiration date of the Guarantee Period; or (2) an Earnings Sweep (as hereafter defined).  An Earnings Sweep means an arrangement with Us whereby an amount is withdrawn from the Fixed Account or transferred to the Variable Account on an automatic periodic basis.  The amount may not exceed the interest accrued in the Fixed Account since the latter of the following: (1) Your election of an Earnings Sweep; or (2) the last withdrawal or transfer pursuant to an Earnings Sweep then in effect.  We may establish, from time to time, minimums for the amount of each withdrawal or transfer under the Earnings Sweep program.  We may also, from time to time, establish limitations on the frequency of such periodic withdrawals or transfers and the number of Guarantee Periods which may be subject to such an arrangement.  However, once any such Earnings Sweep has been begun by You, We will not change any such limitation that would affect You without giving You 30 days advance written notice.

President & CEO                                Secretary

56704                                                                                       MVA

**EXHIBIT 1**
**64**

F053

## INDIVIDUAL RETIREMENT ANNUITY ENDORSEMENT

This Endorsement is made a part of the attached contract.

As annuitant, you are the owner of the contract. The contract is established for the exclusive benefit of you and your beneficiaries.

The contract is endorsed to qualify as an Individual Retirement Annuity (IRA) under the Employee Retirement Income Security Act of 1974 and any of its amendments. The following provisions supersede any contrary provisions of the contract.

**Assignment and Ownership Rights**
This contract is nontransferable and may not be assigned, sold transferred, discounted, or pledged as collateral or as security, except as may be provided in the Internal Revenue Code of 1986, as amended.

**Purchase Payments**
Except in the case of a rollover described in Section 402(c), 403(a)(4), 403(b)(8) or 408(d)(3) of the Code, or except as permitted under certain simplified employee pension plans or as otherwise provided by law, purchase payments may not exceed $2,000 for any taxable year. All purchase payments shall be paid in cash.

Any refund of purchase payments (other than those withdrawn by you as excess contributions) will be applied before the close of the calendar year following the year of the refund toward the payment of future purchase payments or the purchase of additional benefits under this contract.

**Surrenders**
You may be subject to tax penalties under the United States Internal Revenue Code and under other laws if you request a partial or complete surrender before you reach age 59½. You may not be subject to the tax penalties if: (1) you become disabled as defined by said Code; or (2) the entire interest in this contract is received and invested in a similar plan which is entitled to similar tax treatment under the Code.

**Annuity Commencement Date - Your Minimum Distribution**
The distribution of your contract value shall be made in accordance with the minimum distribution requirements of section 408(b)(3) of the Code and the regulations thereunder, including the incidental death benefit provisions of section 1.401(a)(9)-2

of the proposed regulations, all of which are herein incorporated by reference.

Your entire interest in the contract must be distributed, or begin to be distributed, by your required beginning date, which is April 1 following the calendar year in which you reach age 70½. Another distribution must be made on or before each succeeding December 31. By the required beginning date you may elect to have the balance in the contract distributed in one of the following forms:

(1)    A single sum payment;

(2)    equal or substantially equal payments over your life;

(3)    equal or substantially equal payments over your life and the life of your designated beneficiary;

(4)    equal or substantially equal payments over a specified period that may not be longer than your life expectancy;

(5)    equal or substantially equal payments over a specified period that may not be longer than the joint life and last survivor expectancy of you and your designated beneficiary.

Payments cease when the contract value is exhausted unless an annuity form of payment is elected or applies by operation of the contract. If an annuity form of payment is the method of distribution, payments continue during the term and in the amount specified for that form of payment.

The phrase "equal or substantially equal payments" is subject to IRS rules and exceptions. In particular, payments to your beneficiary after your death may be less than payments during your lifetime, especially if an annuity form of payment is the method of distribution. The equal or substantially equal payment language limits the provisions of this contract only to the extent needed to satisfy applicable IRS requirements.

A life with guaranteed period of years annuity form of payment may be paid to the extent otherwise permitted by the contract. However, the guaranteed period of years may not exceed the applicable life expectancy or other applicable IRS limitations.

56315

EXHIBIT 1
65

F054

Increases in payments under an annuity form of payment may occur only if permitted both by the contract and by Q & A F-3 of Section 1.401(a)(9)-1 of the Proposed Income Tax Regulations.

### Death Benefit - Minimum Distribution

If you die before your entire interest is distributed, the entire remaining interest will be distributed as follows:

(1)  If you die on or after the earlier of your required beginning date for minimum distributions or the date you commence an annuity form of payment, the entire remaining interest must be distributed at least as rapidly as provided under your minimum distribution plan or annuity form of payment.

(2)  If you die before the earlier of your required beginning date for minimum distributions or the date you commence an annuity form of payment, the entire remaining interest must be distributed as elected by you, or if you have not so elected, as elected by your designated beneficiary as follows: Option 1 – by December 31st of the year containing the fifth anniversary of your death; or Option 2 – in equal or substantially equal payments over the life or life expectancy of your designated beneficiary starting by December 31st of the year following the year of your death. If, however, the designated beneficiary is your surviving spouse, then this distribution is not required to begin before December 31st of the year in which you would have turned 70½.

If no election is made, the automatic option shall be Option 1 above for a beneficiary who was not your spouse on the date of your death and Option 2 above for a beneficiary who was your spouse on the date of your death. Option 2 is not an annuity form of payment unless such a form of payment is specifically elected. Unless the annuity form of payment is elected, payments cease when the account is exhausted. If an annuity form of payment is elected, payments continue during the term and in the amount specified for that form of payment.

If there is more than one beneficiary or there is a nonperson beneficiary, the proposed income tax regulations regarding such beneficiary, to the extent effective, limit the payment options available to beneficiaries hereunder.

### Life Expectancy for Minimum Distribution

For an annuity form of payment, life expectancy shall be calculated at the time the payments begin and shall not be recalculated except as agreed on by you and the Company subject to IRS rules.

For any other method of minimum distribution, the following rules apply: Unless otherwise elected prior to the date minimum distribution must commence, your life expectancy and/or the life expectancy of your spouse beneficiary shall be recalculated annually for purposes of any minimum distribution. An election not to recalculate shall be irrevocable and shall apply to all subsequent years. The life expectancy of a non-spouse beneficiary shall not be recalculated.

To the extent required by the United States Internal Revenue Code, life expectancy is computed by use of the expected return multiples in Tables V and VI of Section 1.72-9 of the Income Tax Regulations.

### Multiple IRA's - Minimum Distribution

You may satisfy the minimum distribution requirements under section 408(a)(6) and 408(b)(3) of the Code by receiving a distribution from an IRA that is equal to the amount required to satisfy the minimum distribution requirements for two or more IRAs. For this purpose, the owner of two or more IRAs may use the 'alternating method' described in Notice 88-38, 1988-1 C.B 524, to satisfy the minimum distribution requirements described above.

### Reports

We will send you such information annually as may be required under the United States Internal Revenue Code and regulations and public revenue rulings thereunder.

### Rights Reserved by Us

You agree to authorize us to amend the contract so it conforms to changes in the Internal Revenue Code, regulations, and public revenue rulings governing an IRA. We will send you a copy of any required amendment.

### Nonforfeiture

Your entire interest in the contract is nonforfeitable. You do, however, remain subject to all contract charges, including surrender charges if applicable.

2

**EXHIBIT 1**
66

**Responsibility**

You are responsible for compliance with the Internal Revenue Code requirements relating to an IRA. We are not liable for any tax or tax penalties on amounts paid out or applied to this contract.

Valid contributions under any IRA are based on compensation including wages, salaries, and professional fees. Certain other forms of compensation may not be used. Rollovers or direct transfers from other IRAs and from certain other retirement plans also may be possible. Contact your own tax adviser to determine if your program is valid.

This Endorsement supersedes the previous IRA endorsement and the 72(s) endorsement to the contract. It is effective as of May 18, 1993 or the contract date if later.

President & CEO

Secretary

3.

EXHIBIT 1

67

F056

## CERTIFICATE DATA PAGE

| | |
|---|---|
| ANNUITANT: | CLEONA BAILEY SHORTRIDGE |
| PARTICIPANT: | CLEONA BAILEY SHORTRIDGE |
| OWNER: | FORTIS FINANCIAL GROUP INS TRUST |
| CERTIFICATE NUMBER | 360548733 |
| BENEFICIARY AT ISSUE: | REFER TO CONTINUATION PAGE |
| CERTIFICATE ISSUE DATE: | 5/5/1994 |
| ANNUITY COMMENCEMENT DATE: | 4/19/2011 |

THE MAXIMUM ASSET CHARGE FACTOR is 1.35% annually, (or 0.0036986% daily) (for the Variable Account Only)

| | CURRENT | MAXIMUM |
|---|---|---|
| TRANSFER CHARGE | $0.00 | $25.00 |
| INITIAL PURCHASE PAYMENT: | $22,400.74 | |

Initial Allocation of Net Purchase Payments

| INVESTMENT CHOICE | PERCENTAGE | INITIAL NET PURCHASE PAYMENT DOLLAR AMOUNT |
|---|---|---|
| Index Fund | 30% | $6,720.22 |
| Advisers Fund | 30% | $6,720.22 |
| Growth & Income Fund | 30% | $6,720.22 |
| US Government Securities Fund | 10% | $2,240.07 |

**EXHIBIT 1**
68

## RIDER DATA PAGE

Contract or Certificate Number:     360548733

Enhanced Death Benefit Rider
Effective Date:     5/5/1994

Current Asset Charge Factor:
(For the Variable Account Only)     0.00% Policy or Certificate Value Annually
Maximum Asset Charge Factor:
(For the Variable Account Only)     0.00% Policy or Certificate Value Annually

42311

EXHIBIT 1
69

F058

# DEFINITIONS

**We, Us, Our, The Company**

Fortis Benefits Insurance Company.

**You, Your, The Participant**

The person named in this Certificate who is entitled to exercise all rights and privileges of ownership under this Certificate except as reserved by the Owner.

**Accumulation Unit**

A unit of measurement used to calculate the value of your interest in the Variable Account before the annuity commencement date.

**Annuitant**

The person or persons named in the Application and on whose life the first annuity payment is to be made.

**Annuity Unit**

A unit of measurement to calculate variable annuity payments.

**Certificate Issue Date**

The date on which this Certificate becomes effective as shown on the Certificate Data Page.

**Certificate Value**

The total of the fixed account value and the variable account value.

**Certificate Year**

A period of 12 consecutive months beginning on the Certificate Issue Date or any anniversary thereafter.

**Contract Application**

The document signed by the Owner that evidences the Owner's application for the Contract.

**Date of Deposit**

The date We receive any Purchase Payment at our Home Office.

**Fixed Annuity Option**

An annuity option with payments which do not vary as to dollar amount.

**Guarantee Period**

The period for which a Guaranteed Interest Rate is credited.

**Guaranteed Interest Rate**

The rate of interest We credit on an effective annual basis during any Guarantee Period.

56023

2

EXHIBIT 1
70

F059

## Home Office

Our office at 500 Bielenberg Drive, Woodbury, Minnesota 55125; 1-800-800-2638, extension 3057; Mailing Address: P.O. Box 64272, St. Paul, Minnesota 55164.

## Market Value Adjustment

Positive or negative adjustment in the fixed account value that We make if such value is paid out more than 15 days before or after the end of a Guarantee Period in which it was being held.

## Net Asset Value Per Share

The net assets of the Series Fund portfolio divided by the number of shares in the Series Fund portfolio.

## Net Purchase Payment

The gross amount of the Purchase Payment less any applicable premium taxes.

## Non-Qualified Certificates

Certificates that do not qualify for the special federal income tax treatment applicable in connection with retirement plans.

## Owner

The person, persons or entity entitled to the ownership rights stated in the Contract and in whose name or names the Contract is issued. The Owner may designate a trustee or custodian of a retirement plan which meets the requirements of Section 401, Section 408(c), Section 408(k), or Section 457 of the Internal Revenue Code to serve as legal owner of assets of a retirement plan, but the term "Owner" as used herein, shall refer to the organization entering into the Contract.

## Participant Application, "Application"

The document You signed for participation under the Contract. A copy of Your Application is attached to this Certificate.

## Participant's Account

Your account to which each Purchase Payment is credited.

## Purchase Payment

An amount paid to the Company under this Certificate as consideration for the benefits described herein.

## Qualified Certificates

Certificates that are qualified for the special federal income tax treatment applicable in connection with certain retirement plans.

## Series Fund

The Fortis Series Funds, Inc., a "series fund" type management investment company under the Investment Company Act of 1940.

3

EXHIBIT 1
71

F060

**Seven Year Anniversary**

The seventh anniversary of a Certificate Issue Date and each subsequent seventh anniversary of that date.

**Subaccount**

The Subaccounts of the Variable Account to which Certificate Value may be allocated. Each Subaccount invests all of its assets in a portfolio of the Series Fund having the same investment policies and objectives as that Subaccount.

**Valuation Date**

All business days except, with respect to any Subaccount, days on which the related portfolio does not value its shares.

**Valuation Period**

The period that starts at the close of the New York Stock Exchange on a Valuation Date and ends at the close of the Exchange on the next succeeding Valuation Date.

**Variable Account**

A segregated investment account entitled "Variable Account D", established by us pursuant to applicable law. That portion of the assets of the Variable Account equal to the reserves and other Contract liabilities with respect to the Variable Account shall not be chargeable with liabilities arising out of any other business We may conduct. Income, gains and losses, whether or not realized, from assets allocated to the Variable Account, are credited to or charged against such account without regard to our other income, gains or losses.

**Variable Annuity Option**

An annuity option under which We promise to pay the annuitant or other properly designated payee one or more payments which vary in amount in accordance with the net investment experience of the applicable Subaccounts selected to measure the value of the Contract.

**Written, In Writing**

A written request or notice in acceptable form and content, which is signed, dated, and received at our Home Office.

56024                                           4

EXHIBIT 1
72

F061

## GENERAL PROVISIONS

### The Certificate

This Certificate is issued in consideration of the Application and payment of the initial Purchase Payment. All statements made in the Application will be deemed representations and not warranties, and no statement will void the Certificate or be used in defense to a claim unless it is contained in the Application and a copy is attached to the Certificate at issue. Only an Officer of The Company can agree to change or waive any provisions of this Certificate.

### Incontestability

The Contract and this Certificate are incontestable.

### Misstatement of Age or Sex

If any date of birth or sex, or both, has been misstated in the Application, or elsewhere, the amounts payable under this Certificate will be the amounts which would have been provided using the correct age or sex, or both. Any deficiency in the payments already made by Us will be paid immediately and any excess in the payments already made by Us will be charged against the benefits falling due after adjustment. The amount of any adjustment will be credited or charged interest at the effective annual rate of 4% per year.

### Guarantees

Subject to the Net Investment Factor provision, We guarantee that the dollar amount of Variable Annuity payments made during the lifetime of the payee(s) will not be adversely affected by Our actual mortality experience or by the actual expenses incurred by Us in excess of the expense deductions provided for in the Contract.

### Settlement

All benefits under this Certificate are payable from Our Home Office.

### Non-Participating

This Certificate is non-participating and does not share in Our surplus earnings.

### Designation and Change of Beneficiary

Death benefits will be paid to the beneficiary as named in the Application unless later changed.

Subject to the rights of an irrevocably designated beneficiary, You may change or revoke the designation of a Beneficiary at any time while the Annuitant is living. You must send Us a Written beneficiary designation or revocation. The change or revocation will not be binding upon Us until it is received by Us at Our Home Office. When it is so received, the change or revocation will be effective as of the date on which the beneficiary designation or revocation was signed, but the change or revocation will be without prejudice to The Company on account of any payment made or any action taken by The Company prior to receiving the change or revocation.

### Change of Investment Advisor or Investment Policy

Unless otherwise required by law or regulation, the investment advisor or any investment policy may not be changed without Our consent. Any investment policy will not be changed unless a statement of the change is filed with and approved by the Commerce Commissioner of the State of Minnesota. If required, approval of or change of any investment objective will be filed with the Insurance Department of the state where this certificate is delivered. You will be notified of any material investment policy change which has been approved. Notification of an investment policy change will be given in advance if You have the right to comment on or vote on such change.

Any substitution of the underlying investments of any Subaccount will comply with all applicable requirements of the Investment Company Act of 1940 and rules thereunder.

5

EXHIBIT 1
73

F062

**Rights Reserved By Us**

Upon notice to You and the Owner of the Contract and this Certificate may be modified by Us, but only if such modification is necessary to:

(1) Operate the Variable Account in any form permitted under the Investment Company Act of 1940 or in any other form permitted by law.

(2) Transfer any assets in any Subaccount to another Subaccount, or to one or more separate accounts, or to the fixed account.

(3) Add, combine or remove Subaccounts in the Variable Account.

(4) Substitute for the shares held in any Subaccount, the shares of another portfolio of the Series Fund or the shares of another investment company or any other investment permitted by law.

(5) Make any changes as required by the Internal Revenue Code or by any other applicable law in order to continue treatment of the Contract as an annuity.

When required by law, we will obtain Your approval of changes and We will gain approval from any appropriate regulatory authority.

**Termination**

This Certificate remains in force until surrendered for its full value, or all annuity payments have been made, or the death benefit has been paid.

If the Certificate Value is less than $1,000, We may cancel this Certificate on any Valuation Date. We will notify You at least 90 days in advance of Our intention to cancel this Certificate. Such cancellation would be considered a full surrender of this Certificate.

## PURCHASE PAYMENTS

**Payments**

The initial Purchase Payment is shown on the Certificate Date Page. The initial Purchase Payment must be at least $5,000 ($2,000 for Qualified Contracts). Additional Purchase Payments must be at least $1,000. We reserve the right to refuse a Purchase Payment for any reason.

**Allocation of Purchase Payments**

The initial allocation for all Net Purchase Payments is shown on the Certificate Data Page and will remain in effect until changed by Written notice. The percentage allocation for future Net Purchase Payments may be changed at any time by Written notice. Changes in the allocation will be effective on the date We receive Your notice. The allocation may be 100% to any available Subaccount or Guarantee Period, or may be divided among the accounts in whole percentage points totaling 100%.

**Premium Taxes**

Premium taxes, if any, levied by any unit of government will be deducted as required by state law.

## OWNERSHIP PROVISIONS

**Exercise of Contract Rights**

The Contract belongs to the Owner. Unless any rights and privileges have been expressly reserved by the Owner, You will be entitled to exercise all rights and privileges in connection with this Certificate. In any case, such rights and privileges can be exercised without the consent of the Beneficiary (other than an irrevocably designated beneficiary) or any other person. Such rights and privileges may be exercised only during the lifetime of the Annuitant and prior to the Annuity Commencement Date, except as otherwise provided in this Certificate.

56025                                                6

EXHIBIT 1

74

F063


Unless You specify otherwise, the Annuitant becomes the Payee on the annuity commencement date. The Beneficiary becomes the Payee on the death of You or the Annuitant. Such Payees may thereafter exercise such rights and privileges, if any, of ownership which continue.

## Change of Ownership

Ownership of a Qualified Contract and any interest therein evidenced by this Certificate, may not be transferred except to: (1) the Annuitant; (2) a trustee or successor trustee of a pension or profit sharing trust which is qualified under Section 401 of the Internal Revenue Code; (3) the employer of the Annuitant provided that the Qualified Contract after transfer is maintained under the terms of a retirement plan qualified under Section 403(a) of the Internal Revenue Code for the benefit of the Annuitant; (4) the trustee of an individual retirement account plan qualified under Section 408 of the Internal Revenue Code; or (5) as otherwise permitted from time to time by laws and regulations governing the retirement or deferred compensation plans for which a Qualified Contract may be issued. In no other case may a Qualified Contract, and any interest therein evidenced by this Certificate be sold, assigned, transferred, discounted or pledged as collateral.

The Owner of a Non-Qualified Contract may change the ownership of the Contract. During the lifetime of the Annuitant and prior to the Annuity Commencement Date, You may change the ownership interest in the Non-Qualified Contract evidenced by Your Certificate.

A change of ownership will not be binding upon Us until We receive Written notification at Our Home Office. When such notification is so received, the change will be effective as of the date You signed the request for change, but the change will be without prejudice to Us on account of any payment made or any action taken by Us prior to receiving the change.

## Distribution of Proceeds At Death of Participant

If a Participant under a Non-Qualified Contract dies prior to the Annuitant and before the annuity commencement date, the death benefit must be distributed to the Beneficiary, if then alive, either (1) within five years after the date of death of the Participant, or (2) over some period not greater than the life or expected life of the Beneficiary, with annuity payments beginning within one year after the date of death of the participant. The person named Your Beneficiary in the Application shall be considered the designated beneficiary for the purposes of Section 72(s) of the Internal Revenue Code and if no person then living has been so named, then the Annuitant will automatically be the designated beneficiary for this purpose. In all cases, any such designated beneficiary will not be entitled to exercise any rights prohibited by applicable federal income tax law.

These mandatory distribution requirements will not apply when the designated beneficiary is the spouse of the deceased Participant, if the spouse elects to continue the Certificate in the spouse's own name, as Participant. When the deceased Participant was also the Annuitant, the surviving spouse (if the designated beneficiary) may elect to be named as both Participant and Annuitant and continue the Certificate.

If the payee dies after the annuity commencement date and before all of the payments under the Annuity Form have been distributed, the remaining amount payable, if any, must be distributed at least as rapidly as the method of distribution then in effect.

## Periodic Reports

Prior to the annuity commencement date, We will send You, at least once during each Certificate year, a statement showing the Certificate Value as of a date not more than two months previous to the date of mailing. We will also send such statements as may be required by applicable laws, rules and regulations.

### FIXED ACCOUNT

## Fixed Account

The Fixed Account is a non-unitized separate account that We use to account for amounts allocated to Guarantee Periods under the Contract. All amounts allocated to a Guarantee Period, whether Net Purchase Payments or transfers, become part of the Fixed Account.

7

**EXHIBIT 1**

75

F064

## Fixed Account Value

When We receive a Purchase Payment, all or that portion, if any, of the Net Purchase Payment which is allocated to the Fixed Account will be allocated to the Guarantee Period(s) You select. Your Fixed Account Value, if any, for any Valuation Period is equal to the sum of the values in each of the Guarantee Periods.

The value in any one Guarantee Period on a Valuation Date is the accumulated value of the Net Purchase Payment (or transfer) at the Guaranteed Interest Rate minus the accumulated value of surrenders and transfers out of that Guarantee Period at the Guaranteed Interest Rate.

## Guarantee Periods

You may select one or more Guarantee Period(s) from those We make available. The period(s) selected will determine the Guaranteed Interest Rate(s). The Net Purchase Payment or the portion thereof (or amount transferred in accordance with the Transfer Privilege Provision described below) allocated to a particular Guarantee Period will earn interest at the Guaranteed Interest Rate during the Guarantee Period. Guarantee Periods begin on the Date of Deposit or, in the case of a transfer, on the effective date of the transfer. The Guarantee Period is the number of years We credit the Guaranteed Interest Rate. The expiration date of any Guarantee Period is the last day of the Guarantee Period. Subsequent Guarantee Periods begin on the first day following the expiration date. As a result of Guarantee Period renewals, additional purchase payments and transfers of portions of the Certificate Value, Guarantee Periods of the same duration may have different expiration dates and Guaranteed Interest Rates.

We will notify You In Writing at least 45 and no more than 75 days prior to the expiration date for any Guarantee Period. A new Guarantee Period of the same duration as the previous Guarantee Period will begin automatically at the end of the previous Guarantee Period unless We receive Written notice to the contrary at least 3 business days prior to the end of such Guarantee Period. You may elect a different Guarantee Period or Subaccount from those We offer at such time.

## Guaranteed Interest Rates

We will periodically establish an applicable Guaranteed Interest Rate for each Guarantee Period We offer. These rates will be guaranteed for the duration of the respective Guarantee Periods.

No Guaranteed Interest Rate shall be less than an effective annual rate of 4% per year.

## Market Value Adjustment

Any withdrawal (which for purposes of this section includes transfers, surrenders, distributions on the death of You or the Annuitant, or amounts applied to purchase an annuity) from the Fixed Account, other than a withdrawal effective within 15 days of the Expiration Date of a Guarantee Period, will be subject to a Market Value Adjustment ("MVA").

The Market Value Adjustment may increase or decrease the amount of Fixed Account Value being withdrawn or transferred. The comparison of two Guaranteed Interest Rates determines whether the Market Value Adjustment produces an increase or a decrease. The first rate to compare is the Guaranteed Interest Rate for the amount being transferred or withdrawn. The second rate is the Guaranteed Interest Rate then being offered for new Guarantee Periods of the same duration as that remaining in the Guarantee Period from which the funds are being withdrawn or transferred. If the first rate exceeds the second by more than ½%, the Market Value Adjustment produces an increase. If the first rate does not exceed the second by at least ½%, the Market Value Adjustment produces a decrease.

**EXHIBIT 1**
**76**

F065

The MVA will be determined by multiplying the amount being withdrawn, from the Guarantee Period (before deduction of any applicable surrender charge) by the following factor:

$$\left(\frac{1+I}{1+J+.005}\right)^{N/12} -1$$

where:

- I is the Guaranteed Interest Rate being credited to the amount being withdrawn from the existing Guarantee Period,

- J is the Guaranteed Interest Rate then being offered for new Guarantee Periods with durations equal to the number of years remaining in the existing Guarantee Period (rounded up to the next higher number of years), and

- N is the number of months remaining in the current Guarantee Period (rounded up to the next higher number of months).

## VARIABLE ACCOUNT

### Subaccounts

The Variable Account has several Subaccounts, each investing in one of the corresponding portfolios of the Series Fund. Net Purchase Payments are initially allocated to the Subaccounts and the Fixed Account as shown on the Certificate Date Page.

We will use the Net Purchase Payments and any transferred amounts to purchase portfolio shares applicable to the Subaccounts at their net asset value. We will be the owner of all portfolio shares purchased with the Net Purchase Payment or transferred amount.

### Subaccount Accumulation Units

Net Purchase Payments received under this Certificate and transferred amounts allocated to the Variable Account will be credited in the form of Subaccount Accumulation Units. The number of Subaccount Accumulation Units is found by dividing the amount of the Net Purchase Payment or transferred amount allocated to the Subaccount by the Subaccount Accumulation Unit value at the end of the Valuation Period in which the Purchase Payment or transfer request was received at the Home Office. The value of each Subaccount Accumulation Unit with respect to the Contracts was arbitrarily set as of the date the Subaccount first purchased the portfolio shares with respect to the Contracts. Subsequent values on any Valuation Date are equal to the previous Subaccount Accumulation Unit value times the Net Investment Factor for the Valuation Period ending on that Valuation Date.

### Net Investment Factor

The Net Investment Factor is an index applied to measure the investment performance of a Subaccount from one Valuation Period to the next. The Net Investment Factor may be greater or less than or equal to one; therefore, the value of an Accumulation Unit may increase, decrease or remain the same.

The Net Investment Factor for a Subaccount is determined by dividing (1) by (2), and then subtracting (3) from the result, where:

(1) is the net result of:

    (a) the Net Asset Value Per Share of the portfolio shares held in the Subaccount, determined at the end of the current Valuation Period,

    (b) plus the per share amount of any dividend or capital gain distributions made on the portfolio shares held in the Subaccount during the current Valuation Period,

9

EXHIBIT 1
77

F066

(c)   minus a per share charge for the increase plus a per share credit for the decrease, in any income taxes reserved for which we determine to have resulted from the investment operations of the subaccount or any other taxes which are applicable to the Certificate.

(2) · is the Net Asset Value Per Share of the portfolio shares held in the Subaccount, determined at the beginning of the current Valuation Period, and

(3)   is a factor representing the mortality risk, expense risk, and administrative expense charge. We will determine the daily asset charge factor annually, but in no event may it exceed the Maximum Asset Charge Factor as specified on the Certificate Data Page.

## Variable Account Value

Your Variable Account value for any Valuation Period is the total of Your values in each Subaccount. Your value for each Subaccount is equal to:

(1)   Your number of Subaccount Accumulation Units,

(2)   times the Subaccount Accumulation Unit value for the Valuation Period.

Your Variable Account value will vary from Valuation Date to Valuation Date reflecting Your total value in the Subaccounts.

## TRANSFERS

### Transfers

We will make transfers at the end of the Valuation Period in which We receive Your request for the transfer subject to the following restrictions. In addition, the portfolios of the Series Fund may impose charges. The current and maximum transfer charges are shown on the Certificate Data Page. We reserve the right to restrict the frequency of or otherwise condition or terminate transfers.

Before the annuity commencement date, You may transfer part or all of Your Certificate Value subject to the following:

(1)   All transfers from the Fixed Account will be subject to a Market Value Adjustment.

(2)   Each transfer must be at least $1,000 or the total value of any account, if less.

After the annuity commencement date, You may make up to 4 transfers per year. You may not make transfers from the Fixed Account.

## SURRENDERS

### General Surrender Provisions

The amount surrendered will normally be paid to You within 7 days of:

(1) · Our receipt of Your Written request; and

(2)   Our receipt of this Certificate, if required.

We reserve the right to defer payment of surrenders from the fixed account for up to 6 months from the date We receive Your request.

**EXHIBIT 1**
**78**

F067

## Full Surrender

At any time prior to the annuity commencement date and during the lifetime of the Annuitant, You may surrender this Certificate by sending Us a Written request. The amount payable on surrender is:

(1)   the Certificate Value at the end of the Valuation Period in which We receive Your request,

(2)   minus any applicable surrender charge,

(3)   plus or minus any applicable Market Value Adjustment.

The amount payable upon surrender will not be less than the amount required by state law.

Upon payment of the above surrender amount, this Certificate is terminated and We have no further obligation under this Certificate.

All collateral assignees must consent to any surrender. We may require that this Certificate be returned to Our Home Office prior to making payment.

## Partial Surrender

At any time prior to the annuity commencement date and during the lifetime of the Annuitant, You may surrender a portion of the fixed account value and/or the Variable Account value. You must send Us a Written request specifying the accounts from which the surrender is to be made. Surrenders will be made effective at the end of the Valuation Period in which We receive Your Written request.

You must surrender an amount equal to at least $1,000. If the Certificate Value remaining would be less than $1,000, We may treat the request as a full surrender.

We will surrender Subaccount Accumulation Units from the Variable Account, and/or dollar amounts from the fixed account, so that the total amount surrendered equals the sum of the following:

(1)   the amount payable to You,

(2)   plus any surrender charges,

(3)   plus or minus any applicable Market Value Adjustment.

## Surrender Charge

A surrender charge is imposed on the withdrawal of any Purchase Payment that is less than seven years old. The amount of the surrender charge is determined separately for each Purchase Payment and is expressed as a percentage of the Purchase Payment as follows:

| Number of Years Since Purchase Payment was Credited | Surrender Charge as a Percentage of Purchase Payment |
|---|---|
| Less than 1 | 7% |
| At least 1 but less than 2 | 6% |
| At least 2 but less than 3 | 5% |
| At least 3 but less than 4 | 4% |
| At least 4 but less than 5 | 3% |
| At least 5 but less than 6 | 2% |
| At least 6 but less than 7 | 1% |
| 7 or more | 0% |

These percentages apply to any full or partial surrender of Purchase Payments that are not eligible for a free surrender.

11

**EXHIBIT 1**
79

F068

**Free Surrender**

You may withdraw the following amounts without a surrender charge:

(1) Any earnings on the Certificate Value not previously surrendered, as of the Valuation Date on which We receive Your request.

(2) Purchase Payments that are more than 7 years old and not previously surrendered.

(3) Each Certificate Year, 10% of Purchase Payments that are less than 7 years old.

**Surrender Charges at Death or Annuitization**

No surrender charge is imposed upon amounts applied to purchase an annuity, or a death benefit if the Annuitant or Participant dies before age 75. If You or the Annuitant die on or after age 75 and prior to the annuity commencement date, the surrender charge will be deducted before distributing the remaining proceeds to the beneficiary.

## DEATH BENEFIT

**Death Benefit Before the Annuity Commencement Date**

If You or the Annuitant die prior to the annuity commencement date, We will pay the death benefit to the beneficiary.

If You or the Annuitant die before age 75, the amount of the death benefit is the greatest of:

(1) The sum of Net Purchase Payments made less any prior surrenders;

(2) Certificate Value adjusted by the Market Value Adjustment as of the date We receive proof of the Annuitant's or Your death and a Written Request from the beneficiary for either a single sum payment or payment under an annuity form; or

(3) Certificate Value adjusted by the Market Value Adjustment, as of the most recent Seven Year Anniversary prior to the date We receive proof of the Annuitant's or Your death. This amount is reduced by any subsequent surrenders after such anniversary.

If You or the Annuitant die on or after age 75, the amount of the death benefit is the greatest of:

(1) Purchase Payments paid less any prior surrenders and less any applicable surrender charge;

(2) Certificate Value adjusted by the Market Value Adjustment and less any applicable surrender charge as of the date We receive proof of the Annuitant's or Your death and a Written Request from the beneficiary for either a single sum payment or payment under an annuity form; or

(3) Certificate Value adjusted by the Market Value Adjustment as of the most recent Seven Year Anniversary prior to the date You or the Annuitant first reached 75. This amount is reduced by any subsequent surrenders and any applicable surrender charge.

The death benefit will not be less than the amount payable on a full surrender at the date used to value the death benefit. The death benefit will be paid when we receive:

(1) Proof of the Annuitant's or Your death; and

(2) A Written Request from the beneficiary for either a single sum or payment under an annuity form.

We will pay a single sum to the beneficiary unless an annuity option is chosen.

56028                                           12

**EXHIBIT 1**
80

F069

### Death Benefit on or After the Annuity Commencement Date

If the Annuitant dies on or after the annuity commencement date, the beneficiary will receive the death benefit, if any, as provided by the annuity form in effect.

### Proof of Death

We accept any of the following as proof of the Annuitant's or Participant's death:

(1) A copy of a certified death certificate.

(2) A copy of a certified decree of a court of competent jurisdiction as to the finding of death.

(3) A Written statement by a medical doctor who attended the deceased at the time of death.

(4) Any other proof satisfactory to Us.

## PAYMENT OF BENEFITS

### Application of Certificate Value

Unless directed otherwise, We will apply the fixed account value to provide a Fixed Annuity, and the Variable Account value to provide a Variable Annuity. You must tell Us In Writing at least 30 days prior to the annuity commencement date if You want Us to apply Fixed and Variable Account Values in different proportions.

### Annuity Commencement Date

The annuity commencement date is selected by You and stated in the Application. The date must be before the Annuitant's 75th birthday unless We agree to it. You may change the annuity commencement date at any time if We receive Written notice at least 30 days before both the current annuity commencement date and the new annuity commencement date.

If the annuity commencement date does not occur on a Valuation Date that is at least 2 years after the Certificate Issue Date, We reserve the right to change the annuity commencement date to the first Valuation Date that is at least 2 years after the Certificate Issue Date.

### Frequency and Amount of Payments

Annuity payments will be made monthly unless We agree to a different payment schedule. We reserve the right to change the frequency of either a Fixed Annuity payment or a Variable Annuity payment so that each payment will be at least $50 ($20 in Texas).

### Fixed Annuity Payments

Fixed Annuity payments start on the end of the Valuation Period that contains the annuity commencement date. The amount of the first monthly payment for the annuity form selected will be at least as favorable as that produced by the annuity tables of this Certificate for each $1,000 of Certificate Value applied as of the end of such Valuation Period.

The dollar amount of any payments after the first payment are specified during the entire period of annuity payments, according to the provisions of the annuity form selected.

## VARIABLE ANNUITY PAYMENTS

### Annuity Units

We convert the Subaccount Accumulation Units into Subaccount Annuity Units at the values determined at the end of the Valuation Period which contains the annuity commencement date. The number of Subaccount Accumulation Units remains constant as long as an annuity remains in force and allocation among the Subaccounts has not changed.

13

**EXHIBIT 1**
**81**



Each Subaccount Annuity Unit Value was arbitrarily set when the Subaccount first converted Subaccount Accumulation Units into Annuity Units. Subsequent values on any Valuation Date are equal to the previous Subaccount Annuity Unit Value times the Net Investment Factor for that Subaccount for the Valuation Period ending on that Valuation Date, with an offset for the 4% assumed interest rate used in the annuity tables of this Certificate.

Variable Annuity payments start on the end of the Valuation Period that contains the annuity commencement date. The amount of the first monthly payment for the annuity form selected, is shown on the annuity tables of this Certificate for each $1,000 of Certificate Value applied as of the end of such Valuation Period.

Payments after the first payment will vary in amount and are determined on the first Valuation Date of each subsequent monthly period. If the monthly payment under the annuity form selected is based on the variable annuity unit value of a single Subaccount, the monthly payment is found by multiplying the Subaccount unit value on the payment date by the number of Subaccount Annuity Units.

If the monthly payment under the annuity form selected is based upon variable annuity unit values of more than one Subaccount, the above procedure is repeated for each applicable Subaccount. The sum of these payments is the variable annuity payment.

We guarantee that the amount of each payment after the first payment will not be affected by variations in expense or mortality experience.

## OPTIONAL ANNUITY FORMS

You may select an annuity form or change a previous selection. The selection or change must be In Writing and received by Us at least 30 days before the annuity commencement date. If no annuity form selection is in effect on the annuity commencement date, We automatically apply Option B, with payments guaranteed for 10 years.

The following options are available for the Fixed Annuity payments and the Variable Annuity payments:

### Option A. - Life Annuity

Payments are made as of the first valuation date of each monthly period during the Annuitant's life, starting with the annuity commencement date. No payments will be made after the Annuitant dies.

### Option B. - Life Annuity with Payments Guaranteed for 10 Years or 20 Years

Payments are made as of the first Valuation Date of each monthly period starting on the annuity commencement date. Payments will continue as long as the Annuitant lives. If the Annuitant dies before all of the guaranteed payments have been made, We will continue installments of the guaranteed payments to the beneficiary.

### Option C. - Joint and Full Survivor Annuity

Payments are made as of the first Valuation Date of each monthly period starting with the annuity commencement date. Payments will continue as long as either the Annuitant or the Joint Annuitant is alive. Payments will stop when both the Annuitant and the Joint Annuitant have died.

We also have other annuity forms available and information about them can be obtained by Writing to Us.

The annuity tables show the amount of the first annuity payment, for each $1,000 of Certificate Value applied under Options A, B, and C.

56029

14

**EXHIBIT 1**
**82**

F071

## OPTION TABLES

Installments shown are for an initial monthly payment for each $1,000 of certificate value applied under an option. Age, as used in these tables, is age as of nearest birthday on the annuity commencement date. Rates for monthly payments for ages and periods certain not shown, if allowed by us, will be computed on an actuarially equivalent basis.

**Actuarial Basis**

Installments shown in these tables are based on the 1983 Table a and with compound interest at the effective rate of 4% per year.

### OPTIONS A AND B

| | MALE | | | | FEMALE | | |
|---|---|---|---|---|---|---|---|
| Age | Life Only | 10 Year Period Certain and Life | 20 Year Period Certain and Life | Age | Life Only | 10 Year Period Certain and Life | 20 Year Period Certain and Life |
| 50 | 4.86 | 4.81 | 4.65 | 50 | 4.50 | 4.47 | 4.40 |
| 51 | 4.94 | 4.88 | 4.71 | 51 | 4.56 | 4.53 | 4.45 |
| 52 | 5.02 | 4.95 | 4.76 | 52 | 4.62 | 4.59 | 4.50 |
| 53 | 5.10 | 5.03 | 4.82 | 53 | 4.69 | 4.66 | 4.56 |
| 54 | 5.19 | 5.11 | 4.88 | 54 | 4.76 | 4.72 | 4.61 |
| 55 | 5.29 | 5.20 | 4.94 | 55 | 4.84 | 4.80 | 4.67 |
| 56 | 5.39 | 5.29 | 5.00 | 56 | 4.92 | 4.87 | 4.73 |
| 57 | 5.49 | 5.38 | 5.06 | 57 | 5.00 | 4.95 | 4.79 |
| 58 | 5.61 | 5.48 | 5.12 | 58 | 5.09 | 5.03 | 4.85 |
| 59 | 5.73 | 5.59 | 5.18 | 59 | 5.19 | 5.12 | 4.91 |
| 60 | 5.86 | 5.70 | 5.24 | 60 | 5.29 | 5.22 | 4.98 |
| 61 | 6.00 | 5.82 | 5.31 | 61 | 5.40 | 5.32 | 5.05 |
| 62 | 6.16 | 5.95 | 5.37 | 62 | 5.52 | 5.42 | 5.11 |
| 63 | 6.32 | 6.08 | 5.43 | 63 | 5.65 | 5.53 | 5.18 |
| 64 | 6.49 | 6.21 | 5.48 | 64 | 5.78 | 5.65 | 5.25 |
| 65 | 6.68 | 6.35 | 5.54 | 65 | 5.92 | 5.77 | 5.32 |
| 66 | 6.88 | 6.50 | 5.59 | 66 | 6.08 | 5.90 | 5.39 |
| 67 | 7.09 | 6.65 | 5.64 | 67 | 6.24 | 6.04 | 5.45 |
| 68 | 7.31 | 6.81 | 5.69 | 68 | 6.42 | 6.19 | 5.51 |
| 69 | 7.56 | 6.97 | 5.73 | 69 | 6.61 | 6.34 | 5.58 |
| 70 | 7.82 | 7.14 | 5.77 | 70 | 6.81 | 6.50 | 5.63 |
| 71 | 8.09 | 7.31 | 5.81 | 71 | 7.04 | 6.67 | 5.69 |
| 72 | 8.39 | 7.48 | 5.84 | 72 | 7.28 | 6.84 | 5.73 |
| 73 | 8.71 | 7.65 | 5.87 | 73 | 7.54 | 7.02 | 5.78 |
| 74 | 9.05 | 7.83 | 5.89 | 74 | 7.83 | 7.21 | 5.82 |
| 75 | 9.41 | 8.00 | 5.91 | 75 | 8.14 | 7.40 | 5.85 |

### OPTION C

| | | FEMALE AGE | | | | |
|---|---|---|---|---|---|---|
| | | 50 | 55 | 60 | 65 | 70 |
| MALE AGE | 50 | 4.19 | 4.32 | 4.45 | 4.56 | 4.65 |
| | 55 | 4.27 | 4.45 | 4.62 | 4.79 | 4.94 |
| | 60 | 4.34 | 4.55 | 4.79 | 5.03 | 5.27 |
| | 65 | 4.39 | 4.64 | 4.94 | 5.27 | 5.61 |
| | 70 | 4.43 | 4.71 | 5.06 | 5.74 | 5.94 |

15

**EXHIBIT 1**
83

E072

**Fortis Benefits Insurance Company**
**P.O. Box 64272**
**St. Paul, MN 55164**

**RIDER**

WAIVER OF SURRENDER CHARGE FOR HOSPITAL OR SKILLED HEALTH CARE FACILITY CONFINEMENT

The contract to which this Rider is attached is changed as follows:

1. Surrender charges under this contract that are normally assessed upon total or partial surrender will not apply if the following requirements are met:

   a. We receive satisfactory written proof that a Covered Person is confined in a Hospital or Skilled Health Care Facility; and

   b. Such confinement has lasted for 60 days consecutive days and the Covered Person continues to be confined in the Hospital or Skilled Health Facility when the request for total or partial surrender is made; and

   c. Such confinement began after the later of: (1) the effective date of this provision; or (2) the effective date of this contract.

   —or—

   a. The request for total or partial surrender is received within 60 days following a Covered Person's discharge from a Hospital or Skilled Health Care Facility after confinement of at least 60 consecutive days; and

   b. Such confinement began after the later of: (1) the effective date of this provision; or (2) the effective date of this contract.

2. Definition of "Covered Person" – The owner or joint owner of this contract or the owner's spouse if such spouse is the annuitant.

3. Definition of "Hospital or Skilled Health Care Facility"

   A facility which:

   a. is licensed by an appropriate licensing agency to provide health services; and

   b. provides 24–hour–a–day nursing service; and

   c. has a doctor available for emergency situations; and

   d. has a nurse on duty or on call at all times; and

   e. maintains clinical records; and

   f. has appropriate methods for administering drugs.

4. Surrender charges will not be waived when a confinement is due to substance abuse or mental or personality disorders without a demonstrable organic nature. A degenerative brain disease such as Alzhiemer's Disease is considered organic in nature.

Signed for the Company at St. Paul, Minnesota.


President & CEO                                Secretary


56377                                                                    5/94

**EXHIBIT 1**
**84**

F073

**Certificate for**
**Flexible Premium Deferred Combination Variable and Fixed Annuity**
**Non-participating. No Dividends.**

*Fortis Benefits*
*Insurance Company*

P.O. Box 64272, St. Paul, Minnesota 55164
1-800-800-2000

EXHIBIT 1
85

F074



## TRADITIONAL IRA DISCLOSURE STATEMENT

THE FORTIS BENEFITS ANNUITY SELECTED BY YOU HAS BEEN DESIGNED FOR USE AS A TRADITIONAL INDIVIDUAL RETIREMENT ANNUITY (IRA) AS THAT TERM IS DEFINED BY THE INTERNAL REVENUE CODE (the Code). THE INTERNAL REVENUE SERVICE HAS NOT APPROVED OR DISAPPROVED THE ANNUITY, EITHER AS TO ITS FORM OR ITS MERITS.

Revocation. You are entitled to revoke the Individual Retirement Annuity within seven days of the date of delivery of the contract to you. In some states, you may have a longer period to elect revocation; see your contract information for details. In order to make the revocation, the owner must notify by telephone the Supervisor, Annuity Administration Department, Fortis Benefits at 1-800-800-2000, ext. 3057. On the same day, the owner must confirm such oral notification by mailing written notification to Fortis Benefits Annuity Administration, P.O. Box 64272, St. Paul, MN 55164. Upon timely revocation, the owner will receive back the entire amount contributed without reduction for fees, commissions, other expenses or fluctuation in market value.

## A. STATUTORY REQUIREMENTS OF SEC. 408(b) IRAs

You may make contributions to a Traditional Individual Retirement Annuity (IRA). A Traditional Individual Retirement Annuity is an annuity contract issued for your exclusive benefit or for your beneficiaries at your death. It must be created by a written governing instrument that meets the following requirements:

(1)  The annuity must be issued by an insurance company duly authorized under applicable state laws and must be non-transferable;

(2)  You are not obligated to pay any fixed premium amount. Any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the purchase of additional benefits;

(3)  Except for rollovers, transfers, recharacterizations and certain employer-sponsored plans, under applicable law, insurer will not accept contributions for any annuity of more than $2,000 for any tax year;

(4)  You will have a nonforfeitable interest in the annuity;

(5)  Your entire interest in the annuity must begin to be distributed by the April 1st following the calendar year in which you reach age 70½. Subject to contract terms, the distribution may be made in a single sum, or you may receive substantially equal at least annual distributions, or greater distributions, as long as your entire interest in the annuity is distributed over a period not exceeding one of the following periods:

(a)  Your life;

(b)  The lives of you and your designated beneficiary;

(c)  A period certain not extending beyond your life expectancy;

(d)  a period certain not extending beyond the life expectancy of you and your designated beneficiary or the survivor thereof;

(e)  The greater of (a) or (c); or

(f)  The greater of (b) or (d).

Tax law and regulations restrict the use of lives or life expectancies of nonspouse beneficiaries as a factor in calculating periodic distributions.

IRADISC

**EXHIBIT 1**
86

F075



(6) If you die before the earlier of (a) the April 1st following the calendar year you reach age 70½ or (b) the date payments under a true annuity settlement option commence to you, then the undistributed balance in your annuity must be distributed to your beneficiary within 5 years after your death. The five-year distribution requirement will not apply if any designated beneficiary in accordance with regulations elects to take payment over a period not exceeding his or her life or life expectancy and such distribution begins by the end of the calendar year following the calendar year of your death. The lump sum or life expectancy distribution requirements may be postponed if your spouse is the designated beneficiary; he or she may elect to defer payment until the later of the calendar year in which you would have attained age 70½ or the calendar year immediately following the calendar year in which you died. Your surviving spouse who was your designated beneficiary may also elect to simply maintain your IRA as his or her own IRA.

If you die after the earlier of (a) the April 1st following the calendar year in which you reach age 70½, or (b) the date payments under a true annuity settlement option commence to you, then remaining payments ,if any, must be paid to your beneficiaries at least as rapidly as the method of payment elected by you pursuant to A(5).

**B.  Traditional IRA Rules of Sec. 219, Sec 408, and Related Code Sections.**

**Eligible Individuals.**  You may contribute to a Traditional Individual Retirement Annuity if you receive compensation for work. You may also be able to contribute if your spouse receives compensation from work. Compensation is defined below.

**Compensation.**  Compensation is defined as wages, salaries, or professional fees, and other amounts received for personal services actually rendered (including earned income from self-employment). It does not include earnings from property such as interest, rents, and dividends, or deferred compensation, pensions, annuities, or other retirement income. If compensation is not includable in gross income (such as income earned from sources outside the United States) it is not treated as compensation in determining the maximum limitation for the contribution.

**Age 70½.**  Contributions to your Traditional IRA are not permitted for the tax year in which you attain 70½ or any subsequent year.

Notwithstanding the foregoing, your employer may make certain SEP contributions for you for or after the tax year in which you reach age 70½.

**Regular Contributions.**  A contribution you make based on your own compensation will be called a regular contribution in this text. You may make regular contributions directly or by payroll deduction if your employer permits it. They do not include employer contributions pursuant to a SEP program.

**Maximum Regular Contribution and Deduction.**  You are allowed a regular contribution not to exceed the lesser of the following amounts:

(1)  $2,000 or
(2)  100% of your compensation

All, part, or none of your regular contribution may be deductible. See below.

There are special rules for contributions and deductions under a SEP program. See the Questions and Answers in the Fortis SEP booklet.

IRADISC                                              Page 2

EXHIBIT 1
87

F076



**Available to both working spouses.** Since a regular contribution is available to each eligible individual, your marital status and whether or not you file a joint return will have no effect on your right to make regular contributions to a Traditional IRA. Both you and your spouse can make a regular contribution if each of you works and is under age 70½ for the contribution year and if each of you adopts a separate Traditional IRA. If each of you so qualifies, the maximum regular contribution is computed separately for each spouse whether or not you file a joint tax return.

Community property laws of a state or other jurisdiction do not affect the right to contribute to a Traditional IRA. Therefore, you and your spouse must meet the Traditional IRA qualifications individually, and determine the amount of allowable regular contributions on the income that each of you have earned individually. Except as provided in the following paragraph, you may not make a contribution based on the earnings of your spouse, even though a state's law provides that you own half of the income.

**Spousal Contributions.** If your spouse is not eligible in his or her right to make the maximum regular contribution because he or she has no, or insufficient, earned income from work, he or she may be able to increase his or her contribution to his or her own Traditional IRA by making a spousal contribution based on your and your spouse's combined compensation from work provided that you both file a joint return for the year for which the contribution is made and he or she is the spouse with the lesser earned income from work. In such a case your spouse may contribute the lesser of $2,000 or the sum of your combined compensation for the year. Your compensation for purposes of the calculation must be reduced by any regular Traditional or Roth IRA contribution made for yourself for the year. The maximum Traditional IRA contribution for any person for a year may never exceed $2,000.

Spousal IRAs are not based on community property laws. They are based on the Code and apply throughout the United States.

All, part, or none of your spousal contribution may be deductible. See below.

**Details of Tax Deduction.** Whether your regular or spousal IRA contribution is fully deductible, partly deductible, or fully nondeductible depends on three variables: (a) your filing status - single, married filing a separate return, or married filing jointly; (b) your adjusted gross income before any IRA deductions, and (c) whether you are or your spouse is an active participant in an employer sponsored retirement plan. (See the chart at the back of this statement and IRS publication 590).

Contributions must be made in cash (currency, checks, etc). No deductions are allowable for contributions of property.

**Adjusted Gross Income.** Adjusted gross income for purposes of the deductibility calculation includes taxable income due to social security, and income due to passive activity loss and credit limitations, and is not reduced by certain foreign employment income exclusions, or adoption expense exclusions, or U.S. savings bond interest exclusions otherwise applicable for payment of qualified higher education expenses. Adjusted gross income does include any taxable income arising from the amount converted from a Traditional IRA to a Roth IRA. It also includes any taxable amount withheld from such a conversion to pay income taxes.

**Year of Contribution.** You may make contributions for a tax year until the end of the period for filing the federal income tax return for such year, not including extensions. If you make IRA contributions for any year through payroll deduction or through automatic bank draft (meaning that we take money directly out of your checking account), your contributions will be recorded by us as a contribution for the year in which we received the funds. No exceptions are possible. Therefore, if you are making contributions after December 31, but for the previous tax year, you must make those contributions by some means other than payroll deduction or automatic bank draft. Use a separate check properly identified with your name, account number if possible, and the tax year the contribution is made for.

IRADISC                                   Page 3

**EXHIBIT 1**
88

F077

**Excess Contributions.** An excise tax applies on excess contributions. Generally, any contributions made by you or your employer that exceed the contribution limitations are excess contributions subject to a nondeductible 6% excise tax, unless the excess contributions with earnings attributable to them are withdrawn on or before the due date of the return for the tax year, including extensions. If you or your employer make excess contributions and you fail to withdraw them within the time permitted, you must pay the excise tax.

If the distribution takes place after the due date for filing your return, the 6% penalty also attaches for each following year until the excess is removed. This cumulative effect can be avoided by making reduced contributions in a future year or by withdrawing the excess contribution.

Excess contributions by an employer under a SEP program may also result in employer penalty taxes.

**Prior year's contribution.** If less than the maximum amount of contribution has been made in years before the year you have an excess contribution, the prior year's difference may not be used to reduce the excess contribution.

**Distributions.** Distributions from your Traditional IRA are taxed as ordinary income regardless of their source. They are not eligible for capital gains treatment or the special averaging rules that apply to certain lump-sum distributions from qualified employer plans. No income spreading provision is available unless the distribution occurs in 1998 and is converted to a Roth IRA. The portion of a distribution which is taxable will be reduced if you have a basis in your Traditional IRAs.

**Basis.** To the extent you are allowed a deduction for the contributions you make to your Traditional IRAs, your basis in your Traditional IRAs is zero. You will have a shared basis in all your Traditional IRAs equal to the sum of your nondeductible contributions to all of these Traditional IRAs, subject to the limits on such contributions.

**Effect of Basis.** A basis acquired by a nondeductible contribution to any single Traditional IRA will be shared proportionately by all Traditional IRAs you maintain now or in the future. If you subsequently make a withdrawal from that Traditional IRA or any other Traditional IRA, you will be treated as withdrawing a portion of that basis approximately equal to the ratio of your remaining aggregate nondeductible contribution(s) in all your Traditional IRAs over the then total value of all your Traditional IRAs. Any portion of a distribution which is considered a return of your basis will not be subject to income tax at the time of the distribution. See IRS tax publications for further information.

**Age 59½.** Generally the minimum age at which distributions may be made without incurring an additional 10% premature distribution tax liability is age 59½.

**Mandatory Distribution at Age 70½.** Your interest in the account must be entirely distributed not later than the April 1st following the calendar year in which you attain age 70½; or alternatively by such April 1st date, distributions must have commenced which are payable periodically over your life or life expectancy or over the lives of you and your designated beneficiary or your joint life expectancies as provided in (A) (5) above. If you elect periodic payments by true life annuitization in the final year when they must begin, then a double annual payment will not be required in such first payment year. In the case of other periodic payments, a double annual payment may be required in such first payment year.

Any mandatory annual partial payment to you, other than by true annuitization, will ordinarily be determined by dividing your account balance by your life expectancy or by the joint life expectancy of you and your designated beneficiary. There are detailed IRS rules, limitations and exceptions regarding this calculation.

**IRADISC**                          Page 4

**EXHIBIT 1**

89

F078

**Beneficiaries.** If you die before the earlier of (a) the April 1st of the calendar year following the calendar year in which you reach age 70½ or (b) the date payments commence under a true annuity settlement option, the remaining interest in the IRA must be distributed to your beneficiary within five years after your death. The five-year distribution requirement will not apply if any designated beneficiary in accordance with regulations elects to take payment over a period not exceeding his or her life expectancy and such distribution begins by the end of the calendar year following the calendar year of your death. The lump sum or life expectancy distribution requirements may be postponed if your spouse is your designated beneficiary; he or she may elect to defer payment until the later of the calendar year you would have been age 70½ or the calendar year following the calendar year of your death. Your surviving spouse who was your designated beneficiary may also elect to simply maintain your IRA as his or her own IRA.

If you die after the earlier of the two dates (a) and (b) specified in the preceding paragraph, payments must continue to be made at least as rapidly under the method of distribution effective at your death pursuant to (A) (5) above.

Designating a trust or your estate as a beneficiary may not allow you or the payees of the trust or your estate to have the tax deferral opportunities that would be available if you named them directly.

**Estate and gift taxes.** With very limited exceptions, Traditional IRAs of persons dying after December 31, 1984 are subject to federal estate taxes. If your spouse is your death beneficiary, most estate taxes at your death may, however, be avoided by use of the unlimited marital deduction. A transfer to any person while you are living may be subject to gift taxes and may also be treated as a taxable distribution to you.

**Transfer of account incident to divorce.** If your Traditional IRA is transferred from you to your former spouse, because of a divorce decree (or a written instrument incident to a divorce), the transaction will not be considered a taxable distribution to you or to your former spouse. The account will be considered a Traditional IRA of the spouse who received it, rather than the spouse from whom it was transferred. Starting from the day of transfer, it will be treated as being maintained for the benefit of the person who received it.

**Premature distributions.** If you take distributions from a Traditional IRA prior to age 59½, in most cases an added penalty tax applies. It is equal to 10% of the income taxable part of the distribution.

**Penalty Tax.** The income taxable part of a distribution from a Traditional IRA is subject to a premature distribution penalty tax unless it is

(a)  made on or after the date you reach 59½; or
(b)  made after your death, or
(c)  due to your complete and permanent disability within the meaning of IRS rules, or
(d)  part of a series of substantially equal payments (not less frequently than annually) designed to last for your life expectancy or the life expectancy of you and your designated beneficiary and conforms to specific IRS guidelines, or
(e)  for uncompensated, uninsured medical expenses that exceed 7.5% of your adjusted gross income, or
(f)  for payment of certain health insurance premiums if you have been unemployed for an extended period of time and meet other specific requirements, or
(g)  for payment of qualified higher education expenses furnished to the taxpayer, the taxpayer's spouse, or any child or grandchild of the taxpayer or the taxpayer's spouse, or
(h)  for payment of qualified first time home buyer expenses as defined by the Code subject to a $10,000 lifetime limitation, or
(i)  rolled over or transferred to another Traditional IRA or a Roth IRA and satisfies the conditions for such a rollover or transfer, or
(j)  made on account of an IRS levy under Section 6331 of the Code.

IRADISC                           Page 5

**EXHIBIT 1**
90



**Rollovers, Transfers and Conversions.** You may rollover or transfer a Traditional IRA to another Traditional IRA. That transaction is federal income tax free if done properly.

Effective January 1, 1998, you may also convert a Traditional IRA to a Roth IRA if (a) your modified adjusted gross income (MAGI) does not exceed $100,000 in the year of the distribution from the Traditional IRA and (b) you are not a married individual filing a separate return for such year. A husband and wife who file separate returns for any taxable year and who live apart at all times during such taxable year are not treated as married individuals for purposes of the foregoing rule.

If you are married filing a joint return, your MAGI is the joint MAGI of you and your spouse. For purposes of the $100,000 limit, MAGI does not include the amount converted from a Traditional IRA to a Roth IRA but does include any amount withheld from the conversion to pay income taxes. MAGI for purposes of the $100,000 test includes taxable income due to social security and income due to passive activity loss and credit limitations, and is not reduced by certain foreign employment income exclusions, or adoption expense exclusions or U.S. savings bond interest exclusions otherwise applicable for payment of qualified higher education expenses. MAGI is reduced by any deductible contribution to a Traditional IRA until tax year 2005.

A change in the definition of MAGI solely for purposes of the $100,000 limitation is scheduled to take effect for taxable years beginning after December 31, 2004. The change would exclude from MAGI minimum required distributions from Traditional IRAs and from certain qualified employer plans.

Except for qualifying recharacterizations, a rollover, transfer, or conversion from a Traditional IRA to a Roth IRA is treated as an income taxable distribution from the Traditional IRA to the extent that the amount involved includes amounts not treated as basis. If the distribution from the Traditional IRA occurs during 1998, the taxable income attributable to the amount involved will be included ratably in your gross income over the four (4) taxable years beginning with the 1998 taxable year. You are permitted, however, to elect to have the full taxable amount taxed in 1998 if you make such an election by the due date of your 1998 tax return, including extensions. The taxable income attributable to the amount involved in similar rollovers, transfers, or conversions from distributions occurring on or after January 1999 will be fully taxable in the year of the distribution. A distribution from a Traditional IRA, to the extent that it is properly rolled over, transferred, or converted to a Roth IRA, is not subject to federal premature distribution penalty tax.

You may rollover the proceeds of most employer qualified retirement plans directly to a Traditional IRA. Consult your employer plan administrator to find out if your distribution qualifies. It is usually advisable to keep rollover amounts in separate Traditional IRAs in order to preserve the right to roll the proceeds back into an employer retirement plan at a later date. The right to roll back into an employer retirement plan is lost if an employer qualified plan distribution is commingled in a Traditional IRA with other Traditional IRA contributions. If you are able to roll back into a qualified employer retirement plan from a Traditional IRA, the qualified employer retirement plan into which you roll must be a qualified employer retirement plan like the one from which the amount originated.

You may not rollover, transfer, or convert directly from an employer qualified plan to a Roth IRA. You may be able to rollover from an employer qualified plan to a Traditional IRA and then rollover, transfer or convert to a Roth IRA. Except for qualifying recharacterizations, you may not rollover, transfer, or convert a Roth IRA to a Traditional IRA. You may not roll from a Roth IRA to an employer plan.

You may generally not make a rollover, transfer, or conversion from an inherited IRA of any kind unless you were both the designated beneficiary and the surviving spouse of the person in whose name the account was established. Certain other designated beneficiaries may be able to make certain transfers but the legal authority for doing so is limited at this time.

IRADISC                              Page 6

**EXHIBIT 1**

91

F080

Spousal Traditional IRAs are subject to the same rollover, transfer and conversion rules that apply to Traditional IRAs generally. Spousal Roth IRAs are subject to the same rollover and transfer and conversion rules that apply to Roth IRAs generally.

State tax treatment may vary.

**Special Rollover, Transfer, Conversion and Recharacterization Rules.** To do a rollover, you must receive the proceeds either directly or by deposit in an account that is not an IRA and not a permissible employer qualified plan account and must reinvest the proceeds in an IRA or permissible employer qualified plan account within 60 days of the date you receive them. You may do a rollover from a Traditional or Roth IRA into the same kind of IRA only once in any 12-month period, counting from the date of the distribution that is rolled over. An amount rolled over into the same kind of IRA may not be rolled over again until 12 months have elapsed from the date of the original distribution. For rollovers from Traditional IRAs to Roth IRAs, the one rollover per 12 months rules do not apply. For rollovers from Traditional IRAs to employer qualified plans, other than SEP IRAs and SIMPLE IRAs, the one rollover per 12 month rules do not apply.

To do a "direct rollover" or transfer, you must direct that the proceeds of an account be paid directly to another appropriate IRA or permissible employer qualified plan account. You must not receive the amount involved. This form of transaction may occur any number of times without restriction.

To do a conversion, you must do a rollover or transfer from a Traditional IRA to a Roth IRA. It is also possible to convert by simply reregistering an existing Traditional IRA to redesignate it as a Roth IRA. The normal rules for rollovers or transfers apply, except that the one rollover per twelve months rules do not apply.

Effective November 1, 1998, however, reconversions by any means of an amount previously converted from a Traditional IRA to a Roth IRA and then recharacterized is limited to one time between November 1, 1998 and December 31, 1998 and is limited to once in 1999. Starting January 1, 2000, conversion of the same amount is not permitted more than once annually. Furthermore reconversion of an amount previously converted and then recharacterized to a Traditional IRA must never occur until 30 days have elapsed counting from the date of the recharacterization to a Traditional IRA.

Any amount withheld to pay income taxes or paid to you for any other reason on a rollover, transfer, or conversion will not be treated as part of the rollover, transfer, or conversion and will be subject to income and penalty tax to the same extent as a separate distribution from the account.

You may reverse or "recharacterize" a rollover, transfer, or conversion from a Traditional IRA to a Roth IRA or from a Roth IRA to a Traditional IRA by a direct transfer back to the original kind of IRA provided that it is done by the due date of the return for the year the amount was distributed from the distributing IRA, including extensions. The amount transferred back must include earnings and be reduced for losses. When a rollover, transfer, or conversion amount adjusted for earnings and losses is properly recharacterized to the original kind of IRA, there are no federal tax consequences due to the previous rollover, transfer, or conversion. Direct transfer is the only permitted way to make these corrections within these time periods. Both the receiving and the distributing institution must be notified of the recharacterization.

**Recharacterization of Annual Contribution.** You may recharacterize an annual contribution to a Roth IRA by transferring it directly to a Traditional IRA and may recharacterize an annual contribution to a Traditional IRA by transferring it directly to a Roth IRA. After the recharacterization, the contribution made to the distributing IRA will be treated for most tax purposes as if it had been made to the receiving IRA on the date it was received by the distributing IRA. Any recharacterization must be made by the due date of the return for the year for which the annual contribution was made, including extensions. Employer or salary reduction contributions under a SIMPLE or SEP cannot be recharacterized. Earnings or losses must accompany any amount that is recharacterized.

IRADISC                                    Page 7

EXHIBIT 1
92

FOR1


Direct transfer is the only method permitted for recharacterizations. Both the distributing and the receiving institution must be notified of the recharacterization. If an account contains only the contribution which is to be recharacterized and earnings or losses attributable to that contribution, the account may simply be reregistered as the other kind of IRA.

**Exempt from tax.** Your Traditional IRA is exempt from federal income tax until distribution occurs -- unless unrelated business income is generated or a prohibited transaction is engaged in.

**Unrelated business income.** A Traditional IRA is subject to tax on any unrelated business income it receives. This is income received from activities that are not substantially related to the functions for which the entity was allowed exemption from taxation, such as engaging directly in an active business normally carried on for profit.

**Prohibited transactions.** If you participate in a Traditional IRA, you are subject to the prohibited transaction rules (but not the tax) of Section 4975 of the Internal Revenue Code and will be treated as the creator of the Traditional IRA with respect to these provisions.

Examples of prohibited transactions are the borrowing of the income or corpus from a Traditional IRA, selling property to or buying property from the Traditional IRA, or receiving more than reasonable compensation for services performed for the Traditional IRA.

**Loss of exemption.** If you engage in a prohibited transaction, the Traditional IRA will lose its exemption from taxation. This will be effective as of the first day of the tax year in which the prohibited transaction occurs. Once your Traditional IRA loses its exempt status, you are required to include the fair market value of its assets (to the extent they exceed your basis in the Traditional IRA) in your income for that tax year. Fair market value and total assets on hand is determined as of the first day of the tax year in which the prohibited transaction occurred. In addition, you may be liable for the 10% tax on premature distributions.

**Pledging annuity as security.** If you use your Individual Retirement Annuity or any portion thereof as security for a loan, the entire value of the annuity is treated as distributed to you. The amount treated as distributed will be subject to income taxes including premature distribution penalty taxes if they apply.

**Tax reporting.** You must file an IRS form 8606 to report the amount of your annual Traditional IRA contribution that you choose to be non-deductible. You must file an IRS form 5329 if you owe a tax due to excess contributions, or if you take a distribution from your Traditional IRA prior to age 59½ whether or not a penalty tax is owed, or if you fail to take a distribution from your plan when one is required.

**Further information.** This information is current as of February 1999. Tax laws do change. Further information can be obtained from any district office of the Internal Revenue Service.

**Financial disclosure.** Contributions to this Individual Retirement Annuity will be invested in the account or subaccount selected by you. See the appropriate contract and subaccount prospectuses for information on contract earnings, including the possibility of growth or loss on the contract values. See those prospectuses also for service fees, sales charges, and other expenses applicable to your contract.

SEE THE SPECIFIC CONTRACT PROVISIONS FOR AN EXPLANATION OF YOUR OPTIONS UNDER THE CONTRACT. REVIEW THESE MATERIALS WITH YOUR OWN QUALIFIED ADVISER.

IRADISC                        Page 8

**EXHIBIT 1**
93

FOR2

USE THIS CHART TO DETERMINE YOUR 1999 TRADITIONAL IRA DEDUCTIONS (Regular or Spousal)*

| Single Individuals: Filing Individual return | Not Active Participant | Active Participant** | |
|---|---|---|---|
| Adjusted Gross Income— | | | |
| $31,000 or less | Fully Deductible | Fully Deductible | |
| Between $31,000 | | | |
| – $41,000 | Fully Deductible | Reduced Deduction*** | |
| $41,000 or more | Fully Deductible | Deduction Eliminated | |
| **Married Individuals: Filing Individual Return****** | **Neither Spouse an Active Participant** | **One or Both Spouses an Active Participant**** | |
| Adjusted Gross Income of spouse filing the return is | | | |
| under $10,000 | Fully Deductible | Reduced Deduction*** | |
| $10,000 or more | Fully Deductible | Deduction Eliminated | |
| **Married Individuals: Filing Joint Return** | **Neither Spouse an Active Participant** | **Spouse Who is An Active Participant** | **Spouse Who Is Not An Active Participant** |
| Adjusted Gross Income— | | | |
| $51,000 or less | Fully Deductible | Fully Deductible | N/A |
| Between | | | |
| $51,000–$61,000 | Fully Deductible | Reduced Deduction*** | N/A |
| $61,000 or more | Fully Deductible | Deduction Eliminated N/A | |
| $150,000 or less | N/A | N/A | Fully Deductible |
| Between | | | |
| $150,000–$160,000 | N/A | N/A | Reduced Deduction |
| $160,000 or more | N/A | N/A | Deduction Eliminated |

*Use this chart only to determine deductibility of a contribution to your account for a year in which you are under age 70½ throughout the entire year. Adjusted gross income figures are for 1999 tax deductions. Except for the $150,000 and $160,000 figures, they increase by $1000 each year thereafter for single individuals and for married individuals filing jointly through calendar year 2002. They do not increase for persons treated as married individuals filing a separate return. Deductibility phase out levels are subject to law changes. Further adjusted gross income figure changes are currently scheduled for years after 2002.

**You appear to be an "active participant" if you are:

(1) a person who is eligible to participate in a defined benefit pension plan during a plan year ending with or within your tax year, or
(2) a person who has contributions or forfeitures accruing under any money purchase pension plan for the plan year ending with or within your tax year, or
(3) a person who has any allocation by forfeiture or contribution to a profit sharing plan account during your taxable year, or
(4) a person who makes any voluntary or mandatory employee contributions to any of the above plans during your tax year.

401(k) contributions, (403(b)) contributions, SEP or SIMPLE contributions during your tax year also appear to make you an active participant. Regulations will further define who is and who is not an active participant. You should consult IRS publications to determine your status.

***The maximum standard IRA deduction is reduced at a rate of:

$200 for every $1,000 of adjusted gross income
   —over $30,000 for a single person filing an individual return;
   —over $0 for a married person filing an individual return;
   —over $50,000 for a married person filing joint returns.

IRADISC                                        Page 9

**EXHIBIT 1**
**94**

F083

The $30,000 and $50,000 figure are adjusted annually as described in the first footnote.

The partial deduction has a $200 floor. For example, if your deduction would have been reduced to less than $200 (but not zero), you can deduct IRA contributions up to $200 or 100% of your taxable income, whichever is less.

****If you are a married person filing a separate return and you lived apart from your spouse at all times during the tax year, you apply the rules for single individuals to determine deductibility of your IRA contribution.

IRADISC

Page 10

**EXHIBIT 1**
95

F084

# CONTRACT NO. 366004419

**EXHIBIT 2**
**96**

F085

06/30/2002

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2002 - June 30, 2002
Page 1

Looking for specific information on your new statement? Refer to the enclosed "How to Read Guide" to
locate the items that are important to you and to discover a whole new world of helpful information at your
fingertips.

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  366004419
Purchase Date  July 13, 1999
Contract Type  Non-Qualified

Owner Name  Cleona Bailey Shortridge
Annuitant  Cleona Bailey Shortridge

Summary

| | Quarter 4/1/02 - 6/30/02 | Year-To-Date 1/1/02 - 6/30/02 | Since Purchase 7/13/99 - 6/30/02 |
|---|---|---|---|
| Beginning Value | 30,599.87 | 30,508.93 | 30,000.00 |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 627.86- | 536.92- | 1,472.01 |
| Ending Value | $29,972.01 | $29,972.01 | $29,972.01 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
7128 Miramar Rd 14b
San Diego CA 92121 0000

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
(Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if
applicable.
All information about your variable annuity, including charges and expenses, is described in your
prospectus. Please read it carefully and keep it for your records. For information on fixed interest
rates, please call 1-888-488-2228, option #2. If you have additional questions, or for information
please call 1-800-862-6668 Monday through Thursday 8am to 7pm, Friday 8am to 6pm, or Saturday 9am to
2pm (Eastern time).

**EXHIBIT 2**
97

F086

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2002 - June 30, 2002
Page 2

| | | | | | |
|---|---|---|---|---|---|
| Purchase Date | July 13, 1999 | | Owner Name | Cleona Bailey Shortridge | |
| Contract Type | Non-Qualified | | Contract Number | 366004419 | |
| Product Version | Masters+ 2 | | | | |
| Issuing Company | Fortis Benefits Ins Co - FBIC | | | | |

Value By Sub-Account

| | Future Contribution Allocation | Quarterly Sub-Account Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | $333.35- | 142.105 | | 14.747902 | | 2,095.75 |
| Growth & Income | 5% | $218.70- | 64.340 | | 18.188162 | | 1,170.23 |
| Advisers | 10% | $305.33- | 849.653 | | 3.145125 | | 2,672.26 |
| US Govt Securities | 5% | $59.22 | 83.190 | | 21.581965 | | 1,795.40 |
| NO MVA 1 Year | 70% | $170.30 | | | | | 22,238.37 |
| Total | 100% | $627.86- | | | | | $29,972.01 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

Non-Standardized Returns

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 6/30/02                                            Average Annual Total Return

| Sub-Account  (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Growth | | | | |
| Index (5/1/87)* | -19.47% | 1.81% | 9.32% | 8.98% |
| Growth & Income | | | | |
| Growth & Income (5/29/98) | -22.56% | ------ | ------ | -0.20% |
| Advisers (3/31/83)* | -12.04% | 3.35% | 8.47% | 9.42% |

**EXHIBIT 2**
**98**

F087

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2002 - June 30, 2002
Page 3

Owner Name   Cleona Bailey Shortridge
Contract Number   366004419

**Non-Standardized Returns**

Period Ending 6/30/02                                    Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Income | | | | |
| US Govt Securities (10/31/86)* | 7.66% | 5.79% | 5.11% | 5.67% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 6/30/02                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -25.11% | 0.86% | 9.32% | 8.47% |
| Growth & Income | -27.98% | ------ | ------ | -1.44% |
| Advisers | -18.19% | 2.46% | 8.47% | 8.44% |
| US Govt Securities | 0.66% | 4.98% | 5.11% | 6.37% |

EXHIBIT 2
99

09/30/2002

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2002 - September 30, 2002
Page 1

In the past year we have enhanced the Annuity Contract Access site by providing details such as Total Premium Payments, Maximum Anniversary Value, Available Free Withdrawal Value, Total Surrenders, and more. Most recently we have added Future Contribution Allocation functionality. Just log-on to www.hartfordinvestor.com and check out all the new features. Come back often as we frequently add new enhancements to the site.

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number   366004419
Purchase Date   July 13, 1999
Contract Type   Non-Qualified

Owner Name   Cleona Bailey Shortridge
Annuitant   Cleona Bailey Shortridge

Summary

| | Quarter 7/1/02 - 9/30/02 | Year-To-Date 1/1/02 - 9/30/02 | Since Purchase 7/13/99 - 9/30/02 |
|---|---|---|---|
| Beginning Value | 29,972.01 | 30,508.93 | 30,000.00 |
| Premium Payment | 0.00 | 0.00 | 1,500.00- |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 573.74- | 1,110.66- | 898.27 |
| Ending Value | $29,398.27 | $29,398.27 | $29,398.27 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
7128 Miramar Rd 14b
San Diego CA 92121 0000

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
(Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-486-2228, option #2. If you have additional questions, or for information please call 1-800-862-6668 Monday through Thursday 8am to 7pm, Friday 8am to 6pm, or Saturday 9am to 2pm (Eastern time).

**EXHIBIT 2**
**100**

F089

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly  Statement
July 1, 2002 - September 30, 2002
Page 2

Purchase Date   July 13, 1999            Owner Name   Cleona Bailey Shortridge
Contract Type   Non-Qualified            Contract Number   366004419
Product Version   Masters+ 2
Issuing Company   Fortis Benefits Ins Co - FBIC

Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | $370.02- | 142.105 | | 12.144078 | | 1,725.73 |
| Growth & Income | 5% | $196.23- | 64.340 | | 15.138389 | | 974.00 |
| Advisers | 10% | $266.64- | 849.653 | | 2.831297 | | 2,405.62 |
| US Govt Securities | 5% | $87.56 | 83.190 | | 22.634454. | | 1,882.96 |
| NO MVA 1 Year | 70% | $171.59 | | | | | 22,409.96 |
| | | | | | | | |
| Total | 100% | $573.74- | | | | | $29,398.27 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

Non-Standardized Returns

Performance  returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 9/30/02                                      Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | -21.89% | -3.39% | 6.94% | 7.46% |
| **Growth & Income** | | | | |
| Growth & Income (5/29/98) | -23.45% | ------ | ------ | -4.32% |
| Advisers (3/31/83)* | -14.14% | 0.24% | 7.07% | 8.71% |

**EXHIBIT 2**
**101**

F090

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2002 - September 30, 2002
Page 3

Owner Name   Cleona Bailey Shortridge
Contract Number   366004419

**Non-Standardized Returns**

Period Ending 9/30/02                              Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Income | | | | |
| US Govt Securities (10/31/86)* | 7.86% | 6.20% | 5.21% | 5.90% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses, Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 9/30/02                              Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -27.36% | -4.37% | 6.94% | 6.92% |
| Growth & Income | -28.81% | ------ | ------ | -5.44% |
| Advisers | -20.15% | -0.77% | 7.07% | 7.53% |
| US Govt Securities | 0.86% | 5.40% | 5.21% | 6.60% |

EXHIBIT 2
102

F091

12/31/2002

**Fortis Masters+**
Variable Annuity

**Variable Annuity Quarterly Statement**
October 1, 2002 - December 31, 2002
Page 1

In these uncertain times, it's comforting to know that your beneficiaries are protected even if the value of your annuity declines due to market volatility. That's our promise to you with your Guaranteed Death Benefit. Based on the claims paying ability of the issuing company, we guarantee your beneficiaries will receive the greater of your Contract Value; 100% of premiums minus surrenders, or your Maximum Anniversary Value (MAV), even if death occurs when your contract value has declined due to market conditions. Because Guaranteed Death Benefits can vary and MAV is not available on all contracts, please contact your investment professional about this valuable standard benefit.

366004419

Cleona Bailey Shortridge                    Contract Number  366004419
Po Box 83414                                Purchase Date    July 13, 1999
San Diego CA 92138 3414                     Contract Type    Non-Qualified

                                            Owner Name   Cleona Bailey Shortridge
                                            Annuitant    Cleona Bailey Shortridge

Summary

|  | Quarter 10/1/02 - 12/31/02 | Year-To-Date 1/1/02 - 12/31/02 | Since Purchase 7/13/99 - 12/31/02 |
|---|---|---|---|
| Beginning Value | 29,398.27 | 30,508.93 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 529.59 | 581.07- | 1,427.86 |
| Ending Value | $29,927.86 | $29,927.86 | $29,927.86 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-800-488-2228  Automated Annuity Information
               (Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-800-488-2228, option #2. If you have additional questions, or for information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday, 9am to 2pm (Eastern time).

**EXHIBIT 2**
103

F092



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2002 - December 31, 2002
Page 2

| | | |
|---|---|---|
| Purchase Date | July 13, 1999 | |
| Contract Type | Non-Qualified | Owner Name   Cleona Bailey Shortridge |
| Product Version | Masters+ 2 | Contract Number   366004419 |
| Issuing Company | Fortis Benefits Ins Co - FBIC | |

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | $137.36 | 142.205 | | 13.110654 | | 1,863.09 |
| Growth & Income | 5% | $77.67 | 64.340 | | 16.345476 | | 1,051.67 |
| Advisers | 10% | $134.86 | 849.653 | | 2.990023 | | 2,540.48 |
| US Govt Securities | 5% | $32.09 | 83.190 | | 22.779788 | | 1,895.05 |
| NO MVA 1 Year | 70% | $167.61 | | | | | 22,577.57 |
| **Total** | **100%** | **$529.59** | | | | | **$29,927.86** |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

**Non-Standardized Returns**

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

| | | Average Annual Total Return | | | |
|---|---|---|---|---|---|
| Period Ending 12/31/02 | | | | | |
| Sub-Account   (Fund Inception Date) | | 1 Year | 5 Years | 10 Years | Since Inception |
| **Growth** | | | | | |
| Index (5/1/87)* | | -23.49% | -2.36% | 7.29% | 7.86% |
| **Growth & Income** | | | | | |
| Growth & Income (5/29/98) | | -25.67% | ------ | ------ | -2.47% |
| Advisers (3/31/83)* | | -14.95% | 1.01% | 7.17% | 8.89% |

**EXHIBIT 2**
**104**

F093



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2002 - December 31, 2002
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

**Non-Standardized Returns**

Period Ending 12/31/02                    Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Income | | | | |
| US Govt Securities (10/31/86)+ | 9.25% | 5.84% | 5.35% | 5.84% |

+The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 12/31/02                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -28.84% | -3.35% | 7.29% | 7.36% |
| Growth & Income | -30.87% | ------- | ------- | -3.56% |
| Advisers | -20.90% | 0.03% | 7.17% | 7.79% |
| US Govt Securities | 2.25% | 5.03% | 5.35% | 6.53% |

**EXHIBIT 2**
**105**

F094

03/31/2003

**Fortis Masters∗**
**Variable Annuity**

**Variable Annuity Quarterly Statement**
**January 1, 2003 - March 31, 2003**
**Page 1**

Is your portfolio's allocation still tailored to your goals? Given last year's economic environment, an 80% stock/20% bond mix would have finished 2002 with 73% in stocks and 27% in bonds. Left unattended, an 80/20 ratio in 2000 would have changed to 64% stocks/36% bonds by the end of 2002, much different from the mix that you and your investment representative customized to your specific goals. With the start of a new year, this is a good time to meet with your investment representative to review your financial situation. (Stocks represented by the S&P 500 Index. Bonds represented by the Lehman Bros. Aggregate Bond Index. Indexes are not available for direct investment.)

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  366004419
Purchase Date  July 13, 1999
Contract Type  Non-Qualified

Owner Name  Cleona Bailey Shortridge
Annuitant  Cleona Bailey Shortridge

Summary

| | Quarter 1/1/03 - 3/31/03 | Year-To-Date 1/1/03 - 3/31/03 | Since Purchase 7/13/99 - 3/31/03 |
|---|---|---|---|
| Beginning Value | 29,927.86 | 29,927.86 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders∗ | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 3.87 | 3.87 | 1,431.73 |
| Ending Value | $29,931.73 | $29,931.73 | $29,931.73 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubois
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
              (Toll-Free 24 hours a day)
1-800-862-6668  Annuity Contact Center

∗ Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for further information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday 9am to 2pm (Eastern time).

**EXHIBIT 2**
**106**

F095



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2003 - March 31, 2003
Page 2

| Purchase Date | July 13, 1999 | Owner Name | Cleona Bailey Shortridge |
|---|---|---|---|
| Contract Type | Non-Qualified | Contract Number | 366004419 |
| Product Version | Masters+ 2 | | |
| Issuing Company | Fortis Benefits Ins Co - FBIC | | |

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | $66.56- | 142.105 | | 12.642252 | | 1,796.53 |
| Advisers | 10% | $65.24- | 849.653 | | 2.913232 | | 2,475.24 |
| Growth & Income | 5% | $46.90- | 64.340 | | 15.616525 | | 1,004.77 |
| US Govt Securities | 5% | $17.27 | 83.190 | | 22.987344 | | 1,912.32 |
| NO MVA 1 Year | 70% | $165.30 | | | | | 22,742.87 |
| | | | | | | | |
| Total | 100% | $3.87 | | | | | $29,931.73 |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Plus 6mo | | Not Elected | | | |
| Dollar Cost Averaging | | Not Elected | | | |
| DCA Earnings/Interest Only | | Not Elected | | | |
| Account Rebalancing | | Not Elected | | | |
| Automatic Income | | Not Elected | | | |
| InvestEase Contribution | | Not Elected | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

**Non-Standardized Returns**

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 3/31/03

Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)+ | -26.09% | -5.48% | 6.51% | 7.49% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)+ | -16.77% | -1.43% | 6.56% | 8.64% |
| Growth & Income (5/29/98) | -37.62% | ------ | ------ | -3.26% |

EXHIBIT 2
107

F096



**Fortis Masters+**
**Variable Annuity**

**Variable Annuity Quarterly  Statement**
**January 1, 2003 - March 31, 2003**
**Page 3**

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

**Non-Standardized Returns**

Period Ending 3/31/03                                        Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Income** | | | | |
| US Govt Securities (10/31/86)* | 10.04% | 5.77% | 5.03% | 5.81% |

*The underlying fund was active before the 05/01/96 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 3/31/03                                        Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -31.26% | -6.44% | 6.51% | 6.97% |
| Advisers | -22.60% | -2.44% | 6.56% | 7.40% |
| Growth & Income | -32.69% | ------ | ------ | -4.28% |
| US Govt Securities | 3.04% | 4.96% | 5.03% | 6.48% |

EXHIBIT 2
108

F097

06/30/2003

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2003 - June 30, 2003
Page 1

Is your portfolio's allocation still tailored to your goals? With the current economic downturn, a portfolio that was 80% in stocks and 20% in bonds in 2000 would be 64% stocks and 36% bonds by the end of 2002, much different from the mix that was customized to your specific goals. Meet with your Investment Professional now to review your financial situation. ("Stocks" are represented by the S&P 500 Index. "Bonds" are represented by the Lehman Bros. Aggregate Bond Index. Indexes are unavailable for direct investment.)

366004419

Cleona Bailey Shortridge          Contract Number  366004419
Po Box 83414                      Purchase Date    July 13, 1999
San Diego CA 92138 3414           Contract Type    Non-Qualified

                                  Owner Name       Cleona Bailey Shortridge
                                  Annuitant        Cleona Bailey Shortridge

Summary

|  | Quarter 4/1/03 - 6/30/03 | Year-To-Date 1/1/03 - 6/30/03 | Since Purchase 7/13/99 - 6/30/03 |
|---|---|---|---|
| Beginning Value | 29,931.73 | 29,927.86 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00 |
| Annuity Performance | 853.40 | 857.27 | 2,285.13 |
| Ending Value | $30,785.13 | $30,785.13 | $30,785.13 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for further information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday 9am to 2pm (Eastern time).

**EXHIBIT 2**
**109**

F098



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2003 - June 30, 2003
Page 2

Purchase Date   July 13, 1999
Contract Type   Non-Qualified
Product Version  Masters+ 2
Issuing Company  Fortis Benefits Ins Co - FBIC

Owner Name   Cleona Bailey Shortridge
Contract Number  366004419

## Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | $267.62 | 142.105 | | 14.525561 | | 2,064.15 |
| Advisers | 10% | $245.93 | 849.653 | | 3.202686 | | 2,721.17 |
| Growth & Income | 5% | $144.24 | 64.340 | | 17.858355 | | 1,149.01 |
| US Govt Securities | 5% | $27.51 | 83.190 | | 23.318069 | | 1,939.83 |
| NO NVA 1 Year | 70% | $168.10 | | | | | 22,910.97 |
| Total | 100% | $853.40 | | | | | $30,785.13 |

## Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

## Non-Standardized Returns

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 6/30/03

Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | -1.51% | -3.36% | 8.01% | 8.30% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 1.83% | -0.36% | 7.46% | 9.03% |
| Growth & Income (5/29/98) | -1.81% | -1.29% | ------ | -0.52% |

**EXHIBIT 2**
**110**

F099

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2003 - June 30, 2003
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

Non-Standardized Returns

Period Ending 6/30/03                                    Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Income | | | | |
| US Govt Securities (3/24/87)* | 8.04% | 5.64% | 4.93% | 5.81% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

Standardized Returns

These returns include deductions for separate account charges of 1.35%, total fund operating expenses,

Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 6/30/03                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | -8.40% | -4.35% | 8.01% | 7.80% |
| Advisers | -5.17% | -1.38% | 7.46% | 8.00% |
| Growth & Income | -8.69% | -2.30% | ------ | -1.11% |
| US Govt Securities | 1.04% | 4.83% | 4.93% | 6.47% |

**EXHIBIT 2**
**111**

F100

09/30/2003

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2003 - September 30, 2003
Page 1

In each of the 15 bear markets since 1952, the S&P 500 Index rose a minimum of 13% in the first year of recovery. Those short-term returns immediately after a bear market have become a significant part of the longer-term positive returns of bull markets that have followed. Ask your investment representative if your variable annuity portfolio is ready for the future. (Wiesenberger 1/02. S&P 500 Index is unavailable for direct investment. Past performance is not indicative of future results.)

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  366004419
Purchase Date    July 13, 1999
Contract Type    Non-Qualified

Owner Name       Cleona Bailey Shortridge
Annuitant        Cleona Bailey Shortridge

Summary

|  | Quarter<br>7/1/03 - 9/30/03 | Year-To-Date<br>1/1/03 - 9/30/03 | Since Purchase<br>7/13/99 - 9/30/03 |
|---|---|---|---|
| Beginning Value | 30,785.13 | 29,927.86 |  |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 252.00 | 1,109.27 | 2,537.13 |
| Ending Value | $31,037.13 | $31,037.13 | $31,037.13 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Annuity Information
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. For information on fixed interest rates, please call 1-888-488-2228, option #2. If you have additional questions, or for further information please call 1-800-862-6668 Monday - Thursday 8am to 7pm, Friday 8am to 6pm Saturday 9am to 2pm (Eastern time).

EXHIBIT 2
112

F101

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2003 - September 30, 2003
Page 2

| | |
|---|---|
| Purchase Date    July 13, 1999 | Owner Name  Cleona Bailey Shortridge |
| Contract Type    Non-Qualified | Contract Number  366004419 |
| Product Version  Masters+ 2 | |
| Issuing Company  Fortis Benefits Ins Co - FBIC | |

**Additional Information**

Tax Cost Basis Pre-TEFRA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    0.00
Tax Cost Basis Post-TEFRA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29,337.30

The Tax Cost Basis figures above are for illustration purposes only.
Tax Cost Basis (TCB): an option that allows clients to review tax information about investments made to non-qualified contracts.
Tax Cost Basis Pre-TEFRA: Payments to non-qualified annuities that were made prior to August 14, 1982. These payments may be withdrawn prior to earnings.
Tax Cost Basis Post-TEFRA: Payments to non-qualified annuities that were made on or after August 14, 1982. These payments can only be withdrawn after all earnings on a contract have been exhausted.
For additional questions about TCB, please consult your tax advisor.

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | $44.92 | 142.105 | | 14.841623 | | 2,109.07 |
| Advisers | 10% | $25.74 | 849.653 | | 3.232982 | | 2,746.91 |
| Growth & Income | 5% | $38.20 | 64.340 | | 18.452153 | | 1,187.21 |
| US Govt Securities | 5% | $28.10- | 83.190 | | 22.980290 | | 1,911.73 |
| NO MVA 1 Year | 70% | $171.24 | | | | | 23,082.21 |
| Total | 100% | $252.00 | | | | | $31,037.13 |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

**EXHIBIT 2**
113



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly  Statement
July 1, 2003 - September 30, 2003
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  365004419

**Non-Standardized Returns**

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 9/30/03                                      Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 22.21% | -0.80% | 8.03% | 8.31% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 14.19% | 0.78% | 7.13% | 8.97% |
| Growth & Income (5/29/98) | 21.89% | 1.00% | ------ | 0.12% |
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 1.53% | 4.46% | 4.61% | 5.63% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses, Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 9/30/03                                      Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 15.21% | -1.82% | 8.03% | 7.82% |
| Advisers | 7.19% | -0.21% | 7.13% | 7.94% |
| Growth & Income | 14.89% | 0.02% | ------ | -0.45% |
| US Govt Securities | -5.47% | 3.61% | 4.61% | 6.27% |

EXHIBIT 2
114

F103

12/31/2003

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2003 - December 31, 2003
Page 1

Please note that the Hartford Growth and Income HLS Fund has been renamed the Hartford Disciplined Equity
HLS Fund, and that it will invest at least 80% of its assets in equity securities. Ask your investment
representative whether the Hartford Disciplined Equity HLS Fund fits into your overall diversified
portfolio.

366004419

Cleona Bailey Shortridge                   Contract Number  366004419
Po Box 83414                               Purchase Date    July 13, 1999
San Diego CA 92138 3414                    Contract Type    Non-Qualified

                                           Owner Name       Cleona Bailey Shortridge
                                           Annuitant        Cleona Bailey Shortridge

Summary

|  | Quarter<br>10/1/03 - 12/31/03 | Year-To-Date<br>1/1/03 - 12/31/03 | Since Purchase<br>7/13/99 - 12/31/03 |
|---|---|---|---|
| Beginning Value | 31,037.13 | 29,927.86 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00 |
| Annuity Performance | 789.41 | 1,898.68 | 3,326.54 |
| Ending Value | $31,826.54 | $31,826.54 | $31,826.54 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if
applicable.
All information about your variable annuity, including charges and expenses, is described in your
prospectus. Please read it carefully and keep it for your records. Our hours of operation are
%%PHONE1

EXHIBIT 2
115

F104



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2003 - December 31, 2003
Page 2

Purchase Date   July 13, 1999                    Owner Name   Cleona Bailey Shortridge
Contract Type   Non-Qualified                    Contract Number  366004419
Product Version  Masters+ 2
Issuing Company  Fortis Benefits Ins Co - FBIC

## Additional Information

Tax Cost Basis Pre-TEFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    0.00
Tax Cost Basis Post-TEFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29,337.30

The Tax Cost Basis (TCB) figures are for illustration purposes only.
Tax Cost Basis Pre-TEFRA: Payments to non-qualified annuities that were made prior to August 14, 1982.
These payments are non-taxable and may be withdrawn prior to earnings.
Tax Cost Basis Post-TEFRA: Payments to non-qualified annuities that were made on or after August 14,
1982. These payments are non-taxable and can only be withdrawn after all earnings on a contract have been
exhausted.
For additional questions about TCB, please consult your tax advisor.

## Value By Investment Choice

|  | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | 246.16 | 142.105 |  | 16.573850 |  | 2,355.23 |
| Advisers | 10% | 223.01 | 849.653 |  | 3.495449 |  | 2,969.92 |
| Htfd DisplndEquity | 5% | 149.38 | 64.340 |  | 20.773885 |  | 1,336.59 |
| US Govt Securities | 5% | 1.96- | 83.190 |  | 22.956680 |  | 1,909.77 |
| NO MVA 1 Year | 70% | 172.82 |  |  |  |  | 23,255.03 |
| Total | 100% | $789.41 |  |  |  |  | $31,826.54 |

## Service Options

|  | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs |  | Not Enrolled |  |  |  |
| Asset Allocation |  | Not Enrolled |  |  |  |
| Automatic Income |  | Not Enrolled |  |  |  |
| InvestEase Contribution |  | Not Enrolled |  |  |  |

Please review the information on this statement carefully and report any discrepancies within 30 days.

EXHIBIT 2
116

F105



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2003 - December 31, 2003
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

**Non-Standardized Returns**

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

Period Ending 12/31/03                                     Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 26.42% | -2.35% | 9.02% | 8.89% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 16.90% | -0.01% | 7.75% | 9.26% |
| Htfd DisplndEquity (5/29/98) | 27.09% | -0.83% | ------ | 2.26% |
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 0.78% | 4.50% | 4.62% | 5.53% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses, Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

Period Ending 12/31/03                                     Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 19.42% | -3.34% | 9.02% | 8.43% |
| Advisers | 9.90% | -1.03% | 7.75% | 8.33% |
| Htfd DisplndEquity | 20.09% | -1.84% | ------ | 1.77% |
| US Govt Securities | -6.22% | 3.65% | 4.62% | 6.16% |

EXHIBIT 2
117

F106

03/31/2004

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2004 - March 31, 2004
Page 1

Has it been awhile since you reviewed your long-term financial plan with your investment representative? If so, this may be a good time to renew that relationship. Investment representatives can help determine whether you are saving too little, or too conservatively. They can suggest how to help other family members, such as contributing to a child's or grandchild's college fund. And a general financial checkup can provide you with peace of mind that your long-term goals are still on track.

366004419

Cleona Bailey Shortridge          Contract Number  366004419
Po Box 83414                      Purchase Date    July 13, 1999
San Diego CA 92138 3414           Contract Type    Non-Qualified

                                  Owner Name       Cleona Bailey Shortridge
                                  Annuitant        Cleona Bailey Shortridge

Summary

|  | Quarter<br>1/1/04 - 3/31/04 | Year-To-Date<br>1/1/04 - 3/31/04 | Since Purchase<br>7/13/99 - 3/31/04 |
|---|---|---|---|
| Beginning Value | 31,826.54 | 31,826.54 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders+ | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 245.94 | 245.94 | 3,572.48 |
| Ending Value | $32,072.48 | $32,072.48 | $32,072.48 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services
1-800-777-7938  Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are %%PHONE1

**EXHIBIT 2**
**118**

F107



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2004 - March 31, 2004
Page 2

| | |
|---|---|
| Purchase Date July 13, 1999 | Owner Name Cleona Bailey Shortridge |
| Contract Type Non-Qualified | Contract Number 366004419 |
| Product Version Masters+ 2 | |
| Issuing Company Fortis Benefits Ins Co - FBIC | |

**Additional Information**

Tax Cost Basis Pre-TEFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    0.00
Tax Cost Basis Post-TEFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29,337.30

The Tax Cost Basis (TCB) figures are for illustration purposes only.
Tax Cost Basis Pre-TEFRA: Payments to non-qualified annuities that were made prior to August 14, 1982.
These payments are non-taxable and may be withdrawn prior to earnings.
Tax Cost Basis Post-TEFRA: Payments to non-qualified annuities that were made on or after August 14,
1982. These payments are non-taxable and can only be withdrawn after all earnings on a contract have been
exhausted.
For additional questions about TCB, please consult your tax advisor.

**Value By Investment Choice**

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | 29.25 | 142.105 | | 16.779730 | | 2,384.48 |
| Advisers | 10% | 3.43 | 849.653 | | 3.499482 | | 2,973.35 |
| Rtfd DisplndEquity | 5% | 11.91 | 64.340 | | 20.959040 | | 1,348.50 |
| US Govt Securities | 5% | 31.28 | 83.190 | | 23.332784 | | 1,941.05 |
| NO MVA 1 Year | 70% | 170.07 | | | | | 23,425.10 |
| Total | 100% | $245.94 | | | | | $32,072.48 |

**Service Options**

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

**EXHIBIT 2**
**119**

F108



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
January 1, 2004 - March 31, 2004
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

**Non-Standardized Returns**

Performance returns for Fortis Masters+ Variable Annuity show returns after deductions for total fund operating expenses and separate account charges of 1.35%. Returns for individual accounts may vary from figures shown depending upon each individual's contract charges and when premium payments were deposited in the sub-account. Total return includes any capital appreciation, realized gains, plus dividend or interest income. Results shown are not a guarantee of future performance and do not take into account personal income taxes and capital gain taxes where applicable. The investment return and principal value of an investment will fluctuate so that when units are redeemed they may be worth more or less than their original cost.

| Period Ending 3/31/04 | | Average Annual Total Return | | |
|---|---|---|---|---|
| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
| **Growth** | | | | |
| Index (5/1/87)* | 32.73% | -2.96% | 9.63% | 8.84% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 20.12% | -0.49% | 8.17% | 9.16% |
| Htfd DispIndEquity (5/29/98) | 34.21% | -1.42% | ------ | 2.32% |
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 1.50% | 5.13% | 5.32% | 5.55% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

**Standardized Returns**

These returns include deductions for separate account charges of 1.35%, total fund operating expenses, Contingent Deferred Sales Charges up to a maximum of 7%, and are based upon a $1,000 investment.

| Period Ending 3/31/04 | | Average Annual Total Return | | |
|---|---|---|---|---|
| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
| Index | 25.73% | -3.95% | 9.63% | 8.38% |
| Advisers | 13.12% | -1.50% | 8.17% | 8.21% |
| Htfd DispIndEquity | 27.21% | -2.42% | ------ | 1.85% |
| US Govt Securities | -5.50% | 4.30% | 5.32% | 6.17% |

**EXHIBIT 2**
**120**

F109

06/30/2004

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2004 - June 30, 2004
Page 1

Adding to your variable annuity can be an effective way to help you reach your goals. And while there are no guarantees to investing, even small additions can potentially have a significant effect over time. Ask your investment representative about programs available in your contract that can make adding to your annuity easy and convenient.

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

Contract Number  366004419
Purchase Date  July 13, 1999
Contract Type  Non-Qualified

Owner Name  Cleona Bailey Shortridge
Annuitant  Cleona Bailey Shortridge

Summary

| | Quarter 4/1/04 - 6/30/04 | Year-To-Date 1/1/04 - 6/30/04 | Since Purchase 7/13/99 - 6/30/04 |
|---|---|---|---|
| Beginning Value | 32,072.48 | 31,826.54 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 172.40 | 418.34 | 3,744.88 |
| Ending Value | $32,244.88 | $32,244.88 | $32,244.88 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday - Thursday 8am to 7pm, Friday 8am to 6pm and Saturday 9am to 2pm (Eastern time).

EXHIBIT 2
121

F110



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
April 1, 2004 - June 30, 2004
Page 2

Purchase Date    July 13, 1999                    Owner Name    Cleona Bailey Shortridge
Contract Type    Non-Qualified                    Contract Number    366004419
Product Version    Masters+ 2
Issuing Company    Fortis Benefits Ins Co - FBIC

## Additional Information

Tax Cost Basis Pre-TEFRA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    0.00
Tax Cost Basis Post-TEFRA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29,337.30

The Tax Cost Basis (TCB) figures are for illustration purposes only.
Tax Cost Basis Pre-TEFRA: Payments to non-qualified annuities that were made prior to August 14, 1982.
These payments are non-taxable and may be withdrawn prior to earnings.
Tax Cost Basis Post-TEFRA: Payments to non-qualified annuities that were made on or after August 14,
1982. These payments are non-taxable and can only be withdrawn after all earnings on a contract have been
exhausted.
For additional questions about TCB, please consult your tax advisor.

## Value By Investment Choice

|  | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | 29.52 | 142.105 |  | 16.987438 |  | 2,414.00 |
| Advisers | 10% | 10.74 | 849.653 |  | 3.512125 |  | 2,984.09 |
| Htfd DisplndEquity | 5% | 8.06 | 64.340 |  | 21.084313 |  | 1,356.56 |
| US Govt Securities | 5% | 48.93- | 83.190 |  | 22.744546 |  | 1,892.12 |
| NO MVA 1 Year | 70% | 173.01 |  |  |  |  | 23,598.11 |
| Total | 100% | $172.40 |  |  |  |  | $32,244.88 |

## Service Options

|  | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs |  | Not Enrolled |  |  |  |
| Asset Allocation |  | Not Enrolled |  |  |  |
| Automatic Income |  | Not Enrolled |  |  |  |
| InvestEase Contribution |  | Not Enrolled |  |  |  |

Please review the information on this statement carefully and report any discrepancies within 30 days.

For fund performance for the quarter ending June 30, 2004, please visit our website at
www.hartfordinvestor.com. Simply click on "Annuity Contract Access", found under the "Account Access"
heading on the left-hand navigation, and login. Or you can call our Automated Voice Services
toll-free number at 1-888-488-2228 and follow the voice prompts for fund performance.

**EXHIBIT 2**
**122**

F111

09/30/2004

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2004 - September 30, 2004
Page 1

A key benefit of your variable annuity is the many investment options it offers. Reviewing your particular progress is important. But it's also valuable to see how other investment choices are doing, and to be able to take advantage of those choices. Talk to your investment representative about the mix that's right for you. And to review the performance of all your options, log onto our website (www.hartfordinvestor.com) or call our Automated Voice Services toll-free number at 1-888-488-2228.

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

| | |
|---|---|
| Contract Number | 366004419 |
| Purchase Date | July 13, 1999 |
| Contract Type | Non-Qualified |
| | |
| Owner Name | Cleona Bailey Shortridge |
| Annuitant | Cleona Bailey Shortridge |

## Summary

| | Quarter 7/1/04 - 9/30/04 | Year-To-Date 1/1/04 - 9/30/04 | Since Purchase 7/13/99 - 9/30/04 |
|---|---|---|---|
| Beginning Value | 32,244.88 | 31,826.54 | 0.00 |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 43.35 | 461.69 | 3,788.23 |
| Ending Value | $32,288.23 | $32,288.23 | $32,288.23 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday - Thursday 8am to 7pm, Friday 8am to 6pm and Saturday 9am to 2pm (Eastern time).

**EXHIBIT 2**
123

F112

Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2004 - September 30, 2004
Page 2

| | |
|---|---|
| Purchase Date July 13, 1999 | Owner Name Cleona Bailey Shortridge |
| Contract Type Non-Qualified | Contract Number 366004419 |
| Product Version Masters+ 2 | |
| Issuing Company Fortis Benefits Ins Co - FBIC | |

Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | 54.87- | 142.105 | | 16.601338 | | 2,359.13 |
| Advisers | 10% | 66.43- | 849.653 | | 3.433943 | | 2,917.66 |
| Htfd DisplndEquity | 5% | 44.06- | 64.340 | | 20.399492 | | 1,312.50 |
| US Govt Securities | 5% | 31.99 | 83.190 | | 23.129085 | | 1,924.11 |
| NO MVA 1 Year | 70% | 176.72 | | | | | 23,774.83 |
| Total | 100% | $43.35 | | | | | $32,288.23 |

Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS. The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

**EXHIBIT 2**
**124**



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
July 1, 2004 - September 30, 2004
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

## Non-Standardized Returns

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account sales charges or charges for any optional benefits. If the sales charge and charges for optional benefits were reflected, performance results would be lower.

Period Ending 9/30/04                                    Average Annual Total Return

| Sub-Account   (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Growth |  |  |  |  |
| Index (5/1/87)* | 11.86% | -3.07% | 9.03% | 8.51% |
| Growth & Income |  |  |  |  |
| Advisers (3/31/83)* | 6.22% | -0.68% | 7.89% | 8.84% |
| Htfd DisplndEquity (5/29/98) | 10.55% | -2.01% | ------ | 1.70% |
| Income |  |  |  |  |
| US Govt Securities (3/24/87)* | 0.65% | 5.17% | 5.55% | 5.34% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

## Standardized Returns

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

Period Ending 9/30/04                                    Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 4.86% | -4.06% | 9.03% | 8.06% |
| Advisers | -0.78% | -1.70% | 7.89% | 7.84% |
| Htfd DisplndEquity | 3.55% | -3.01% | ------ | 1.55% |
| US Govt Securities | -6.35% | 4.34% | 5.55% | 5.93% |

**EXHIBIT 2**
**125**

F114

12/31/2004

**Fortis Masters+**
**Variable Annuity**

Variable Annuity Quarterly Statement
October 1, 2004 - December 31, 2004
Page 1

Are all of your retirement dollars working hard for you? Or have current events convinced you to keep some of your retirement money on the sidelines and out of the markets? Considering that retirement can last 20 years or more, it's critical that your long-term investments outpace both inflation and taxes. Don't let today's news jeopardize tomorrow's goals. Ask your investment representative about the best strategy for all your retirement money.

366004419

Cleona Bailey Shortridge
Po Box 83414
San Diego CA 92138 3414

| | |
|---|---|
| Contract Number | 366004419 |
| Purchase Date | July 13, 1999 |
| Contract Type | Non-Qualified |
| | |
| Owner Name | Cleona Bailey Shortridge |
| Annuitant | Cleona Bailey Shortridge |

Summary

| | Quarter 10/1/04 - 12/31/04 | Year-To-Date 1/1/04 - 12/31/04 | Since Purchase 7/13/99 - 12/31/04 |
|---|---|---|---|
| Beginning Value | 32,288.23 | 31,826.54 | |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders* | 0.00 | 0.00 | 1,500.00- |
| Annuity Performance | 622.14 | 1,083.83 | 4,410.37 |
| Ending Value | $32,910.37 | $32,910.37 | $32,910.37 |

For Assistance, Contact Either:
Your Investment Professional
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

Investment Products Services
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com

1-888-488-2228  Automated Voice Services
1-800-862-6668  Client Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday - Thursday 8am to 7pm, Friday 8am to 6pm and Saturday 9am to 2pm (Eastern time).

**EXHIBIT 2**
126

F115



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2004 - December 31, 2004
Page 2

| | | | | |
|---|---|---|---|---|
| Purchase Date | July 13, 1999 | | Owner Name | Cleona Bailey Shortridge |
| Contract Type | Non-Qualified | | Contract Number | 366004419 |
| Product Version | Masters+ 2 | | | |
| Issuing Company | Fortis Benefits Ins Co - FBIC | | | |

## Value By Investment Choice

| | Future Contribution Allocation | Quarterly Performance | Units | x | Unit Value | = | Total Value |
|---|---|---|---|---|---|---|---|
| Index | 10% | 206.04 | 142.105 | | 18.051207 | | 2,565.17 |
| Advisers | 10% | 122.12 | 849.653 | | 3.577676 | | 3,039.78 |
| Htfd DisplndEquity | 5% | 117.07 | 64.340 | | 22.218925 | | 1,429.57 |
| US Govt Securities | 5% | 0.94- | 83.190 | | 23.117766 | | 1,923.17 |
| NO MVA 1 Year | 70% | 177.85 | | | | | 23,952.68 |
| | | | | | | | |
| Total | 100% | $622.14 | | | | | $32,910.37 |

## Service Options

| | Established Date | Enrollment Status | Amount Or Date | Frequency | Next Occurrence |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS. The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

EXHIBIT 2
127

F116



Fortis Masters+
Variable Annuity

Variable Annuity Quarterly Statement
October 1, 2004 - December 31, 2004
Page 3

Owner Name  Cleona Bailey Shortridge
Contract Number  366004419

### Non-Standardized Returns

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund
operating expenses. Performance results shown below do not take into account charges for any optional
benefits. If charges for optional benefits were reflected, performance results would be lower.
Period Ending 12/31/04                                      Average Annual Total Return

| Sub-Account    (Fund Inception Date) | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| **Growth** | | | | |
| Index (5/1/87)* | 8.91% | -4.04% | 10.00% | 8.90% |
| **Growth & Income** | | | | |
| Advisers (3/31/83)* | 2.35% | -1.28% | 8.45% | 8.94% |
| Htfd DisplndEquity (5/29/98) | 6.96% | -3.12% | ------ | 2.96% |
| **Income** | | | | |
| US Govt Securities (3/24/87)* | 0.70% | 5.34% | 5.54% | 5.26% |

*The underlying fund was active before the 05/01/98 inception date of Fortis Masters+ Variable Annuity.

### Standardized Returns

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales
Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund
operating expenses. Performance results shown below do not take into account charges for any optional
benefits. If charges for optional benefits were reflected, performance results would be lower.
Period Ending 12/31/04                                      Average Annual Total Return

| Sub-Account | 1 Year | 5 Years | 10 Years | Since Inception |
|---|---|---|---|---|
| Index | 1.91% | -5.02% | 10.00% | 8.46% |
| Advisers | -4.65% | -2.29% | 8.45% | 7.97% |
| Htfd DisplndEquity | -0.04% | -4.11% | ------ | 2.83% |
| US Govt Securities | -6.30% | 4.52% | 5.54% | 5.84% |

**EXHIBIT 2**
**128**

F117

# FORTIS MASTERS +
# VARIABLE ANNUITY
## VARIABLE ANNUITY QUARTERLY STATEMENT
### JANUARY 1, 2005 - MARCH 31, 2005
#### PAGE 1 OF 3



**FORTIS**

Are you saving enough for a comfortable retirement? Studies show that nearly one in every three workers worry that they won't have enough to retire when they want. Healthier lifestyles mean retirements can be long...and expensive. Talk to your investment professional about whether you should increase your annual contribution.

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

CONTRACT NUMBER 366004419
PURCHASE DATE July 13, 1999
CONTRACT TYPE Non-Qualified

OWNER Cleona Bailey Shortridge
ANNUITANT Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 1/1/05 - 3/31/05 | YEAR-TO-DATE 1/1/05 - 3/31/05 | SINCE PURCHASE 7/13/99 - 3/31/05 |
|---|---|---|---|
| Beginning Value | 32,910.37 | 32,910.37 |  |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders * | 0.00 | 0.00 | -1,500.00 |
| Annuity Performance | 0.13 | 0.13 | 4,410.50 |
| **Ending Value** | **$32,910.50** | **$32,910.50** | **$32,910.50** |

## YOUR ANNUITY AT A GLANCE



- 73.3% NO MVA 1 Year
- 9.0% Advisers
- 7.6% Index
- 5.8% US Govt Securities
- 4.3% Htfd DispIndEquity

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula  CA  92590

**Investment Products Services**
PO Box 5085
Hartford, CT  06102-5085
www.hartfordinvestor.com
**1-888-488-2228** Automated Voice Services
**1-800-862-6668** Client Services
**1-800-777-7938** Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 2**
**129**

F118



**PAGE 2 OF 3**

| | | | |
|---|---|---|---|
| **PURCHASE DATE** July 13, 1999 | | **OWNER** Cleona Bailey Shortridge | |
| **CONTRACT TYPE** Non-Qualified | | **CONTRACT NUMBER** 366004419 | |
| **PRODUCT VERSION** Masters+ 2 | | | |
| **ISSUING COMPANY** Fortis Benefits Ins Co - FBIC | | | |

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| Index | 10% | -65.81 | 142.105 | | 17.588120 | | 2,499.36 |
| Advisers | 10% | -64.05 | 849.653 | | 3.502286 | | 2,975.73 |
| Htfd DispIndEquity | 5% | -29.81 | 64.340 | | 21.755737 | | 1,399.76 |
| US Govt Securities | 5% | -15.29 | 83.190 | | 22.933953 | | 1,907.88 |
| NO MVA 1 Year | 70% | 175.09 | | | | | 24,127.77 |
| **Total** | **100%** | **$0.13** | | | | | **$32,910.50** |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

| PERIOD ENDING 3/31/05 | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Growth Asset Class* | | | | |
| Index (5/1/87)* | 4.82% | -4.88% | 8.75% | 8.61% |
| *Growth & Income Asset Class* | | | | |
| Advisers (3/31/83)* | 0.08% | -2.10% | 7.45% | 8.73% |
| Htfd DispIndEquity (5/29/98) | 3.80% | -4.32% | —— | 2.53% |
| *Income Asset Class* | | | | |
| US Govt Securities (3/24/87)* | -1.71% | 4.86% | 4.96% | 5.14% |

* The underlying fund was active before the 05/01/91 inception date of Fortis Masters+ Variable Annuity.

**EXHIBIT 2**

F119



# FORTIS MASTERS +
## VARIABLE ANNUITY
**VARIABLE ANNUITY QUARTERLY STATEMENT**
**JANUARY 1, 2005 - MARCH 31, 2005**
PAGE 3 OF 3



**OWNER** Cleona Bailey Shortridge
**CONTRACT NUMBER** 366004419

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

**PERIOD ENDING 3/31/05**                    AVERAGE ANNUAL TOTAL RETURN

| SUB-ACCOUNT | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
|---|---|---|---|---|
| Index | -2.18% | -5.85% | 8.75% | 8.17% |
| Advisers | -6.92% | -3.10% | 7.45% | 7.72% |
| Htfd DispIndEquity | -3.20% | -5.30% | ——— | 2.40% |
| US Govt Securities | -8.59% | 4.02% | 4.96% | 5.71% |

Neither the Hartford nor its agents or employees provide financial, tax, legal or accounting advice. You should consult a qualified advisor for guidance in these matters.

**EXHIBIT 2**
**131**

F120

## FORTIS MASTERS +
## VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### APRIL 1, 2005 - JUNE 30, 2005
#### PAGE 1 OF 3


FORTIS
Solid partners, flexible solutions™

Are you saving enough for a comfortable retirement? Studies show that nearly one in every three workers worries that they won't have enough to retire on when they want. Healthier lifestyles mean retirements can be long…and expensive. Better to be safe than sorry. Talk to your investment representative about whether you're on track to meet your goals. And if not, create a financial plan together to keep you on track.

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

CONTRACT NUMBER 366004419
PURCHASE DATE July 13, 1999
CONTRACT TYPE Non-Qualified

OWNER Cleona Bailey Shortridge
ANNUITANT Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 4/1/05 - 6/30/05 | YEAR-TO-DATE 1/1/05 - 6/30/05 | SINCE PURCHASE 7/13/99 - 6/30/05 |
|---|---|---|---|
| Beginning Value | 32,910.50 | 32,910.50 |  |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders * | 0.00 | 0.00 | -1,500.00 |
| Annuity Performance | 332.72 | 332.85 | 4,743.22 |
| **Ending Value** | **$33,243.22** | **$33,243.22** | **$33,243.22** |

## YOUR ANNUITY AT A GLANCE



73.2% NO MVA 1 Year
9.1% Advisers
7.6% Index
5.8% US Govt Securities
4.3% Htfd DispIndEquity

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr Ste 227
Temecula CA 92590

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
**1-888-488-2228** Automated Voice Services
**1-800-862-6668** Client Services
**1-800-777-7938** Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 2**
**132**

F121

PAGE 2 OF 3

PURCHASE DATE July 13, 1999
CONTRACT TYPE Non-Qualified
PRODUCT VERSION Masters+ 2
ISSUING COMPANY Fortis Benefits Ins Co - FBIC

OWNER Cleona Bailey Shortridge
CONTRACT NUMBER 366004419

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| Index | 10% | 23.02 | 142.105 | | 17.750130 | | 2,522.38 |
| Advisers | 10% | 64.02 | 849.653 | | 3.577641 | | 3,039.75 |
| Htfd DsplndEquity | 5% | 36.91 | 64.340 | | 22.329405 | | 1,436.67 |
| US Govt Securities | 5% | 30.37 | 83.190 | | 23.299092 | | 1,938.25 |
| NO MVA 1 Year | 70% | 178.40 | | | | | 24,306.17 |
| Total | 100% | $332.72 | | | | | $33,243.22 |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 6/30/05

| | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Growth Asset Class* | | | | |
| Index (5/1/87)* | 4.49% | -4.11% | 7.92% | 8.54% |
| *Growth & Income Asset Class* | | | | |
| Advisers (3/31/83)* | 1.87% | -1.25% | 6.96% | 8.73% |
| Htfd DsplndEquity (5/29/98) | 5.91% | -3.21% | ------ | 2.82% |
| *Income Asset Class* | | | | |
| US Govt Securities (3/24/87)* | 2.44% | 4.90% | 4.57% | 5.15% |

* The underlying fund was active before the 05/01/91 inception date of Fortis Masters+ Variable Annuity.

**EXHIBIT 2**
**133**

F122



# FORTIS MASTERS +
# VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### APRIL 1, 2005 - JUNE 30, 2005
PAGE 3 OF 3



**OWNER**  Cleona Bailey Shortridge
**CONTRACT NUMBER**  366004419

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

**PERIOD ENDING 6/30/05**

| SUB-ACCOUNT | AVERAGE ANNUAL TOTAL RETURN | | | |
| --- | --- | --- | --- | --- |
| | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| Index | -2.51% | -5.08% | 7.92% | 8.11% |
| Advisers | -5.13% | -2.26% | 6.96% | 7.74% |
| Htfd DispIndEquity | -1.09% | -4.20% | ------ | 2.82% |
| US Govt Securities | -4.56% | 4.06% | 4.57% | 5.72% |

## PLEASE NOTE

Checks submitted to The Hartford may be converted to electronic debit entries. If this method of collecting your funds is used, the electronic debit for the original check amount may be posted to your bank account as early as the day after the check has been received by The Hartford.

If you choose to opt out of the process described above please send a written request to Hartford Life, PO BOX 5085, Hartford CT 06102-5085, requesting that your check not be converted to an electronic debit. The written request should also include your contract number and your current contact information.

Neither the Hartford nor its agents or employees provide financial, tax, legal or accounting advice. You should consult a qualified advisor for guidance in these matters.

**EXHIBIT 2**
**134**

F123



# MASTERS +
# VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### JULY 1, 2005 - SEPTEMBER 30, 2005
#### PAGE 1 OF 3

Are you saving enough for a comfortable retirement? Studies show that nearly one in three workers worries that they won't have enough. Better to be safe than sorry. Talk to your investment representative about whether you're on track.

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

**CONTRACT NUMBER** 366004419
**PURCHASE DATE** July 13, 1999
**CONTRACT TYPE** Non-Qualified

**OWNER** Cleona Bailey Shortridge
**ANNUITANT** Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER<br>7/1/05 - 9/30/05 | YEAR-TO-DATE<br>1/1/05 - 9/30/05 | SINCE PURCHASE<br>7/13/99 - 9/30/05 |
|---|---|---|---|
| Beginning Value | 33,243.22 | 32,910.37 |  |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders * | 0.00 | 0.00 | -1,500.00 |
| Annuity Performance | 409.18 | 742.03 | 5,152.40 |
| **Ending Value** | **$33,652.40** | **$33,652.40** | **$33,652.40** |

## YOUR ANNUITY AT A GLANCE



72.9% NO MVA 1 Year
9.3% Advisers
7.7% Index
5.7% US Govt Securities
4.4% Htfd DisplndEquity

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
John P Dubots
WOODBURY FNCL SVCS INC
27570 Commerce Cntr Dr ste 227
Temecula CA 92590

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
**1-888-488-2228**   Automated Voice Services
**1-800-862-6668**   Client Services
**1-800-777-7938**   Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 2**
**135**

F124

PAGE 2 OF 3

| | | |
|---|---|---|
| PURCHASE DATE | July 13, 1999 | |
| CONTRACT TYPE | Non-Qualified | |
| PRODUCT VERSION | Masters+ 2 | |
| ISSUING COMPANY | Union Security Ins Co - USIC | |

OWNER Cleona Bailey Shortridge
CONTRACT NUMBER 366004419

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| US Govt Securities | 5% | -13.35 | 83.190 | | 23.138598 | | 1,924.90 |
| NO MVA 1 Year | 70% | 181.93 | | | | | 24,488.10 |
| Advisers | 10% | 101.69 | 849.653 | | 3.697316 | | 3,141.44 |
| Htfd DispIndEquity | 5% | 59.32 | 64.340 | | 23.251262 | | 1,495.99 |
| Index | 10% | 79.59 | 142.105 | | 18.310219 | | 2,601.97 |
| **Total** | **100%** | **$409.18** | | | | | **$33,652.40** |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

| | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| PERIOD ENDING 9/30/05 | | | | |
| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| *Fixed Asset Class* | | | | |
| US Govt Securities (3/24/87)* | 0.04% | 4.18% | 4.34% | 5.04% |
| *U.S. Equity Asset Class* | | | | |
| Advisers (3/31/83)* | 7.67% | -0.52% | 6.72% | 8.79% |
| Htfd DispIndEquity (5/29/98) | 13.98% | -2.32% | ------ | 3.29% |
| Index (5/1/87)* | 10.29% | -3.23% | 7.49% | 8.60% |

* The underlying fund was active before the 05/01/91 inception date of Masters+ Variable Annuity.

**EXHIBIT 2**
**136**

F125



# MASTERS +
# VARIABLE ANNUITY
## VARIABLE ANNUITY QUARTERLY STATEMENT
### JULY 1, 2005 - SEPTEMBER 30, 2005
#### PAGE 3 OF 3

**OWNER** Cleona Bailey Shortridge
**CONTRACT NUMBER** 366004419

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

**PERIOD ENDING 9/30/05**

| | AVERAGE ANNUAL TOTAL RETURN | | | |
|---|---|---|---|---|
| SUB-ACCOUNT | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| US Govt Securities | -6.96% | 3.32% | 4.34% | 5.59% |
| Advisers | 0.67% | -1.53% | 6.72% | 7.83% |
| Htfd DispIndEquity | 6.98% | -3.32% | —— | 3.29% |
| Index | 3.29% | -4.22% | 7.49% | 8.18% |

## PLEASE NOTE

This information is written in connection with the promotion or marketing of the matter(s) addressed in this material. The information cannot be used or relied upon for the purpose of avoiding IRS penalties. Neither The Hartford, nor its agents or employees, provide tax or legal advice. As with all matters of a tax or legal nature, you should consult your own tax or legal counsel for advice.

"The Hartford" is The Hartford Financial Services Group, Inc., and its subsidiaries, including the issuing companies of Hartford Life Insurance Company and Hartford Life and Annuity Insurance Company.

Continuous or periodic investment plans neither ensure a profit nor protect against a loss in declining markets. Because these programs involve continuous investing regardless of fluctuating price levels, you should carefully consider your financial ability to continue investing through periods of fluctuating market prices.

Checks submitted to The Hartford may be converted to electronic debit entries. If this method of collecting your funds is used, the electronic debit for the original check amount may be posted to your bank account as early as the day after the check has been received by The Hartford.

If you choose to opt out of the process described above please send a written request to Hartford Life, PO BOX 5085, Hartford CT 06102-5085, requesting that your check not be converted to an electronic debit. The written request should also include your contract number and your current contact information.

Neither The Hartford nor its agents or employees provide financial, tax, legal or accounting advice. You should consult a qualified advisor for guidance in these matters.

This product issued by Union Security Insurance Company, Administered by Hartford Life Insurance Company.

**EXHIBIT 2**
**137**

F126



## MASTERS +
## VARIABLE ANNUITY
**VARIABLE ANNUITY QUARTERLY STATEMENT**
**OCTOBER 1, 2005 - DECEMBER 31, 2005**
PAGE 1 OF 3

Are you saving enough for a comfortable retirement? Studies show that nearly one in three workers worries that they won't have enough. As the New Year begins, isn't this a good time to review whether you're on track to reach your financial goals?

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138 3414

**CONTRACT NUMBER** 366004419
**PURCHASE DATE** July 13, 1999
**CONTRACT TYPE** Non-Qualified

**OWNER** Cleona Bailey Shortridge
**ANNUITANT** Cleona Bailey Shortridge

## SUMMARY

|  | QUARTER 10/1/05 - 12/31/05 | YEAR-TO-DATE 1/1/05 - 12/31/05 | SINCE PURCHASE 7/13/99 - 12/31/05 |
|---|---|---|---|
| Beginning Value | 33,652.40 | 32,910.37 |  |
| Premium Payment | 0.00 | 0.00 | 30,000.00 |
| Total Surrenders * | 0.00 | 0.00 | -1,500.00 |
| Annuity Performance | 307.66 | 1,049.69 | 5,460.06 |
| **Ending Value** | **$33,960.06** | **$33,960.06** | **$33,960.06** |

## YOUR ANNUITY AT A GLANCE



- 72.6% NO MVA 1 Year
- 9.5% Advisers
- 7.8% Index
- 5.7% US Govt Securities
- 4.4% Htfd DispIndEquity

## FOR ASSISTANCE, CONTACT EITHER:

**Your Investment Professional**
Woodbury Financial Svcs Inc
500 BIELENBERG DR
Woodbury MN 55125

**Investment Products Services**
PO Box 5085
Hartford, CT 06102-5085
www.hartfordinvestor.com
**1-888-488-2228**    Automated Voice Services
1-800-862-6668    Client Services
1-800-777-7938    Producer Services

* Total Surrenders include Contingent Deferred Sales Charges and Annual Maintenance Fees, if applicable.
All information about your variable annuity, including charges and expenses, is described in your prospectus. Please read it carefully and keep it for your records. Our hours of operation are Monday-Thursday 8:00 a.m. to 7:00 p.m. and Friday 9:15 a.m. to 6:00 p.m. (Eastern time).

**EXHIBIT 2**
**138**

F127

PAGE 2 OF 3

PURCHASE DATE July 13, 1999                          OWNER Cleona Bailey Shortridge
CONTRACT TYPE Non-Qualified              CONTRACT NUMBER 366004419
PRODUCT VERSION Masters+ 2
ISSUING COMPANY Union Security Ins Co - USIC

## VALUE BY INVESTMENT CHOICE

| | FUTURE CONTRIBUTION ALLOCATION | QUARTERLY PERFORMANCE | UNITS | X | UNIT VALUE | = | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| US Govt Securities | 5% | 1.96 | 83.190 | | 23.162151 | | 1,926.86 |
| NO MVA 1 Year | 70% | 181.15 | | | | | 24,669.25 |
| Advisers | 10% | 74.59 | 849.653 | | 3.785112 | | 3,216.03 |
| Htfd DispIndEquity | 5% | 7.21 | 64.340 | | 23.363372 | | 1,503.20 |
| Index | 10% | 42.75 | 142.105 | | 18.611062 | | 2,644.72 |
| Total | 100% | $307.66 | | | | | $33,960.06 |

## SERVICE OPTIONS

| | ESTABLISHED DATE | ENROLLMENT STATUS | AMOUNT OR DATE | FREQUENCY | NEXT OCCURRENCE |
|---|---|---|---|---|---|
| Dollar Cost Averaging Programs | | Not Enrolled | | | |
| Asset Allocation | | Not Enrolled | | | |
| Automatic Income | | Not Enrolled | | | |
| InvestEase Contribution | | Not Enrolled | | | |

Please review the information on this statement carefully and report any discrepancies within 30 days.

All performance data shown below is past performance. **PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS.** The investment return and principal value of a Sub-Account will fluctuate so that units, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance current to the most recent month ended, please see www.hartfordinvestor.com

## NON-STANDARDIZED RETURNS

These returns reflect deductions for separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 12/31/05                              AVERAGE ANNUAL TOTAL RETURN

| SUB-ACCOUNT (FUND INCEPTION DATE) | 1 YEAR | 5 YEARS | 10 YEARS | SINCE INCEPTION |
|---|---|---|---|---|
| *Fixed Asset Class* | | | | |
| US Govt Securities (3/24/87)* | 0.19% | 3.34% | 3.90% | 4.98% |
| *U.S. Equity Asset Class* | | | | |
| Advisers (3/31/83)* | 5.80% | 0.26% | 6.52% | 8.80% |
| Htfd DispIndEquity (5/29/98) | 5.15% | -0.73% | —— | 3.24% |
| Index (5/1/87)* | 3.10% | -1.24% | 7.10% | 8.58% |

* The underlying fund was active before the 05/01/91 inception date of Masters+ Variable Annuity.

EXHIBIT 2
139

F128



# MASTERS +
# VARIABLE ANNUITY
### VARIABLE ANNUITY QUARTERLY STATEMENT
### OCTOBER 1, 2005 - DECEMBER 31, 2005
#### PAGE 3 OF 3

**OWNER** Cleona Bailey Shortridge
**CONTRACT NUMBER** 366004419

## STANDARDIZED RETURNS

These returns reflect a hypothetical $1,000 investment and deductions for Contingent Deferred Sales Charges up to a maximum of 7%, separate account annual expenses of 1.35% and total annual fund operating expenses. Performance results shown below do not take into account charges for any optional benefits. If charges for optional benefits were reflected, performance results would be lower.

PERIOD ENDING 12/31/05

| SUB-ACCOUNT | 1 YEAR | AVERAGE ANNUAL TOTAL RETURN | | |
|---|---|---|---|---|
| | | 5 YEARS | 10 YEARS | SINCE INCEPTION |
| US Govt Securities | -6.81% | 2.45% | 3.90% | 5.52% |
| Advisers | -1.20% | -0.75% | 6.52% | 7.85% |
| Htfd DisplndEquity | -1.85% | -1.74% | ------ | 3.24% |
| Index | -3.90% | -2.25% | 7.10% | 8.16% |

## PLEASE NOTE

This information is written in connection with the promotion or marketing of the matter(s) addressed in this material. The information cannot be used or relied upon for the purpose of avoiding IRS penalties. Neither The Hartford, nor its agents or employees, provide tax or legal advice. As with all matters of a tax or legal nature, you should consult your own tax or legal counsel for advice.

"The Hartford" is The Hartford Financial Services Group, Inc., and its subsidiaries, including the issuing companies of Hartford Life Insurance Company and Hartford Life and Annuity Insurance Company.

Continuous or periodic investment plans neither ensure a profit nor protect against a loss in declining markets. Because these programs involve continuous investing regardless of fluctuating price levels, you should carefully consider your financial ability to continue investing through periods of fluctuating market prices.

Checks submitted to The Hartford may be converted to electronic debit entries. If this method of collecting your funds is used, the electronic debit for the original check amount may be posted to your bank account as early as the day after the check has been received by The Hartford.

If you choose to opt out of the process described above please send a written request to Hartford Life, PO BOX 5085, Hartford CT 06102-5085, requesting that your check not be converted to an electronic debit. The written request should also include your contract number and your current contact information.

This product issued by Union Security Insurance Company, Administered by Hartford Life Insurance Company.

**EXHIBIT 2**
**140**

F129

<--- ADDRESS TO SHOW IN WINDOW

CLEONA BAILEY SHORTRIDGE
PO BOX 83414
SAN DIEGO CA 92138

0000000 / 366004419  MST3

DUPLICATE -- A C S -- FULL CONTRACT

EXHIBIT 2
141

F130

**Supplement Dated July 21, 2005 to your Prospectus**

Effective September 6, 2005, the following changes are made to your Prospectus:

Any and all references to "Fortis Benefits Insurance Company" are deleted and replaced with "Union Security Insurance Company."

Any and all references to "First Fortis Life Insurance Company" are deleted and replaced with "Union Security Life Insurance Company of New York."

Any and all references to "Fortis Insurance Company," are deleted and replaced with "Time Insurance Company."

In addition, the following changes will automatically apply to any and all references to the product names:

| Current Name | Name effective as of September 6, 2005 |
|---|---|
| First Fortis Masters VA | Masters VA |
| Fortis Opportunity VA | Opportunity VA |
| Fortis Opportunity + VA | Opportunity + VA |
| Fortis Masters VA | Masters VA |
| Fortis Masters + VA | Masters + VA |
| Fortis Income Preferred VA | Income Preferred VA |
| Fortis EmPower VA | EmPower VA |

**This supplement should be retained with the prospectus for future reference.**

HV-5262

**EXHIBIT 2**
**142**

## Fortis Benefits Insurance Company
### St. Paul, Minnesota
### A Stock Company

### INDIVIDUAL MVA
### MASTERS+

We will pay the Annuitant the first of a series of annuity payments on the annuity commencement date. Subsequent payments will be paid on the same day of each month according to the provisions of this contract.

This contract is issued in consideration of the payment of the Purchase Payment shown on the contract data page.

Signed for Fortis Benefits Insurance Company on the Contract Issue Date.

### 10 DAY RIGHT TO CANCEL CONTRACT

You may cancel this contract by delivering or mailing a Written notice or sending a telegram to the Company and returning this contract before midnight of the 10th day after the date You received it. Notice given by mail and return of this contract by mail are effective on being postmarked, properly addressed, and postage prepaid. The Company must return all premiums paid on the date the returned contract is received by the Company or its agent. The Company must return the payment within 10 days after it receives notice of cancellation and the returned contract.

President & CEO                          Secretary

### Individual Flexible Premium Deferred Combination Variable and Fixed Annuity
### Non-participating. No Dividends.

**ALL PAYMENTS AND VALUES PROVIDED BY THIS CONTRACT, WHEN BASED ON THE INVESTMENT EXPERIENCE OF THE VARIABLE ACCOUNT ARE VARIABLE, MAY INCREASE OR DECREASE AND ARE NOT GUARANTEED AS TO AMOUNT. THE VARIABLE PROVISIONS OF THIS CONTRACT ARE FOUND ON PAGES 7 AND 8.**

**PAYMENTS AND VALUES BASED ON THE FIXED ACCOUNT ARE SUBJECT TO A MARKET VALUE ADJUSTMENT FORMULA, WHICH MAY RESULT IN UPWARD AND DOWNWARD ADJUSTMENTS IN AMOUNTS PAYABLE, INCLUDING SURRENDERS, TRANSFERS, AND AMOUNTS APPLIED TO PURCHASE AN ANNUITY. THE MARKET VALUE ADJUSTMENT PROVISION IS FOUND ON PAGE 7.**

IMASTERS+-98-MO                                          FIM98MO

EXHIBIT 2
143

F132

**READ YOUR CONTRACT CAREFULLY**

This contract is a legal contract between the contract owner and Fortis Benefits Insurance Company.

**TABLE OF CONTENTS**

|  | Page # |
|---|---|
| Annuitant | 2 |
| Beneficiary | 4 |
| Death Benefit | 10 |
| Definitions | 2 |
| Fixed Account | 6 |
| Fixed Annuity Payments | 13 |
| General Provisions | 4 |
| Guarantees | 4 |
| Market Value Adjustment | 7 |
| Purchase Payments | 5 |
| Surrenders | 9 |
| Termination | 5 |
| Transfers | 8 |
| Variable Account | 7 |
| Variable Annuity Payments | 13 |

Any contract amendments or endorsements follow the contract data page. Additional benefits added by rider follow the optional annuity forms tables.

FIM98MO

**EXHIBIT 2**
**144**

F133



### NOTICE CONCERNING COVERAGE
### LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND
### HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESS SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

> The Missouri Life and Health Insurance Guaranty Association
> 520 Dix Road, Suite D
> Jefferson City, MO  65109
>
> Missouri Department of Insurance
> P.O. Box 690
> Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act.  On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

Generally, persons will be covered if they live in this state, and hold a life or health insurance contract or annuity, or a certificate under a group policy or contract.  However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when –

(1)  The person is eligible for protection under the laws of another state.

(2)  The person purchased the insurance from a company that was not authorized to do business in this state;

(3)  The policy issued by an organization which is not a member insurer of the association; or

(4)  The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy.   The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustee).

56117(7/96)                                                                                    MO

EXHIBIT 2
145

F134

The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the amount of the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

**EXHIBIT 2**
146

F135

**FORTIS BENEFITS INSURANCE COMPANY**
P.O. Box 64272
St. Paul, MN  55164

**ENDORSEMENT**

The designation of the exceptions to the application of our MVA for withdrawals from the fixed account, as specified under the provision entitled Market Value Adjustment under the Fixed Account section of the Certificate or Contract, is amended to add the following:

- an Earnings Sweep (as hereafter defined)

An Earning Sweep means an arrangement with Us whereby an amount is withdrawn from the Fixed Account or transferred to the Variable Account on an automatic periodic basis.  The amount may not exceed the interest accrued in the Fixed Account since the latter of the following:  (1) Your election of an Earnings Sweep; or (2)  the last withdrawal or transfer pursuant to an Earnings Sweep then in effect. We may establish, from time to time, minimums for the amount of each withdrawal or transfer under the Earnings Sweep program.  We may also from time to time, establish limitations on the frequency of such periodic withdrawals or transfers and the number of Guarantee Periods which may be subject to such an arrangement.  However, once any such Earnings Sweep has been begun by You, We will not change any such limitation that would affect You without giving You 30 days advance written notice.


President & CEO                                    Secretary


42372

**EXHIBIT 2**
**147**

F136

## CONTRACT DATA PAGE

| | |
|---|---|
| **ANNUITANT:** | CLEONA BAILEY SHORTRIDGE |
| **OWNER:** | CLEONA BAILEY SHORTRIDGE |
| **CONTRACT NUMBER:** | 366004419 |
| **BENEFICIARY AT ISSUE:** | REFER TO CONTINUATION PAGE |
| **CONTRACT ISSUE DATE:** | 7/13/1999 |
| **ANNUITY COMMENCEMENT DATE:** | 4/19/2021 |

THE SURRENDER CHARGE is 7% of each Purchase Payment for the first two years and decreases to 6%, 6%, 5%, 3%, 1% in years three through seven, respectively. Details can be found on pages 9 and 10.

THE MAXIMUM ASSET CHARGE FACTOR is 1.35% annually, (or 0.0036986% daily) (for the Variable Account Only)

| | CURRENT | MAXIMUM |
|---|---|---|
| **TRANSFER CHARGE** | $0.00 | $25.00 |
| **INITIAL PURCHASE PAYMENT:** | $30,000.00 | |

Amounts withdrawn from the fixed account (including transfers) may be subject to a Market Value Adjustment. See details on page 7.

**FUTURE ALLOCATION OF NET PURCHASE PAYMENTS:**

Shown below is the Net Purchase Payment allocation You selected at the Contract Issue Date.

| INVESTMENT CHOICE | PERCENTAGE(S) |
|---|---|
| Index Fund | 10% |
| Advisers Fund | 10% |
| Growth & Income Fund | 5% |
| US Government Securities Fund | 5% |
| No MVA 1 year | 70% |

# DEFINITIONS

**We, Us, Our, The Company**
Fortis Benefits Insurance Company.

**You, Your**
The owner of this contract, or after the annuity commencement date, the Annuitant.

**Accumulation Unit**
A unit of measurement used to calculate the value of Your interest in the Variable Account before the annuity commencement date.

**Anniversary, Anniversaries**
After the Contract Issue Date, the same day and month in each subsequent year.

**Annuitant**
The person or persons named in the Application and on whose life the first annuity payment is to be made. If such person dies before the annuity commencement date and there is an additional Annuitant named in the Application who survives, the additional Annuitant shall become the Annuitant. If there is no named additional Annuitant, or the additional Annuitant has predeceased the Annuitant named in the Application, the owner, if he or she is a natural person, shall become the Annuitant. The contract owner is not permitted to name more than one Annuitant under a contract used in connection with a retirement plan that receives favorable tax treatment under the Internal Revenue Code.

**Annuity Unit**
A unit of measurement to calculate variable annuity payments.

**Application**
The document You signed, if any, to apply for this contract.

**Beneficiary**
The person entitled to receive benefits as per the terms of this contract in case of the death of the Annuitant or the contract owner or the joint owner, as applicable.

**Contract Issue Date**
The date on which this contract becomes effective as shown on the contract data page.

**Contract Value**
The total of the fixed account value and the Variable Account value.

**Contract Year**
A period of 12 consecutive months beginning on the Contract Issue Date or any Anniversary thereafter.

**Date of Deposit**
The date We receive any Purchase Payment at Our Home Office.

**Designated Beneficiary**
The person designated as the Beneficiary by the contract owner.

**Fixed Annuity Option**
An annuity option with payments which do not vary as to dollar amount.

**Fund**
The Fund or Funds are those investment portfolios available under this contract to which the owner may allocate Net Purchase Payments, each of which is, or is a series of, a management investment company registered under the Investment Company Act of 1940.

**Guarantee Period**
The period for which a Guaranteed Interest Rate is credited.

2                                                          CIM98MO

**EXHIBIT 2**
**149**

F138



**Guaranteed Interest Rate**
The rate of interest We credit on an effective annual basis during any Guarantee Period.

**Home Office**
Our office at 500 Bielenberg Drive, Woodbury, Minnesota 55125; 1-800-800-2000, extension 3057; Mailing Address: P.O. Box 64272, St. Paul, Minnesota 55164.

**Market Value Adjustment (MVA)**
A positive or negative adjustment in the fixed account value that We may make if such value is paid out before the end of a Guarantee Period in which it was being held.

**Net Asset Value Per Share**
The net assets of the Fund portfolio divided by the number of shares in the Fund portfolio.

**Net Purchase Payment**
The gross amount of the Purchase Payment less any applicable premium taxes.

**Purchase Payment**
An amount paid to the Company under this contract as consideration for the benefits described herein.

**Subaccount**
The Subaccounts of the Variable Account to which Contract Value may be allocated. Each Subaccount invests all of its assets in a portfolio of the Funds having the same investment policies and objectives as that Subaccount.

**Valuation Date**
All business days except, with respect to any Subaccount, days on which the related portfolio does not value its shares.

**Valuation Period**
The period that starts at the close of the New York Stock Exchange on a Valuation Date and ends at the close of the Exchange on the next succeeding Valuation Date.

**Variable Account**
A segregated investment account entitled "Variable Account D", established by Us pursuant to applicable law. That portion of the assets of the Variable Account equal to the reserves and other contract liabilities with respect to the Variable Account shall not be chargeable with liabilities arising out of any other business We may conduct. Income, gains and losses, whether or not realized, from assets allocated to the Variable Account, are credited to or charged against such account without regard to Our other income, gains or losses.

**Variable Annuity Option**
An annuity option under which We promise to pay the Annuitant or other properly designated payee one or more payments which vary in amount in accordance with the net investment experience of the applicable Subaccounts selected to measure the value of the payments.

**Written, In Writing**
A Written request or notice in acceptable form and content, which is signed, dated, and received at Our Home Office.

3                                                                        CIM98MO

EXHIBIT 2
150                                                                      9

F139



## GENERAL PROVISIONS

**The Contract**
This contract is issued in consideration of the application and payment of the initial Purchase Payment. All statements made in the Application will be deemed representations and not warranties, and no statement will void this contract or be used in defense to a claim unless it is contained in the Application. Only an officer of the Company can agree to change or waive any provisions of this contract.

**Incontestability**
This contract is incontestable.

**Misstatement of Age or Sex**
If any date of birth or sex, or both, has been misstated in the Application, or elsewhere, the amounts payable under this contract will be the amounts which would have been provided using the correct age or sex, or both. Any deficiency in the payments already made by Us will be paid immediately and any excess in the payments already made by Us will be charged against the benefits falling due after adjustment. The amount of any adjustment will be credited or charged interest at the effective annual rate of 3% per year.

**Guarantees**
Subject to the Net Investment Factor provision, We guarantee that the dollar amount of variable annuity payments made during the lifetime of the payee(s) will not be adversely affected by Our actual mortality experience or by the actual expenses incurred by Us in excess of the expense deductions provided for in this contract.

**Settlement**
All benefits under this contract are payable from Our Home Office.

**Non-Participating**
This contract is non-participating and does not share in Our surplus earnings.

**Beneficiary**
Subject to the rights of an irrevocably Designated Beneficiary, You may change or revoke the designation of a beneficiary at any time before the annuity commencement date while a contract owner and the Annuitant are living. You must send Us a Written beneficiary designation or revocation. The change or revocation will not be binding upon Us until it is received by Us at Our Home Office. When it is so received, the change or revocation will be effective as of the date on which the beneficiary designation or revocation was signed, but the change or revocation will be without prejudice to Us on account of any payment made or any action taken by Us prior to receiving the change or revocation.

In the event of the death of a contract owner or the Annuitant prior to the annuity commencement date, the Beneficiary will be as follows: The Beneficiary shall be the surviving contract owner, if any, notwithstanding that the Designated Beneficiary may be different. Otherwise, the Beneficiary will be the Designated Beneficiary. If there is no such Designated Beneficiary in effect or if such Designated Beneficiary is no longer living, the estate of the last surviving contract owner will be the Beneficiary.

**Rights Reserved By Us**
Upon notice to You, this contract may be modified by Us, but only if such modification is necessary to:

(1) Operate the Variable Account in any form permitted under the Investment Company Act of 1940 or in any other form permitted by law.

(2) Transfer any assets in any Subaccount to another Subaccount, or to one or more separate accounts, or to the fixed account.

(3) Add, combine or remove Subaccounts in the Variable Account.

(4) Substitute for the shares held in any Subaccount, the shares of another portfolio of the Funds or the shares of another Investment company or any other investment permitted by law.

4                                                    CIM98MO

**EXHIBIT 2**
**151**

F140

(5) Make any changes as required by the Internal Revenue Code or by any other applicable law in order to continue treatment of this contract as an annuity.

When required by law, We will obtain Your approval of changes and We will gain approval from any appropriate regulatory authority.

### Termination
This contract remains in force until surrendered for its full value, or all annuity payments have been made, or the death benefit has been paid.

If the Contract Value is less than $1,000, We may cancel this contract on any Valuation Date. We will notify You at least 90 days in advance of Our intention to cancel this contract. Such cancellation would be considered a full surrender of this contract.

## PURCHASE PAYMENTS

### Payments
The initial Purchase Payment is shown on the contract data page. The initial Purchase Payment must be at least $5,000 ($2,000 for qualified contracts). Additional Purchase Payments must be at least $1,000. We reserve the right to refuse a Purchase Payment for any reason.

### Allocation of Purchase Payments
The future allocation for all Net Purchase Payments is shown on the contract data page and will remain in effect until changed by Written notice. The percentage allocation for future Net Purchase Payments may be changed at any time by Written notice. Changes in the allocation will be effective on the date We receive Your notice. The allocation may be 100% to any available Subaccount or Guarantee Period, or may be divided among the accounts in whole percentage points totaling 100%.

### Premium Taxes
Premium taxes, if any, levied by any unit of government will be deducted from the Contract Value.

## OWNERSHIP PROVISIONS

### Exercise of Contract Rights
This contract belongs to the owner. As owner, You will be entitled to exercise all rights and privileges in connection with this contract. In any case, such rights and privileges can be exercised without the consent of the Beneficiary (other than an irrevocably Designated Beneficiary) or any other person. Such rights and privileges may be exercised only during the lifetime of the Annuitant and prior to the annuity commencement date, except as otherwise provided in this contract.

Unless You specify otherwise, the Annuitant becomes the payee on the annuity commencement date. Thereafter a beneficiary becomes the payee on the death of the Annuitant. Such payees may thereafter exercise such rights and privileges, if any, of ownership which continue.

### Change of Ownership
Ownership of a qualified contract and any interest therein evidenced by this contract, may not be transferred except to:

(1) the Annuitant;

(2) a trustee or successor trustee of a pension or profit sharing trust which is qualified under Section 401 of the Internal Revenue Code;

(3) the employer of the Annuitant provided that the qualified contract after transfer is maintained under the terms of a retirement plan qualified under Section 403(a) of the Internal Revenue Code for the benefit of the Annuitant;

5                                                                    CIM98MO

**EXHIBIT 2**
**152**

F141

(4) the trustee of an individual retirement account plan qualified under Section 408 of the Internal Revenue Code; or

(5) as otherwise permitted from time to time by laws and regulations governing the retirement or deferred compensation plans for which a qualified contract may be issued.

In no other case may a qualified contract be sold, assigned, transferred, discounted or pledged as collateral.

The owner of a non-qualified contract may change the ownership of this contract. During the lifetime of the Annuitant and prior to the annuity commencement date, You may change the ownership interest in Your non-qualified contract.

A change of ownership will not be binding upon Us until We receive Written notification at Our Home Office. When such notification is so received, the change will be effective as of the date You signed the request for change, but the change will be without prejudice to Us on account of any payment made or any action taken by Us prior to receiving the change.

**Periodic Reports**
Prior to the annuity commencement date, We will send You, at least once during each Contract Year, a statement showing the Contract Value as of a date not more than two months previous to the date of mailing. We will also send such statements as may be required by applicable laws, rules and regulations.

## FIXED ACCOUNT

**Fixed Account**
The fixed account is a non-unitized separate account that We use to account for amounts allocated to Guarantee Periods under this contract. All amounts allocated to a Guarantee Period, whether Net Purchase Payments or transfers, become part of the fixed account.

**Fixed Account Value**
When We receive a Purchase Payment, all or that portion, if any, of the Net Purchase Payment which is allocated to the fixed account will be allocated to the Guarantee Period(s) You select. Your fixed account value, if any, for any Valuation Period is equal to the sum of the values in each of Your Guarantee Periods.

The value in any one Guarantee Period on a Valuation Date is the accumulated value of the Net Purchase Payment (or transfer) at the Guaranteed Interest Rate minus the accumulated value of surrenders and transfers out of that Guarantee Period at the Guaranteed Interest Rate.

**Guarantee Periods**
You may select one or more Guarantee Period(s) from those We make available. The period(s) selected will determine the Guaranteed Interest Rates(s). The Net Purchase Payment or the portion thereof (or amount transferred in accordance with the transfer privilege provision described below) allocated to a particular Guarantee Period will earn interest at the Guaranteed Interest Rate during the Guarantee Period. Guarantee Periods begin on the Date of Deposit or, in the case of a transfer, on the effective date of the transfer. The Guarantee Period is the number of years We credit the Guaranteed Interest Rate. The expiration date of any Guarantee Period is the last day of the Guarantee Period. Subsequent Guarantee Periods begin on the first day following the expiration date. As a result of Guarantee Period renewals, additional Purchase Payments and transfers of portions of the Contract Value, Guarantee Periods of the same duration may have different expiration dates and Guaranteed Interest Rates.

We will notify You In Writing at least 45 and no more than 75 days prior to the expiration date for any Guarantee Period. A new Guarantee Period of the same duration as the previous Guarantee Period will begin automatically at the end of the previous Guarantee Period unless We receive Written notice to the contrary at least three business days prior to the end of such Guarantee Period. You may elect a different Guarantee Period or Subaccount from those We offer at such time.

6                                                                 CIM98MO

**EXHIBIT 2**
153

F142

**Guaranteed Interest Rates**
We will periodically establish an applicable Guaranteed Interest Rate for each Guarantee Period We offer. These rates will be guaranteed for the duration of the respective Guarantee Periods.

No Guaranteed Interest Rate shall be less than an effective annual rate of 3% per year.

**Market Value Adjustment (MVA)**
Withdrawals from the fixed account will be subject to a MVA as follows.

The MVA is applied to any withdrawal from the fixed account and includes the following:

(1) transfers;
(2) surrenders; or
(3) amounts applied to purchase an annuity.

The MVA does not apply to:

(1) death benefits payable prior to annuity commencement;
(2) withdrawals from a one-year Guarantee Period; or
(3) withdrawals effective within 15 days of the expiration date of a Guarantee Period.

The MVA may increase or decrease the amount of fixed account value being withdrawn or transferred. The comparison of two Guaranteed Interest Rates determines whether the MVA produces an increase or a decrease. The first rate to compare is the Guaranteed Interest Rate for the amount being transferred or withdrawn. The second rate is the Guaranteed Interest Rate then being offered for new Guarantee Periods of the same duration as that remaining in the Guarantee Period from which the funds are being withdrawn or transferred. If the first rate exceeds the second by more than 1/2%, the MVA produces an increase. If the first rate does not exceed the second by at least 1/2%, the MVA produces a decrease.

The MVA will be determined by multiplying the amount being withdrawn from the Guarantee Period (before deduction of any applicable surrender charge) by the following factor:

$$[(1 + I) / (1 + J + .005)]^{(N/12)} - 1$$

where:

- I is the Guaranteed Interest Rate being credited to the amount being withdrawn from the existing Guarantee Period,

- J is the Guaranteed Interest Rate then being offered for new Guarantee Periods with durations equal to the number of years remaining in the existing Guarantee Period (rounded up to the next higher number of years), and

- N is the number of months remaining in the current Guarantee Period (rounded up to the next higher number of months).

## VARIABLE ACCOUNT

**Subaccounts**
The Variable Account has several Subaccounts, each investing in one of the corresponding portfolios of the Funds. Net Purchase Payments are initially allocated to the Subaccounts and the fixed account as shown on the contract data page.

We will use the Net Purchase Payments and any transferred amounts to purchase portfolio shares applicable to the Subaccounts at their net asset value. We will be the owner of all portfolio shares purchased with the Net Purchase Payment or transferred amount.

7                                                                    CIM98MO

**EXHIBIT 2**
154

F143

**Subaccount Accumulation Units**
Net Purchase Payments received under this contract and transferred amounts allocated to the Variable Account will be credited in the form of Subaccount Accumulation Units. The number of Subaccount Accumulation Units is found by dividing the amount of the Net Purchase Payment or transferred amount allocated to the Subaccount by the Subaccount Accumulation Unit value at the end of the Valuation Period in which the Purchase Payment or transfer request was received at the Home Office. The value of each Subaccount Accumulation Unit with respect to the contracts was arbitrarily set as of the date the Subaccount first purchased the portfolio shares with respect to the contracts. Subsequent values on any Valuation Date are equal to the previous Subaccount Accumulation Unit value times the net investment factor for the Valuation Period ending on that Valuation Date.

**Net Investment Factor**
The net investment factor is an index applied to measure the investment performance of a Subaccount from one Valuation Period to the next. The net investment factor may be greater or less than or equal to one; therefore, the value of an Accumulation Unit may increase, decrease or remain the same.

The net investment factor for a Subaccount is determined by dividing (1) by (2), and then subtracting (3) from the result, where:

(1) is the net result of:

   (a) the Net Asset Value Per Share of the portfolio shares held in the Subaccount, determined at the end of the current Valuation Period,

   (b) plus the per share amount of any dividend or capital gain distributions made on the portfolio shares held in the Subaccount during the current Valuation Period,

   (c) minus a per share charge for the increase plus a per share credit for the decrease, in any income taxes reserved for which We determine to have resulted from the investment operations of the Subaccount or any other taxes which are applicable to this contract.

(2) is the Net Asset Value Per Share of the portfolio shares held in the Subaccount, determined at the beginning of the current Valuation Period, and

(3) is a factor representing the mortality risk, expense risk, and administrative expense charge. We will determine the asset charge factor annually, but in no event may it exceed the maximum asset charge factor as specified on the contract data page.

**Variable Account Value**
Your Variable Account value for any Valuation Period is the total of Your values in each Subaccount. Your value for each Subaccount is equal to:

(1) Your number of Subaccount Accumulation Units,
(2) times the Subaccount Accumulation Unit value for the Valuation Period.

Your Variable Account value will vary from Valuation Date to Valuation Date reflecting Your total value in the Subaccounts.

## TRANSFERS

We will make transfers at the end of the Valuation Period in which We receive Your request for the transfer subject to the following restrictions. We reserve the right to restrict the frequency of or otherwise modify, condition, terminate, or impose charges upon transfers. The current and maximum transfer charges are shown on the contract data page. In addition, the Funds may impose transfer charges.

Before the annuity commencement date, You may transfer part or all of Your Contract Value. Each transfer must be at least $1,000 or the total value of any Subaccount or Guarantee Period, if less. Transfers from the fixed account may be subject to a MVA.

No transfers from the fixed account may be made after the annuity commencement date.

8                                                                CIM98MO

**EXHIBIT 2**
**155**

## SURRENDERS

**General Surrender Provisions**
The amount surrendered will normally be paid to You within seven days of:

(1) Our receipt of Your Written request; and
(2) Our receipt of this contract, if required.

We reserve the right to defer payment of surrenders from the fixed account for up to six months from the date We receive Your request.

**Full Surrender**
At any time prior to the annuity commencement date and during the lifetime of the Annuitant, You may surrender this contract by sending Us a Written request. The amount payable on surrender is:

(1) the Contract Value at the end of the Valuation Period in which We receive Your request,
(2) minus any applicable surrender charge,
(3) plus or minus any applicable MVA.

The amount payable upon surrender will not be less than the amount required by state law.

Upon payment of the above surrender amount, this contract is terminated and We have no further obligation under this contract.

All collateral assignees must consent to any surrender. We may require that this contract be returned to Our Home Office prior to making payment.

**Partial Surrender**
At any time prior to the annuity commencement date and during the lifetime of the Annuitant, You may surrender a portion of the fixed account value and/or the Variable Account value. You must send Us a Written request specifying the accounts from which the surrender is to be made. If You do not specify, the partial surrender will be taken from the Subaccounts and the fixed account on a pro rata basis. Surrenders will be made effective at the end of the Valuation Period in which We receive Your Written request.

You must surrender an amount equal to at least $1,000. If the Contract Value remaining would be less than $1,000, We may treat Your request as a full surrender.

We will surrender Subaccount Accumulation Units from the Variable Account, and/or dollar amounts from the fixed account, so that the total amount surrendered equals the sum of the following:

(1) the amount payable to You,
(2) plus any surrender charges,
(3) plus or minus any applicable MVA.

**Surrender Charge**
A surrender charge is imposed on the withdrawal of any Purchase Payment that is less than seven years old. The amount of the surrender charge is determined separately for each Purchase Payment and is expressed as a percentage of the Purchase Payment as follows:

| Number of Years Since Purchase Payment was Credited | Surrender Charge as a Percentage of Purchase Payment |
|---|---|
| Less than 2 | 7% |
| At least 2 but less than 4 | 6% |
| At least 4 but less than 5 | 5% |
| At least 5 but less than 6 | 3% |
| At least 6 but less than 7 | 1% |
| 7 or more | 0% |

CIM98MO

**EXHIBIT 2**
**156**

F145

These percentages apply to any full or partial surrender of Purchase Payments that are not eligible for a free surrender.

**Free Surrender**
You may withdraw the following amounts without a surrender charge:

(1) Any earnings on the Contract Value not previously surrendered, as of the Valuation Date on which We receive Your request.

(2) Purchase Payments that are more than seven years old and not previously surrendered.

(3) Each Contract Year, 10% of Purchase Payments that are less than seven years old.

Amounts withdrawn will be deemed to be withdrawn in the order listed above, followed by the remaining amounts of Purchase Payments that are less than seven years old.

**Surrender Charges at Death or Annuitization**
No surrender charge is imposed upon amounts applied to purchase an annuity or upon payment of a death benefit.

# DEATH BENEFIT

**Death Benefit Before the Annuity Commencement Date**
A death benefit will be paid to the Beneficiary if, prior to the annuity commencement date:

(1) the current contract owner dies, or
(2) the last remaining Annuitant dies, leaving no surviving contract owner who is a natural person.

This section makes reference to the age of the contract owner. If the contract owner is a nonnatural person, the relevant age will instead be that of the Annuitant.

This section makes reference to "Pro Rata Adjustments." A Pro Rata Adjustment is calculated separately for each withdrawal, creating a decrease in the death benefit proportional to the decrease the withdrawal makes in the Contract Value. Pro Rata Adjustments are made for amounts withdrawn for partial surrenders and any associated negative MVAs and surrender charges (which shall be deemed to be amounts withdrawn) but not for any contract fee-related surrenders.

The death benefit will equal the greatest of (1), (2), or (3):

(1) The Contract Value as of the date used for valuing the death benefit.

(2) The highest Anniversary value of each of the contract's Anniversaries prior to the earlier of: (a) the date of the decedent's death, or (b) Your attainment of age 75.

An Anniversary value is determined for each applicable Anniversary, and is equal to:

(a) the Contract Value on the Anniversary, plus
(b) any Net Purchase Payments made since the Anniversary, reduced by
(c) Pro Rata Adjustments for any withdrawals made since the Anniversary.

The Pro Rata Adjustment for a given withdrawal is equal to:

(a) the withdrawn amount, divided by

(b) the Contract Value immediately before the amount was withdrawn, the result multiplied by

(c) the quantity equal to:

I.   the Contract Value on the Anniversary, plus

10                                                    CIM98MO

**EXHIBIT 2**
157

F146

    II.  Net Purchase Payments made since the Anniversary and before the given withdrawal, minus

    III.  Pro Rata Adjustments for withdrawals made since the Anniversary and before the given withdrawal.

(3) If the decedent dies prior to the date You reach age 75, the amount of the death benefit is the lesser of (a) and (b), as follows:

  (a) the sum of:

    I.  the accumulation (without interest) of Net Purchase Payments, reduced by Pro Rata Adjustments for any withdrawals; plus

    II.  an amount equal to interest on such net accumulation value, as it is adjusted for each applicable Net Purchase Payment and Pro Rata Adjustment, at an effective annual rate of 5%; or

  (b) 200% of (a)I.

The resulting amount (the lesser of (a) and (b)) will be referred to as the "Roll-up Amount."

If the decedent dies on or after the date You reach age 75, the amount of the death benefit is equal to:

  (a) The "Roll-up Amount" as of the date You reached age 75; plus

  (b) the accumulation (without interest) of Net Purchase Payments made on or after the date You reached age 75; reduced by

  (c) Pro Rata Adjustments for any withdrawals made on or after the date You reached age 75.

The Pro Rata Adjustment for a given withdrawal is equal to:

  (a) the withdrawn amount; divided by

  (b) the Contract Value immediately before the amount was withdrawn; the result multiplied by

  (c) the quantity equal to:

    I.  the Roll-up Amount prior to the withdrawal; plus

    II.  any Net Purchase Payments made on or after the date You reached age 75 and before the given withdrawal; reduced by

    III.  Pro Rata Adjustments for any withdrawals made on or after the date You reached age 75 and before the given withdrawal.

If a positive MVA would otherwise apply, the death benefit may be less than the amount payable on a full surrender on the date used to value the death benefit. The death benefit will be paid when We receive:

(1) proof of the decedent's death; and
(2) a Written request from the Beneficiary for either a single sum or payment under an annuity form.

We will pay a single sum to the Beneficiary unless an annuity option is chosen.

**Death Benefit on or After the Annuity Commencement Date**
If the Annuitant dies on or after the annuity commencement date, the Beneficiary will receive the death benefit, if any, as provided by the annuity form in effect.

11            CIM98MO

EXHIBIT 2
158

F147



## Distribution of Proceeds At Death of Owner

If the owner under a non-qualified contract dies prior to the Annuitant and before the annuity commencement date, the death benefit must be distributed to the Beneficiary, if then alive, either (1) within five years after the date of Your death, or (2) over some period not greater than the life or expected life of the Beneficiary, with annuity payments beginning within one year after the date of Your death. The person named as Your beneficiary in the Application shall be considered the Designated Beneficiary for the purposes of Section 72(s) of the Internal Revenue Code and if no person then living has been so named, then the Annuitant will automatically be the Designated Beneficiary for this purpose. In all cases, any such Designated Beneficiary will not be entitled to exercise any rights prohibited by applicable federal income tax law.

These mandatory distribution requirements will not apply when the Designated Beneficiary is the spouse of the deceased owner, if the spouse elects to continue this contract in the spouse's own name, as owner. When the deceased owner was also the Annuitant, the surviving spouse (if the Designated Beneficiary) may elect to be named as both owner and Annuitant and continue this contract.

If the payee dies after the annuity commencement date and before all of the payments under the Annuity Form have been distributed, the remaining amount payable, if any, must be distributed at least as rapidly as the method of distribution then in effect.

## Proof of Death

We accept any of the following as proof of death:

(1) A copy of a certified death certificate.
(2) A copy of a certified decree of a court of competent jurisdiction as to the finding of death.
(3) A Written statement by a medical doctor who attended the deceased at the time of death.
(4) Any other proof satisfactory to Us.

## PAYMENT OF BENEFITS

### General

On the annuity commencement date, the Contract Value, adjusted by the MVA, will be applied, as specified by the contract owner, to provide payments to the Annuitant under one or more of the annuity options provided in this contract or under such other settlement options as may be agreed to by the Company. If more than one person is named as Annuitant, due to the designation of multiple Annuitants, the contract owner may elect to name one of such persons to be the sole Annuitant as of the annuity commencement date.

### Application of Contract Value

Unless directed otherwise, We will apply the fixed account value to provide a fixed annuity, and the Variable Account value to provide a variable annuity. You must tell Us In Writing at least 30 days prior to the annuity commencement date if You want Us to apply fixed and Variable Account values in different proportions.

### Annuity Commencement Date

The annuity commencement date is selected by You and stated in the Application. You may change the annuity commencement date at any time if We receive Written notice at least 30 days before both the current annuity commencement date and the new annuity commencement date.

If the annuity commencement date does not occur on a Valuation Date that is at least two years after the Contract Issue Date, We reserve the right to change the annuity commencement date to the first Valuation Date that is at least two years after the Contract Issue Date.

### Frequency and Amount of Payments

Annuity payments will be made monthly unless We agree to a different payment schedule. We reserve the right to change the frequency of either a fixed annuity payment or a variable annuity payment so that each payment will be at least $50 ($20 in Texas).

### Fixed Annuity Payments

Fixed annuity payments start on the end of the Valuation Period that contains the annuity commencement date. The amount of a first monthly payment for the illustrated annuity forms will be at least as favorable as that produced by the annuity tables of this contract for each $1,000 of Contract Value applied as of the end of such Valuation Period.

F148



The dollar amount of any payments after the first payment are specified during the entire period of annuity payments, according to the provisions of the annuity form selected.

## VARIABLE ANNUITY PAYMENTS

**Annuity Units**
We convert the Subaccount Accumulation Units into Subaccount Annuity Units at the values determined at the end of the Valuation Period which contains the annuity commencement date. The number of Subaccount Accumulation Units remains constant as long as an annuity remains in force and allocation among the Subaccounts has not changed.

Each Subaccount Annuity Unit value was arbitrarily set when the Subaccount first converted Subaccount Accumulation Units into Annuity Units. Subsequent values on any Valuation Date are equal to the previous Subaccount Annuity Unit value times the net investment factor for that Subaccount for the Valuation Period ending on that Valuation Date, with an offset for the 3% assumed interest rate used in the annuity tables of this contract.

Variable annuity payments start on the end of the Valuation Period that contains the annuity commencement date. The amount of a first monthly payment for the illustrated annuity forms is shown in the annuity tables of this contract for each $1,000 of Contract Value applied as of the end of such Valuation Period.

Payments after the first payment will vary in amount and are determined on the first Valuation Date of each subsequent payment period. If the payment under the annuity form selected is based on the variable Annuity Unit value of a single Subaccount, the payment is found by multiplying the Subaccount Annuity Unit value on the payment date by the number of Subaccount Annuity Units.

If the payment under the annuity form selected is based upon variable Annuity Unit values of more than one Subaccount, the above procedure is repeated for each applicable Subaccount. The sum of these payments is the variable annuity payment.

We guarantee that the amount of each payment after the first payment will not be affected by variations in expense or mortality experience.

## OPTIONAL ANNUITY FORMS

You may select an annuity form or change a previous selection. The selection or change must be In Writing and received by Us at least 30 days before the annuity commencement date. If no annuity form selection is in effect on the annuity commencement date, We automatically apply Option B, with payments guaranteed for 10 years.

The following options are available for the fixed annuity payments and the variable annuity payments:

**Option A. - Life Annuity**
Payments are made as of the first Valuation Date of each monthly period during the Annuitant's life, starting with the annuity commencement date. No payments will be made after the Annuitant dies.

**Option B. - Life Annuity with Payments Guaranteed for 10 Years or 20 Years**
Payments are made as of the first Valuation Date of each monthly period starting on the annuity commencement date. Payments will continue as long as the Annuitant lives. If the Annuitant dies before all of the guaranteed payments have been made, We will continue installments of the guaranteed payments to the Beneficiary.

CIM98MO

EXHIBIT 2
160

F149

**Option C. - Joint and Full Survivor Annuity**
Payments are made as of the first Valuation Date of each monthly period starting with the annuity commencement date. Payments will continue as long as either the Annuitant or the joint Annuitant are alive. Payments will stop when both the Annuitant and the joint Annuitant have died.

We also have other annuity forms available and information about them can be obtained by Writing to Us.

The annuity tables show the amount of the first annuity payment, for each $1,000 of Contract Value applied under Options A, B, and C.

14

CIM98MO

EXHIBIT 2
161

F150



## OPTION TABLES

Installments shown are for an initial monthly payment for each $1,000 of Contract Value applied under an option. Age, as used in these tables, is age as of nearest birthday on the annuity commencement date. Rates for monthly payments for ages and periods certain not shown, if allowed by Us, will be computed on an actuarially equivalent basis.

**Actuarial Basis**
Installments shown in these tables are based on the 1983 Table a (20/80 Male/Female) and with compound interest at the effective rate of 3% per year.

### OPTIONS A AND B

| Age | Life Only | 10 Year Period Certain and Life | 20 Year Period Certain and Life |
|-----|-----------|--------------------------------|--------------------------------|
| 50 | 3.97 | 3.95 | 3.87 |
| 51 | 4.04 | 4.01 | 3.93 |
| 52 | 4.10 | 4.08 | 3.98 |
| 53 | 4.18 | 4.14 | 4.04 |
| 54 | 4.25 | 4.22 | 4.10 |
| 55 | 4.33 | 4.29 | 4.16 |
| 56 | 4.42 | 4.37 | 4.22 |
| 57 | 4.51 | 4.46 | 4.28 |
| 58 | 4.61 | 4.55 | 4.35 |
| 59 | 4.71 | 4.64 | 4.42 |
| 60 | 4.82 | 4.74 | 4.49 |
| 61 | 4.93 | 4.85 | 4.56 |
| 62 | 5.06 | 4.96 | 4.63 |
| 63 | 5.19 | 5.07 | 4.70 |
| 64 | 5.33 | 5.20 | 4.77 |
| 65 | 5.48 | 5.32 | 4.83 |
| 66 | 5.64 | 5.46 | 4.90 |
| 67 | 5.81 | 5.60 | 4.97 |
| 68 | 6.00 | 5.75 | 5.03 |
| 69 | 6.19 | 5.91 | 5.09 |
| 70 | 6.41 | 6.07 | 5.15 |
| 71 | 6.64 | 6.24 | 5.20 |
| 72 | 6.88 | 6.42 | 5.25 |
| 73 | 7.15 | 6.60 | 5.29 |
| 74 | 7.44 | 6.79 | 5.33 |
| 75 | 7.76 | 6.99 | 5.37 |

### OPTION C

| | | JOINT ANNUITANT AGE | | | | |
|---|---|------|------|------|------|------|
| | | 50 | 55 | 60 | 65 | 70 |
| ANNUITANT AGE | 50 | 3.55 | 3.66 | 3.75 | 3.82 | 3.87 |
| | 55 | 3.66 | 3.81 | 3.95 | 4.07 | 4.16 |
| | 60 | 3.75 | 3.95 | 4.15 | 4.34 | 4.49 |
| | 65 | 3.82 | 4.07 | 4.34 | 4.61 | 4.87 |
| | 70 | 3.87 | 4.16 | 4.49 | 4.87 | 5.25 |

15                                                        CIM98MO

**EXHIBIT 2**
**162**

F151

**Fortis Benefits Insurance Company**
P.O. Box 64272
St. Paul, MN 55164

## RIDER

## WAIVER OF SURRENDER CHARGE FOR HOSPITAL OR SKILLED HEALTH CARE FACILITY CONFINEMENT

The contract to which this Rider is attached is changed as follows:

1. Surrender charges under this contract that are normally assessed upon total or partial surrender will not apply if the following requirements are met:

   a. We receive satisfactory written proof that a Covered Person is confined in a Hospital or Skilled Health Care Facility; and

   b. Such confinement has lasted for 60 days consecutive days and the Covered Person continues to be confined in the Hospital or Skilled Health Facility when the request for total or partial surrender is made; and

   c. Such confinement began after the later of: (1) the effective date of this provision; or (2) the effective date of this contract.

   –or–

   a. The request for total or partial surrender is received within 60 days following a Covered Person's discharge from a Hospital or Skilled Health Care Facility after confinement of at least 60 consecutive days; and

   b. Such confinement began after the later of: (1) the effective date of this provision; or (2) the effective date of this contract.

2. Definition of "Covered Person" – The owner or joint owner of this contract or the owner's spouse if such spouse is the annuitant.

3. Definition of "Hospital or Skilled Health Care Facility"

   A facility which:

   a. is licensed by an appropriate licensing agency to provide health services; and

   b. provides 24–hour–a–day nursing service; and

   c. has a doctor available for emergency situations; and

   d. has a nurse on duty or on call at all times; and

   e. maintains clinical records; and

   f. has appropriate methods for administering drugs.

4. Surrender charges will not be waived when a confinement is due to substance abuse or mental or personality disorders without a demonstrable organic nature. A degenerative brain disease such as Alzhiemer's Disease is considered organic in nature.

Signed for the Company at St. Paul, Minnesota.

President & CEO                    Secretary

56377                                        5/94

**EXHIBIT 2**
163

F152

**Fortis Benefits Insurance Company**
**P.O. Box 64272**
**St. Paul, MN 55164**

## DISABILITY WAIVER OF SURRENDER CHARGE RIDER

This rider is part of the certificate or contract to which it is attached. There is no charge for this rider.

**The Waiver Benefit**
The surrender charge otherwise imposed under the terms of the certificate or contract for partial or full surrenders of Certificate Value or Contract Value will be waived if a Participant or Owner, or the Annuitant if the Participant or Owner is a nonnatural person, is totally disabled. However, the surrender charge will be waived only if it is associated with any premium payment being deemed to be withdrawn which was made prior to the commencement of the total disability.

In order to qualify for this waiver benefit, a Participant or Owner must provide written proof satisfactory to the Company, that the total disability:

(1)  began while the certificate or contract and this rider were in force; and
(2)  began before the totally disabled person attained age 64; and
(3)  was continuous for 180 days or more.

The Company may require proof of continuing total disability. Where surrender charges have been waived under this rider, no additional Purchase Payments under the certificate or contract will be accepted.

**Definition of Total Disability**
Total disability is a disability which:

(1)  results from bodily injury sustained or disease which first appears while both the certificate or contract and this rider are in force;

(2)  completely prevents the totally disabled person from engaging in an occupation for compensation or profit.

During the first 12 months of total disability, "occupation" means the inability to perform the substantial and material duties of the totally disabled person's regular occupation. After 12 months, "occupation" means any job suited to the totally disabled person's education, training, or experience.

**Termination**
This rider terminates on the 65th birthday of the oldest Participant or Owner, or the 65th birthday of the Annuitant if the Participant or Owner is a nonnatural person.

Signed for the Company to take effect on the date of issue of the certificate or contract.

President & CEO                    Secretary

MASTERS+DR-98-MO                                                    RMVADRMO

**EXHIBIT 2**
**164**

F153

**EXHIBIT 3**

12/28/05  09:35  FAX          MONNYEGROSS ATTY                              @02

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS STATE OF MISSOURI

Mary Banks, Trustee, and                    )
                                            )
Beryl Rayford,                              )
                                            )
        Plaintiffs,                         )
                                            )
vs.                                         )
                                            )
Umar Abdul Almajid, and                     )
                                            )
North American Mercantile Inc.,             )
A Nevada corporation                        )
                                            )
        Defendants.                         )
                                            )
                                            )
Serve: Umar Abdul Almajid                   )
       3910 Quince                          )
       San Diego, CA 92105                  )
                                            )
       Umar Abdul Almajid, President        )
       North American Mercantile Inc.       )
       3910 Quince                          )
       San Diego, CA 92105                  )

Cause No: 044-01747
Division No.



### PETITION

COMES NOW, Mary Banks (hereinafter "Trustee) and Beryl Rayford (hereinafter "Rayford") plaintiffs, by and through counsel, and for their Petition against Umar Abdul Almajid (hereinafter "Umar") and North American Mercantile Inc. (hereinafter "Mercantile") defendants, to state as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Cleona B. Shortridge (hereinafter "Cleona") was a resident of the city of St. Louis Missouri.

1

EXHIBIT 3
165

12/28/05  09:35  FAX          MONNYEGROSS ATTY                              ☑03

2. On the 4th day of August 1997 in the County of St. Louis, Cleona, as grantor and trustee, executed a document entitled the Revocable Trust of Cleona B. Shortridge (hereinafter "Trust"), copy of which is attached hereto and incorporated herein by reference and marked Exhibit 1.

3. On the 9th day of July 2004, Cleona departed from this life.

4. Said Trust is currently in full force and effect and appoints Mary F. Banks as successor Trustee.

5. Mary F. Banks resides in the county of St. Louis and has accepted her position as successor Trustee of said Trust and is the duly appointed, presently qualified and currently acting successor Trustee of said Trust.

6. Umar Abdul Almajid, a resident of the state of California, is a nephew of Cleona and a beneficiary of one-half of the assets of said Trust.

7. Beryl Rayford, a resident of California, is a niece of Cleona and a beneficiary of one-half of the assets of said Trust.

8. North American Mercantile Inc. is a Nevada corporation, registered to do business in the State of Missouri with its corporate office located in St. Louis Missouri.

## FACTS

9. In approximately 1999, Cleona began suffering from dementia.

10. Upon information and belief, Umar procured, presented and had Cleona execute a Health Care Springing Power of Attorney, Springing Durable Power of Attorney and Last Will and Testament on or about the 18th day of June 2000, copies of which are attached hereto and incorporated herein by reference and marked Exhibit 2.

2

EXHIBIT 3
166

12/28/2005   10:42AM

11.  Said Springing Durable Power of Attorney appointed Umar as Cleona's agent in fact.

12.  Said Last Will and Testament appointed Umar as Personal Representative of Cleona's estate.

13.  Upon information and belief, on or about June 18, 2000, Umar had the registration and the beneficiary designation of a certain account at the St. Louis Community Credit Union, located at 3651 Forest Park Avenue St. Louis, Missouri changed from being in the name of Cleona as Trustee and with said Trust as being beneficiary to being in the name of Umar and Cleona as joint tenants with rights of survivorship.

14.  Upon information and belief, on or about June 18, 2000, Umar changed the registration of safe deposit box number 2-683-3 at Bank of America located at 4625 Lindell Avenue St. Louis, Missouri from being in the joint names of Cleona and Mary Banks to being in the joint names of Umar and Cleona.

15.  In approximately October 2000, Umar took Cleona to California to live in his household and he has had complete possession and control of a 1999 Mercedes Benz model C23 Vehicle Identification No. WDBHA24G1zA790768 purchased by and originally titled in Cleona's name which upon information and belief may have been retitled by Defendant Umar in Defendant's Umar's name.

16.  Upon information and belief, on or about May 23rd, 2002, Umar, acting under said Springing Durable Power of Attorney, caused the beneficiary designation of Individual Retirement Account No. 360548733, owned by Cleona and held with

3

EXHIBIT 3
167

HartfordLife Insurance Company, to be changed from the name of the Trustee of said Trust as beneficiary to the name of North American Mercantile Inc.

17. Upon information and belief, on or about May 23rd, 2002, Umar, acting under said Springing Durable Power of Attorney, caused the ownership and/or beneficiary designation of Annuity No. 366004419 held with HartfordLife Insurance Company to be changed from designating the Trustee of said Trust or Cleona as the owner with said Trust as beneficiary to being in the name of Umar and Cleona as owners with the beneficiary being North American Mercantile Inc.

18. Upon information and belief, on or about April 5th, 2004, Umar used a rubber stamp with the words "C.B. Shortridge" to sign a check, drawn on Fortis Money Fund Account No. 409477 registered in the names of Cleona and Mary F. Banks with rights of survivorship, in the amount of one thousand fifty dollars ($1,050.00) made payable to Umar. See copy of check attached hereto and incorporated herein by reference and marked as Exhibit 3.

19. Upon information and belief, on or about April 22nd, 2004, Umar used a rubber stamp with the words "C.B. Shortridge" to sign a check, drawn on said Money Fund in the amount of one thousand five hundred dollars ($1,500.00) made payable to North American Mercantile Inc. See copy of check attached hereto and incorporated herein be reference and marked as Exhibit 4.

20. Upon information and belief, on or about July 5th, 2004, Umar used a rubber stamp with the words "C.B. Shortridge" to sign a check, drawn on said Money Fund in the amount of three hundred dollars ($300.00) made payable to Nazardeen Almajid, a

son of Umar. See copy of check attached hereto and incorporated herein by reference and marked as Exhibit 5.

21. Upon information and belief, on or about July 23rd, 2004, Umar used a rubber stamp with the words "C.B. Shortridge" to sign a check, drawn on said Money Fund in the amount of one thousand five hundred dollars ($1,500.00) made payable to Christopher Albence. See copy of check attached hereto and incorporated herein by reference and marked as Exhibit 6.

22. Defendant North American Mercantile Inc. was incorporated on or about January 14, 2004 in the State of Nevada with Umar acting as President and as a director, Naziruddin Almajid (Umar's son) acting as Secretary and as a director and with Cleona acting as Treasurer and a director

23. Due to Alzheimer's disease Cleona has lacked the mental capacity to make any decision for herself.

24. In March 2004, Cleona was admitted to Country Villa nursing home and in June 2004 she was discharged from said nursing home after Defendant Umar refused to pay said nursing home's bill and admitted to a hospital where she stayed until her death in July 2004.

### COUNT I – FRAUD

25. Plaintiff restates and re-alleges the averments set forth in paragraphs 1 through 24 of Plaintiffs' Petition as if the same were set forth in this Count I of Plaintiffs' Petition.

5

**EXHIBIT 3**
**168**

26. That Defendant Umar did make several and numerous misrepresentations to Cleona, to wit, that she would continue to have control of her assets, and that her Revocable trust would remain in force and effect as to all beneficiaries.

27. That said representations by Defendant Umar were in fact false.

28. That said representations were made by Defendant Umar with the intent that Cleona rely on the representations of Defendant Umar.

29. That Cleona did rely on the representations of the defendant and subsequently altered accounts which had the affect of substantially altering the ownership of her assets, estate plan and revocable trust.

30. That Cleona had no independent means or information with which to gauge or judge the truth or falsity of Defendants Umar's misrepresentations.

31. That as a result of Defendant Umar's misrepresentations, the intent of Cleona's estate plan and revocable trust were altered, and Beryl Rayford, a beneficiary of said estate plan and also Cleona were harmed to the extent of at least the sum of sixty six thousand two hundred dollars ($62,200.00).

32. That Defendant Umar procured said Health Care Springing Power of Attorney, Springing Durable Power of Attorney and Last Will and Testament (hereinafter collectively referred to as "Documents") by fraud and with the actual intent to defraud Cleona, her trust estate and Beryl Rayford, a beneficiary of Cleona's trust estate, in that said Documents enabled Umar to (1) change the ownership and beneficiary designations of Cleona's assets against her previously expressed wishes and estate plan, (2) that

6

EXHIBIT 3
169



Defendant Umar did in fact change the ownership and beneficiary designations of Cleona's assets without her consent and that these changes prevent Beryl Rayford and said Trustee from receiving their full and lawful share of the assets of said Trust as originally provided for and (3) that these changes were done to personally enrich Umar, his son and their corporation North American Mercantile Inc. at the expense of Cleona, Beryl Rayford and said Trustee

Wherefore, Plaintiffs pray for an Order of this Court declaring and adjudicating that Umar procured all of said Documents by fraud, that all changes made by Umar shall be null and void, and voiding the purported changes in registration, ownership and beneficiary designations to the extent necessary to satisfy Plaintiffs' claims, together with such other relief as the Court deems just and proper.

### COUNT II - BREACH OF FIDUCIARY DUTY

33. Plaintiffs restates and re-alleges paragraphs 1-32 above as if fully set forth herein.

34. Defendant Umar, as the agent-in-fact for Cleona, owed fiduciary duties to Cleona pursuant to said Health Care Springing Power of Attorney and Springing Durable Power of Attorney.

35. Defendant Umar breached his fiduciary duties owed to Cleona when he made checks payable to himself, his son and his corporation that in no way benefited Cleona.

36. Further defendant Umar breached his fiduciary duties owed to Cleona when

7



he changed the registration, ownership and beneficiary designations of said trust assets and said safe deposit box when he named himself, his son and his corporation as owner and/or beneficiaries of said trust assets without any benefit resulting to Cleona.

Wherefore Plaintiff requests an order form this Court finding that Defendant Umar breached his fiduciary duties and therefore is personally liable for all the losses and damages sustained as a result thereof.

### COUNT III - UNJUST ENRICHMENT

37. Plaintiffs restates and re-alleges paragraphs 1-36 above as if fully set forth herein.

38. Defendant Umar has caused changes in the registration, ownership and beneficiary designations of said trust assets which result in the enrichment of Defendants Umar and North American Mercantile Inc. and Defendant Umar's son.

39. That said enrichment is unjust in that Plaintiffs will be deprived of their lawful and full shares of Cleona's trust estate.

Wherefore, Plaintiff pray for an order of this court to prevent the unjust enrichment of Defendants and mandating that all such changes made by Defendants be reversed and for such other and further orders, findings and judgments as it finds to be just in the premises.

### COUNT III - ACCOUNTING

40. Plaintiffs restates and re-alleges paragraphs 1-39 above as if fully set forth herein.

8

EXHIBIT 3
170

41. That said Trust mandates that a full accounting be provided to the
beneficiaries of and to the successor Trustee of said Trust.

42. That pursuant to RSMo 456.233, beneficiaries are entitled to an
accounting of all income, expenses and disbursements of a trust.

Wherefore, Plaintiffs' pray for orders of this Court requiring Defendants
to provide a full and complete accounting of all income, disbursements and changes made
to Cleons's assets from June 2000 to the present and for such other and further orders,
findings and judgments as it deems just in the premises.

*[signature]*

Monaye R. Gross, MBE 34313
Attorney for Plaintiffs
8000 Bonhomme, Suite 211
Clayton, Missouri 63105
Tel: 314-726-2100
Fax: 314-726-2118
Email: monayegross@msfm.com

*[signature]*

Richard A. Wier, MBE 26470
Attorney for Plaintiffs
9666 Olive Street Rd
Ste. 745
St. Louis, Missouri 63132
Tel: 314-993-5300
Fax: 314-993-1974

**EXHIBIT 3**
**171**

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement (the "Agreement") is made and entered into this _16ᵗʰ_ day of July, 2007, by and among Mary Banks as Trustee of the Cleona Shortridge Revocable Trust ("Banks") and Beryl Rayford ("Rayford"), sometimes hereinafter collectively referred to as ("Plaintiffs"); and Umar Almajid ("Almajid") and North American Mercantile, Inc. ("NAM") sometimes hereinafter collectively referred to as ("Defendants"); Banks, Rayford, Almajid and NAM are sometimes collectively referred to herein as the ("Parties").

WHEREAS, the Plaintiffs and Defendants are parties to a lawsuit pending in the Circuit Court of St. Louis County, State of Missouri – Probate Division styled *Mary Banks, et al. v. North American Mercantile, Inc., et al.*, Case No. 04PS-PR00754, (hereinafter referred to as the "Lawsuit"), wherein Plaintiffs have asserted claims against the Defendants for fraud, breach of fiduciary duty, unjust enrichment and an accounting; likewise, the Defendants have filed counterclaims against Banks for power of attorneys fees and reimbursement of funeral expenses of Cleona Shortridge; and

WHEREAS, Defendants have denied, and continue to deny, the various claims made against them and have raised a variety of defenses to those claims; and

WHEREAS, Banks has denied, and continues to deny, the various counterclaims made against her; and

WHEREAS, this case was set for 2-day trial beginning on June 25, 2007, at 10:00 a.m. in Division 4 of the St. Louis County Circuit Court; and

WHEREAS, at 10:00 a.m. on the morning of June 25, 2007, this case was called for trial and all Parties appeared, together with their respective counsel, and announced to the court that settlement remained a possibility and that the Parties would like additional time to discuss the

EXHIBIT 4
172

feasibility of entering into a settlement agreement prior to the opening of trial proceedings; and

WHEREAS, In the afternoon of June 25, 2007, it appeared that the Parties had come to an impasse in settlement negotiations. The court granted the Parties additional time to achieve settlement. At approximately 3:30 p.m., the Parties believed that they had reached a settlement, reducing the understanding to writing, and the Parties further wished to place the terms of the settlement "on the record." However, counsel for Plaintiffs notified defense counsel that there was not an agreement on all terms. Defense counsel announced that the Defendants would be filing their motion to enforce settlement which the court agreed to call up for hearing at 10:00 a.m. the next day, June 26, 2007; and

WHEREAS, at 10:15 a.m. on the morning of June 26, 2007, the Defendants' motion was called for hearing; the Parties appeared together with their respective counsel. After hearing evidence adduced from all counsel and Rayford, the court granted the Parties additional time to negotiate a settlement that could be agreed upon by all Parties. The judge took the Motion to Enforce Settlement under advisement. The Parties and their respective counsel continued to finalize the terms of the Settlement Agreement, and at approximately 3:00 p.m. announced to the court that they had reached a final compromise for settlement; and

WHEREAS, the judge again took the bench and the terms and conditions of the Agreement were recited into the record by both counsel for Plaintiff and defendant. All Parties were sworn in by the court and their formal consent to the agreement was placed upon the record. After questioning conducted by counsel for both Plaintiff and defendant and the court, the judge found that the Parties had reached an agreement, and instructed the attorneys to reduce the terms of the agreement to writing at their earliest convenience. The record was then closed; and

**EXHIBIT 4**
**173**

WHEREAS, Banks, Rayford, Almajid, and NAM recognized the uncertainty of litigation and the substantial cost of continuing the legal proceedings between them; and therefore, desire to fully and finally settle all disputes and matters in controversy between them without the necessity of further litigation;

NOW, THEREFORE, it is hereby AGREED in consideration of the foregoing and mutual promises, covenants, and agreements hereinafter contained, the receipt and sufficiency of which are hereby acknowledged, as follows:

## THE ESTATE

1. The Parties do hereby stipulate, agree, and consent to divide all assets which now comprise the *Estate of Cleona Shortridge*, together with the assets of the Cleona Shortridge Revocable Trust, which such assets consist of the following:

| | |
|---|---|
| (i) Trust Checking Account No. 152301594890 at US Bank | $47,754.14 |
| (ii) Fortis Annuity Contract No. 360548733 (IRA) | $33,802.41 |
| (iii) Fortis Annuity Contract No. 366004419 (Annuity) | $36,030.09 |
| (iv) 1999 Mercedes-Benz Model C230 VIN WDBHA24G1XA790768 | $11,237.00 |
| TOTAL ASSETS: | $128,823.64 |

## SETTLEMENT PAYMENTS

2. In complete settlement of claims made by Banks and Rayford against Defendants and counterclaims made by Almajid and NAM against Plaintiffs in the lawsuit, all parties do hereby AGREE to disbursement of the assets of Cleona Shortridge as follows, these payments are subject to payment of costs as is set forth in paragraph 4 below:

a) Fortis Annuity Contract No. 360548733 shall devise to North American Mercantile, Inc. as the named beneficiary under said contract with full ownership of the contract to be changed to North American Mercantile, Inc.;

b) Fortis Annuity Contract No. 366004419 shall be liquidated and Fortis/Hartford shall pay proceeds as follows:

F:\LITIGATION\SHORTRIDGE FINAL STLMT.DOC

3

**EXHIBIT 4**
**174**

(i)    $25,000.00 to Sandberg, Phoenix & von Gontard P.C., One City Centre, 15th Floor, St. Louis, MO 63101;

(ii)   $4,930.59 to North American Mercantile, Inc. c/o Sandberg, Phoenix & von Gontard P.C., One City Centre, 15th Floor, St. Louis, MO 63101; subject to $500.00 retention holdback as set forth in paragraph 4 which would make the final distribution from this account to NAM $4,430.59; and

(iii)  $4,746.50 to Beryl Rayford, c/o Monnye Gross, 8000 Bonhomme, Suite 211, Clayton, MO 63105 ; subject to $500.00 retention holdback as set forth in paragraph 4 which would make the final distribution from this account to NAM $4,246.50; and

(iv)   $1,353.00 to Mary Banks as and for partial payment of her Trustee fees c/o Monnye Gross, 8000 Bonhomme, Suite 211, Clayton, MO 63105.

(v)    $1,000.00 to Mary Banks, Trustee to be retained in the trust checking account as set forth in paragraph 4, below.

c) Trustee, Mary Banks, shall pay to the Parties from the afore-said trust checking account the following amounts:

(i)    $5,853.00 to Mary Banks as and for Trustee's fees; and

(ii)   $41,901.14 to Beryl Rayford.

d) Title and ownership of the 1999 Mercedes C230 shall be transferred to Almajid. All parties recognize that the transfer of said vehicle may require an Order from this Court and all parties further do hereby stipulate and AGREE that upon demand, each party will execute any documents as are necessary or required by this Court, the California Department of Motor Vehicles or any other branch of the California State Government, including but not limited to the Probate Court of the City or County of San Diego, State of California. Banks and Rayford hereby relinquish any claims or rights, known or unknown, or inferred in and to the said vehicle.

## COURT COSTS

3. The Parties recognize that all payments as set forth above are subject to outstanding court costs and other costs incurred by the Parties' attorneys for depositions, copying charges, and other miscellaneous costs. The Parties do hereby acknowledge, AGREE, and consent that disbursement of these costs shall be made from assets of the Shortridge Trust and Estate prior to any disbursements to the Parties as are set forth above.

## RETENTION

4. Furthermore, the Parties do also AGREE that Banks shall retain the sum of $1,000.00 in the Trust's non-interest bearing checking account for preparation of final Federal and State

**EXHIBIT 4**
175

Fiduciary Tax Returns for the Trust. Any balance remaining in said Trust checking account after all taxes and/or tax preparation fees are paid, if any, shall be divided equally between Rayford and Almajid.

### INDEMNIFICATION OF MARY BANKS

5. Rayford, Almajid, and NAM do hereby **AGREE** and consent to indemnify and hold Banks harmless from any and all tax liabilities, interest, penalties, damages, costs, and attorney's fees, or any combination thereof, that may be attributable to Banks as Trustee of the Cleona Shortridge Revocable Trust, including without limitation, any and all taxes on the assets which are the subject of this Agreement. If any Party shall fail to pay his/her or its pro-rata payment to the Trustee or to cooperate with the Trustee in connection with any tax liabilities asserted by any state or federal authorities, then such party shall pay for all costs, expenses, and attorney's fees incurred by Banks in enforcement of this provision.

### PAYMENT OF TAXES

6. Rayford and Almajid do further **AGREE** to pay any and all taxes, interest, or penalties, or any combination thereof, arising from or assessed by virtue of the afore-said assets, or any assets attributable to the Cleona Shortridge Revocable Trust as follows:

(i) Rayford's pro-rata share    38.46%
(ii) Almajid's pro-rata share   61.54%

### PAYMENT OF SURPLUS

7. Any proceeds, if any, remaining after all payments set forth herein have been paid shall be divided equally between Rayford and Almajid.

### PLAINTIFFS' RELEASE OF ALMAJID AND NAM

8. Plaintiffs, for themselves and for all persons or entities who may claim by or through them, specifically including, but not limited to their heirs, assigns, representatives, successors

**EXHIBIT 4**
**176**

and attorneys, hereby **RELEASE** and forever discharge Almajid and NAM, their successors, assigns, agents, employees, members, shareholders, officers, directors, managers, servants, attorneys and representatives, jointly and severally, from and against any and all civil and/or administrative actions, claims, demands, rights, proceedings, causes of action, expenses, or remedies of any nature and description whatsoever, whether state or federal, or common law, legal, equitable, or regulatory in nature, known, or unknown, foreseen or unforeseen, pending or not pending, suspected or unsuspected, disclosed or undisclosed, absolute or contingent, whether or not asserted in this Lawsuit that Plaintiffs and all persons or entities who may claim by or through Plaintiffs, specifically, including but not limited to, their heirs, assigns, representatives, successors and attorneys may now have or ever had, or can, shall, or may at any time in the future have, or is or ever was capable of asserting, against Almajid and NAM, which by reason of any event occurring at any time since the beginning of the world to the date of this Agreement relate in any way to the allegations made by Plaintiffs in the Lawsuit, and all such claims which were or which could have been asserted in the Lawsuit.

## DEFENDANTS' RELEASE OF BANKS AND RAYFORD

9. Defendants, for themselves and for all persons or entities who may claim by or through them, specifically including, but not limited to their heirs, assigns, representatives, successors and attorneys, hereby **RELEASE** and forever discharge Banks and Rayford, their successors, assigns, agents, servants, attorneys and representatives, jointly and severally, from and against any and all civil and/or administrative actions, claims, demands, rights, proceedings, causes of action, expenses, or remedies of any nature and description whatsoever, whether state or federal, or common law, legal, equitable, or regulatory in nature, known, or unknown, foreseen or unforeseen, pending or not pending, suspected or unsuspected, disclosed or undisclosed, absolute

or contingent, whether or not asserted in this Lawsuit that Defendants and all persons or entities

who may claim by or through Defendants, specifically, including but not limited to, their heirs,

assigns, representatives, successors and attorneys may now have or ever had, or can, shall, or

may at any time in the future have, or is or ever was capable of asserting, against Banks and

Rayford, which by reason of any event occurring at any time since the beginning of the world to

the date of this Agreement relate in any way to the allegations made by Defendants in the

Lawsuit, and all such claims which were or which could have been asserted in the Lawsuit.

## DISMISSAL BY PLAINTIFFS

10. Within five (5) days of receipt of the disbursements as are set forth in paragraph 2

above, Plaintiffs shall file with the Court a Dismissal with Prejudice of their claims against

Almajid and NAM in the Lawsuit.

## DISMISSAL BY DEFENDANTS

11. Within five (5) days of receipt of the disbursements as are set forth in paragraph 2

above, Defendants shall file with the Court a Dismissal with Prejudice of their counterclaims

against Banks and Rayford in the Lawsuit.

## MULTIPLE ORIGINALS

12. This Agreement may be executed in one or more identical counterparts, and

execution and delivery of said executed counterparts by each Party shall have the same force and

effect as if all Parties had signed the same counterpart.

## AUTHORITY OF SIGNATORIES TO THIS AGREEMENT

13. Each Party hereto expressly represents and warrants that the person executing this

Agreement is fully and duly authorized to bind that Party to all the terms hereof, that it has taken

all necessary steps to authorize this Agreement, and the obligations evidenced by same, and that

he/she/it is the sole owner of the claims being released herein.

## BINDING AGREEMENT

14. This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights, and benefits hereof shall be binding upon, and shall inure to the benefit of the undersigned parties and their respective officers, agents, servants, attorneys, employees, directors, representatives, shareholders, executors, administrators, heirs, successors and assigns.

## ENTIRE AGREEMENT

15. This Agreement and the Dismissals herein provided for constitute and express the entire understanding, agreement and undertaking of the Parties with respect to the subject matter hereof, and supersedes all prior agreements, if any, written or oral. There is no understanding, agreement, undertaking, representation, or warranty, expressed or implied, which in any way limits, extends, defines or relates to the subject matter of this Agreement, that is not incorporated herein. The Parties hereto AGREE that this Agreement shall not be amended or modified unless done so in writing and signed by the Party against whom the enforcement is sought.

## NON-ADMISSION OF LIABILITY

16. It is understood and AGREED by the Parties that this Agreement is a compromise of disputed claims, and neither this Agreement, nor any of its provisions constitutes or shall be construed as an admission o any liability by any of the Parties, and to the contrary, that all Parties specifically deny any wrongdoing under any federal, state, or local statute, public policy, tort law, contract law, or common law.

## GOVERNING LAW

17. Except as otherwise expressly provided herein, the terms of this Agreement shall in all respects be interpreted and construed in accordance with the substantive laws of the State of

**EXHIBIT 4**
**179**

Missouri, without regard to its choice of law rules. These Parties **AGREE** that in the event any

Party breaches any term of this Agreement, the non-breaching Party(ies) shall have the right to

seek from the breaching Party all available remedies and damages, including but not limited to,

full restitution of all amounts paid or to be paid pursuant to this Agreement.

## **JOINT EFFORT**

18. The parties acknowledge that the drafting of this Agreement was a joint effort

between them, with the assistance and counsel of their respective attorneys, and that as a result,

this Agreement shall be construed as a whole, according to its fair meaning, and not in favor of

or against any Party.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement, all with

the approval of their respective counsel, on or near the date provided next to the signature of

each Party.

## **THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK**

**EXHIBIT 4**
**180**

**SO AGREED:**

**Plaintiffs:**


*Mary Bank*
Mary Banks, Successor Trustee of the
Cleona Shortridge Revocable Trust


State of Missouri      )
                       ) SS
County of St. Louis    )

    On this 17th day of JULY_____, 2007, before me personally appeared Mary Banks, Successor Trustee of the Cleona Shortridge Revocable Trust, to me known to be the person who executed the within Settlement and Mutual Release Agreement on behalf of said Trust and who acknowledged to me that she executed the same for the purposes therein stated.

                                       *Monnye R. Gross*
                                    Notary Public

My commission expires:

MONNYE R. GROSS
Notary Public - State of Missouri
My Commission Expires April 23, 2011
St. Louis County
Commission #07543921

**EXHIBIT 4**
**181**

_____
Beryl Rayford

State of California    )
                      ) SS
County of San Diego   )

On this _10th_ day of _July_____, 2007, before me personally appeared Shirley Atencio, Notary Public
Beryl Rayford to me known to be the person who executed the within Settlement and Release Agreement and who acknowledged to me that she executed the same for the purposes therein stated.


_____
Notary Public

My commission expired:

```
SHIRLEY ATENCIO
Commission # 1632901
Notary Public - California
San Diego County
My Comm. Expires Dec 31, 2009
```

**Defendants:**

North American Mercantile, Inc.

By: _____
Umar Almajid, Its President

State of California    )
                       ) SS
County of San Diego    )

On this _11th_ day of ___JULY_____, 2007, before me personally appeared Umar Almajid to me known to be the person who executed the within Settlement and Release Agreement and who acknowledged to me that he executed the same for the purposes therein stated.

_____
Notary Public

My commission expired: SEPT 2, 2008

OFFICIAL SEAL
MICHAEL KHOURY
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1610887
SAN DIEGO COUNTY
MY COMM. EXP. SEPT. 2, 2008

_____
Umar Almajid

State of California    )
                       ) SS
County of San Diego    )

On this _11th_ day of ___JULY_____, 2007, before me personally appeared Umar Almajid to me known to be the President of North American Mercantile Inc., who executed the within Settlement and Release Agreement on behalf of said corporation and who acknowledged to me that he executed the same for the purposes therein stated.

_____
Notary Public

My commission expired: _____

::ODMA\PCDOCS\SPVGDOCS\13581941\1A

12

**EXHIBIT 4**
**183**

Monnye R. Gross, #34312
8000 Bonhomme, Suite 211
Clayton, MO 63105
*Attorney for Plaintiffs*


Richard A. Wier, #26470
9666 Olive Street Road, Suite 745
St. Louis, MO 63132
*Attorney for Plaintiffs*


SANDBERG, PHOENIX & von GONTARD, P.C.

By: _____

Martin L. Daesch #40494
One City Centre, 15th Floor
St. Louis, MO 63101-1880
*Attorneys for Defendants*
*North American Mercantile, Inc. and*
*Umar Almajld*

**EXHIBIT 4**
**184**

EXHIBIT 5

## FIRST AMENDMENT TO SETTLEMENT AND
## MUTUAL RELEASE AGREEMENT

This First Amendment to Settlement and Mutual Release Agreement (the "First Amendment") is made and entered into this _____ day of November, 2007, by and among Mary Banks as Trustee of the Cleona Shortridge Revocable Trust ("Banks") and Beryl Rayford ("Rayford"), sometimes hereinafter collectively referred to as "Plaintiffs" and Umar Almajid ("Almajid") and North American Mercantile, Inc. ("NAM"), sometimes hereinafter collectively referred to as "Defendants." Banks, Rayford, Almajid and NAM are sometimes collectively referred to herein as the "Parties."

**WHEREAS**, the Plaintiffs and Defendants executed that certain Settlement and Mutual Release Agreement ("Agreement") dated the 10th day of July, 2007, which settled the pending lawsuit in the Circuit Court of St. Louis County, State of Missouri – Probate Division styled *Mary Banks, et al. v. North American Mercantile, et al.*, Case No. 04PS-PR00754; and

**WHEREAS**, during the course of following through with the settlement it became obvious that the distribution scheme as is set forth in paragraph 2(b) of the Agreement was inconsistent with the allocation of tax liability as is contemplated in paragraph 6 of the Agreement; and

**WHEREAS, Fortis**/Hartford, which is the Administrator of the Fortis Annuity Contract, No. 366004419 as referenced in paragraph 2(b) has indicated to the Parties that it cannot make distribution from the Fortis Annuity Contract as referenced without issuing a 1099 to each of the distributees in the amounts as are set forth in paragraph 2(b); and

**WHEREAS**, in order to accomplish the dispositive provisions of the Settlement Agreement, it is necessary, and the Parties desire for Fortis/Hartford to liquidate Fortis Annuity Contract No. 366004419 and to remit a check representing the proceeds therefrom to Mary Banks as Trustee for the Cleona Shortridge Revocable Trust; and

**WHEREAS**, the Parties do further desire that once Fortis/Hartford check is received by Mary Banks, Mary Banks, on behalf of the Trust will distribute the proceeds therefrom in accordance with the dispositive provisions of paragraph 2(b); and

**WHEREAS**, the Parties do further desire for Mary Banks to allocate taxes on the amounts so distributed from the proceeds of the Fortis Annuity Contract in accordance with paragraph 6 of the Agreement; and

**THEREFORE**, in consideration of mutual covenants, promises, and agreements, the receipt of sufficiency are hereby acknowledged, the Parties do hereby amend the Settlement and Mutual Release Agreement as follows:

1.      Paragraph 2(b) is deleted and its place shall read, "2. b) Fortis Annuity Contract No. 366004419 shall be liquidated and Fortis/Hartford shall pay all proceeds to Mary Banks as Trustee for the Cleona Shortridge Revocable Trust and issue 1099 or other relevant tax

C:\Documents and Settings\Musulman-M\Local Settings\Temporary Internet Files\OLK426\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO FIRST AMENDMENT_11-19-07.DOC
C:\Documents and Settings\maguire-d\Local Settings\Temporary Internet Files\OLK1A\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO FIRST AMENDMENT_11-19-07 (2).DOC

**EXHIBIT 5**

**185**



documents to said Trust. Upon receipt of the Fortis Annuity Contract proceeds, Mary Banks as Trustee for the Cleona Shortridge Revocable Trust shall distribute the proceeds in accordance with the following, except that, in the event that the total proceeds from the Fortis Annuity Contract are greater than, or less than, the total amount of distributions as is set forth hereunder in this paragraph, said excess or deficiency, shall be divided pro-rata between NAM and Rayford. The proceeds shall be distributed as follows:

(i)    $25,000.00 to Sandberg, Phoenix & von Gontard P.C., One City Centre, 15th Floor, St. Louis, MO 63101;

(ii)    $4,930.59 to North American Mercantile, Inc., c/o Sandberg, Phoenix & von Gontard P.C., One City Centre, 15th Floor, St. Louis, MO 63101; subject to $500.00 retention holdback as set forth in paragraph 4 which would make the final distribution from this account to NAM $4,430.59; and

(iii)    $4,746.50 to Beryl Rayford, c/o Monnye Gross, 8000 Bonhomme, Suite 211, Clayton, MO 63105; subject to $500.00 retention holdback as set forth in paragraph 4 which would make the final distribution from this account to NAM $4,246.50; and

(iv)    $1,353.00 to Mary Banks as and for partial payment of her Trustee fees c/o Monnye Gross, 8000 Bonhomme, Suite 211, Clayton, MO 63105; and

(v)    $1,000.00 to Mary Banks, Trustee to be retained in the Trust checking account as set forth in paragraph 4, below.

(vi)    Any income or other taxes that are generated as a result of the liquidation or distribution of the Fortis Annuity Contract shall be apportioned to the Parties in accordance with paragraph 6 of the Settlement Agreement.

2.    There shall be added to the Settlement and Mutual Release Agreement a new paragraph 2.5 titled FORTIS/HARTFORD.

2.5    Upon change of ownership of Contract No. 360548733 to NAM, liquidation of Fortis Annuity Contract No. 36004419, and remittance of the proceeds to the Trust by Fortis/ Hartford, pursuant to the terms set forth above, Banks, Rayford, Almajid and NAM ("Releasors"), being of lawful age, and for their heirs, executors, administrators, successors and assigns and anyone claiming through or under them hereby release, acquit and forever discharge Fortis Benefits Insurance Company, Hartford Life Insurance Company, Union Security Insurance Company and their agents, servants, predecessors, successors, assigns, heirs, executors, administrators, associations, partnerships, and corporations and each of them, all of their subsidiaries, related partnerships and corporations, past, present and future officers, directors, agents, attorneys and employees and respective predecessors, successors, assigns, heirs, executors and administrators, and each of them (collectively "Releasees"), of and from any and all claims, actions, causes of action, rights, judgments and demands of every kind and nature whatsoever, which Releasors may have had or claim to have had, now have or claim to have, or hereafter may have or claim to

C:\Documents and Settings\Musulman-M\Local Settings\Temporary Internet Files\OLK426\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO FIRST AMENDMENT_11-19-07.DOC
C:\Documents and Settings\maguire-d\Local Settings\Temporary Internet Files\OLK1A\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO FIRST AMENDMENT_11-19-07 (2).DOC

**EXHIBIT 5**
**186**

have, including, without limitations, those which arise out of or are in any manner whatsoever, directly or indirectly, connected with or related to:

> (i) Fortis Masters Variable Annuity Contract No. 360548733 effective May 5, 1994;

> (ii) Fortis Individual MVA Masters + Annuity Contract No. 366004419 effective July 13, 1999;

> (iii) The Lawsuit, the subject matter thereof and any claim or cause of action that could have been asserted therein by Releasors against Releasees;

> (iv) Any act, omission, transaction, dealing, conduct or negotiation of any kind whatsoever by Releasees, or any of them, in connection with the above-referenced Contracts and any claim under the Contracts.

3.    The remaining terms of the Settlement and Mutual Release Agreement dated July 10, 2007, shall remain unchanged and in full force and affect.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement, all with the approval of their respective counsel, on or near the date provided next to the signature of each Party.

<u>**THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK**</u>

C:\Documents and Settings\Musulman-M\Local Settings\Temporary Internet Files\OLK426\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO FIRST AMENDMENT_11-19-07.DOC
C:\Documents and Settings\maguire-d\Local Settings\Temporary Internet Files\OLK1A\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO FIRST AMENDMENT_11-19-07 (2).DOC

**EXHIBIT 5**
**187**

**SO AGREED:**

**Plaintiffs:**

_____
Mary Banks, Successor Trustee of the
Cleona Shortridge Revocable Trust



_____
Beryl Rayford

C:\Documents and Settings\Musulman-M\Local Settings\Temporary Internet Files\OLK426\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO
FIRST AMENDMENT_11-19-07.DOC
C:\Documents and Settings\maguire-d\Local Settings\Temporary Internet Files\OLK1A\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S
CHANGES TO FIRST AMENDMENT_11-19-07 (2).DOC
**EXHIBIT 5**
**188**

**Defendants:**

North American Mercantile, Inc.

By: _____
    Umar Almajid, Its President

_____

Umar Almajid

C:\Documents and Settings\Musulman-M\Local Settings\Temporary Internet Files\OLK426\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO
FIRST AMENDMENT_11-19-07.DOC
C:\Documents and Settings\maguire-d\Local Settings\Temporary Internet Files\OLK1A\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S
CHANGES TO FIRST AMENDMENT_11-19-07 (2).DOC
**EXHIBIT 5**
**189**

Monnye R. Gross, #34312
8000 Bonhomme, Suite 211
Clayton, MO 63105
*Attorney for Plaintiffs*

SANDBERG, PHOENIX & von GONTARD, P.C.

By: _____
Martin L. Daesch #40494
One City Centre, 15th Floor
St. Louis, MO 63101-1880
*Attorneys for Defendants*
*North American Mercantile, Inc. and*
*Umar Almajid*

C:\Documents and Settings\Musulman-M\Local Settings\Temporary Internet Files\OLK426\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S CHANGES TO
FIRST AMENDMENT_11-19-07.DOC
C:\Documents and Settings\maguire-d\Local Settings\Temporary Internet Files\OLK1A\SPVGDOCS-1398174-v1-ALMAJID_MAGUIRE'S
CHANGES TO FIRST AMENDMENT_11-19-07 (2).DOC

**EXHIBIT 5**
**190**

**EXHIBIT 6**

February 10, 2008

Mr. Daniel W. Maguire Esq.
GALTON & HELM L L P
500 South Grand Avenue, Ste. 1200
Los Angeles, CA 90071-2624

VIA FAX & EMAIL TRANSMISSION
dmaguire@galtonhelm.com
213.629.0037

RE: Banks v Almajid
Your File No.: 5487

Dear Mr. Maguire,

As counsel for Hartford Life Insurance Company, you have been in communication with
Martin L. Daesch regarding a lawsuit in St.Louis. Mr. Daesch negotiated a settlement
agreement wherein his law firm is to receive the proceeds from IRA Account # 3605433.
I signed this agreement under dubious circumstances. The agreement was then amended
to provide that both financial products administered by the Hartford be transferred into a
St.Louis trust account. The plaintiffs/trustee have been hostile towards me from the very
beginning. Their lawsuit was frivolous and completely without merit. The complaint
itself does not allege anything against North American Mercantile, Inc. Mr. Daesch's file
is replete with exonerating evidence including but not limited to sworn trustee testimony,
San Diego County Health Human Services investigative findings which includes the
Conservatorship Services Division, the Public Guardian Office and doctor's statements.
Further, such a transfer is absolutely against Mrs. Shortridge's written and expressed
wishes. Further note that Mr. Daesch's firm has already received 17k in proceeds from
the sale of the St. Louis residence.

As such be advised that on February 8th I received a fax dated January 9,2007 from Mr.
Daesch informing that Attorney Gross is ready to distribute proceeds pursuant to the
original agreement. Attorney Daesch goes on to say that The Hartford will not proceed to
distribute pursuant to the terms of the original agreement, in other words, he appears not
to be able to liquidate any of the Hartford accounts. I hope that this is fact the case. For
many reasons my confidence in Mr. Daesch has eroded to nil. The February 8th letter
wants a response from by February 15th. Before speaking with Daesch, I would like to get
clarification of the Hartford's position directly from you.

Thank you for your anticipated courtesy and cooperation.

Sincerely,

Umar Abd Almajid, for
North American Mercantile, Inc.

EXHIBIT 6
191

## Mutual Release Agreement

This Mutual Release Agreement (the "Release Agreement") is made and entered into this 5 +h day of June, 2008, by and among Mary Banks as Trustee of the Cleona Shortridge Revocable Trust ("Banks") and Beryl Rayford ("Rayford"), sometimes hereinafter collectively referred to as "Plaintiffs" and Umar Almajid ("Almajid") and North American Mercantile, Inc. ("NAM"), sometimes hereinafter collectively referred to as "Defendants." Banks, Rayford, Almajid and NAM are sometimes collectively referred to herein as the "Parties."

WHEREAS, the Plaintiffs and Defendants executed that certain Settlement and Mutual Release Agreement ("Agreement") dated the 10th day of July, 2007, which settled the pending lawsuit in the Circuit Court of St. Louis County, State of Missouri – Probate Division styled *Mary Banks, et al. v. North American Mercantile, et al.,* Case No. 04PS-PR00754; and

WHEREAS, Fortis Benefits Insurance Company ("Fortis") and Hartford Life Insurance Company ("Hartford") acted and/or acts as Administrator of the Fortis Annuity Contracts, No. 360548733 and No. 366004419 (the Contracts"); and

WHEREAS, in order to accomplish the provisions of the Settlement Agreement, it is necessary, and the Parties desire, to provide Fortis, Hartford and related entities with a release.

THEREFORE, in consideration of mutual covenants, promises, and agreements, the receipt and sufficiency are hereby acknowledged, the Parties do hereby agree to a Mutual Release Agreement as follows:

1.      Upon change of ownership of Contract No. 360548733 to NAM, liquidation of Fortis Annuity Contract No. 36004419, and remittance of the proceeds to the Trust by Fortis/Hartford, pursuant to the terms set forth above, Banks, Rayford, Almajid and NAM ("Releasors"), being of lawful age, and for their heirs, executors, administrators, successors and assigns and anyone claiming through or under them hereby release, acquit and forever discharge Fortis Benefits Insurance Company, Hartford Life Insurance Company, Union Security Insurance Company and their agents, servants, predecessors, successors, assigns, heirs, executors, administrators, associations, partnerships, and corporations and each of them, all of their subsidiaries, related partnerships and corporations, past, present and future officers, directors, agents, attorneys and employees and respective predecessors, successors, assigns, heirs, executors and administrators, and each of them (collectively "Releasees"), of and from any and all claims, actions, causes of action, rights, judgments and demands of every kind and nature whatsoever, which Releasors may have had or claim to have had, now have or claim to have, or hereafter may have or claim to have, including, without limitations, those which arise out of or are in any manner whatsoever, directly or indirectly, connected with or related to:

(i)      Fortis Masters Variable Annuity Contract No. 360548733 effective May 5, 1994;

(ii)     Fortis Individual MVA Masters + Annuity Contract No. 366004419 effective July 13, 1999;

C:\Documents and Settings\admin\Local Settings\Temporary Internet Files\Content.IE5\W17P9JXC\SPVGDOCS-1451407-v2-ALMAJID_MUTUAL%20RELEASE%20AGREEMENT%2B[1].DOC

**EXHIBIT 7**
**192**

(iii)   The Lawsuit, the subject matter thereof and any claim or cause of action that could have been asserted therein by Releasors against Releasees;

(iv)   Any act, omission, transaction, dealing, conduct or negotiation of any kind whatsoever by Releasees, or any of them in connection with the above-referenced Contracts and any claim under the Contracts.

2.      Releasors understand and acknowledge that Releasees do not warrant or represent any tax consequences of this Release, and Releasors agree that they are relying on their own legal and/or tax advisors and not on Releasees with respect to any tax aspects of this Release. Any tax or costs, attorneys' fees, penalties or interest incurred or assessed to Releasors are their sole responsibility.

       **IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement on or near the date provided next to the signature of each Party.

<u>**THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK**</u>

C:\Documents and Settings\admin\Local Settings\Temporary Internet Files\Content.IE5\WF7P9JXC\SPVGDOCS-1451407-v2-ALMAJID_MUTUAL%20RELEASE%20AGREEMENT%2B[1].DOC

**EXHIBIT 7**
**193**

**SO AGREED:**

**Plaintiffs:**

_Mary Banks_
Mary Banks, Successor Trustee of the
Cleona Shortridge Revocable Trust


_____

Beryl Rayford

**EXHIBIT 7**
**194**

**SO AGREED:**

**Plaintiffs:**

_____

Mary Banks, Successor Trustee of the
Cleona Shortridge Revocable Trust

_____

Beryl Rayford

**EXHIBIT 7**
**195**

**Defendants:**

North American Mercantile, Inc.

Umar Almajid, Its President

Umar Almajid

C:\Documents and Settings\admin\Local Settings\Temporary Internet Files\Content.IE5\WP7P9JXC\SPVGDOCS-1451407-v2-ALMAJID_MUTUAL%20RELEASE%20AGREEMENT%2B{1}.DOC

EXHIBIT 7
196

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153082     — TC**

**July 16, 2008
14:13:07**

**Civ Fil Non-Pris**
USAO #.: 08CV1279
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC43977

**Total—> $350.00**

FROM: HARTFORD LIFE INS
      VS
      MARY BANKS, ET AL.

**JS 44** (Rev. 12/07)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
HARTFORD LIFE INSURANCE COMPANY

### DEFENDANTS
MARY BANKS, an individual and Trustee of the Cleona Shortridge Revocable Trust; BERYL RAYFORD, an individual; UMAR ALMAJID, an individual [continued on Attachment A]

FILED
08 JUL 16 PM 2:07

**(b)** County of Residence of First Listed Plaintiff  Connecticut
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Burke, Williams & Sorensen, LLP
Daniel W. Maguire (SBN 120002); Keiko J. Kojima (SBN 206595)
444 S. Flower Street, Suite 2400
Los Angeles, CA  90071-2953
(213) 236-0600

Attorneys (If Known)

BY:                                    DEPUTY

'08 CV 1279 WQH LSP

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [X] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury— | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | Security Act | [ ] 871 IRS—Third Party | Act |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | [ ] 900 Appeal of Fee Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | to Justice |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1335
Brief description of cause:
Interpleader (Federal Interpleader Act)

### VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [X] No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
July 14, 2008

SIGNATURE OF ATTORNEY OF RECORD
DANIEL W. MAGUIRE

**FOR OFFICE USE ONLY**

RECEIPT #  153082   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

GAC   7/16/08

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A

### CIVIL COVER SHEET (CONTINUED)

**DEFENDANTS (continued):**

NORTH AMERICAN MERCANTILE, INC., a corporation; SANDBERG, PHOENIX AND VON GONTARD, P.C., a business organization; MONNYE GROSS, an individual; and RICHARD WYER, an individual.