


# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE INSURANCE COMPANY,<br><br>                          Plaintiff,<br>vs.<br>MARY BANKS, an individual and Trustee of the Cleona Shortridge Revocable Trust; BERYL RAYFORD, an individual; UMA ALMAJID, an individual; NORTH AMERICAN MERCANTILE, INC., a corporation; SANDBERG, PHOENIX AND VON GONTARD, P.C., a business organization; MONNYE GROSS, an individual; and RICHARD WYER, an individual,<br>                          Defendants. | CASE NO. 08cv1279 WQH (LSP)<br><br>**ORDER** |

HAYES, Judge:

      The matter before the Court is the Motion to Dismiss Counterclaims of Counter-Claimant Umar Abd Almajid and North American Mercantile, Inc. (Doc. # 31) filed by Defendant and Counter-Defendant Sandberg, Phoenix & von Gontart P.C.

## Background

     A.    <u>The Complaint in Interpleader</u>

      On July 16, 2008, Plaintiff Hartford Life Insurance Company ("Hartford") initiated this action by filing the Complaint in Interpleader ("Complaint") (Doc. # 1). The Complaint alleges claims for (1) declaratory relief, and (2) interpleader.

          *(i)*       Factual Allegations in the Complaint

Union Security Insurance Company ("Union") issued two annuities to Cleona Bailey Shortridge ("Shortridge") as owner and annuitant. The annuities were later assumed by Fortis Benefits Insurance Company and thereafter by Hartford. On August 10, 2000, Hartford received a change in beneficiary designation on the annuities, which designated Defendant Umar Almajid ("Almajid") and Defendant Beryl Rayford ("Rayford") as beneficiaries. On June 11, 2002, Shortridge changed the beneficiaries on the annuities to Defendant North American Mercantile, Inc. ("NAM").

On July 26, 2004, a Petition was filed in the Circuit Court of the City of St. Louis, State of Missouri ("Petition"). The Petition alleged that Shortridge executed a revocable trust, which named Shortridge as grantor and trustee, and Defendant Mary Banks ("Banks") as successor trustee. The Petition alleged that "[t]he Trust allegedly named Cleona Bailey Shortridge's nephew, Umar Almajid, and her niece, Beryl Rayford, each as 50 percent beneficiaries of the Trust." *Complaint,* ¶ 19. The Petition alleged that a dispute arose between Banks, Rayford, Almajid and NAM regarding the ownership of and/or entitlement to various trust assets, including the annuities.

On December 28, 2005, Defendant Monnye R. Gross ("Gross"), the attorney for Banks and Rayford, forwarded the Petition to counsel for Hartford, and stated that the parties were working toward a settlement. Almajid and NAM were represented in connection with the issues raised by the Petition by attorney Marty Daesch of Defendant law firm Sandberg, Phoenix and Von Gontard ("Sandberg").

A settlement regarding the ownership of the annuities was memorialized in a writing dated July 10, 2007, which contemplated liquidation of one of the annuities. Hartford liquidated the annuity pursuant to the terms of the settlement, but was unable to distribute the proceeds without proper authorization and completion of a form designated for that purpose. Hartford forwarded the form to attorney Daesch, but neither Daesch nor anyone else returned signed forms to Hartford. On February 10, 2008, an attorney for Hartford received an unsolicited communication from Almajid, which gave Hartford good cause to believe that a

dispute had arisen between Almajid, NAM, and their counsel, Sandberg. Hartford requested written confirmation from Almajid and NAM that Sandberg still represented them. Hartford advised Daesch that if proper authorization of the settlement was not received by Hartford's counsel by June 9, 2008, that Hartford would initiate an action in interpleader. Hartford did not receive written confirmation from NAM or Almajid that they were still represented by Sandberg. Hartford did not receive proper authorization of the settlement. Hartford's counsel was then advised that NAM, Almajid, Banks and Rayford were willing to release Hartford, Fortis and Union from further liability, but were unwilling to authorize the settlement. A dispute then arose as to whether Hartford should disburse the proceeds of the second annuity "to the Trustee, or to the multiple payees identified in the original settlement agreement." *Id.,* ¶ 36. Based on the foregoing, Hartford filed the Complaint.

B.   The "Answer-Complaint in Interpleader Counterclaim for Damages"

On November 21, 2008, Almajid, proceeding pro se, filed the "Answer-Complaint in Interpleader Counterclaim for Damages" ("Cross-Claim") (Doc. # 21). The Cross-Claim arises out of an alleged "scheme devised by Defendants Rayford, Banks, Gross, Wier and Sandberg to defraud [Cross-Claimants] and to procure exorbitant profits from [Cross-Claimants] by failure to fully disclose and/or correct material misstatements of fact." *Cross-Claim,* ¶ 3. The Cross-claim alleges that "[o]n or about October 2000 and continuing through July 2008 . . . Defendants Rayford, Banks, Gross, Wier and Sandberg continuously engaged in wrongful acts." *Id.,* ¶ 4. The Cross-Claim alleges causes of action for (1) civil RICO substance and conspiracy, (2) conspiracy, (3) interference with contractual relationship, (4) fraudulent concealment, and (5) accounting.

*(i)*   Factual Allegations in the Cross-Claim

On or about April 19, 2000, Banks informed Shortridge and Almajid that she was no longer able to or had the desire to be named a principal participant in the Shortridge estate planning documents. Almajid sent Gross a letter memorializing Shortridge's decision. On or about June 20, 2000, Shortridge's wishes were memorialized in estate planning amendments, and were executed and witnessed. *Cross-Claim,* ¶ 18.

"Defendants in defiant disregard of law have filed or caused to be filed" the lawsuit presently before this Court and in the Superior Court of California. *Id.,* ¶ 3. "Approximately seventeen days after the demise of Shortridge, Defendants Rayford, Banks, Gross and Wier" filed the Petition, which was "based neither on information and belief nor subject to penalties of perjury. The absence of proper execution strongly suggests that the parties knowingly and willingly filed a frivolous lawsuit and sought to avoid the penalties of perjury." *Id.,* ¶ 24. "Sandberg provided Counter claimants with a draft answer" to the Petition, which alleged fraud. *Id.,* ¶ 26. "Sandberg knew or should have known that allegations of fraud based on information and belief do not satisfy the particularity requirement," and "Sandberg's defense to specious assertions resulted in protracted and expensive discovery of non existent facts." *Id.* On or about February 15, 2005, Rayford, Banks and Gross "knowingly misstated facts filed in the Superior Court of California" by making misrepresentations "in the form of objections to the appointment of Counter claimant." *Id.,* ¶ 29.

From approximately May 2001 through April 2004, Rayford, Banks and Gross "filed or caused to be filed repeated reports of elder abuse to San Diego County Health and Human Services" ("HHS"). *Id.,* ¶ 20. On or about July 9, 2001, "HHS and its various agencies jointly determined that Shortridge was 'clear in her wishes and competent to make her decisions,'" a determination of which Rayford, Banks and Gross were aware. *Id.,* ¶¶ 22, 33. On or about February 24, 2005, the Assistant Clinical Professor of Neurosciences at the University of California, San Diego, "issued a statement verifying that decedent had been seen August 14th, 19th and 22nd of 2003" and had "diagnosed Shortridge with moderate Alzheimer's disease with the ability to present herself in a lucid manner." *Id.,* ¶ 32. Thus, the HSS determination that Shortridge was "clear in her wishes and competent to make her decisions" was "reaffirmed by the neurological evaluations of August 2003." *Id.,* ¶ 33. Gross, Wier and Sandberg were aware of these facts, yet the Petition "suggested that Shortridge could not fully consent to estate document amendments or ratify change of beneficiary designations," which constituted "gross misrepresentations of the material facts established by [HHS], San Diego Police Department, University of California, San Diego." *Id.,* ¶¶ 33, 35.

On or about March 22, 2005, Rayford, Banks, Gross, Wier and Sandberg "circumvented the Superior Court of California evidentiary hearing by withholding evidence favorable to Counter claimants." *Id.,* ¶ 36. Rayford, Banks, Gross, Wier and Sandberg "failed to provide Counter claimants with timely and detailed accounting documentation of estate transactions" for "years 2004 through 2008." *Id.,* ¶ 37. Rayford, Banks, Gross and Wier "without notification to or the express permission of Counter claimant or St. Louis County Circuit Court embezzled no less than fifteen thousand dollars ($15,000.00) from Shortridge Revocable Trust accounts." *Id.,* ¶ 38. On or about June 10, 2007, Rayford, Banks, Gross, Wier and Sandberg entered into "settlement negotiations wherein they cobbled a purported agreement." *Id.,* ¶ 47. The "intended settlement appears based on a series of calculated misrepresentations designed to defraud creditors and Counter claimants." *Id.* The "settlement document is predicated on admitted misrepresentations." *Id.,* ¶ 48.

### C. Subsequent Procedural History

On January 5, 2009, Sandberg filed the Motion to Dismiss Counterclaims of Counter-Claimant. Sandberg moves to dismiss the entire Cross-Claim on grounds that it fails to state a cause of action for civil RICO; fails to plead fraud with the requisite particularity; fails to allege facts sufficient to state claims for intentional interference with contract or for an accounting; and Almajid, appearing pro se, may not legally proceed on behalf of NAM, Inc. On February 3, 2009, Almajid filed a Response in Opposition to the Motion to Dismiss (Doc. # 23). Sandberg has not filed a Reply.

## Applicable Law

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *See id.* (citing Fed R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule

12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996). "Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED R. CIV. P. 8(a)(2). While the Federal Rules adopt a flexible pleading policy, every complaint must, at a minimum, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*, 127 S. Ct. at 1964 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988). Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLO,* 476 F.3d 756, 764-65 (9th Cir. 2007). "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). "[W]here fraud is not an essential element of a claim only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003). "When an entire complaint, or an entire claim within a complaint

1  is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of
2  Rule 9(b), a district court may dismiss the complaint or claim." *Id.* at 1107. "If insufficiently
3  pled averments of fraud are disregarded, as they must be, in a complaint grounded in fraud,
4  there is effectively nothing left of the complaint." *Id.*

## **Analysis**

6  Sandberg contends that all of the claims alleged in the Cross-Claim "are riddled with
7  allegations of fraudulent conduct, including fraud, misrepresentation and fraudulent
8  concealment." *Mot. to Dismiss,* p. 6. Sandberg contends that allegations sounding in fraud are
9  incorporated into each and every claim alleged in the Cross-Claim. Sandberg contends that
10 the allegations sounding in fraud are subject to the heightened pleading standard articulated
11 in Rule 9(b) of the Federal Rules of Civil Procedure, and that the Cross-Claim fails to plead
12 fraud with sufficient particularity. To the extent that the allegations supporting the claims
13 alleged in the Cross-Claim do not sound in fraud, Sandberg contends that the Cross-Claim fails
14 to comply with the pleading standards articulated in Rule 8(a) of the Federal Rules of Civil
15 Procedure.

16 Almajid contends that the Cross-Claim consists "of thirteen pages of substantive factual
17 allegations, which list sixteen approximate dates, that describe particular events," and name
18 specific people involved in the unlawful activities underlying the claims. *Opposition,* p. 4.
19 Almajid contends that the Cross-Claim "provides Sandberg a chronological account with
20 substantiation," and "provides an exact description of the nature, roles and subject matter of
21 [the] complaint conduct." *Id.* at 6. Almajid contends that the allegations in the Cross-Claim
22 are sufficient to survive a motion to dismiss for failure to state a claim.

23     A.    <u>Cross-Claim for Civil RICO Violations</u>

24 To state a claim for a civil RICO violation, the claimant must allege: "(1) conduct (2)
25 of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex*
26 *Co., Inc.,* 473 U.S. 479, 496 (1985). When a claimant alleges fraudulent acts, such as mail and
27 wire fraud, as the predicate acts in a RICO claim, Rule 9(b) of the Federal Rules of Civil
28 Procedure "requires that circumstances constituting fraud be stated with particularity." *Alan*

*Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988).

The predicate acts underlying the claim for civil RICO violation are "'[m]ultiple instances of mail fraud in violation of 18 U.S.C. section 1341," and "[m]ultiple instances of wire fraud in violation of 18 U.S.C. section 1343." *Cross-Claim,* ¶ 55. The Cross-Claim alleges that Rayford, Banks, Gross and Wier made misrepresentations, including that Shortridge could not fully consent to estate document amendments, before the St. Louis County Circuit Court, the Superior Court of California, and in settlement discussions. Although the Cross-Claim references "multiple instances" of fraud, and "gross misrepresentations," the Cross-Claim does not allege with sufficient specificity the time, place or specific content of each misrepresentation or fraudulent act giving rise to the claim for violation of RICO. *See id.,* ¶¶ 35, 55. The Cross-Claim also fails to allege with sufficient specificity the identities of the parties to each misrepresentation; instead, the Cross-Claim lumps multiple defendants together, which is insufficient under Rule 9(b). The Court concludes that the Cross-Claim fails to allege the time, place and specific content of the misrepresentations underlying the RICO claims, and fails to identify the role of each Defendant in the fraudulent scheme. The Court concludes that the Cross-Claim fails to state a claim for civil RICO violation because the Cross-Claim fails to allege the circumstances constituting fraud with particularity.

B.  Cross-Claim for Conspiracy

In support of the claim for conspiracy, the Cross-Claim alleges that Rayford, Banks, Gross, Wier and Sandberg "engaged in the formation and operation of several conspiracies" in which "Defendants would abuse the fiduciary relationship and trust between Hartford and NAM," would "abuse the discretion granted [to] Hartford by NAM," would "induce Hartford to breach the obligation of undivided loyalty and fidelity to NAM," and would "fail to disclose material facts with the intent of defrauding NAM." *Id.,* ¶ 58. The claim for conspiracy alleges that Defendants formed a conspiracy whereby they abused the relationship between Hartford and NAM, failed to disclose material facts, and intended to defraud NAM. However, the Cross-Claim does not allege with specificity the material facts that Defendants failed to

disclose, or identify which Defendant failed to disclose which material fact. To the extent that the allegations giving rise to the claim for conspiracy do not sound in fraud, the Cross-Claim does not provide sufficient detail to put Defendants on notice of the alleged misconduct giving rise to the conspiracy claim. Aside from the conclusory allegation that Hartford and NAM had a fiduciary relationship, the Cross-Claim does not allege sufficient facts describing the nature of this relationship and the relation to the alleged conspiracy. Similarly, the Cross-Claim does not allege facts to support how Defendants' conduct induced Hartford to breach its obligations to NAM. The Court concludes that the allegations underlying the conspiracy claim are not pled with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure insofar as they sound in fraud, and are otherwise insufficient to put Defendants on notice of the grounds upon which the conspiracy claim rests, pursuant to Rule 8(a). The Court concludes that the Cross-Claim fails to state a claim for conspiracy.

C. <u>Cross-Claim for Intentional Interference with Contractual Relationship</u>

In support of the claim for interference with contractual relationship, the Cross-Claim alleges that "[f]rom 2002 until 2004 NAM had a valid and existing agreement with Hartford, in which Hartford served as NAM investment advisor, consultant and agent," and that as a result of this relationship, Hartford owed NAM fiduciary duties. *Id.,* ¶ 62. The Cross-Claim alleges that Rayford, Banks, Gross, Wier and Sandberg had knowledge of this agreement and relationship between Hartford and NAM, and "committed intentional and unjustified acts designed to interfere with and/or disrupt the agreement and fiduciary relationship between NAM and Hartford." *Id.,* ¶ 64. Aside from the conclusory allegation that NAM and Hartford "had a valid and existing agreement," the Cross-Claim does not allege facts to describe this contractual relationship. *Id.,* ¶ 62. The Cross-Claim also fails allege sufficient facts to describe the intentional and unjustified acts allegedly committed by Rayford, Banks, Gross, Wier and Sandberg that interfered with the agreement between NAM and Hartford. The Court concludes that the allegations supporting the claim for intentional interference with contractual relationship are conclusory, vague and insufficient to put Defendants on notice of the misconduct that gives rise to the claim. The Court concludes that the Cross-Claim fails to state

a claim for intentional interference with contractual relationship.

### D. Cross-Claim for Fraudulent Concealment

In support of the claim for fraudulent concealment, the Cross-Claim alleges that Rayford, Banks, Gross, Wier and Sandberg "had a duty to disclose the fact of a frivolous lawsuit based [on] a series of factual misrepresentations in that the Defendants nondisclosures were likely to mislead Hartford, St. Louis County Circuit Court and San Diego County Superior Court." *Id.,* ¶ 67. The Cross-Claim alleges that Rayford, Banks, Gross, Wier and Sandberg "jointly and severally, actively concealed the undisclosed information," and "breached their duties by suppressing material facts, including the fact that they entered into agreements with and made undisclosed distributions of trust assets among themselves or other unknown parties." *Id.,* ¶¶ 67-68. The claim for fraudulent concealment references "secret agreements," and a "series of factual misrepresentations." *Id.,* ¶¶ 67-68. However, the Cross-Claim does not allege with specificity the time, place or specific content of the secret agreements or misrepresentations giving rise to the claim for fraudulent concealment. The Cross-Claim also lumps Defendants Rayford, Banks, Gross, Wier and Sandberg together, thereby failing to specify the identities of the parties to the misrepresentations giving rise to the fraudulent concealment claim as required by Rule 9(b). The Court concludes that the Cross-Claim fails to state a claim for fraudulent concealment because the Cross-Claim fails to allege the circumstances constituting fraud with particularity.

### E. Cross-Claim for Accounting

"A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law." *St. James Church of Christ Holiness v. Superior Court,* 135 Cal. App. 2d 352, 359 (1955).

In support of the claim for accounting, the Cross-Claim alleges that without authorization, Defendants distributed trust assets, the amount and nature of which are presently unknown to Almajid and NAM. The Cross-Claim seeks an "accounting of all Shortridge Revocable Trust financial transactions and payment of the amounts due." *Cross-Claim,* ¶ 72. The Cross-Claim does not allege facts to support that the financial transactions or amounts due

1 are so complex as to require an accounting, or that an accounting is otherwise necessary. The
2 Cross-Claim also does not allege facts to support that there is no adequate remedy at law. In
3 light of the foregoing, the Court concludes that the Cross-Claim fails to state a claim for
4 accounting.

### Conclusion

6     IT IS HEREBY ORDERED that the Motion to Dismiss Counterclaims of Counter-
7 Claimant Umar Abd Almajaid and North American Mercantile, Inc. (Doc. # 31) is
8 **GRANTED.** The claims for (1) civil RICO substance & conspiracy; (2) conspiracy; (3)
9 interference with contractual relationship; (4) fraudulent concealment; and (5) accounting
10 alleged in the "Answer-Complaint in Interpleader Counterclaim for Damages" filed by North
11 American Mercantile, Inc. and Umar Abd Almajid (Doc. # 21) are **DISMISSED.**

12 DATED: March 25, 2009

*/s/ William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge