1   Umar A bd Almajid
    Post Office Box 83414
2   San Diego, CA 92138-3414
    E-mail: sahih786@sbcglobal.net
3   Tel.: 619.280.9469
    Fax.: 619.280.0497
4   In Pro Se, for
    Umar Almajid, Defendant and Cross-complainant

5

6

7                    **UNITED STATES DISTRICT COURT**

8                  **SOUTHERN DISTRICT of CALIFORNIA**

9

10  Hartford Life Insurance Company,          )   **Case No.: 08 CV 1279 WQH LSP**
                                              )
11          Plaintiff,                        )   **AMENDED ANSWER AND**
                                              )   **CROSS-COMPLAINT UNDER**
12          v                                 )   **RACKETEER INFLUENCED CORRUPT**
                                              )   **ORGANIZATIONS ACT (RICO)**
13  Mary Banks, an individual and Trustee For )
                                              )
14  Cleona Shortridge Revocable Trust;        )
                                              )
15  Beryl Rayford, individual; Umar Almajid, an )
                                              )
16  individual; North American Mercantile, Inc., a )
                                              )
17  corporation; Sandberg,  Phoenix von Gontard, )
                                              )
18  P.C., a business organization; Monneye Gross, )   **JURY TRIAL REQUESTED**
                                              )
19  an individual; Richard Wier, an individual, )
                                              )
20          Defendants                        )
    ──────────────────────────────────────────)

21

22  Defendant Umar Almajid (Almajid) for its cross-complaint against defendants, alleges on

23  knowledge with respect to himself and his conduct, and upon the basis of information and belief

24  as to all other matters. Almajid information and belief are based, among other things, on

25  documents generated by San Diego County Health and Human Services (HHS) which reveal

26  Defendants Mary Banks (Banks), Beryl Rayford (Rayford), Monneye Gross (Gross), and

27  Richard Wier (Wier) knowing participation in the fraudulent scheme detailed later in this Cross

28  Complaint. Almajid information and belief are based, among other things, on documents

**ORIGINAL**                    Page 1

1  generated by Martin Daesch, attorney for Sandberg, Phoenix & von Gontard [collectively

2  referred to as Sandberg] which reveal defendant Sandberg's knowing participation in the

3  fraudulent scheme detailed later in this complaint. Almajid believes that discovery will reveal

4  additional documents that further support herein asserted claims.

## ANSWER

6  1. Almajid answers Complaint in Interpleader and complains for damages in this action as

7  follows:

8  Almajid admits each and every allegation set forth in paragraph 1 through 2 and 5 through 48.

9  Further admitted is the allegation that Hartford life Insurance Company (Hartford) has no interest

10  in the subject matter of this litigation, namely accounts numbered 366004419 in the amount of

11  $36,030.09; account numbered 360054733 in the amount of $33,802.41

12  Almajid denies that Defendant Banks, Rayford, or Sandberg has any legitimate right or bona fide

13  interest in the accounts numbered 366004419 or 360548733.

## Cross Complaint

15  2. Almajid and NAM incorporate paragraphs 1 through 3; 5 through 48 as fully set forth in the

16  complaint titled Hartford Insurance Company v Banks, et al. USDC – Southern District; Case

17  No. 08 CV 1279 WSH LSP.

18  That Hartford Insurance Company, North American Mercantile, Inc. and Umar Almajid were at

19  all relevant times subjected to misconduct involving but not limited to duress, fraud,

20  misrepresentation and or negligence.

## Jurisdiction and Venue

22  3. This action arises under 18 U.S.C. § 1964 with supplemental state claims for civil conspiracy,

23  fraudulent concealment, interference with contractual relationship and an accounting under 28

24  U.S.C. § 1367.

26  ///

27  ///

28  ///

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

### NATURE OF THE ACTION

4. Plaintiff Almajid brings this complaint to recover damages relating to a complex insurance company fraud scheme that caused substantial losses. The scheme is founded upon a frivolous lawsuit consisting known misrepresentations filed in St. Louis County Circuit Court, Superior Court of California and Hartford Life Insurance Company (Hartford).

Defendants Rayford and Banks sought to wrongfully procure insurance proceeds managed by Hartford. On the other hand, Sandberg sought to procure exorbitant profits from Almajid by failure to file procedural motions to cure Banks and Rayford pleadings deficiencies and/or by failure to fully disclose and/or correct their material misrepresentations of fact.

5. This action is the outgrowth of a Petition filed in St. Louis County Circuit Court filed by Defendants Rayford and Banks through their attorneys Gross and Weir. Said petition consisted of contentions of Fraud, Breach of Fiduciary Duty and Unjust Enrichment against Almajid and the corporate entity North American Mercantile, Inc. (NAM).

6. Almajid retained the services of the law offices of Sandberg. Said representation included but was not limited to defense of the St. Louis County Circuit Court suit and the removal of encumbrances on annuities managed by Hartford for the benefit of NAM. During the course of Sandberg's employment, an answer was purportedly filed alleging that the St. Louis County petition allegations were not directed towards NAM and as such should be dismissed. On the other hand, an answer on behalf of Almajid was filed alleging that Banks and Rayford failed to state instances of fraud with requisite particularity.

7. The St. Louis County Circuit Court lawsuit appeared to lack a basis in law and fact in light of Defendants Rayford and Banks prior knowledge of HHS investigation and findings of decedent's mental health, and the validity of amended estate planning documents. At all relevant times, Banks and Rayford failed produce independent evidence in support of their petition.

8. Almajid attempted to resolve this dispute in Superior Court of California by filing a Petition To Administer Estate. Defendants Rayford and Banks knew that Almajid had explicit authorization to act as personal representative and trustee. Defendants Banks and Rayford obstructed probate proceeding by filing objections asserting allegation known contrary to established facts.

9. Almajid sought and obtained HHS records intended for San Diego County Probate evidentiary hearing. Defendant Sandberg exceeded the scope of its authority by manipulating William Ward & Associates into obtaining a court order granting St. Louis Courts jurisdictions over records pertinent to the San Diego County proceeding. Sandberg knew or should have known of the San Diego Probate matter. Sandberg knew or should have known of Almajid intent to use HHS records for probate proceedings.

10. Sandberg recognized the deficiencies in the St. Louis lawsuit from the outset. Sandberg's failure to exercise appropriate diligence in defending Almajid and NAM constitutes a breach of its obligation of absolute candor towards tribunals of law and third parties. Instead of filing pertinent motions in initial stages, Sandberg chose to compound and conceal Rayford and Banks material misrepresentations in an apparent effort to justify exorbitant fees.

11. Almajid brings this action to recover the damages sustained as a result of defendants attempt to defraud or obtain money by means of false or fraudulent pretenses. Almajid seeks damages for hundreds of thousands of dollars in losses suffered as a result of Sandberg's failure to disclose and/or correct material misrepresentations of Defendants Rayford and Banks, a scheme which otherwise would have collapsed much earlier.

12. Almajid asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 19 U.S.C. § 1961, et seq. (RICO) and under California Civil, Penal and Insurance Codes for Sandberg's negligence, fraud, aiding and abetting Rayford and Banks fraudulent conduct.

## PARTIES

13. Defendant Umar Abd Almajid (Almajid) is an individual. Almajid is a citizen and resident of the County of San Diego, State of California. Almajid is a corporate officer of North American Mercantile, Inc. (NAM), a Nevada corporation who transferred its rights, title and interest in and to its claims against herein named defendants to Almajid.

14. Defendant Mary Banks (Banks) is an individual and alternative Trustee of the Cleona B. Shortridge Trust (Trust). Almajid is informed and believes Banks is a citizen and resident of the State of Missouri.

15. Defendant Beryl Rayford (Rayford) is an individual. Almajid is informed and believes Rayford is a citizen and resident of the State of California.

16. Defendant Sandberg, Phoenix and von Gontard, P.C. (Sandberg) is a business organization, form unknown. Almajid is informed and believes that Sandberg is organized and exists under the laws of the State of Missouri, with its principal place of business within the State of Missouri. Sandberg acted in the capacity of attorney for Almajid and NAM.

17. Defendant Monneye Gross (Gross) is an individual. Almajid is informed and believes that Gross is a citizen and resident of the State of Missouri, and acts or acted in the capacity of attorney for Banks, Rayford and the Trust.

18. Defendant Richard Wier is an individual. Almajid is informed and believes that Wier is a citizen and resident of the State of Missouri, and acts or acted in the capacity of attorney for Defendants Banks, Rayford and the Trust.

19. Hartford Life Insurance Company is a corporation organized under the laws of the State of Connecticut and maintains its principal place of business in the State of Connecticut. Hartford is authorized to do business and is lawfully doing business as an insurer within the State of California.

# DEFENDANT BANKS' WRONGFUL CONDUCT
*Extent of Misrepresentations*

20. The fraudulent scheme lasted seven years, from April 2000 through June 2007. Defendant Banks informed Almajid and decedent Shortridge that she no longer desired to be named principal participant in the Shortridge estate planning documents. Almajid and decedent acknowledged her wishes and advised Attorney Monneye Gross of the need to amend relevant documents.

21. Almajid and decedent retained the services John Sunnen, Esq. to prepare codicils and amendments. Attorney Sunnen advised both Banks and Gross of his representation of decedent and the estate in both California and Missouri. Banks in agreement with Defendants Rayford and Gross willfully disregarded the representation of John Sunnen by wrongfully asserting authority that had been modified or retracted.

22. On or about February 2001, Banks in agreement with Defendants Rayford and Gross submitted a series of false reports of wrongful conduct to San Diego County Health and Human Services, San Diego Conservatorship Services Division and Public Guardian Office. A four year investigation revealed no evidence to substantiate allegations of criminal or tortuous conduct.

23. Under these conspiracies, Banks corrupted the impartial functions of the courts in attempt to defraud or obtain money by false or fraudulent pretenses by the following acts.

    A.   On July 26, 2004 Banks, executed and filed a Petition in St. Louis County Circuit Court alleging material misrepresentations of known facts previously established by San Diego governmental agencies in violation of Cal. Pen. Code §118a, 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

        **1. Material Misrepresentations Knowingly Asserted in Petition**

            i. Decedent lacked mental capacity

            ii. Almajid made misrepresentations to gain control of assets

            iii. Almajid changed beneficiary designations without authority

        **2. Facts Established By Governmental Investigative Findings**

            i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks

on May 30, 2001; June 14, 2001; advising that there existed no factual

basis for allegations of wrongdoing.

    ii. Mark Hostetter, San Diego County Public Guardian Office and Jim

Proffitt, Conservatorship Services Division on July 9, 2001 informed

Banks that purported victim was very clear in her wishes and competent to

make her decisions.

    iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD

Medical Center, Feb.24, 2005 established decedent was able to respond in

a lucid manner three years subsequent to her signing estate amendments.

B. On February 14, 2005 Banks forwarded the Petition to California Superior

Court, Probate Division alleging material misrepresentations of known facts

previously established by San Diego governmental agencies in violation of Cal. Pen.

Code §§ 31,118a, 135,153, and 18 U.S.C. §1341 and/or 18 U.S.C. §1343

C. On February 14, 2005 Banks filed objections in California Superior Court, Probate

Division. Said objections were calculated to obstruct probate of will and letters

testamentary. Said material misrepresentations include but are not limited to the

following:

    i. In total disregard of four years of S.D.P.D. and HHS investigations and

determinations of no wrong doing. Banks alleges that Almajid was

untrustworthy and unfit to act as personal representative.

    ii. That Almajid lacked knowledge and experience and failed to retain

counsel despite John Sunnen, Esq. May 25, 2001 letter of representation of

decedent and the estate.

    iii. Alleged amended estate documents were invalid despite knowing

Attorney Gross agreed to make same changes.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

D. On or about December 28, 2005 Banks knowingly participated in causing the Petition containing gross misstatements of fact to be forwarded to Hartford, in furtherance of a fraudulent scheme to obtain insurance proceeds in violation of Cal. Pen. Code §§ 31, 118a, 135, 153, 550(a)(1)(5), Cal. Ins. Code §§ 330, 358 and 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

    1. **Material Misrepresentations Knowingly Asserted in Petition**

        i. Decedent lacked mental capacity

        ii. Almajid made misrepresentations to gain control of assets

        iii. Almajid changed beneficiary designations without authority

    2. **Facts Established By Governmental Investigative Findings**

        i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks on May 30, 2001; June 14, 2001; advising that there existed no factual basis for allegations of wrongdoing.

        ii. Mark Hostetter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9,2001 informed Banks that purported victim was very clear in her wishes and competent to make her decisions.

        iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD Medical Center, Feb.24, 2005 established decedent was able to respond in a lucid manner three years subsequent to her signing estate amendments.

E. On or before June 26, 2006 Banks embezzled approximately $15,000.00 of trust funds resulting in St. Louis courts freezing trust accounts.

F. Refused to comply with court order to prepare and provide Almajid with an accounting pursuant to terms of the trust and the MUTC.

G. On or about September 26, 2006 Defendant Banks responded to Almajid's Second Interrogatories, pgs 7-9, Item No. 18-29, wherein Banks provided statements which constituted a recantation of allegations set forth in the Petition. Banks responses also contradicted and/or impeached Rayford's interrogatory response of the previous day.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

H. On or about October 5, 2006 Sandberg deposed Defendant Banks, who under oath, on page 34, items 6-9, states that she did not know decedents mental condition between the years 2000-2004. At all relevant times, Banks had been repeatedly advised by HHS investigators. Moreover, Banks instituted a law suit alleging decedent was susceptible to misrepresentations due to alleged diminished mental capacity.

I. On or about July 17, 2007 executed "settlement" documents in furtherance of scheme to defraud or obtain money by false pretenses from Hartford and/or Almajid to enrich herslf, Rayford and Sandberg in violation of Cal. Pen. Code §§ 31,118a, 135,153, 550(a)(1)(5), Cal. Ins. Code §§ 330, 358 and 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

## DEFENDANT RAYFORDS' WRONGFUL CONDUCT

### *Extent of Misrepresentations*

24. In or about February 2001 Defendant Rayford initiated a series of false reports of wrongful conduct to San Diego County Health and Human Services. The reports alleged that Almajid engaged in wrongful conduct relative to the well being of decedent. The reports resulted in a multi-year investigation which established that the purported victim was appropriately cared for. Investigators repeated these and similar facts on numerous occasions to Defendant Rayford. Communications included but are not limited to the following dates.

    i. Sharon Jones, San Diego County Health Human Services Agency telephoned Rayford on May 30, 2001; June 14, 2001 advising there existed no factual basis for allegations of wrongdoing.

    ii. Mark Hosletter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9, 2001 informed Rayford that purported victim was "very clear in her wishes and competent to make her decisions."

25. February 7, 2002 Defendant Rayford at all relevant times had actual and constructive knowledge of Almajid (NAM) innocence. Rayford in agreement with Banks, Gross and Wier choose to disregard facts established by government authorities.

26. Under this agreement, Rayford corrupted the impartial functions of the courts in an attempt to defraud or obtain money by false or fraudulent pretenses by the following acts.

    A. On July 26, 2004 Rayford, executed and filed a Petition in St. Louis County Circuit Court alleging material misrepresentations of known facts previously established by San Diego governmental agencies in violation of Cal. Pen. Code §§ 31, 118a, 135, 153, 18 U.S.C. § 1341 and/or 18 U.S.C. § 1343.

        **1. Material Misrepresentations Knowingly Asserted in Petition**

            i. Decedent lacked mental capacity

            ii. Almajid made misrepresentations to gain control of assets

            iii. Almajid changed beneficiary designations without authority

        **2. Facts Established By Governmental Investigative Findings**

            i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks on May 30, 2001; June 14, 2001; advising that there existed no factual basis for allegations of wrongdoing.

            ii. Mark Hostetter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9, 2001 informed Banks that purported victim was very clear in her wishes and competent to make her decisions.

            iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD Medical Center, Feb.24, 2005 established decedent was able to respond in a lucid manner three years subsequent to her signing estate amendments.

    B. On February 14, 2005 Rayford forwarded the Petition to California Superior Court, Probate Division alleging material misrepresentations of known facts previously

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

established by San Diego governmental agencies in violation of Cal. Pen. Code §§ 31, 118a, 135, 153, and 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

C. On February 14, 2005 Rayford filed objections in California Superior Court, Probate Division. Said objections were calculated to obstruct probate of will and letters testamentary. Said material misrepresentations include but are not limited to the following .

   i. Disregarding four years of S.D.P.D. and HHS investigations and determinations of no wrongdoing, Rayford alleges that Almajid was untrustworthy and unfit to act as personal representative.

   ii. That Almajid lacked knowledge and experience and failed to retain counsel despite John Sunnen, Esq. May 25, 2001 letter of representation of decedent and the estate.

   iii. Alleged amended estate documents were invalid despite knowing Attorney Gross agreed to make same changes.

D. On or about December 28, 2005 Rayford knowingly participated in causing Petition, containing the above discussed misrepresentations to be forwarded to Hartford, in furtherance of a fraudulent scheme to obtain insurance proceeds in violation of Cal. Pen. Code §§ 31, 118a, 135, 153, 550(a)(1)(5), Cal. Ins. Code §§ 330, 358, and 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

   **1. Material Misrepresentations Knowingly Asserted in Petition**

     i. Decedent lacked mental capacity

     ii. Almajid made misrepresentations to gain control of assets

     iii. Almajid changed beneficiary designations without authority

   **2. Facts Established By Governmental Investigative Findings**

     i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks on May 30, 2001; June 14, 2001; advising that there existed no factual basis for allegations of wrongdoing.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

       ii. Mark Hostetter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9, 2001 informed Banks that purported victim was very clear in her wishes and competent to make her decisions.

       iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD Medical Center, Feb.24, 2005 established decedent was able to respond in a lucid manner three years subsequent to her signing estate amendments.

E. On or about September 26, 2006 in answers to interrogatories 1 (c) Rayford intentionally concealed the nature and extent of her criminal records. Said concealment was done in an attempt to defraud or obtain money by false or fraudulent pretenses in violation of Cal. Pen. Code §§ 31, 118a, 135, 153.

F. On or about July 17, 2007 executed "settlement" documents in furtherance of scheme to defraud or obtain money by false pretenses from Hartford to enrich herself, Banks and Sandberg proceeds in violation of Cal. Pen. Code §§ 31, 118a, 135, 153, 550(a)(1)(5), Cal. Ins. Code §§ 330, 358 and 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

## DEFENDANT MONNEYE GROSS' WRONGFUL CONDUCT
### Extent of Misrepresentations

27. On or about April 24, 2000 Almajid and decedent requested Gross to prepare a codicil and amendments to trust documents.

28. On or about April 26, 2000 Gross agreed to perform the requested services and forwarded an invoice for same.

29. Almajid and decedent decided to use an attorney licensed in both California and Missouri. On or about May 25, 2001 Attorney Sunnen advised Gross that he would be representing decedent and handling all trust affairs in both California and Missouri. Sunnen did in fact prepare the amendments and codicils.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

30. Gross participated in telephonic conferences with Attorney Sunnen. As such Gross knew that Sunnen was counsel for decedent and the trust. This fact was reiterated by correspondences between Sunnen, Gross and Banks dated in May 2001.

31. Gross in agreement with Defendants Banks and Rayford initiated a series of false reports to San Diego County Health and Human Services Agency alleging in part that the previously requested legal services of April 24, 2000 were fraudulent.

32. On or about July 9, 2001 Gross was directly advised by HHS authorities that decedent was "very clear in her wishes and competent to make her decisions." Gross knew or should have known that HHS, S.D.P.D, Conservatorship Services Division investigations revealed no wrongdoing by Almajid.

33. Gross in further agreement with Defendants Banks and Rayford prepared a series documents which were used to obtain money by misrepresentations of known facts.

34. Under these agreements Defendant Gross violated numerous Codes of Professional Conduct and laws. Said violations corrupted the impartial functions of the courts by the following acts.

35. On or about March 1, 2001 Gross advised Jim Proffitt, San Diego Conservatorship Services Division that Plaintiff withdrew $100,000.00 from decedent's credit union account. Said assertion was baseless.

36. On or about May 31, 2001 Gross continued to give advice when she had notice that another attorney represented the descendent and ancillary trust matters.

37. On or about July 26, 2004 Attorney Gross on behalf of Defendants Banks and Rayford, executed and filed a Petition asserting facts that were in direct contradiction to known facts. Mo. Supreme Court Rule 4-3.3(a)(1) expressly prohibits a lawyer from knowingly making false statements of law or fact.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

**1. <u>Material Misrepresentations Knowingly Asserted in Petition</u>**

    i. Decedent lacked mental capacity

    ii. Almajid made misrepresentations to gain control of assets

    iii. Almajid changed beneficiary designations without authority

**2. <u>Facts Established By Governmental Investigative Findings</u>**

    i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks on May 30, 2001; June 14, 2001; advising that there existed no factual basis for allegations of wrongdoing.

    ii. Mark Hostetter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9, 2001 informed Banks that purported victim was very clear in her wishes and competent to make her decisions.

    iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD Medical Center, Feb.24, 2005 established decedent was able to respond in a lucid manner three years subsequent to her signing estate amendments.

38.  On or about February 15, 2005, Attorney Gross, in violation of Mo. Supreme Court Rule 4-3.3(a)(3) notarized statements as true which were known to be false. Said statements were objections to Appointment of Almajid as Personal Representative of the Estate of Cleona Shortridge filed in Superior Court of California, San Diego County, Probate Div. Case No. 188133. The statements known to be false include but are not limited to:

    i. **<u>"Exercised Undue Influence Over Decedent"</u>**

Gross had open channels of communications with San Diego County HHS, Conservatorship Services Division and Attorney Sunnen. Gross knew or should have known that government findings established that decedent was, "very clear in her wishes and competent to make her decisions."

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

### ii. Questionable Character, Lack of Experience and Poor Judgment

Gross was fully aware that HHS investigations revealed no wrong doing, no action taken and case closure. Gross also knew that decedent and the estate were represented by Attorney Sunnen.

39. On or about September 26, 2006 Attorney Gross notarized Defendant Banks responses to Almajid second set of interrogatories. Said responses constituted an admission that Banks was not witness to misrepresentations alleged in the Petition. Attorney Gross in violation of Mo. Supreme Court Rule 4-3.3(a)(3) failed to disclose to St. Louis County Circuit Court, Superior Court of California, San Diego County Probate Division or USDC-Southern District of California that Defendant Banks admitted not witnessing misrepresentations alleged in the Petition on file in three separate tribunals. Said omissions further violated Cal. Pen. Code §§ 31, 118a, 135, and 153.

40. On or about December 28, 2005 Attorney Gross forwarded Petition to Hartford. In the course of representing Banks and Rayford, Gross knowingly made false statement of material fact or law to others as defined by Mo. Supreme Court Rule 4-4.1. (a)(b). Said omissions further violated Cal. Pen. Code §§ 31, 118a, 135, 153, 550(a)(1)(5), Cal. Ins. Code §§330, 358 and U.S.C. § 1341 and or 18 U.S.C. § 1343

### 1. Material Misrepresentations Knowingly Asserted in Petition

    i. Decedent lacked mental capacity

    ii. Almajid made misrepresentations to gain control of assets

    iii. Almajid changed beneficiary designations without authority

### 2. Facts Established By Governmental Investigative Findings

    i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks on May 30, 2001; June 14, 2001; advising that there existed no factual basis for allegations of wrongdoing.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

ii. Mark Hostetter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9, 2001 informed Banks that purported victim was very clear in her wishes and competent to make her decisions.

iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD Medical Center, Feb.24, 2005 established decedent was able to respond in a lucid manner three years subsequent to her signing estate amendments.

Gross used the Petition as a pretext for the following acts.

   i.   Freezing accounts of both Annuities

   ii.  Interference with the business relationship between Almajid/NAM and Hartford.

   iii. Assisted in obtaining insurance proceeds by fraud or false pretenses through a purported settlement.

## DEFENDANT RICHARD WIER WRONGFUL CONDUCT
*Extent of Misrepresentations*

41. Almajid incorporates by reference paragraphs 27 through 40 as fully set forth.

42. Defendant Richard Wier at all relevant times acted as co-counsel in the representation of Defendants Banks, Rayford and the Shortridge Trust.

## DEFENDANT SANDBERG WRONGFUL CONDUCT
*Extent of Misrepresentations*

43. Almajid retained the services of the Sandberg law firm. Sandberg duties were to defend the interest of Almajid and NAM in the St. Louis County Circuit Court suit, Banks, et al v NAM, et al. The Petition alleges Fraud, Breach of Fiduciary Duty and Unjust Enrichment. Sandberg's responsibilities also included removing the encumbrances from annuities managed by Hartford for Almajid and/or NAM.

44. On or about May 9, 2005 Sandberg provided Almajid a draft answer which alleged that none of the relief sought was directed to NAM. Almajid never received a conformed copy of NAM's

purported answer. On the other hand, Sandberg prepared and filed an answer for Almajid

alleging that Banks and Rayford failed to state a claim upon which relief could be granted.

45. Sandberg knew or should have known that allegation of fraud based on information and

belief do not satisfy the particularity requirement. Defending pleadings founded on insufficient

particularization of fraud requires a motion to dismiss or a motion for more definite statement.

Sandberg's failure to file appropriate motions was deliberate as evidenced by the following.

    i.    Sandberg's apparent knowledge and skill demonstrated in its motion to dismiss

        Almajid counterclaim for damages.

    ii.    Sandberg's failure to obtain and/or provide a conformed answer on behalf of

        NAM.

    iii.    Sandberg's failure to file appropriate motions established a pretext to

        unreasonably multiply the proceedings as justification of excessive fees.

46. Sandberg's initial procedural inadvertence and subsequent failure to disclose and/or correct

herein described misrepresentations evidences its willing participation in a scheme to defraud or

obtain insurance proceeds by false pretenses. Sandberg having knowledge of Banks, Rayford,

and Gross violation of laws obtained money from the Shortridge Trust on agreement or

understanding to compound, conceal and/or abstain from any prosecution thereof.

47. Under this conspiracy, Sandberg corrupted the impartial functions of the courts in an attempt

to defraud or obtain money by false or fraudulent pretenses by the following acts.

48. On or about May 2, 2006 Sandberg communicated with (1) Sharon Jones, MSW, HHS; (2)

Jim Proffit, Conservatorship Service Division and (3) John Sunnen, Esq., attorney for decedent

and Trust. Said communications corroborated earlier information provided by Almajid. The

information obtained provided actual and constructive knowledge of material misrepresentations.

Sandberg executed fraud by omission. Sandberg withheld this information from the courts and

Hartford in violation of Cal. Pen. Code §§ 31, 153, 135, Missouri Supreme Court Rule 4-

4(a)(c)(d)(f) and 18 U.S.C. §1346.

**Information Known & Withheld**

    i.      Conclusion of investigations with no evidence of wrongdoing and

            no action taken.

    ii.     Confirmed Attorney Sunnen's participation.

49. On or about May 2, 2006 Sandberg researched California court records. Sandberg knew or

should have known of the existence of an ancillary proceeding in California Superior Court,

Probate Division. Sandberg knew or should have known of Defendants Banks and Rayford

objections to the appointment of Almajid as Trust Personal Representative contained material

misrepresentations. Sandberg executed fraud by omission. Sandberg withheld this information

from the courts and Hartford in violation of Cal Pen Code §§31, 135, 153, Cal. Ins. Code §§ 330,

358, Mo. Supreme Court Rules 4-8.4(a)(c)(d)(f) and 18 U.S.C. § 1346.

**Information Known & Withheld**

    i.     Banks and Rayford alleged Almajid was untrustworthy and unfit to act as personal

           representative of the estate. Defendants disregarded multi-year investigation findings

           of no wrongdoings.

    ii.    Almajid had adequate authorization and ability in addition to assistance from

           Attorney Sunnen.

    iii.   Banks and Rayford alleged that amended estate documents were invalid despite their

           attorney invoicing decedent for same work

50. On or about May 24, 2006 Sandberg confirmed Banks embezzled approximately $15,000.00

in Trust assets. Sandberg executed fraud by omission. Sandberg withheld the information from

California Probate Division and Hartford in violation of Cal Pen Code §§ 31,135, 153, Cal Ins.

Code § 330, 358, Mo. Supreme Court Rules 4-8.4(a)(c)(d)(f) and 18 U.S.C.§ 1346.

51. On or about June 26, 2006 Sandberg obtained St. Louis County Circuit Court order decreeing

(1) trust bank account frozen; (2) all expenditures conditioned upon written permission of

Defendant or St. Louis courts and (3) Banks shall prepare and provide financial statements in

compliance with Trust provisions and MUTC. Sandberg failed to obtain Almajid's written

authorization on expenditures subsequent June 26, 2006. Sandberg further failed to provide

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

1   Almajid with trust financial statements and/or failed to inform the court of Banks' contempt of

2   the June 26, 2006 order. Sandberg executed fraud by omission. Sandberg acts violated Cal Pen

3   Code §§ 31, 135, 153, Cal. Ins. Code §§330, 358, Mo. Supreme Court Rules 4-8.4(a)(c)(d)(f) and

4   18 U.S.C. § 1346.

5   52. On or about September 26, 2006 Banks' response to Almajid Second Interrogatories, pgs. 7-

6   9, Items 18-29, recanted assertions alleged in the Petition. Sandberg executed fraud by omission.

7   Sandberg withheld this information from the courts and Hartford in violation of Cal Pen Code §§

8   31, 135, 153, Cal. Ins. Code §§330,358, Mo. Supreme Court Rules 4-8.4(a)(c)(d)(f) and 18

9   U.S.C. § 1346.

10   53. On or about October 5, 2006 Banks deposition statement, page 36, items 6-9, admits not

11   knowing decedent mental condition from 2004 through 2006. Sandberg executed fraud by

12   omission. Sandberg withheld this information from the courts and Hartford in violation of Cal

13   Pen Code §§ 31,135, 153, Cal. Ins. Code §§ 330, 358, Mo. Supreme Court Rules 4-8.4 (a)(c)

14   (d)(f) and 18 U.S.C. § 1346.

15   54. On or about May 29, 2007 Sandberg compounded and concealed material misrepresentations

16   of facts alleged in the Petition by diverting the release of HHS records from California Superior

17   Court, Probate Division to St. Louis County Circuit Court. Almajid repeatedly advised Sandberg

18   that the HHS records were intended for San Diego proceedings. Sandberg's manipulation of

19   HHS records circumvented and concealed independent evidence proving that Defendants Banks,

20   Rayford, Gross, and Wier had actual knowledge of HHS findings of no wrongdoing prior to

21   filing petition. Sandberg's conduct furthered the scheme to defraud and obtain insurance

22   proceeds by false pretenses. Sandberg diverted HHS records from San Diego County Probate

23   Court in violation of Cal Pen Code §§ 31, 135, 153, Cal. Ins. Code §§

24   330,358, Mo. Supreme Court Rules 4-8.4(a)(c)(d)(f) and 18 U.S.C.§ 1346.

25   55. On or about June 10, 2007 Sandberg prepared a settlement agreement that unjustly enriched

26   itself, Banks and Rayford. Almajid executed the purported settlement under circumstances

27   constituting fraud, misrepresentation, duress, negligence and lack of informed consent.

28

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

56. On or about March 18, 2007 John Sandberg received communications from Almajid detailing parameters of the firm's misconduct. Subsequent telephonic conferences established that Sandberg was unwilling to acknowledge the nature and extent of its misconduct. Sandberg's failure to ensure that other lawyers conform to Rules of Professional Conduct resulted in material misrepresentations to the courts and Hartford. Sandberg willfully aided and abetted a scheme to defraud and obtain insurance proceeds by false pretenses. Said conduct violates Cal Pen Code §§ 31, 135, 153,550 (a)(1)(5), Cal. Ins. Code §§ 330, 358 and Mo. Supreme Court Rules 4-8.4(a)(c)(d)(f); 4-5.1(b) and 18 U.S. C. § 1346.

## NAM Suffered Extensive Damages From Misrepresentations

57. On June 11, 2002 NAM was named beneficiary to subject annuity accounts numbered 360548733 and 366004419.

58. Sandberg should be held liable for its failure to disclose and/or correct the misrepresentations of Banks, Rayford, Gross and Wier. The scheme to defraud NAM persisted as a direct result of Hartford and the courts not having evidence demonstrating decedent was clear in her wishes and capable of making her decisions. Based on defendant's misrepresentations Hartford froze annuity accounts thereby denying access, management latitude and causing financial losses.

59. Defendants' conduct interfered with the business relationship of NAM and Hartford by forwarding Petition which consisted of known material misrepresentations.

### 1. Material Misrepresentations Knowingly Asserted in Petition

    i. Decedent lacked mental capacity

    ii. Almajid made misrepresentations to gain control of assets

    iii. Almajid changed beneficiary designations without authority

### 2. Facts Established By Governmental Investigative Findings

    i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

on May 30, 2001; June 14, 2001; advising that there existed no factual

basis for allegations of wrongdoing.

ii. Mark Hostetter, San Diego County Public Guardian Office and Jim

Proffitt, Conservatorship Services Division on July 9,2001 informed

Banks that purported victim was very clear in her wishes and competent to

make her decisions.

iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD

Medical Center, Feb.24, 2005 established decedent was able to respond in

a lucid manner three years subsequent to her signing estate amendments.

60. Sandberg should also be liable for punitive damages. Sandberg acted with malice toward

NAM, and with a reckless disregard of NAM's rights and interest. Sandberg manipulated

discovery with the express purpose of circumventing of evidence favorable to NAM. Over the

course of several years, Sandberg participated in a systematic fraud by its failure to file

procedural motions beneficial to NAM's interest and/or its failure to disclose/correct material

misrepresentations detrimental to NAM's interest. To mitigate its losses NAM assigned and

transferred its rights, title and interest in and claims(s) against herein named defendants to

Almajid. Said claims are separate and in addition to any other claims that may exist.


### Almajid Suffered Extensive Damages From Misrepresentations

61. Sandberg should be held liable for its failure to disclose and/or correct the misrepresentations

of Banks, Rayford, Gross, and Wier. The scheme to defraud Almajid persisted as a direct result

of Hartford and the courts not having evidence demonstrating decedent was clear in her wishes

and capable of making her own decisions. Based on said misrepresentations Hartford froze

accounts, thereby inflicting losses. Sandberg knew of Rayford's criminal background, which

included acts of dishonesty directed toward Almajid's family.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

**1. Material Misrepresentations Knowingly Asserted in Petition**

    i. Decedent lacked mental capacity

    ii. Almajid made misrepresentations to gain control of assets

    iii. Almajid changed beneficiary designations without authority

**2. Facts Established By Governmental Investigative Findings**

    i. Sharon Jones, MSW, Health Human Services Agency telephoned Banks on May 30, 2001; June 14, 2001; advising that there existed no factual basis for allegations of wrongdoing.

    ii. Mark Hostetter, San Diego County Public Guardian Office and Jim Proffitt, Conservatorship Services Division on July 9, 2001 informed Banks that purported victim was very clear in her wishes and competent to make her decisions.

    iii. Dr. Christopher Kenney, M.D., Asst. Prof of Neurosciences, UCSD Medical Center, Feb.24, 2005 established decedent was able to respond in a lucid manner three years subsequent to her signing estate amendments.

62. Sandberg should also be liable for punitive damages. Sandberg acted with malice toward Almajid, and with a reckless disregard of Almajid's rights and interest. Sandberg manipulated discovery with the express purpose of circumventing of evidence favorable to Almajid. Over the course of several years, Sandberg participated in a systematic fraud by its failure to file procedural motions beneficial to Almajid's interest and/or its failure to disclose/correct material misrepresentations detrimental to Almajid's interest.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

**FIRST CLAIM FOR RELIEF**

**(Civil Rico Substance & Conspiracy)**

63. Almajid incorporates by reference paragraphs 1 through 62 as fully set forth. North American Mercantile, Inc. (NAM) and Umar Abd Almajid (Almajid) are a "person" within the meaning of 18 U.S.C. Sections 1961(3) and 19624(c).

64. Rayford, Banks, Gross, Wier and Sandberg are "persons" within the meaning of 18 U.S.C. Section 1961(3) and 1962 (c) and (d).

65. Almajid and/or NAM is an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c) and (d).

66. Sandberg was employed by or associated with Almajid and/or NAM, an enterprise engaged in, and activities of which affected, interstate and foreign commerce within the meaning of 18 U.S.C. Section 1962(c).

67. With respect to the petition filed in the St. Louis County Circuit Court, State of Missouri, captioned Banks, Plaintiffs, et al. v NAM, Defendants, et al under Cause No. 044-01747, Rayford, Banks, Gross, Wier and Sandberg conspired to, within the meaning of 18 U.S.C. section 1962 (d) and did conduct or participate, directly or indirectly, in the conduct of Almajid and/or NAM affairs in a fashion prohibited by 18 U.S.C. Section 1962(c) through a pattern of activity defined by 18 U.S.C. Section 1961 (1) (B) and (5):

    (a) Multiple instances of mail fraud in violation of 18 U.S.C. Section 1341;

    (b) Multiple instances of wire fraud in violation of 18 U.S.C. Section 1343.

68. Almajid and NAM were directly and distinctly injured by Rayford, Banks, Gross, Wier and Sandberg in its business and property in an as yet undetermined amount by reason of violation of U.S.C. Section 1962(c) and (d).

**SECOND CLAIM FOR RELIEF**

**(Conspiracy)**

69. Counter claimants incorporate by reference paragraphs 1 through 68 as fully set forth.

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

70. Rayford, Banks, Gross, Wier and Sandberg in their individual capacities and for their individual interest, engaged in the formation and operation of several conspiracies in which Defendants would abuse the fiduciary relationship and trust between Hartford, Almajid and NAM. Defendants would abuse the discretion granted Hartford by Almajid and NAM. Defendants would induce Hartford to breach the obligation of undivided loyalty and fidelity to Almajid and NAM. Defendants would fail to disclose material facts with the intent of defrauding Almajid and NAM.

71. Defendants Rayford, Banks, Gross, Wier and Sandberg committed wrongful acts pursuant to the conspiracies against Hartford to defraud NAM, including but not limited to Defendants actual abuse of the fiduciary relationship and trust between Hartford, Almajid and NAM. Defendant's actual abuse of the discretion granted Hartford by Almajid and NAM. Defendant's induced Hartford to breach the obligation of undivided loyalty and fidelity to Almajid and NAM. Defendants knowing, intentional and willful nondisclosure of material fact in order to defraud Almajid and NAM.

72. As a proximate result of Defendants conspiracy to harm Almajid and NAM and Defendants wrongful acts carried out pursuant to their conspiracy Almajid and NAM have been damaged in an as yet undetermined amount.

### THIRD CLAIM FOR RELIEF

#### (Interference with Contractual Relationship)

73. Almajid incorporate by reference paragraphs 1 through 72 as fully set forth.

74. From 2005 until 2007 Sandberg had a valid and existing agreement with Almajid and NAM in which Sandberg served as attorney for Almajid and NAM. By reason of Hartford's relationship with Almajid and NAM, Sandberg owed Almajid and NAM the duty to make the fullest disclosure of all material facts that might affect Almajid and NAM investment decisions, to use reasonable care, skill and diligence in the performance of Sandberg's advisory role, to avoid self-dealings and conflict of interest, to exercise a high degree of honesty, loyalty, integrity

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

and good faith, to not make any secret profits and not compete with Almajid and/or NAM in its business activities.

75. Defendants Rayford, Banks, Gross, Wier and Sandberg had knowledge of Hartford service to Almajid and NAM as its investment advisor, consultant and agent and of the fiduciary relationship between Almajid, NAM and Hartford.

76. Defendants Rayford, Banks, Gross, Wier and Sandberg committed intentional and unjustified acts designed to interfere with and/or disrupt the agreement and fiduciary relationship between Almajid, NAM and Hartford.

77. As approximate result of Defendants wrongful acts, Almajid and NAM has been damaged in an as yet undetermined amount.

### FOURTH CLAIM FOR RELIEF

### (Fraudulent Concealment)

78. Almajid incorporate by reference paragraphs 1 through 77 as fully set forth.

79. In engaging in secret agreements with Rayford, Banks, Gross and Wier Sandberg had a duty to disclose and correct the fact of a lawsuit based a series of factual misrepresentations in that the defendants nondisclosures were likely to mislead Hartford, St. Louis County Circuit Court and San Diego County Superior Court. At all relevant times, Rayford, Banks, Gross, Wier and Sandberg , jointly and severally, actively  concealed the undisclosed information; the defendants had sole knowledge and/or access to material and knew that these facts were not known to or reasonably discoverable by Hartford or state courts.

80. Defendants breached their duties by suppressing material facts, including the fact that they entered into agreements with and made undisclosed distributions of trust assets among themselves or other unknown parties. Defendants intentionally and knowingly concealed facts with the intent to induce Hartford to transfer funds into Shortridge Revocable Trust account.

81. As approximate result of Defendants fraudulent concealment and omissions of material fact, Almajid and NAM have been damaged  in an as yet undetermined amount.

///

## PRAYER FOR RELIEF

**WHEREFORE**, Cross-complaint pray that judgment be entered against Defendants Rayford, Banks, Gross, Wier and Sandberg as follows:

**A. Monetary Relief**

For damages against the Defendants, and each of them jointly and severally, in an as yet undetermined amount, the amount duly trebled in accordance with 18 U.S.C. § 1964 (c);

For punitive damages, in an amount to be determined at trial, against the Defendants, and each of them, jointly and severally; and

For the cost of investigation and litigation reasonably incurred, as well as attorney fees in accordance with 18 U.S.C. § 1964 (c).


**B. Equitable Relief**

An accounting of all benefits, consideration and profits received and/or paid, directly, including, but not limited to, the imposition of constructive trusts with tracing;

The imposition and execution of equitable liens;

Orders of divestiture of any interest, including real estate or personal, money, or obligations or otherwise, wrongfully obtained, directly or indirectly, from Hartford; or

Shortridge Revocable Trust and any restrictions that may be appropriate on the future conduct or activities of any person.

**C. Other Relief**

For such other damages, relief and pre- and post judgment interest as the Court may deem just and proper to award Almajid and/or NAM complete relief.

Dated: 12 Aug 2009

Umar Abd Almajid, In Pro Se
Defendant and Cross-Complainant

08CV1279WQH LSP
CROSSCOMPLAINT UNDER
RACKETEER INCLUENCED CORRUPT
ORGANIZATIONS ACT (RICO)

## PROOF OF SERVICE BY MAIL

1

2     I am a citizen of the United States and employed in San Diego County,

3  California. I am over the age of eighteen years and not party to the within entitled

4. action. My address is 3910 Quince Street, San Diego, CA 92105. I am readily familiar

5  with this establishment's practice for collection and processing of correspondence for

6  mailing with the United States Postal Service. On August 12, 2009, I placed with this

7  firm at the above address for deposit with the United States Postal Service a true and

8  correct copy of the within document(s):

9     **AMENDED ANSWER AND CROSS-COMPLAINT UNDER RACKETEER INFLUENCED CORRUPT
      ORGNIZATIONS ACT (RICO)**

10

11

12     In a sealed envelope, postage fully prepaid, addressed as follows:

13  Keiko J. Kojima                              Mary Banks

14  Burke, William & Sorrensen, LLP              1115 N. McKnight Road

15  444 South Flower Street, Ste. 2400           University City, MO 63132

16  Los Angeles, CA 90071-2953

17

18  Kenneth P. White                             Beryl Rayford

19  Brown, White & Newhouse, LLP                 4077 32nd Street, Unit 8

20  333 S. Hope Street, 40th Floor               San Diego, CA 92104

21  Los Angeles, CA 90071

22

23

24

25

26  Dated: _August 12, 2009_                     _William Wright_
                                                         William Wright

27

28