# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE INS. CO., <br><br>   Plaintiff, <br> vs. <br> MARY BANKS, et al., <br><br>   Defendants. | CASE NO. 08cv1279 WQH (WVG) <br><br> **ORDER** |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss Cross-Complaint filed by Defendant Sandberg, Phoenix & Von Gontard ("Sandberg") (Doc. # 54); the Motion for Judgment on the Pleadings filed by Sandberg, Defendant Mary Banks ("Banks"), and Defendant Beryl Rayford ("Rayford") (Doc. # 69); the Motion to Drop Defendant filed by Defendant Umar Almajid ("Almajid") (Doc. # 56); the Ex Parte Motion to Set Status Conference filed by Sandberg (Doc. # 70); and the Ex Parte Motion to Continue Pretrial Dates filed by Sandberg (Doc. # 77).

## BACKGROUND

On July 16, 2008, Plaintiff Hartford Life Insurance Company ("Hartford") initiated this action by filing the Complaint in Interpleader ("Complaint") against Sandberg, Banks, Rayford, Almajid, North American Mercantile ("NAM"), Richard Wier ("Wier"), and

1  Monneye Gross ("Gross"). (Doc. # 1). This case concerns a dispute over the inheritance of
2  annuities owned by Cleona Bailey Shortridge ("Shortridge"). The Complaint alleges that
3  Almajid and Rayford, Shortridge's nephew and niece, were named as the beneficiaries of the
4  annuities in a revocable trust executed on August 4, 1997, with Banks as the successor trustee.
5  Compl. at 5. The Complaint alleges that on June 2, 2002, Shortridge changed the beneficiary
6  of the annuities to NAM. *Id.* at 4.

7  　　　The Complaint alleges that after Shortridge's death, Banks and Rayford filed a Petition
8  in the Circuit Court of the City of St. Louis, Missouri ("Petition") which disputed ownership
9  of the annuities. *Id.* at 5. The Complaint alleges Sandberg, a law firm, represented Almajid
10 and NAM in the state court suit. *Id.* at 5. The Complaint alleges a settlement was
11 memorialized in writing on July 10, 2007. *Id.* at 6. The Complaint alleges Hartford sent forms
12 allowing the disbursement of funds pursuant to the settlement to Sandberg for Almajid and
13 NAM to complete. *Id.* at 6. The Complaint alleges the forms were never returned. *Id.* The
14 Complaint alleges that Almajid sent a letter to Hartford stating that there was a dispute
15 between Almajid, NAM, and Sandberg. *Id.* at 7. The Complaint alleges Hartford requested
16 confirmation from Almajid and NAM that Sandberg still represented them, but received no
17 response. *Id.* The Complaint alleges that the dispute over disbursement of proceeds
18 necessitated this interpleader action by Hartford. *Id.* The Complaint alleges claims for
19 declaratory relief and interpleader. *Id.*

20 　　　On September 30, 2008, Sandberg filed an answer. (Doc. # 8). On November 12, 2008,
21 Wier and Gross were dismissed as interpleader defendants. (Doc. # 19). On November 21,
22 2008, Almajid, proceeding pro se, filed an "Answer-Complaint in Interpleader Counterclaim
23 for Damages" ("Answer and Cross-Claim") on behalf of himself and NAM. (Doc. # 21). The
24 Cross-Claim against Sandberg, Banks, Rayford, Gross, and Wier alleged claims for (1) civil
25 RICO violations, (2) conspiracy, (3) interference with contractual relationship, (4) fraudulent
26 concealment, and (5) accounting. On December 17, 2008, Banks and Rayford's Motion for
27 a 30-day extension of time to file an answer was granted. (Doc. # 26). Neither Banks nor
28 Rayford has filed an answer.

On March 25, 2009, this Court dismissed Almajid's Cross-Claim in its entirety for failure to state a claim. (Doc. # 39). On July 17, 2009, the Court granted Sandberg's Motion for Leave to File Cross-Complaint Against North American Mercantile, Inc. (Doc. # 48). On July 20, 2009, the Court struck the Answer that Almajid filed on behalf of NAM, holding that NAM may not appear pro se because it is a corporation. (Doc. # 48). Also on July 20, 2009, the Court granted Almajid's Motion for Leave to File an Amended Answer and Cross-Complaint. *Id.* On August 3, 2009, Sandberg filed its Cross-Claim which alleged a single claim for breach of contract against NAM. (Doc. # 49). NAM did not file an answer to Sandberg's Cross-Claim. On August 12, 2009, Almajid filed his amended Answer and Cross-Complaint against Sandberg, Banks, Rayford, Gross, and Wier. (Doc. # 52). The Cross-Claim alleges claims for (1) civil RICO violations, (2) conspiracy, (3) interference with contractual relationship, (4) fraudulent concealment and (5) accounting. *Id.* at 23-26. On September 1, 2009, Sandberg filed its Motion to Dismiss Cross Complaint. (Doc. # 52). On September 2, 2009, Almajid filed his Motion to Drop Defendant. (Doc. # 56). On September 4, 2009, the Clerk of the Court entered default on Sandberg's Cross-Claim in favor of Sandberg and against NAM. (Doc. # 58). On October 2, 2009, the Clerk of the Court entered Default Judgment on the Cross-Claim in favor of Sandberg and against NAM. (Doc. # 65). On October 8, 2009, Sandberg, Banks, and Rayford filed their Motion for Judgment on the Pleadings. (Doc. # 69). On October 9, 2009, Sandberg filed its Ex Parte Motion to Set Status Conference. (Doc. # 70).

## ANALYSIS

**I.     Sandberg's Motion to Dismiss Cross-Complaint**

     A.     Allegations of the Cross-Claim

Almajid's Cross-Claim arises out of an alleged "complex insurance company fraud scheme that caused substantial losses . . . founded upon a frivolous lawsuit [in Missouri state court] consisting [of] known misrepresentations . . . ." (Doc. # 52 at 3). The Cross-Claim alleges that Sandberg was deficient in its representation of Almajid and NAM and conspired with Rayford and Banks to defraud Almajid and NAM. *Id.* The Cross-Claim alleges "Rayford

and Banks sought to wrongfully procure insurance proceeds managed by Hartford" while "Sandberg sought to procure exorbitant profits from Almajid by failure to file procedural motions to cure Banks and Rayford['s] pleadings deficiencies . . . ." *Id.* The Cross-Claim alleges "Sandberg recognized the deficiencies in the St. Louis lawsuit from the outset[, but] [i]nstead of filing pertinent motions in initial stages, Sandberg chose to compound and conceal Rayford and Banks in an apparent effort to justify exorbitant fees." *Id.* at 4.

The Cross-Claim alleges that "the fraudulent scheme lasted seven years, from 2000 to 2007." *Id.* at 6. The Cross-Claim alleges that Banks informed Almajid that she no longer wished to be named as the successor trustee to Shortridge's will, and that Almajid and Banks approached Banks's attorneys, Monneye Gross and Richard Wier, to change Shortridge's estate planning documents. *Id.* The Cross-Claim alleges Gross, Weir, Banks, and Rayford conspired to submit "a series of false reports" to the San Diego County Health and Human Services Department. *Id.* The Cross-Claim alleges the subsequent investigation revealed "no evidence to substantiate allegations of criminal or tortuous [sic] conduct." *Id.* The Cross-Claim alleges that Sandberg was aware that the investigation by San Diego County authorities revealed that Almajid had not abused Shortridge, but Sandberg concealed this information from the Missouri state court in order to defraud Almajid and NAM. *Id.* at 17. The Cross-Claim alleges Sandberg failed to prevent Banks from embezzling $15,000 from the annuity and concealed the embezzlement from the Missouri state court. *Id.* at 18. The Cross-Claim alleges "Sandberg prepared a settlement agreement that unjustly enriched itself, Banks, and Rayford. Almajid executed the purported settlement under circumstances constituting fraud, misrepresentation, duress, negligence, and lack of informed consent." *Id.* at 19. The Cross-Claim alleges that Almajid and NAM suffered "extensive damages" from Sandberg's misrepresentations, including damage from Hartford freezing the accounts during the state court proceedings. *Id.* at 20-21.

B.   Contentions of the Parties

Sandberg contends Almajid's Cross-Claim should be dismissed for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. # 54 at 2).

1  Sandberg contends that the Cross-Claim seeks damages on behalf of NAM as well as Almajid,
2  violating this Court's order that Almajid may not file pleadings on behalf of NAM. *Id.*
3  Almajid contends that his amended complaint satisfies the pleading requirements of Federal
4  Rules of Civil Procedure 12(b)(6) and 9(b) and seeks judicial notice of his response to
5  interrogatories to supply additional facts about his allegations of fraud. (Doc. # 59 at 2-3).

6        C.      Applicable Law

7       A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the
8  legal sufficiency of the pleadings. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).
9  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the
10 factual allegations do not raise the right to relief above the speculative level. *See Bell Atlantic*
11 *v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for
12 failure to state a claim where the allegations plausibly show that the pleader is entitled to relief.
13 *See id.* (citing Fed R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court
14 must construe the pleadings in the light most favorable to the plaintiff, and must accept as true
15 all material allegations in the complaint, as well as any reasonable inferences to be drawn
16 therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*,
17 80 F.3d 1293 (9th Cir. 1996). "Courts have a duty to construe pro se pleadings liberally,
18 including pro se motions as well as complaints." *Bernhardt v. Los Angeles County*, 339 F.3d
19 920, 925 (9th Cir. 2003).

20      Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short
21 and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ.
22 Pro. 8(a)(2). While the Federal Rules adopt a flexible pleading policy, every complaint must,
23 at a minimum, "give the defendant fair notice of what the . . . claim is and the grounds upon
24 which it rests." *Bell Atlantic*, 127 S. Ct. at 1964 (citing *Conley v. Gibson*, 355 U.S. 41, 47
25 (1957)). Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or
26 mistake, a party must state with particularity the circumstances constituting fraud or mistake."
27 Fed. R. Civ. Pro. 9(b). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader
28 must state the time, place, and specific content of the false representations as well as the

identities of the parties to the misrepresentation." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLO*, 476 F.3d 756, 764-65 (9th Cir. 2007). "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). "[W]here fraud is not an essential element of a claim only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). "When an entire complaint, or an entire claim within a complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Id.* at 1107. "If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint grounded in fraud, there is effectively nothing left of the complaint." *Id.*

    D.    Analysis

        1.    Cross-Claim for Civil RICO Violations

To state a claim for a civil RICO violation, the claimant must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). When a claimant alleges fraudulent acts, such as mail and wire fraud, as the predicate acts in a RICO claim, Rule 9(b) of the Federal Rules of Civil Procedure "requires that circumstances constituting fraud be stated with particularity." *Alan Neuman Productions*, 862 F.2d at 1392. The predicate acts underlying the claim for civil RICO violation alleged in the complaint are "'[m]ultiple instances of mail fraud in violation of 18 U.S.C. section 1341," and "[m]ultiple instances of wire fraud in violation of 18 U.S.C. section 1343." (Doc. # 52 at 23). The Cross-Claim alleges that Rayford, Banks, Wier, and Gross made misrepresentations before the St. Louis County Circuit Court, the Superior Court of

California, and in settlement discussions. Although the Cross-Claim references "multiple instances" of fraud, and "gross misrepresentations," the Cross-Claim does not allege with sufficient specificity the time, place or specific content of each misrepresentation or fraudulent act giving rise to the claim for violation of RICO. *See id.* The Cross-Claim also fails to allege with sufficient specificity the identities of the parties to each misrepresentation; instead, the Cross-Claim lumps multiple defendants together, which is insufficient under Rule 9(b).[1] The Cross-Claim fails to allege the time, place and specific content of the misrepresentations underlying the RICO claims, and fails to identify the role of each Defendant in the fraudulent scheme. The Cross-Claim fails to state a claim for civil RICO violation because the Cross-Claim fails to allege the circumstances constituting fraud with particularity.

2. Cross-Claim for Conspiracy

In support of the claim for conspiracy, the Cross-Claim alleges that Rayford, Banks, Gross, Wier and Sandberg "engaged in the formation and operation of several conspiracies" in which "Defendants would abuse the fiduciary relationship and trust between Hartford and NAM," would "abuse the discretion granted [to] Hartford by NAM," would "induce Hartford to breach the obligation of undivided loyalty and fidelity to NAM," and would "fail to disclose material facts with the intent of defrauding NAM." (Doc. # 52 at 24). The conspiracy claim alleges Sandberg's legal services were deficient and that the law firm failed to present all of the available evidence to the Missouri court in the prior proceeding. *Id.* at 19. The conspiracy claim does not allege any facts to support the assertion that these alleged failings by Sandberg were part of a conspiracy with the other defendants to defraud Almajid and NAM. The conclusory allegations underlying the conspiracy claim are not pled with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, and are otherwise insufficient to put Defendants on notice of the grounds upon which the conspiracy claim rests, pursuant to Rule 8(a). The Cross-Claim fails to state a claim for conspiracy.

3. Cross-Claim for Interference with Contractual Relationship

---

[1] Almajid attempts to cure this deficiency by asking the Court to take judicial notice of his answers to interrogatories. (Doc. # 61). However, even if the Court considers the information in the answers to interrogatories, it does not add sufficient detail to state a claim for fraud with particularity.

1    In support of the claim for interference with contractual relationship, the Cross-Claim
2 alleges "[f]rom 2005 until 2007, Sandberg had a valid and existing agreement . . . in which
3 Sandberg served as attorney for Almajid and NAM" and owed "the duty to make the fullest
4 disclosure of all material facts that might affect . . . investment decisions, to use reasonable
5 care, skill, and diligence." (Doc. # 52 at 25). The Cross-Claim alleges that Rayford, Banks,
6 Gross, Wier, and Sandberg "committed intentional and unjustifed acts designed to interfere
7 with and/or disrupt the agreement and fiduciary relationship between Almajid, NAM, and
8 Hartford." *Id.* The Cross-Claim fails to allege sufficient facts to explain the intentional and
9 unjustified acts allegedly committed by Defendants or how those acts interfered with Almajid's
10 relationship with Hartford. The allegations supporting the claim for interference with
11 contractual relationship are conclusory, vague, and insufficient to put Defendants on notice of
12 the alleged misconduct that gives rise to the claim. The Cross-Claim fails to state a claim for
13 interference with contractual relationship.

14              4.    Cross-Claim for Fraudulent Concealment

15    In support of the claim for fraudulent concealment, the Cross-Claim alleges "[i]n
16 engaging in secret agreements with Rayford, Banks, Gross, and Wier, Sandberg had a duty to
17 disclose and correct the fact of a lawsuit based on a series of factual misrepresentations in that
18 the defendants nondisclosures were likely to mislead Hartford, St. Louis County Circuit Court,
19 and San Diego Superior Court. . . . Defendants intentionally and knowingly concealed facts
20 with the intent to induce Hartford to transfer funds into Shortridge Revocable Trust Account."
21 (Doc. # 52 at 26). The claim for fraudulent concealment fails to explain what the allegedly
22 concealed information was, how it induced Hartford to transfer money into the account, or how
23 transferring money into the account damaged Almajid. The Cross-Claim fails to state a claim
24 for fraudulent concealment because it fails to allege the circumstances constituting fraud with
25 particularity.

26              5.    Cross-Claim for Accounting

27    The Cross-Claim does not make a separate claim for an accounting, but in the prayer for
28 relief, seeks equitable relief including "[a]n accounting of all benefits, consideration and profits

received and/or paid, directly including but not limited to the imposition of constructive trusts with tracing." (Doc. # 52 at 26). "A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law." *St. James Church of Christ Holiness v. Superior Ct.*, 135 Cal. App. 2d, 352, 359 (1955). The Cross-Claim does not allege facts that show that the financial transactions or amounts due are so complex as to require an accounting or that there is not an adequate remedy at law. The Cross-Claim fails to state a claim for accounting.

## II.  Almajid's Motion to Drop Defendant

Almajid's Motion to Drop Defendant seeks to drop NAM as a defendant to Sandberg's Cross-Claim and substitute himself in NAM's place. (Doc. # 56 at 2, Doc. # 56-2 at 1). Almajid contends NAM's Board of Directors has "transferred and assigned all rights, title, and interest relative" to this case to Almajid, and that as the assignee, he is the proper defendant to the Cross-Claim, not NAM. (Doc. # 56-2 at 8-9). Almajid submitted a copy of a resolution by the NAM board of directors stating that "while the action is pending, North American Mercantile, Inc., assigns and transfers to Umar Almajid all of North American Mercantile['s] rights, title and interest in and to the claim(s) against defendant(s). As a result of the assignment, Umar Almajid became the lawful owner and holder of North American Mercantile, Inc.'s claim(s) against defendant(s)." (Doc. # 56-4 at 4).

In its response, Sandberg contends "[d]ropping NAM as a party or substituting Almajid in its place would unduly prejudice Sandberg, and therefore, would contravene the purpose of [Federal] Rule [of Civil Procedure] 21." (Doc. # 57 at 3). Sandberg further contends that "NAM's assignment, if valid, only assigned NAM's 'rights, title and interest relative [to this case,]' not NAM's liabilities, especially liabilities incurred prior to this case." *Id.*

As a non-lawyer, Almajid may not file motions or pleadings on behalf of NAM. *See* 28 U.S.C. § 1654; Local Civil Rule 83.3(k); *see also* Doc. # 48 at 3. Almajid's motion to drop NAM as a defendant is therefore denied.

1 **III. Banks, Rayford and Sandberg's Motion for Judgment on the Pleadings**

2 Banks, Rayford, and Sandberg filed a Joint Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), which contends that there is "no material issue of fact with respect to whether the settlement is valid and binding on the parties." (Doc. # 69-1 at 3). Almajid contends he was duped into signing the "purported settlement" by Sandberg as part of a "scheme to obtain insurance profits by fraud and/or false pretenses." (Doc. # 74 at 3). Almajid also contends he signed the settlement under "duress." (Doc. # 74 at 4).

Judgment on the Pleadings is proper pursuant to Federal Rule of Civil Procedure 12(c) "after the pleadings are closed but within such time as not to delay trial," if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.*

Rayford and Banks have not filed responsive pleadings to the original complaint or to Almajid's Cross-Claim. Therefore, the pleadings are not closed, barring judgment in their favor on the pleadings. *See Doe v. United States, et al.*, 419 F.3d 1058, 1061 (9th Cir. 2005) ("[T]he pleadings are closed for the purposes of Rule 12 (c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made.")

Furthermore, although Almajid failed to state a claim for relief in his Cross-Claim, his answer attacked the validity of the settlement agreement and asserted defenses to enforcing it. *See* Doc. # 52 at 3-4, 6-12, 16-19. Specifically, Almajid asserts that he signed the settlement under "circumstances constituting fraud, misrepresentation, negligence, and lack of informed consent." *Id.* at 19. While Almajid made these assertions in the section of his filing labeled as a counterclaim, courts do not hold *pro se* litigants to the same standards of pleading as represented parties. *See, e.g.*, *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008). "Courts have a duty to construe pro se pleadings liberally." *Bernhardt v. L.A. County*, 339 F.3d 920,

925 (9th Cir. 2003). Despite the technical deficiency in Almajid's pleadings, he has raised a defense that requires going beyond the pleadings to resolve, barring judgment pursuant to Rule 12(c).

## IV. Sandberg's Ex Parte Motion to Set Status Conference and Ex Parte Motion to Continue Pretrial Dates

Sandberg's Motion to Set Status Conference contends "[a] status conference regarding the various default applications would assist counsel in resolving the remaining issues in the case." (Doc. # 70 -1 at 2). Sandberg contends a status conference would allow it to "seek guidance from the Court regarding (1) the consequences to the case of the defaults already entered, (2) the Court's view of the other defaults requested, and (3) the procedure the Court prefers to follow with regard to resolving the remaining issues raised by the Complaint in interpleader."

Sandberg's Motion to Continue Pretrial Dates notes that there are several rapidly approaching pretrial deadlines and seeks to delay those pretrial deadlines. The Court granted Sandberg's motion (Doc. # 79) and has issued a new scheduling order concurrently with this order which addresses the remaining issues in this action. The pretrial deadlines have been extended to allow the parties to file motions on the outstanding issues in the case. Sandberg's Ex Parte Motion to Set Status Conference is therefore denied.

## CONCLUSION

IT IS HEREBY ORDERED that:

(1) Sandberg's Motion to Dismiss Cross-Complaint (Doc. # 54) is **GRANTED**.

(2) Almajid's Motion to Drop Defendant (Doc. # 56) is **DENIED**.

(3) Banks, Rayford, and Sandberg's Motion for Judgment on the Pleadings (Doc. # 69) is **DENIED**.

(4) Sandberg's Ex Parte Motion to Set Status Conference (Doc. # 70) is **DENIED**.

(5) Sandberg's Ex Parte Motion to Continue Pretrial Dates (Doc. # 77) was previously granted (Doc. # 79)**.** A scheduling order issued concurrently with this order sets new pretrial deadlines.

DATED: January 26, 2010

                                   */s/ William Q. Hayes*
                                   **WILLIAM Q. HAYES**
                                   United States District Judge