# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br> vs. <br> MARY BANKS, et al. <br> Defendants. | CASE NO. 08cv1279 WQH (WVG) <br><br> **ORDER** |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment (Doc. # 106) filed by Defendant Sandberg, Phoenix & von Gontard, P.C., and the Motion to Reconsider Dismissal of Cross-Complaint Against Sandberg or Leave to File Second Amended Answer and Cross Complaint (Doc. # 108) filed by Cross-Plaintiff Umar Almajid.

## BACKGROUND

On July 16, 2008, Plaintiff Hartford Life Insurance Company ("Hartford") initiated this action by filing the Complaint in Interpleader ("Complaint") against Sandberg, Phoenix & von Gontard, P.C. ("Sandberg"), Mary Banks ("Banks"), Beryl Rayford ("Rayford"), Umar Almajid ("Almajid"), North American Mercantile ("NAM"), Richard Wier ("Wier"), and Monnye Gross ("Gross"). (Doc. # 1). This case concerns a dispute over the inheritance of annuities owned by Cleona Bailey Shortridge ("Shortridge"). The Complaint alleges that Almajid and Rayford, Shortridge's nephew and niece, were named as the beneficiaries of the

annuities in a revocable trust executed on August 4, 1997, with Banks as the successor trustee. Compl. in Interpleader, Doc. # 1 at 5. The Complaint alleges that on June 2, 2002, Shortridge changed the beneficiary of the annuities to NAM. *Id.* at 4.

The Complaint alleges that after Shortridge's death, Banks and Rayford filed a Petition in the Circuit Court of the City of St. Louis, Missouri ("Petition") which disputed ownership of the annuities. *Id.* at 5. The Complaint alleges Sandberg, a law firm, represented Almajid and NAM in the state court suit. *Id.* at 5. The Complaint alleges a settlement was memorialized in writing on July 10, 2007. *Id.* at 6. The Complaint alleges Hartford sent forms to allow the disbursement of funds pursuant to the settlement to Sandberg for Almajid and NAM to complete. *Id.* at 6. The Complaint alleges the forms were never returned. *Id.* The Complaint alleges that Almajid sent a letter to Hartford stating that there was a dispute between Almajid, NAM, and Sandberg. *Id.* at 7. The Complaint alleges Hartford requested confirmation from Almajid and NAM that Sandberg still represented them, but received no response. *Id.* The Complaint alleges that the dispute over disbursement of proceeds necessitated this interpleader action by Hartford. *Id.* The Complaint alleges claims for declaratory relief and interpleader. *Id.*

On September 30, 2008, Sandberg filed an answer. (Doc. # 8). On November 12, 2008, Wier and Gross were dismissed as interpleader defendants. (Doc. # 19). On November 21, 2008, Almajid, proceeding pro se, filed an "Answer-Complaint in Interpleader Counterclaim for Damages" ("Answer and Cross-Claim") on behalf of himself and NAM. (Doc. # 21). The Cross-Claim against Sandberg, Banks, Rayford, Gross, and Wier alleged claims for (1) civil RICO violations, (2) conspiracy, (3) interference with contractual relationship, (4) fraudulent concealment, and (5) accounting. On December 17, 2008, Banks and Rayford's Motion for a 30-day extension of time to file an answer to the Complaint in Interpleader was granted. (Doc. # 26). However, Banks and Rayford did not file answers before the extended deadline passed.

On March 25, 2009, this Court dismissed Almajid's Cross-Claim in its entirety for failure to state a claim. (Doc. # 39). On July 17, 2009, the Court granted Sandberg's Motion

for Leave to File Cross-Complaint Against North American Mercantile, Inc. (Doc. # 48). On July 20, 2009, the Court struck the Answer that Almajid filed on behalf of NAM, holding that Almajid may not represent NAM because Almajid is not an attorney. (Doc. # 48). Also on July 20, 2009, the Court granted Almajid's Motion for Leave to File an Amended Answer and Cross-Complaint. *Id.* On August 3, 2009, Sandberg filed its Cross-Claim which alleged a single claim for breach of contract against NAM. (Doc. # 49). NAM did not file an answer to Sandberg's Cross-Claim. On August 12, 2009, Almajid filed his amended Answer and Cross-Complaint against Sandberg, Banks, Rayford, Gross, and Wier. (Doc. # 52). In his Answer, Almajid denies "that Defendant Banks, Rayford, or Sandberg has any legitimate or bona fide interest in the accounts . . . ." *Id.* at 2. The Cross-Claim alleges claims for (1) civil RICO violations, (2) conspiracy, (3) interference with contractual relationship, (4) fraudulent concealment and (5) accounting. *Id.* at 23-26.

On January 26, 2010, the Court denied Almajid's Motion to Drop Defendant (Doc. # 56), which sought to substitute Almajid for NAM as the defendant to Sandberg's cross claim. (Doc. # 86). In the same order, the Court denied Banks, Rayford, and Sandberg's Motion for Judgment on the Pleadings (Doc. # 69), granted Sandberg's Motion to Dismiss Cross-Complaint (Doc. # 54), and denied Sandberg's Ex Parte Motion to Set Status Conference (Doc. # 79). (Doc. # 86). Also on January 26, 2010 the Court issued a scheduling order revising the motion cutoff date and pretrial conference date (Doc. # 85), an order directing the Clerk of the Court to add Gross and Wier to the docket as Third-Party Defendants to Almajid's Cross-Complaint and five orders to show cause (Docs. # 80-84). The Court issued Orders to Show Cause to Banks (Doc. # 81), Rayford (Doc. # 80), and NAM (Doc. # 82) requiring them to show cause why they should not be dismissed as to the complaint in interpleader for failure to file an answer. The Court issued two orders to show cause to Almajid, requiring him to show cause why his cross-claim against Gross and Wier should not be dismissed for failure to serve them within the 120 day period allowed pursuant to Federal Rule of Civil Procedure 4(m) and to show cause why his claims against Banks and Rayford should not be dismissed for failure to move for default judgment within the time allowed

pursuant to Local Civil Rule 55.1 after obtaining a clerk's default. (Docs. # 83, 84).

On February 19, 2010, Banks filed an answer to the Complaint in Interpleader (Doc. # 88) and a declaration stating she had previously failed to file an answer because she cannot afford counsel and is "not familiar with the Rules of Court" and therefore "was not aware that [she] had to respond to the Complaint . . ." (Doc. # 88-1).

On February 22, 2010, Almajid filed responses to orders to show cause issued as to him and as to NAM. (Docs. # 89-91). In his filing on behalf of NAM, Almajid contended "[t]he statutory provision requiring NAM to retain counsel is unduly prejudicial and burdensome . . . ." (Doc. # 89 at 3). Almajid sought to "excuse NAM from answering the Complaint in Interpleader . . . ." *Id.*

On February 23, 2010, Rayford filed an answer to the complaint in interpleader. (Doc. # 93). On February 26, 2010, the Court ordered Rayford to file a proof of service on her answer to the Complaint in Interpleader within ten days. (Doc. # 94). On March 9, 2010, Rayford filed her proof of service. (Doc. # 99).

On May 18, 2009, the Court issued four orders in this case. (Docs. # 102-105). The Court struck Almajid's response to the order to show cause issued to NAM. (Doc. # 105 at 8). The Court declined to sanction Almajid for the filing, but warned Almajid that further filings on behalf of NAM could result in sanctions. *Id.* The Court dismissed NAM as a party to the Complaint in Interpleader for failure to file an answer. (Doc. # 102 at 1). The Court denied Almajid's motion for an enlargement of time to serve Gross and Wier and dismissed Almajid's cross claim against them. (Doc. # 104 at 1). The Court ruled that Almajid had shown cause as to why his cross claims should not be dismissed as to Banks and Rayford for failure to move for default judgment. (Doc. # 103 at 2).

On May 28, 2010, Sandberg moved for summary judgment in its favor on the complaint in interpleader. (Doc. # 106). Also on May 28, 2010, Almajid filed a motion to reconsider dismissal of the cross complaint against Sandberg or, in the alternative, for leave to file a second amended answer and cross complaint. (Doc. # 108). On June 22, 2010, Almajid filed supplemental materials in support of his motions. (Doc. # 113).

# ANALYSIS

## I. Motion for Summary Judgment

Sandberg contends there is no genuine issue of material fact as to the validity of the settlement agreement reached in the prior litigation over the annuities in St. Louis. (Doc. # 106-1 at 2). Sandberg contends that Almajid has no interest in the interpleader funds. *Id.* at 5. Sandberg contends that even if Alamjid could establish that the settlement agreement is invalid, Almajid would still have no claim to the funds because Almajid was not named as a beneficiary on the annuities. *Id.* at 5-6. Sandberg contends the settlement agreement controls disbursal of the interpleader funds. *Id.* at 6. Sandberg contends Annuity 1 should be liquidated and the proceeds of both annuities should be paid out to Sandberg, Banks, and Rayford according to the settlement agreement. *Id.* at 6-7. Sandberg contends the attorney's fees paid to Hartford should be distributed among the parties on a pro rata basis. *Id.* at 8-9. Sandberg contends defaulted Defendant NAM's share of the funds should be offset against the additional $34,134.07 owed to Sandberg pursuant to its judgment against NAM in the amount of $52,236.70. *Id.* at 9.

In his opposition, Almajid contends there is a genuine issue of material fact as to whether Sandberg breached its fiduciary duty to Almajid. (Doc. # 110 at 2). Almajid contends Sandberg has committed obstruction of justice during these proceedings. *Id.* Almajid contends he signed the settlement under duress. *Id.* Almajid contends Sandberg is not entitled to the funds. (Doc. # 110-1 at 2). Almajid contends the settlement agreement is invalid and illegal because it was obtained as part of a conspiracy between Sandberg and the other parties. *Id.* at 5-6. Almajid contends he has "ultimate title of ownership" of the annuities which named NAM as the sole beneficiary because of a legal document he asserts assigns "[s]ubject annuity accounts were set aside with the intent to be administered and distributed for the benefit of Almajid's health, education, support, and maintenance." *Id.* at 8.

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp.*

1 *v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quotation omitted). "Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted).

Sandberg has presented evidence that satisfies its initial burden of establishing that there is no genuine issue of material fact as to whether the settlement agreement in the prior litigation is enforceable. The Declaration of Martin Daesch, an attorney with Sandberg, states that Almajid, NAM, Banks, and Rayford settled the prior litigation in 2007. (Doc. # 106-2 at 4-5). The settlement agreement, signed by all parties, is attached as an exhibit to Daesch's Declaration. *See* Ex. A, Doc. # 106-3. Sandberg, Almajid, Banks, and Rayford all admitted that there was a settlement agreement signed by all parties in their Answers to the Complaint in Interpleader. (Docs. # 8, 52, 88, 94). Daesch's Declaration states he was present in the Circuit Court of St. Louis County, Missouri when the terms of the settlement agreement were read into the record and when Almajid, Banks, Rayford gave their formal consent under oath to the settlement agreement. (Doc. # 106-2 at 5). Daesch's Declaration states he was also present in the Circuit Court of St. Louis County, Missouri when that court determined that Almajid, NAM, Banks, and Rayford had reached the settlement agreement. *Id.*

Almajid has repeatedly asserted that NAM is entitled to all of the proceeds from the annuities and attempted to make filings on behalf of NAM or substitute himself for NAM as

a party to this litigation. *See, e.g.*, Answer-Complaint in Interpleader Counterclaim for Damages, (Doc. # 21), Motion to Drop Defendant (Doc. # 56), Response to Order to Show Cause (Doc. # 89). However, Almajid has not asserted an independent right to the annuities at issue in this case. In his answer, Almajid asserts that Banks, Rayford, and Sandberg are not entitled to any proceeds of the annuities, but does not state that he has any claim to the funds. Almajid has conceded that NAM, not Almajid, was the last named beneficiary of the annuities. *See* Answer, Doc. # 52 at 2. Almajid has conceded that he did not receive any of the annuity funds under the terms of the settlement agreement in the prior litigation. *Id.* Almajid has conceded that he signed the settlement agreement, both on behalf of NAM and as an individual. *Id.*

Although Almajid has repeatedly asserted that the settlement agreement is invalid, even if the settlement agreement were invalid, there is no genuine issue of material fact that Almajid is not entitled to any of the proceeds of the annuities. The incomplete document (Doc. # 111-2), which Almajid asserts proves that NAM assigned its rights in the annuity to Almajid, does not raise a genuine issue of material fact as to whether Almajid has any interest the annuities. In any event, Almajid has not presented any evidence in support of his assertions that his assent to the settlement agreement was made under duress. The Court concludes that the settlement agreement is enforceable.

Pursuant to the settlement agreement, NAM was to receive the entire proceeds of Annuity 1, which was at that time worth $33,802.41. Settlement Agreement, Ex. 4 to Compl. in Interpleader, Doc. # 1-1 at 82-83. The proceeds of Annuity 2, which at that time was worth $36,030.09 were to be divided as follows: $25,000.00 to Sandberg, $4,930.59 to NAM, $4,246.50 to Rayford, $1,353.00 to Banks as partial payment of her fee as trustee, and $1,000.00 to Banks to be held in a separate trust checking account "for preparation of final Federal and State Fiduciary Tax Returns for the Trust." *Id.* at 83-84. Annuity 2 was liquidated and the proceeds were deposited with the Court. Compl. in Interpleader, Doc. # 1 at 2. The Court previously paid Hartford $8,500.00 in attorney's fees from the Annuity 2 funds. At this time, the balance of funds from Annuity 2 is $27,936.88. Annuity 1 has not been liquidated

and deposited with the Court.

The total amount of funds available in interpleader will be less than the total amount awarded by the settlement agreement because of the payment to Hartford. Because the value of Annuity 1 fluctuates, it is not clear what the final total amount of interpleaded funds will be. NAM did not enter an appearance in this case and has defaulted. Sandberg contends that it is entitled to the proceeds awarded to defaulted defendant NAM in the settlement agreement to satisfy Sandberg's default judgment against NAM on Sandberg's cross claim. The Court concludes that Sandberg has thus far failed to establish that Sandberg is entitled to NAM's share of the settlement. Sandberg, Banks, and Rayford may file further briefing as to the proper resolution of this case as to the share of the annuities which the settlement agreement awarded to defaulted defendant NAM.

## II. Almajid's Cross Claims

### A. Almajid's Motion to Reconsider and Motion for Leave to Amend

Almajid contends that this court erred in granting Sandberg's motion to dismiss his cross claim because "it was inappropriate for Sandberg to claim on the one hand that the complaint is vague . . . and on the other hand file a motion to dismiss for failure to state a claim." (Doc. # 108-1 at 3). Almajid contends that Sandberg should have filed a motion for a more definite statement instead. *Id.* Almajid contends that this case should be tried on the merits rather than resolved on the pleadings. *Id.* at 4. Almajid contends that Sandberg has admitted that the prior litigation in St. Louis was frivolous. *Id.* Almajid contends that Sandberg has committed a fraud on the Court. *Id.* at 6-7. Almajid contends that this fraud constitutes good cause for reversing the Court's prior decision to dismiss. *Id.* at 8-9. Almajid contends that granting leave to amend will not prejudice Sandberg because the proposed amended second amended complaint "provides [] sufficient information to formulate a defense . . . ." (Doc. # 108 at 2).

Sandberg contends Almajid's Motion to Reconsider is improper because it was filed 122 days after the Court's order dismissing the cross claim. (Doc. # 110 at 2). Sandberg contends Almajid fails to offer any new facts or different circumstances that would justify

1  reconsidering the order. *Id.* at 2-3. Sandberg contends Almajid's Motion for Leave to Amend
2  should be denied because it was made more than a year after the motion cut-off deadline of
3  May 11, 2009. *Id.* Sandberg contends Almajid has not attempted to show good cause for
4  amending the scheduling order. *Id.* at 4-5. Sandberg contends Almajid should not be allowed
5  leave to amend because amendment would be futile and because allowing Almajid to amend
6  at this stage would delay the litigation further, resulting in prejudice to Sandberg. *Id.* at 6.

7  After reviewing Almajid's amended counter claim, the pleadings on Sandberg's motion
8  to dismiss, and the briefing on this motion, the Court concludes that there are no grounds to
9  reconsider its ruling dismissing Almajid's cross claims against Sandberg.

10  "Four factors are commonly used to determine the propriety of a motion for leave to
11  amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of
12  amendment." *DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (citations
13  omitted). Courts also consider whether discovery has ended, whether the plaintiff has
14  previously been given the opportunity to amend, and whether the facts or theories upon which
15  the sought-after amendment is based were known to the plaintiff previously. *Kaplan v. Rose*,
16  49 F.3d 1363, 1370 (9th Cir. 1994). The decision to grant leave to amend is "one that rests in
17  the sound discretion of the trial court." *Bovarie v. Woodford*, 06CV687 BEN (NLS), 2006
18  U.S. Dist. LEXIS 82203, *6 (S.D. Cal. Nov. 9, 2006).

19  This case has been pending for two years. Discovery is closed and the motion cut-off
20  date has passed. Almajid waited 122 days from the date the Court dismissed his Amended
21  Cross Claim against Sandberg to file this motion. Almajid has previously amended his
22  complaint and has not argued that the "facts or theories" which form the basis of his amended
23  complaint were previously unknown. The Court finds that allowing Almajid to amend at this
24  stage would result in undue delay and prejudice to the other parties to this case. Almajid's
25  motion for leave to amend is denied.

26         **B.**    **Almajid's Cross Claims Against Banks and Rayford**

27  Almajid's Cross-Claim alleges claims for (1) civil RICO violations, (2) conspiracy, (3)
28  interference with contractual relationship, (4) fraudulent concealment and (5) accounting.

1  (Doc. # 52 at 23-26). Almajid's claims against Banks and Rayford allege various wrongdoing
2  in relation to the annuities. *See* Cross-Claim, Doc. # 21.

3  "Federal courts are required sua sponte to examine jurisdictional issues." *Bernhardt
4  v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (quotation omitted). Article III
5  standing is a jurisdictional prerequisite which must be met before a federal court may
6  adjudicate a case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

12 *Id.* (citations and internal quotation marks omitted). In essence, a party must establish a
13 sufficient stake in the outcome of the litigation to justify the "invocation of federal-court
14 jurisdiction . . . ." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

15 As Almajid has conceded, NAM was the last named beneficiary of the annuities. As
16 Almajid has conceded, he did not receive any of the annuity funds in the settlement agreement
17 in the prior litigation. This Court has determined that there is no genuine issue of material fact
18 that Almajid has no interest in the annuities. Almajid's cross claims against Banks and
19 Rayford are based on alleged wrongdoing related to the annuities. The Court concludes
20 Almajid does not have standing to bring claims about the annuities against Banks and Rayford.
21 To the extent that Almajid raises any claims that are not related to the interpleader funds, the
22 Court lacks pendent jurisdiction over the claims because they are state law claims which do
23 not share "a common nucleus of operative fact" with the interpleader claim. *United Mine
24 Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Almajid's cross claims against Banks and
25 Rayford are dismissed.

## CONCLUSION

27  IT IS HEREBY ORDERED that:

28  (1)   Sandberg, Phoenix & von Gontard, P.C.'s Motion for Summary Judgment (Doc.

|   |     |                                                                                           |
|---|-----|-------------------------------------------------------------------------------------------|
| 1 |     | # 106) is **GRANTED**.                                                                    |
| 2 | (2) | Hartford is ordered to liquidate Annuity 1 and deposited with the Court within **fourteen (14)** days of the date of this order. |
| 4 | (3) | Sandberg, Phoenix & von Gontard, P.C., Beryl Rayford, and Mary Banks may file further briefing **on or before November 1, 2010** as to distribution of the share of the annuity proceeds which the settlement agreement awarded to defaulted defendant NAM. |
| 8 | (4) | Umar Alamjid's Motion to Reconsider Dismissal of Cross-Complaint Against Sandberg or Leave to File Second Amended Answer and Cross Complaint (Doc. # 108) is **DENIED**. |
| 11 | (5) | Almajid's Cross Claims against Banks and Rayford are **DISMISSED** without prejudice and without leave to amend. |
| 13 | (6) | The Court **vacates** the scheduling order issued on July 29, 2010. (Doc. # 116). |

DATED: October 8, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge