# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE INSURANCE COMPANY,<br><br>                    Plaintiff,<br>     vs.<br>MARY BANKS, et al.<br>                    Defendants. | CASE NO. 08cv1279 WQH (WVG)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Enter Default Judgment against Cross-Defendant North American Mercantile, Inc. ("NAM") filed by Defendant and Cross-Plaintiff Sanberg Phoenix & Von Gontard P.C. ("Sandberg") (ECF No. 126).

On July 16, 2008, Plaintiff Hartford Life Insurance Company ("Hartford") initiated this action by filing the Complaint in Interpleader ("Complaint") against Sandberg, Mary Banks ("Banks"), Beryl Rayford ("Rayford"), Umar Almajid ("Almajid"), and NAM.[1] (ECF No. 1). This case concerns a dispute over the inheritance of two annuities owned by Cleona Bailey Shortridge. The Complaint alleges that Almajid and Rayford, Shortridge's nephew and niece, were named as the beneficiaries of the annuities in a revocable trust executed on August 4, 1997, with Banks as the successor trustee. *Id*. at 5. The Complaint alleges that on June 2,

---

[1] The Complaint also names Richard Wier and Monnye Gross as defendants; however, on November 13, 2008, they were dismissed with prejudice. (ECF No. 20).

1   2002, Shortridge changed the beneficiary of the annuities to NAM.  *Id.* at 4.

2         The Complaint alleges that after Shortridge's death, Banks and Rayford filed a Petition
3   in the Circuit Court of the city of St. Louis, Missouri ("St. Louis action") which disputed
4   ownership of the annuities.  *Id.* at 5.  The Complaint alleges that Sandberg, a law firm,
5   represented Almajid and NAM in the St. Louis action.  *Id.* at 5.  The Complaint alleges that
6   a settlement was memorialized in writing on July 10, 2007.  *Id.* at 6.  The Complaint alleges
7   that Hartford sent forms to allow the disbursement of funds pursuant to the settlement to
8   Sandberg for Almajid and NAM to complete.  *Id.* at 6.  The Complaint alleges that the forms
9   were never returned.  *Id.*  The Complaint alleges that Almajid sent a letter to Hartford stating
10  that there was a dispute between Almajid, NAM, and Sandberg.  *Id.* at 7.  The Complaint
11  alleges that Hartford requested confirmation from Almajid and NAM that Sandberg still
12  represented them, but received no response.  *Id.*  The Complaint alleges that the dispute over
13  disbursement of proceeds necessitated this interpleader action by Hartford.  *Id.*  Hartford
14  deposited $36,329.06 with this Court which represented Annuity 2.  (ECF No. 4).

15        On March 18, 2009, this Court issued an Order discharging and dismissing Plaintiff
16  Hartford Life Insurance Company with prejudice from this action and awarding Hartford the
17  sum of $8,500.00 as reasonable attorney's fees and costs.  (ECF No. 38).

18        On March 25, 2009, this Court dismissed Almajid's Cross-Claim in its entirety for
19  failure to state a claim.  (ECF No. 39).  On July 17, 2009, the Court granted Sandberg's Motion
20  for Leave to File Cross-Complaint Against North American Mercantile, Inc.  (ECF No. 48).
21  On July 20, 2009, the Court struck the Answer that Almajid filed on behalf of NAM, holding
22  that Almajid may not represent NAM because Almajid is not an attorney.  (ECF No. 48).  Also
23  on July 20, 2009, the Court granted Almajid's Motion for Leave to File an Amended Answer
24  and Cross-Complaint.  *Id.*

25        On August 3, 2009, Sandberg filed a Cross-Claim against NAM for breach of contract.
26  (ECF No. 49).  Sandberg alleges that on "April 15, 2005, Sandberg and NAM entered into an
27  agreement whereby Sandberg agreed to provide legal representation to NAM for defense of
28  the St. Louis Action and various other legal matters, and NAM agreed to pay Sandberg for said

1 legal representation." *Id*. at 2. "Sandberg alleges, "NAM has breached its contract with
2 Sandberg by failing to pay for legal services and costs provided by Sandberg in connection
3 with the St. Louis Action." *Id*. Sandberg alleges that it "has complied with all conditions
4 precedent under the contract, and is not now and never has been in breach of the contract." *Id.*
5 at 3. Sandberg alleges that "NAM has a remaining balance due to Sandberg in the amount of
6 $56,236.70 for costs and legal services provided to NAM in the St. Louis action." *Id*. at 2.
7 NAM did not file an answer to Sandberg's Cross-Claim.

8 On August 12, 2009, Almajid filed his amended Answer and Cross-Complaint against
9 Sandberg, Banks, Rayford, Gross, and Wier. (ECF No. 52). In his Answer, Almajid denies
10 "that Defendant Banks, Rayford, or Sandberg has any legitimate or bona fide interest in the
11 accounts . . . ." *Id.* at 2. The Cross-Claim alleges claims for (1) civil RICO violations, (2)
12 conspiracy, (3) interference with contractual relationship, (4) fraudulent concealment and (5)
13 accounting. *Id.* at 23-26.

14 On September 2, 2009, Sandberg filed a Request for Entry of Clerk's Default against
15 NAM under Federal Rule of Civil Procedure 55(a) for NAM's failure to respond to the
16 Complaint and the Cross-Complaint. (ECF No. 55). On September 4, 2009, the Clerk of the
17 Court entered default against NAM on the Cross-Claim. (ECF No. 58).

18 On October 2, 2009, Sandberg filed a Motion for Clerk's Default Judgment against
19 NAM pursuant to Federal Rule of Civil Procedure 55(b)(1) for the amount of $56,236.70.
20 (ECF No. 64). On October 2, 2009, the Clerk of the Court entered default judgment in favor
21 of Sandberg against NAM in the amount of $56,236.70 on the Cross-Claim. (ECF No. 65).
22 On January 26, 2010, the Court denied Almajid's Motion to Drop Defendant (ECF
23 No. 56), which sought to substitute Almajid for NAM as the defendant to Sandberg's Cross-
24 Claim. (ECF No. 86). In the same order, the Court denied Banks, Rayford, and Sandberg's
25 Motion for Judgment on the Pleadings (ECF No. 69) and granted Sandberg's Motion to
26 Dismiss Cross-Complaint (ECF No. 54). Also on January 26, 2010, the Court issued five
27 orders to show cause (ECF Nos. 80-84). The Court issued Orders to Show Cause to Banks
28 (ECF No. 81), Rayford (ECF No. 80), and NAM (ECF No. 82) requiring them to show cause

1  why they should not be dismissed as to the complaint in interpleader for failure to file an
2  answer. The Court issued two orders to show cause to Almajid, requiring him to show cause
3  why his Cross-Claim against Gross and Wier should not be dismissed for failure to serve them
4  within the 120 day period allowed pursuant to Federal Rule of Civil Procedure 4(m) and to
5  show cause why his Cross-Claims against Banks and Rayford should not be dismissed for
6  failure to move for default judgment within the time allowed pursuant to Local Civil Rule 55.1
7  after obtaining a clerk's default. (ECF Nos. 83, 84).

8  On February 19, 2010, Banks filed an answer to the Complaint in Interpleader (ECF
9  No. 88) and a declaration stating she had previously failed to file an answer because she cannot
10 afford counsel and is "not familiar with the Rules of Court" and therefore "was not aware that
11 [she] had to respond to the Complaint . . ." (ECF No. 88-1).

12 On February 22, 2010, Almajid filed responses to orders to show cause issued as to him
13 and as to NAM. (ECF Nos. 89-91). In his filing on behalf of NAM, Almajid contended "[t]he
14 statutory provision requiring NAM to retain counsel is unduly prejudicial and
15 burdensome . . . ." (ECF No. 89 at 3). Almajid sought to "excuse NAM from answering the
16 Complaint in Interpleader . . . ." *Id.*

17 On February 23, 2010, Rayford filed an answer to the complaint in interpleader. (ECF
18 No. 93). On February 26, 2010, the Court ordered Rayford to file a proof of service on her
19 answer to the Complaint in Interpleader within ten days. (ECF No. 94). On March 9, 2010,
20 Rayford filed her proof of service. (ECF No. 99).

21 On May 18, 2009, the Court issued four orders in this case. (ECF Nos. 102-05). The
22 Court struck Almajid's response to the order to show cause issued to NAM. (ECF No. 105 at
23 8). The Court declined to sanction Almajid for the filing, but warned Almajid that further
24 filings on behalf of NAM could result in sanctions. *Id.* The Court dismissed NAM as a party
25 to the Complaint in Interpleader for failure to file an answer. (ECF No. 102 at 1). The Court
26 denied Almajid's motion for an enlargement of time to serve Gross and Wier and dismissed
27 Almajid's Cross-Claim against them. (ECF No. 104 at 1). The Court ruled that Almajid had
28 shown cause as to why his Cross-Claims should not be dismissed as to Banks and Rayford for

failure to move for default judgment. (ECF No. 103 at 2).

On May 28, 2010, Sandberg moved for summary judgment on the Complaint in Interpleader. (ECF No.106). Also on May 28, 2010, Almajid filed a motion to reconsider dismissal of the Cross-Complaint against Sandberg or, in the alternative, for leave to file a second amended answer and cross-complaint. (ECF No. 108). On October 8, 2010, this Court issued an Order granting Sanberg's motion for summary judgment and ordering Hartford to liquidate Annuity 1 and deposit it with the Court.[2] (ECF No. 121 at 5-8, 11). This Court stated the following:

> Pursuant to the settlement agreement, NAM was to receive the entire proceeds of Annuity 1, which was at that time worth $33,802.41. The proceeds of Annuity 2, which at that time was worth $36,030.09 were to be divided as follows: $25,000.00 to Sandberg, $4,930.59 to NAM, $4,246.50 to Rayford, $1,353.00 to Banks as partial payment of her fee as trustee, and $1,000.00 to Banks to be held in a separate trust checking account 'for preparation of final Federal and State Fiduciary Tax Returns for the Trust.'....
>
> NAM did not enter an appearance in this case and has defaulted. Sandberg contends that it is entitled to the proceeds awarded to defaulted defendant NAM in the settlement agreement to satisfy Sandberg's default judgment against NAM on Sandberg's cross claim. The Court concludes that Sandberg has thus far failed to establish that Sandberg is entitled to NAM's share of the settlement. Sandberg, Banks, and Rayford may file further briefing as to the proper resolution of this case as to the share of the annuities which the settlement agreement awarded to defaulted defendant NAM.

*Id*. at 7-8 (citations omitted). The Court denied Almajid's motion to reconsider dismissal of his Cross-Complaint against Sandberg.

On October 28, 2010, Defendants Banks, Rayford, and Sandberg filed a Joint Response to this Court's Order. (ECF No. 124). Banks, Rayford, and Sandberg stated that they "have agreed to the proper resolution of this case with respect to the amount awarded NAM under the settlement agreement ...." (ECF No. 124 at 2). The parties agreed to distribute the funds as follows: $3,353.00 to Banks which includes $2,353.00 under the St. Louis action settlement agreement and $1,000.00 "for her share of NAM's funds"; $9,475.90 to Rayford which includes $4,246.50 under the St. Louis action settlement agreement and $5,229.40 "for her share of NAM's funds" as well as the balance of any funds not otherwise distributed; and

---

[2] On October 20, 2010, Hartford complied with this Court's Order and deposited $37,128.72 with the Court which represented the liquidated Annuity 1. (ECF Nos. 122-23).

1  $52,236.70 to Sandberg which includes $25,000.000 under the St. Louis action settlement
2  agreement and $27,236.70 for its "share of NAM's funds." (ECF No. 124 at 3). The parties
3  stated that they agreed to this distribution, in part, to satisfy Sandberg's default judgment
4  against NAM on the Cross-Claim which was entered by the Clerk of the Court on October 2,
5  2009 (ECF No. 65).

6        On April 11, 2011, this Court vacated the October 2, 2009 entry of default judgment
7  against NAM by the Clerk of the Court under Federal Rule of Civil Procedure 55(b)(1).

8        On May 11, 2011, Sandberg filed a Motion to Enter Default Judgment pursuant to
9  Federal Rule of Civil Procedure 55(b)(2) against Cross-Defendant NAM in the amount of
10 $56,236,70 for fees and costs incurred in the St. Louis action. (ECF No. 126). Sandberg
11 submitted the Declarations of Kenneth White and Martin Daesch along with detailed billing
12 records regarding Sandberg's fees and costs associated with its representation of NAM in the
13 St. Louis action. Daesch states that Sandberg incurred fees of $66,889.50 for its representation
14 of NAM in the St. Louis action. (ECF No. 126-3 at 2). Daesch states that Sandberg incurred
15 $6,346.85 in expenses for its representation of NAM in the St. Louis Action. *Id*. Daesch states
16 that NAM made one payment of $15,000 and $2,000 remains in a trust account from NAM
17 which was paid as an initial retainer. *Id*. Daesch states that NAM currently owes Sandberg
18 $56,236.70. *Id*.

19       On June 2, 2011, the Declaration of Witness Jesse Mallinger in Support of Opposition
20 to Sandberg's Motion for Entry of Default Judgment Against NAM was filed. (ECF No. 128).
21 Mallinger states: "Though I expressly do not represent any party in this case, I have reviewed
22 some evidence and documents in this case with [Almajid] related to the matters before the
23 Court ...." *Id*. at 2. Mallinger states: "That review of documents has led me to believe that
24 ...Almajid retained Martin Daesch of [Sandberg] to defend himself and NAM." *Id*. Mallinger
25 states that Sandberg, "prepared and filed a response to [the St. Louis Action] solely on behalf
26 of Almajid." *Id.* Mallinger states that Sandberg, "did apparently draft (but did not file?) an
27 answer on behalf of NAM in which they repeatedly state that allegations were not directed
28 toward NAM, nor was relief sought from NAM." *Id*. Mallinger states that Sandberg's Motion

to Enter Default Judgment against NAM "is supported with billing entries sent to Almajid for services connected to [Sandberg's] representation." *Id.*

### DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the court may grant a default judgment after default has been entered by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2). The Ninth Circuit has articulated the following factors for courts to consider in determining whether default judgment should be granted:

> (1) the substantive merit of the plaintiff's claims, (2) the sufficiency of the complaint, (3) the amount of money at stake, (4) the possibility of prejudice to the plaintiff if relief is denied, (5) the possibility of disputes to any material facts in the case, (6) whether default resulted from excusable neglect, and (7) the public policy favoring resolutions of cases on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation omitted). "Plaintiff is required to prove all damages sought in the complaint. In addition, [a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]. In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing.... If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Phillip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citations omitted).

A default judgment in favor of one party on one claim must comply with Federal Rule of Civil Procedure 54(b) which provides: "[T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that

there is no just reason for delay. Otherwise, any order ... that adjudicates fewer than ... all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

The Clerk of the Court has entered default against Cross-Defendant NAM and in favor of Sandberg. The Court accepts the factual allegations in the Cross-Claim as true. Sandberg asserts a cross-claim for breach of contract and alleges that on "April 15, 2005, Sandberg and NAM entered into an agreement whereby Sandberg agreed to provide legal representation to NAM for defense of the St. Louis Action and various other legal matters, and NAM agreed to pay Sandberg for said legal representation." (ECF No. 49 at 2). "Sandberg alleges, "NAM has breached its contract with Sandberg by failing to pay for legal services and costs provided by Sandberg in connection with the St. Louis Action." *Id*. Sandberg alleges that "NAM has a remaining balance due to Sandberg in the amount of $56,236.70 for costs and legal services provided to NAM in the St. Louis action." *Id*. at 2. Sandberg's Cross-Claim establishes that Sandberg is entitled to prevail against Cross-Defendant NAM for fees and costs incurred in the St. Louis action.

The Court has considered the factors articulated in *Eitel* and the Court concludes that default judgment against Cross-Defendant NAM is appropriate pursuant to Rule 55(b)(2). Plaintiff will be prejudiced and potentially left without recourse for recovery if default judgment is denied. It is unlikely that the default of Cross-Defendant NAM is the result of excusable neglect. The Court has reviewed the Cross-Claim and the evidence submitted in support of Sandberg's Motion for Default Judgment and concludes that Plaintiff has presented substantial evidence to establish that it is entitled to recover $56,236.70. The Court grants the Motion for Default Judgment as to Cross-Defendant NAM.

## DISTRIBUTION OF FUNDS

On October 28, 2010, Defendants Banks, Rayford, and Sandberg filed a Joint Response to this Court's Order. (ECF No. 124). Banks, Rayford, and Sandberg contend that they "have agreed to the proper resolution of this case with respect to the amount awarded NAM under

1  the settlement agreement, and therefore, this Court should award the interpleaded funds ...."
2  (ECF No. 124 at 2). The parties have agreed to distribute the funds according to the St. Louis
3  action settlement agreement. The parties have agreed to distribute the funds awarded to NAM
4  under the St. Louis action settlement agreement as follows: $27,236.70 to Sandberg to satisfy
5  Sandberg's judgment against NAM; $1,000.00 to Banks as additional trustee fees for her
6  involvement in this litigation; and the remaining balance to Rayford because she was a named
7  beneficiary prior to NAM. "The parties agree that such a distribution is the most equitable
8  distribution and is in the interests of justice." *Id*. at 3.

9  Thus, the parties have agreed and request this Court make the following distribution of
10 funds:

11 1.  $52,236.70 to Sandberg which is comprised of $25,000.00 under the terms of the
12     settlement agreement and $27,236.70 for Sandberg's share of the amount
13     awarded to NAM under the settlement agreement;

14 2.  $9,475.90 to Rayford which is comprised of $4,246.50 under the terms of the
15     settlement agreement and $5,229.40 for her share of the amount awarded to
16     NAM under the settlement agreement;

17 3.  $3,353.00 to Banks which is comprised of $2,353.00 under the terms of the
18     settlement agreement and $1,000.00 for her share of the amount awarded to
19     NAM under the settlement agreement; and

20 4.  to the extent any funds remain due to per diem interest at the time the Court
21     enters its order for distribution, such funds shall be distributed to Rayford.

22 In an interpleader action, the court may approve a settlement as proposed if the
23 settlement is reasonable and consistent with the record. *See U.S. Specialty Ins. Co. v. Estate*
24 *of Schurrer*, Cause No. 4:09CV353, 2010 WL 2598269 at *2 (E.D. Tex. 2010) ("Having
25 reviewed the record and heard the arguments of counsel, and recognizing the Court's equitable
26 powers in this proceeding, the Court finds that the apportionment requested by the remaining
27 should be made as agreed."). Potential claimants should be provided with notice of the
28 settlement. *American Intern. Speciality Lines Ins. Co. v. Nat'l Ass'n of Bus. Owners & Prof'ls*,

1  253 F. Supp. 2d 468, 475 (E.D. N.Y. 2003). "'[N]otice is adequate so long as it is reasonably
2  calculated to apprise the parties of the terms of a proposed settlement and the options available
3  in connection with the judicial proceeding.'" *American Intern. Speciality Lines Ins. Co.,* 253
4  F. Supp. 2d at 475 (quoting *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144
5  (2d Cir. 1993)).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Enter Default Judgment against Cross-Defendant North American Mercantile, Inc. in the amount of $56,236.70 filed by Defendant and Cross-Plaintiff Sanberg Phoenix & Von Gontard P.C. (ECF No. 126) is GRANTED. The Joint Response to this Court's Order filed by Defendants Mary Banks, Beyrl Rayford, and Sanberg Phoenix & Von Gontard P.C. (ECF No. 124) remains pending. The Clerk of the Court shall mail a copy of this Order to Umar Almajid and North American Mercantile, Inc. as notice of the terms of the proposed settlement. Any party may file a response or opposition to the proposed settlement by no later than July 22, 2011.

DATED: June 21, 2011

**WILLIAM Q. HAYES**
United States District Judge