# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>     vs.<br><br>MARY BANKS, et al.<br>              Defendants. | CASE NO. 08cv1279 WQH (WVG)<br><br>**ORDER TO DISTRIBUTE FUNDS AND TO CLOSE INTEREST BEARING ACCOUNT** |

HAYES, Judge:

The matter before the Court is the final distribution of the interpleaded funds.

## BACKGROUND

On July 16, 2008, Plaintiff Hartford Life Insurance Company ("Hartford") initiated this action by filing the Complaint in Interpleader ("Complaint") against Sandberg Phoenix & Von Gontard P.C. ("Sandberg"), Mary Banks ("Banks"), Beryl Rayford ("Rayford"), Umar Almajid ("Almajid"), and North American Mercantile, Inc. ("NAM").[1]  (ECF No. 1).  This case concerned a dispute over the inheritance of two annuities owned by Cleona Bailey Shortridge. The Complaint alleged that Almajid and Rayford, Shortridge's nephew and niece, were named as the beneficiaries of the annuities in a revocable trust executed on August 4, 1997, with Banks as the successor trustee.  *Id*. at 5.  The Complaint alleged that on June 2, 2002,

---

[1] The Complaint also named Richard Wier and Monnye Gross as defendants; however, on November 13, 2008, they were dismissed with prejudice. (ECF No. 20).

1  Shortridge changed the beneficiary of the annuities to NAM.  *Id.* at 4.

2        The Complaint alleged that after Shortridge's death, Banks and Rayford filed a Petition
3  in the Circuit Court of the city of St. Louis, Missouri ("St. Louis action") which disputed
4  ownership of the annuities.  *Id.* at 5.  The Complaint alleged that Sandberg, a law firm,
5  represented Almajid and NAM in the St. Louis action.  *Id.* at 5.  The Complaint alleged that
6  a settlement of the St. Louis action was memorialized in writing on July 10, 2007.  *Id.* at 6.
7  The Complaint alleged that Hartford sent forms to allow the disbursement of funds pursuant
8  to the settlement to Sandberg for Almajid and NAM to complete.  *Id.* at 6.  The Complaint
9  alleged that the forms were never returned.  *Id.*  The Complaint alleged that Almajid sent a
10 letter to Hartford stating that there was a dispute between Almajid, NAM, and Sandberg.  *Id.*
11 at 7.  The Complaint alleged that Hartford requested confirmation from Almajid and NAM that
12 Sandberg still represented them, but received no response.  *Id.*  The Complaint alleged that the
13 dispute over disbursement of proceeds necessitated this interpleader action by Hartford.  *Id.*
14 Hartford deposited $36,329.06 with this Court which represented Annuity 2.  (ECF No. 4).

15       On March 18, 2009, this Court issued an Order discharging and dismissing Plaintiff
16 Hartford Life Insurance Company with prejudice from this action and awarding Hartford the
17 sum of $8,500.00 as reasonable attorney's fees and costs.  (ECF No. 38).

18       On March 25, 2009, this Court dismissed a Cross-Claim filed by Almajid in its entirety
19 for failure to state a claim.  (ECF No. 39).  On July 17, 2009, the Court granted Sandberg's
20 Motion for Leave to File Cross-Claim Against NAM.  (ECF No. 48).  On July 20, 2009, the
21 Court struck an Answer that Almajid filed on behalf of NAM.  The Court stated:

22       As a corporation, NAM may not appear pro se.  Almajid purported to
      file the Answer and Counterclaim on behalf of himself and NAM.
23       Although Almajid may represent himself pro se, Almajid may not file
      pleadings on behalf of NAM....  If NAM does not obtain legal
24       representation, NAM may be subject to default proceedings.

25 (ECF No. 48 at 3) (citations omitted).  Also on July 20, 2009, the Court granted Almajid's
26 Motion for Leave to File an Amended Answer and Cross-Complaint.  *Id.*

27       On August 3, 2009, Sandberg filed a Cross-Claim against NAM for breach of contract.
28 (ECF No. 49).  Sandberg alleged that on "April 15, 2005, Sandberg and NAM entered into an

1  agreement whereby Sandberg agreed to provide legal representation to NAM for defense of
2  the St. Louis Action and various other legal matters, and NAM agreed to pay Sandberg for said
3  legal representation." *Id*. at 2. Sandberg alleged that NAM "breached its contract with
4  Sandberg by failing to pay for legal services and costs provided by Sandberg in connection
5  with the St. Louis Action." *Id*. Sandberg alleged that it "complied with all conditions
6  precedent under the contract, and [did not breach] the contract." *Id.* at 3. Sandberg alleged
7  that NAM "has a remaining balance due to Sandberg in the amount of $56,236.70 for costs and
8  legal services provided to NAM in the St. Louis action." *Id*. at 2. NAM did not file an answer
9  to Sandberg's Cross-Claim.

10 On August 12, 2009, Almajid filed a amended Answer and Cross-Complaint against
11 Sandberg, Banks, Rayford, Gross, and Wier. (ECF No. 52). In his Answer, Almajid denied
12 "that Defendant Banks, Rayford, or Sandberg has any legitimate or bona fide interest in the
13 accounts ...." *Id.* at 2. Almajid alleged claims for (1) civil RICO violations, (2) conspiracy,
14 (3) interference with contractual relationship, (4) fraudulent concealment and (5) accounting.
15 *Id.* at 23-26.

16 On September 2, 2009, Sandberg filed a Request for Entry of Clerk's Default against
17 NAM under Federal Rule of Civil Procedure 55(a) for NAM's failure to respond to the
18 Complaint and the Cross-Claim. (ECF No. 55). On September 4, 2009, the Clerk of the Court
19 entered default against NAM on the Cross-Claim. (ECF No. 58).

20 On October 2, 2009, Sandberg filed a Motion for Clerk's Default Judgment against
21 NAM pursuant to Federal Rule of Civil Procedure 55(b)(1) for the amount of $56,236.70.
22 (ECF No. 64). On October 2, 2009, the Clerk of the Court entered default judgment in favor
23 of Sandberg against NAM in the amount of $56,236.70 on the Cross-Claim. (ECF No. 65).
24 On that same day, Almajid filed a request for Clerk's Entry of Default against Banks and
25 Rayford. (ECF No. 68). On October 14, 2009, the Clerk of the Court entered default as to
26 both Banks and Rayford. (ECF No. 71).

27 On January 26, 2010, the Court denied the "Motion to Drop Defendant" filed by
28 Almajid (ECF No. 56), which sought to substitute Almajid for NAM as the defendant to

1  Sandberg's Cross-Claim. (ECF No. 86). The Court stated: "As a non-lawyer, Almajid may
2  not file motions or pleadings on behalf of NAM." *Id.* at 9. In the same order, the Court denied
3  Banks, Rayford, and Sandberg's Motion for Judgment on the Pleadings (ECF No. 69) and
4  granted Sandberg's Motion to Dismiss the Cross-Complaint filed by Almajid. (ECF No. 54).

5  Also on January 26, 2010, the Court issued five orders to show cause. (ECF Nos.
6  80-84). The Court issued Orders to Show Cause to Banks (ECF No. 81), Rayford (ECF No.
7  80), and NAM (ECF No. 82) requiring them to show cause why they should not be dismissed
8  as to the Complaint in Interpleader for failure to file an answer. With regard to NAM, the
9  Court stated:

10  > To date, NAM has not filed an answer. Pursuant to Federal Rule of
    > Civil Procedure 41(2)(b), NAM is subject to dismissal for failure to
11  > comply with the Federal Rules of Civil Procedure.... This order
    > constitutes notice to NAM that the Court will dismiss NAM as a party
12  > to the complaint in interpleader on or after February 22, 2010, unless
    > no later than that date, NAM files an answer to the complaint in
13  > interpleader....

14  *Id.* at 1-2.

15  The Court issued two orders to show cause to Almajid, requiring him to show cause
16  why his Cross-Complaint against Gross and Wier should not be dismissed for failure to serve
17  them within the 120 day period allowed pursuant to Federal Rule of Civil Procedure 4(m) and
18  to show cause why his Cross-Complaints against Banks and Rayford should not be dismissed
19  for failure to move for default judgment within the time allowed pursuant to Local Civil Rule
20  55.1 after obtaining a clerk's default. (ECF Nos. 83, 84).

21  On February 19, 2010, Banks filed an Answer to the Complaint in Interpleader (ECF
22  No. 88) and a declaration stating she had previously failed to file an answer because she could
23  not afford counsel and was "not familiar with the Rules of Court" and therefore "was not aware
24  that [she] had to respond to the Complaint . . ." (ECF No. 88-1).

25  On February 22, 2010, Almajid filed responses to orders to show cause issued as to him
26  and as to NAM. (ECF Nos. 89-91). In his filing on behalf of NAM, Almajid sought to
27  "excuse NAM from answering the Complaint in Interpleader" on the grounds that "[t]he
28  statutory provision requiring NAM to retain counsel [was] unduly prejudicial and

burdensome ...." (ECF No. 89 at 3).

On February 23, 2010, Rayford filed an Answer to the Complaint in Interpleader. (ECF No. 93). On February 26, 2010, the Court ordered Rayford to file a proof of service on her answer to the Complaint in Interpleader within ten days. (ECF No. 94). On March 9, 2010, Rayford filed her proof of service. (ECF No. 99).

On May 18, 2009, the Court issued four orders in this case. (ECF Nos. 102-05). The Court struck Almajid's response to the order to show cause issued to NAM stating: "Almajid's filing in response to the Order to Show Cause issued to NAM raised legal arguments on behalf of NAM, which Almajid - who is not licensed as an attorney - is not permitted to make on NAM's behalf." (ECF No. 105 at 7). The Court stated that it had "twice warned Almajid that he may not appear on behalf of NAM and has warned NAM that it was required to retain counsel and enter an appearance in order to avoid default judgment." *Id.* The Court dismissed NAM as a party to the Complaint in Interpleader for failure to file an answer. (ECF No. 102 at 1). The Court stated: "The Order to Show Cause gave NAM notice that the Court would dismiss NAM as a party to the interpleader on or after February 22, 2010 if NAM failed to file an answer to the Complaint in Interpleader ...." *Id.*

The Court also denied Almajid's motion for an enlargement of time to serve Gross and Wier and dismissed Almajid's Cross-Complaint against them. (ECF No. 104 at 1). The Court concluded that Almajid had shown cause as to why his Cross-Complaints should not be dismissed as to Banks and Rayford for failure to move for default judgment. (ECF No. 103 at 2).

On May 28, 2010, Sandberg moved for summary judgment on the Complaint in Interpleader. (ECF No.106). Also on May 28, 2010, Almajid filed a motion to reconsider dismissal of the Cross-Complaint against Sandberg or, in the alternative, for leave to file a second amended answer and cross-complaint. (ECF No. 108). On October 8, 2010, this Court issued an Order granting Sanberg's motion for summary judgment and ordering Hartford to

liquidate Annuity 1 and deposit it with the Court.[2] (ECF No. 121 at 5-8, 11). This Court stated:

> Almajid has repeatedly asserted that NAM is entitled to all of the proceeds from the annuities and attempted to make filings on behalf of NAM or substitute himself for NAM as a party to this litigation. However, Almajid has not asserted an independent right to the annuities at issue in this case. In his answer, Almajid asserts that Banks, Rayford, and Sandberg are not entitled to any proceeds of the annuities, but does not state that he has any claim to the funds. Almajid has conceded that NAM, not Almajid, was the last named beneficiary of the annuities. Almajid has conceded that he did not receive any of the annuity funds under the terms of the settlement agreement in the prior litigation. Almajid has conceded that he signed the settlement agreement, both on behalf of NAM and as an individual.
>
> Although Almajid has repeatedly asserted that the settlement agreement is invalid, even if the settlement agreement were invalid, there is no genuine issue of material fact that Almajid is not entitled to any of the proceeds of the annuities. The incomplete document which Almajid asserts proves that NAM assigned its rights in the annuity to Almajid, does not raise a genuine issue of material fact as to whether Almajid has any interest the annuities. In any event, Almajid has not presented any evidence in support of his assertions that his assent to the settlement agreement was made under duress. The Court concludes that the settlement agreement is enforceable.

*Id*. at 6-7.

This Court also stated the following:

> Pursuant to the settlement agreement, NAM was to receive the entire proceeds of Annuity 1, which was at that time worth $33,802.41. The proceeds of Annuity 2, which at that time was worth $36,030.09 were to be divided as follows: $25,000.00 to Sandberg, $4,930.59 to NAM, $4,246.50 to Rayford, $1,353.00 to Banks as partial payment of her fee as trustee, and $1,000.00 to Banks to be held in a separate trust checking account 'for preparation of final Federal and State Fiduciary Tax Returns for the Trust.'....
>
> NAM did not enter an appearance in this case and has defaulted. Sandberg contends that it is entitled to the proceeds awarded to defaulted defendant NAM in the settlement agreement to satisfy Sandberg's default judgment against NAM on Sandberg's cross claim. The Court concludes that Sandberg has thus far failed to establish that Sandberg is entitled to NAM's share of the settlement. Sandberg, Banks, and Rayford may file further briefing as to the proper resolution of this case as to the share of the annuities which the settlement agreement awarded to defaulted defendant NAM.

*Id*. at 7-8 (citations omitted). The Court denied Almajid's motion to reconsider dismissal of his Cross-Complaint against Sandberg.

---

[2] On October 20, 2010, Hartford complied with this Court's Order and deposited $37,128.72 with the Court which represented the liquidated Annuity 1. (ECF Nos. 122-23).

On October 28, 2010, Defendants Banks, Rayford, and Sandberg filed a Joint Response to this Court's Order. (ECF No. 124). Banks, Rayford, and Sandberg stated that they "have agreed to the proper resolution of this case with respect to the amount awarded NAM under the settlement agreement ...." (ECF No. 124 at 2). The parties stated that they agreed to the distribution, in part, to satisfy Sandberg's default judgment against NAM on the Cross-Claim which was entered by the Clerk of the Court on October 2, 2009. (ECF No. 65).

On April 11, 2011, this Court vacated the October 2, 2009 entry of default judgment against NAM by the Clerk of the Court under Federal Rule of Civil Procedure 55(b)(1).

On May 11, 2011, Sandberg filed a Motion to Enter Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Cross-Defendant NAM in the amount of $56,236,70 for fees and costs incurred in the St. Louis action. (ECF No. 126).

On June 21, 2011, this Court granted the Motion for Default Judgment filed by Sandberg as to Cross-Defendant NAM in the amount of $56,236.70. (ECF No. 129). The Court also stated:

> On October 28, 2010, Defendants Banks, Rayford, and Sandberg filed a Joint Response to this Court's Order. (ECF No. 124). Banks, Rayford, and Sandberg contend that they "have agreed to the proper resolution of this case with respect to the amount awarded NAM under the settlement agreement, and therefore, this Court should award the interpleaded funds ...." (ECF No. 124 at 2).... [T]he parties have agreed and request this Court make the following distribution of funds:
> 1. $52,236.70 to Sandberg which is comprised of $25,000.00 under the terms of the settlement agreement and $27,236.70 for Sandberg's share of the amount awarded to NAM under the settlement agreement;
> 2. $9,475.90 to Rayford which is comprised of $4,246.50 under the terms of the settlement agreement and $5,229.40 for her share of the amount awarded to NAM under the settlement agreement;
> 3. $3,353.00 to Banks which is comprised of $2,353.00 under the terms of the settlement agreement and $1,000.00 for her share of the amount awarded to NAM under the settlement agreement; and
> 4. to the extent any funds remain due to per diem interest at the time the Court enters its order for distribution, such funds shall be distributed to Rayford.
> ...
> The Clerk of the Court shall mail a copy of this Order to Umar Almajid and North American Mercantile, Inc. as notice of the terms of the proposed settlement. Any party may file a response or opposition to the proposed settlement by no later than July 22, 2011.

(ECF No. 129 at 9-10).

1  To date, no responses or oppositions to the proposed settlement have been filed.

## RULING OF THE COURT

There are two steps to an interpleader action. The first is determining whether the requirements of interpleader have been met. *See* 28 U.S.C. § 1335. The second step is to "adjudicat[e] the adverse claims of the defendant claimants." *W. Conf. of Teamsters Pension Plan v. Jennings,* Case No. C–10–03629 EDL, 2011 WL 2609858 at * 5 (N.D. Cal. June 6, 2011) (citing *N.Y. Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2nd Cir. 1983)); *see also* 28 U.S.C. § 2361 (stating that the district court "shall hear and determine the case ... and make all appropriate orders to enforce its judgment."). This case is at the second step.

"It is generally recognized that interpleader 'developed in equity and is governed by equitable principles.'" *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033-34 (9th Cir. 2000) (quoting *Lummis v. White*, 629 F.2d 397, 399 (5th Cir. 1980)); *see also Mayflower Transit, L.L.C. v. Cambridge*, No. CV-03-241-FVS, 2005 WL 2095752 at *3 (E.D. Wash. Aug. 29, 2005) (explaining that the court may make any order "that is appropriate and convenient for the resolution of the competing claims."). A court may approve a settlement as proposed if the settlement is reasonable and consistent with the record. *See U.S. Specialty Ins. Co. v. Estate of Schurrer*, Cause No. 4:09CV353, 2010 WL 2598269 at *2 (E.D. Tex. 2010) (distributing the interpleaded funds and stating: "Having reviewed the record and heard the arguments of counsel, and recognizing the Court's equitable powers in this proceeding, the Court finds that the apportionment requested by the remaining should be made as agreed."); *Liberty Mut. Fire Ins. Co. v. Coffman*, Case No. 5:08-cv-00256, 2009 WL 959407 at * 3 (S.D. W.Va. Apr. 7, 2009) (distributing the interpleaded funds equally between the parties according to their agreement finding that it was the "fair and appropriate resolution in this case."); *see generally In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (stating that there is "high judicial favor accorded the voluntary settlement of disputes....") (quotation omitted).

Potential claimants should be provided with notice of the settlement. *Am. Intern. Speciality Lines Ins. Co. v. Nat'l Ass'n of Bus. Owners & Prof'ls,* 253 F. Supp. 2d 468, 475

1  (E.D. N.Y. 2003). "'[N]otice is adequate so long as it is reasonably calculated to apprise the
2  parties of the terms of a proposed settlement and the options available in connection with the
3  judicial proceeding.'" *American Intern. Speciality Lines Ins. Co.,* 253 F. Supp. 2d at 475
4  (quoting *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993)).

5       On July 16, 2008, this case was initiated when Hartford sought to interplead funds from
6  annuities which had been the subject of a settlement agreement that resolved a dispute over the
7  ownership of the annuities in the St. Louis action. Almajid filed an answer to the Complaint
8  on behalf of NAM which was stricken by the Court on July 20, 2009. The Court issued the
9  warning that "NAM may not appear pro se.... If NAM does not obtain legal representation,
10 NAM may be subject to default proceedings." (ECF No. 48 at 3). On January 26, 2010, the
11 Court issued a second warning to Almajid that he could not file motions or pleading on behalf
12 of NAM because he was not an attorney and issued an Order to Show Cause as to why NAM
13 should not be dismissed for failure answer the Complaint in Interpleader. On May 18, 2010,
14 the Court struck the response to the Order to Show Cause filed by Almajid on behalf of NAM
15 holding that Almajid was not permitted to appear on NAM's behalf because he was not an
16 attorney. Although NAM had been warned repeatedly over the course of nearly a year that it
17 could not appear pro se in this action and that it would be dismissed if it failed to appear
18 represented by counsel and file an answer to the Complaint in Interpleader, NAM has failed
19 to appear in this case represented by counsel and file an answer. Accordingly, the Court
20 dismissed NAM as a party.

21      On October 8, 2010, this Court granted summary judgment finding that the settlement
22 agreement in the St. Louis action is enforceable. The settlement agreement in the St. Louis
23 action provided for $4,246.50 to be distributed to Rayford and $2,353.00 to be distributed to
24 Banks and $25,000 to be distributed to Sandberg. The settlement agreement in the St. Louis
25 action also provided that $38,733.00 be distributed to NAM; however, even after this Court
26 granted summary judgment, NAM did not seek leave to appear in this case represented by
27 counsel.

28      In addition, NAM did not file an answer to Sandberg's Cross-Claim. On January 26,

1  2010, the Court denied Almajid's Motion to Drop Defendant which sought to substitute
2  Almajid for NAM as the defendant to Sandberg's Cross-Claim. On September 4, 2009, the
3  Clerk of the Court entered default against NAM on the Cross-Claim. On October 2, 2009, the
4  Clerk of the Court entered default judgment in favor of Sandberg against NAM in the amount
5  of $56,236.70. On April 11, 2011, this Court vacated the Clerk's entry of default judgment
6  against NAM and on May 11, 2011, Sandberg filed a Motion to Enter Default Judgment
7  pursuant to Federal Rule of Civil Procedure 55(b)(2). Although NAM was provided notice of
8  the Court's Order vacating the Clerk's entry of default judgment and Sandberg's Motion,
9  NAM again failed to appear in this case represented by counsel and oppose the entry of default
10 judgment against it. On June 21, 2011, this Court granted default judgment against Cross-
11 Defendant NAM in favor of Sandberg in the amount of $56,236.70.

12    The Court must determine how to distribute the interpleaded funds.
13    The parties have agreed and request this Court make the following distribution of funds:
14    1.   $52,236.70 to Sandberg which is comprised of $25,000.00 under the terms of the
15         settlement agreement and $27,236.70 for Sandberg's share of the amount
16         awarded to NAM under the settlement agreement;[3]
17    2.   $9,475.90 to Rayford which is comprised of $4,246.50 under the terms of the
18         settlement agreement and $5,229.40 for her share of the amount awarded to
19         NAM under the settlement agreement;
20    3.   $3,353.00 to Banks which is comprised of $2,353.00 under the terms of the
21         settlement agreement and $1,000.00 for her share of the amount awarded to
22         NAM under the settlement agreement; and
23    4.   to the extent any funds remain due to per diem interest at the time the Court
24         enters its order for distribution, such funds shall be distributed to Rayford.

25    After a review of the record in this case, the Court finds that the proposed distribution
26 is reasonable. All potential claimants were provided with notice of the settlement and an

---

[3] The parties state that they have agreed to distribute $52,236.70 to Sandberg "to satisfy its judgment against NAM." (ECF No. 124 at 3). The Court finds that the distribution of $52,236.70 to Sandberg is in satisfaction of Sandberg's default judgment against NAM.

Case 3:08-cv-01279-WQH-WVG   Document 130   Filed 08/15/11   PageID.1803   Page 11 of 11

opportunity to respond. No responses were filed.

IT IS HEREBY ORDERED that the Joint Response to this Court's Order filed by Defendants Mary Banks, Beryl Rayford, and Sanberg Phoenix & Von Gontard P.C. (ECF No. 124) is GRANTED. The Clerk of the Court shall issue final judgment and distribute the interpleaded funds as follows:

1. $52,236.70 to Sandberg Phoenix & Von Gontard P.C., 600 Washington Avenue, 15th Floor, St. Louis, MO 63101-1313;

2. $9,475.90 to Beryl Rayford 7800 Holliswood Court, #721, Charlotte, NC 28217;

3. $3,353.00 to Mary Banks 1115 N. McKnight Road, St. Louis, MO 63132; and

4. the Clerk is authorized to deduct ten percent of the earned interest, as authorized by the Judicial Conference of the United States, and to the extent any funds remain at the time the Court enters its order for distribution, such funds shall be distributed to Beryl Rayford 7800 Holliswood Court, #721, Charlotte, NC 28217.

DATED: August 15, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge